IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Solyndra LLC, *et al.*,[1]<br><br>                    Debtors. | ) Chapter 11<br>)<br>) Case No.: 11-12799 ( )<br>)<br>) (Joint Administration Requested)<br>) |

**MOTION OF DEBTORS FOR ORDER UNDER 11 U.S.C. §§ 105,
363, 364, 503(b), 1107 AND 1108 AUTHORIZING (I) MAINTENANCE OF
EXISTING BANK ACCOUNTS, (II) CONTINUED USE OF EXISTING
BUSINESS FORMS, (III) CONTINUED USE OF EXISTING CASH MANAGEMENT
SYSTEM, (IV) CONTINUED ACCESS TO CORPORATE CREDIT CARDS,
(V) LIMITED FUNDING FOR WIND-UP OF FOREIGN SUBSIDIARIES, AND
(VI) WAIVER OF SECTION 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS**

Solyndra LLC ("Solyndra") and 360 Degree Solar Holdings, Inc., the above-captioned debtors and debtors in possession (the "Debtors"), hereby file this motion (the "Motion") for entry of an order under 11 U.S.C. §§ 105, 363, 364, 503(b), 1107 and 1108, authorizing (i) the maintenance of existing bank accounts including the authority to pay routine prepetition banking fees owed to financial institutions, (ii) the continued use of existing business forms, (iii) the continued use of the existing cash management system for the Debtors, (iv) the continued access to corporate credit cards, (v) limited funding for wind-up of foreign subsidiaries, and (vi) waiver of 11 U.S.C. section 345(b) deposit and investment guidelines (the "Motion"). In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Solyndra LLC (9771) and 360 Degree Solar Holdings, Inc. (5583). The Debtors' address is 47488 Kato Road, Fremont, CA 94538.

## Jurisdiction

1. This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), and (O). Venue of these proceedings and the Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 345(b), 363, 364, 503(b), 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

## Background

3. On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. Although the Debtors' manufacturing operations have been discontinued while the company evaluates its restructuring options, the Debtors are continuing in possession of their property and are managing their business as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. No trustee, examiner or committee has been appointed in any of the Debtors' chapter 11 cases.

6. The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of W.G. Stover, Jr., Senior Vice President and Chief Financial Officer, in Support of First Day Motions* filed contemporaneously with this Motion and incorporated herein by reference.

## Relief Requested

7.  By this Motion, the Debtors seek authorization (1) to maintain their existing bank accounts and to pay any prepetition routine banking fees imposed by the financial institutions where the Debtors' bank accounts are maintained, (2) to continue to use their existing check stock and business forms, (3) to continue to use their existing cash management system, (4) to continue to have access to corporate credit cards, (5) for limited funding for wind-up of foreign subsidiaries, and (6) waiver of the deposit and investment guidelines imposed under section 345(b) of the Bankruptcy Code.

## The Debtors' Bank Accounts and Cash Management System

8.  Just prior to the Petition Date, the Debtors terminated their manufacturing operations and have begun the process of restructuring their financial affairs. The Debtors have closed, or are in the process of closing, a significant number of their bank accounts. However, the Debtors wish to maintain six bank accounts, each of which is held in the name of Solyndra, to continue to make ordinary course disbursements, including payment of payroll obligations, to collect customer receipts and to hold cash collateral pledged to secure the Debtors' corporate credit card obligations.

9.  From and after the Petition Date, the Debtors propose to have a simplified cash management system (the "Cash Management System") that contains the following bank accounts (together, the "Bank Accounts"):

(a) one principal operating account in the name of Solyndra LLC (acct. no. 412-3021453) (the "Operating Account") at Wells Fargo Bank, N.A. ("Wells Fargo") that will be used for disbursements;

(b) one zero balance payroll account in the name of Solyndra LLC (acct. no. 412-4817313) at Wells Fargo that is linked to the Operating Account and debited by Solyndra's payroll service as and when payroll comes due;

(c) three customer collections accounts in the name of Solyndra LLC (acct. no. 777-6010832 at Wells Fargo for customer collections in Euros and acct. nos. 13343002 and 153910672036 at U.S. Bank N.A. ("U.S. Bank") for U.S. customer collections ) (together, the "Collections Accounts"). Account No. 13343002 is a securities account that invests cash collections in money market shares. The remaining two Collections Accounts are deposit accounts. The Collections Account at U.S. Bank is presently subject to the control of U.S. Bank as the master collateral agent for the holders of Solyndra's secured debt (the "Master Collateral Agent");[2] and

(d) one restricted account (acct. no. 4123508939) at Wells Fargo (the "Restricted Account") containing approximately $110,000 pledged to secure the Debtors' credit card-related obligations to Wells Fargo.

10. The Debtors manually transfer funds from the Collections Accounts to the Operating Account as and when needed to fund the Debtors' business or otherwise in the

---

[2] The Debtors have separately sought to access the funds in the U.S. Bank Collections Account.

discretion of the Debtors, except that the Debtors gain access to funds in the U.S. Bank Collections Account by instructing the U.S. Department of Energy, as loan servicer of certain secured debt obligations of Solyndra, to direct the Master Collateral Agent to disburse funds to the Operating Account. In the past, monthly receipts in the range of $5,000,000 to $8,000,000 flowed through the Cash Management System.

11. The Debtors' Bank Accounts and Cash Management System facilitates the timely and efficient collection, management and disbursement of funds used in the Debtors' business. Because of the disruption to the business that would result if the Debtors were forced to close these accounts, it is critical that the Debtors' maintain the Bank Accounts and existing Cash Management System.

### The Court Should Authorize the Debtors to Maintain Existing Bank Accounts

12. The United States Trustee for the District of Delaware has established certain operating guidelines for debtors in possession. One such provision requires a chapter 11 debtor in possession to open new bank accounts and close all existing accounts. The United States Trustee Guidelines also require that the new bank accounts only be opened in certain financial institutions designated as authorized depositories by the United States Trustee. This requirement, designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, helps to protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

13. The Debtors seek a waiver of the United States Trustee's requirement that the Bank Accounts be closed and new postpetition bank accounts be opened at depositories

authorized by the United States Trustee. If strictly enforced in this case, the United States Trustee's requirement would cause a severe disruption in the Debtors' activities and would impair the Debtors' ability to restructure under chapter 11.

14. Maintenance of the Bank Accounts will greatly facilitate the Debtors' ability to collect customer receipts. As noted above, all customer payments are deposited into the Debtors' Collection Accounts. If these accounts were closed, the Debtors would have to open new accounts and then attempt to arrange alternative electronic and manual payment procedures for payments into and out of those accounts, which would disrupt the Debtors' receipt of revenues from customers. Closing the Collections Accounts would also require the Debtors to cancel and reinstitute wire transfer instructions which would be difficult to modify under exigent circumstances. As to disbursements, closing the Debtors' Operating Account (and linked payroll account) would similarly disrupt the Debtors' ability to pay postpetition obligations. Taken together, these disruptions would severely impact and could irreparably harm the Debtors' restructuring in these chapter 11 cases. To avoid disruptions and delays in the operation of the Debtors' business, the Debtors should be permitted to continue to maintain their existing Bank Accounts and Cash Management System.

15. To guard against improper transfers resulting from the postpetition honoring of prepetition checks, the Debtors will notify Wells Fargo and U.S. Bank about the bankruptcy filing, place a stop payment notice on all prepetition checks that have not been processed by either of the Banks, and present a list to the Banks of all prepetition checks issued on an account maintained by such Bank for which the Debtors have issued a stop payment

notice; *provided, however*, that the Debtors may seek Court approval to pay selected prepetition obligations.

### The Court Should Authorize the Debtors to Continue their Existing Cash Management System

16. The Debtors hereby seek authority to continue to use their Cash Management System.

17. For the reasons set forth above, the Debtors' Cash Management System constitutes an essential business practice and was created and implemented by the Debtors in the exercise of their business judgment. The Cash Management System provides numerous benefits to the Debtors, including the ability to (a) process and timely pay expenses; (b) allow a mechanism for deposits from revenues; (c) ensure cash availability; (d) control and monitor corporate funds; and (e) reduce administrative expenses by facilitating the movement of funds. In addition, preserving a "business as usual" atmosphere and avoiding the unnecessary distractions that would inevitably be associated with a substantial disruption of the Cash Management System will facilitate and enhance the Debtors' restructuring efforts. Moreover, the Debtors submit that the relief requested is consistent with the relief provided to debtors in a number of other cases pending in this district.

### The Court Should Grant the Debtors Authority To Use Existing Business Forms and Checks to the Limited Extent Requested Below

18. To minimize expense to their estates, the Debtors also request authority (i) to continue to use all correspondence and business forms (including, but not limited to letterhead, purchase orders, invoices, etc.), and (ii) to continue using their existing pre-printed check stock without reference to their "debtor in possession" status until the existing pre-printed

stock has been exhausted, provided that the Debtors shall add the "debtor in possession" designation to any new checks ordered after the depletion of the existing stock.

### Payment of Outstanding Routine Prepetition Expenses Relating to the Operation of the Cash Management System

19. In the ordinary course of the operation and maintenance of the Cash Management System, the Debtors incur routine bank charges and fees relating to the administration of the Cash management system. The Debtors seek authority, in their sole discretion, to pay any such routine prepetition banking fees owed to Wells Fargo and U.S. Bank.

### The Court Should Authorize the Debtors to Continue to Have Access to Corporate Credit Cards

20. Prior to the Petition Date and in the ordinary course of business, the Debtors had corporate credit cards made available to their employees by Wells Fargo up to an aggregate credit limit of $300,000 that was fully secured by a certificate of deposit. This prepetition account has been terminated and, upon Debtors' instruction, Wells Fargo has paid the estimated balance of the credit cards from the Operating Account. Due to potential processing delays, charges made on such credit cards may not have been processed on or before the Petition Date. Hence, the Debtors seek the Court's approval to permit Wells Fargo to process and honor such prepetition charges, if any, after the Petition Date.

21. Given the Debtors' reduced operations, the Debtors propose to reduce their credit limit under the corporate credit cards to $100,000. The Debtors believe that Wells Fargo is willing to continue this program provided that the Debtors' obligations thereunder are fully cash collateralized and Wells Fargo is authorized to continue to process any prepetition charges made on the credit cards and deduct the amounts charged from the Operating Account.

The Debtors presently have the Restricted Account at Wells Fargo that contains sufficient cash to cover any postpetition credit card exposure. The Debtors seek authority to continue to have access to corporate credit cards issued by Wells Fargo on a postpetition basis and for postpetition business charges up to an aggregate limit of $100,000, which amount shall be collateralized by cash on hand in the Restricted Account in an amount not less than $110,000 at Wells Fargo, which Restricted Account shall be subject to a first priority security interest and right of set off in favor of Wells Fargo that are senior to any other claims of secured creditors and any postpetition liens granted by one or more of the Debtors.

**The Court Should Authorize Limited Funding for Wind-Up of Foreign Subsidiaries**

22. The Debtors have foreign subsidiaries that have ceased operations and commenced or will be commencing insolvency proceedings in foreign jurisdictions. Prior to the Petition Date, the Debtors provided certain limited funds to their foreign subsidiaries for the purpose of winding-up these entities. To the extent that any such funds have not cleared the Debtors' Bank Accounts as of the Petition Date or are otherwise returned for any reason, the Debtors seek authority to fund their foreign subsidiaries in an amount not to exceed $500,000. For budget purposes, the Debtors have assumed that such funds have already been disbursed prior to the Petition Date. Hence, this request will not adversely impact the Debtors' projected cash position for budget purposes.

**The Court Should Grant a § 345(b) Waiver on an Interim Basis**

23. The Debtors seek an interim waiver of section 345(b) of the Bankruptcy Code, subject to final approval. The waiver would permit the Debtors to maintain their Bank

Accounts without posting a bond or other security, as would otherwise be required under section 345(b) whenever the funds on deposit exceed the amount permitted under section 345(b). Subject to the one exception noted below, the Debtors' Bank Accounts are either (a) covered by FDIC insurance and/or (b) held at financial institutions that have standing agreements with the office of the United States Trustee. The Debtors have one securities account at U.S. Bank that is invested in money market funds. The Debtors will endeavor to promptly transfer existing deposits and customer collections out of this securities account to the Operating Account as soon as practicable.

### Authority for the Requested Relief

A.  **The Continued Use of the Debtors' Routine Cash Management Systems, Bank Accounts and Business Forms is Essential to the Debtors' Operations, and Approval to Maintain the Status Quo is Routinely Granted Under the Bankruptcy Code Sections 363 and 105**

24. Bankruptcy courts routinely grant chapter 11 debtors authority to continue utilizing existing cash management system, and treat requests for such authority as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). This is particularly true where, as here, the chapter 11 case involves affiliated entities with complex financial affairs. In *In re Charter Co.*, 778 F.2d 617 (11th Cir. 1985), for example, the bankruptcy court entered an order authorizing the debtor and forty-three (43) of its subsidiaries "to continue to consolidate the management of its cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not debtors." *Id.* at 620. The Eleventh Circuit Court of Appeals then affirmed a subsequent district court decision denying a creditor's motion for leave to appeal the bankruptcy court's cash

management order, holding that authorizing the debtor to utilize its prepetition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code. *Id.* at 621.

25. Likewise, in another context, the bankruptcy court in the *Columbia Gas* chapter 11 case explained that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticabilities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1993), *aff'd in part* and *rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied sub nom Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 114 S. Ct. 1050 (1994). The Third Circuit agreed, emphasizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061. *See also In re Southmark Corp.*, 49 F.3d 111, 114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets"); *In re UNR Indus., Inc.*, 46 B.R. 25, 27 (Bankr. N.D. Ill. 1984).

26. Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court. *Medical Malpractice Ins. Ass'n. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2nd Cir. 1997). Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated

by a debtor's cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, the Debtors seek authority under section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, and disbursement of cash pursuant to their Cash Management System as described above.

27. Additionally, the Court may exercise its equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). Continuing the Debtors' Cash Management System without interruption is vital to the success of these chapter 11 cases.

28. In other cases in this District, this Court has granted relief substantially similar to that requested in this Motion. *See, e.g., In re Affiliated Media, Inc.*, Case No. 10-10202 (KJC) (Bankr. D. Del January 26, 2010); *In re Point Blank Solutions, Inc., et al.*, Case No. 10-11255 (PJW) (Bankr. D. Del. Apr. 16, 2010); *In re NTK Holdings, Inc., et al.*, Case No. 09-13611 (KJC) (Bankr. D. Del Oct. 23, 2009); *In re Champion Enterprises, Inc., et al.*, Case No. 09-14019 (KG) (Bankr. D. Del. Nov. 17, 2009); *In re MagnaChip Semiconductor Finance Company, et al.*, Case No. 09-12008 (PJW) (Bankr. D. Del. June 15, 2009); *In re Filene's Basement, Inc., et al.*, Case No. 09-11525 (MFW) (Bankr. D. Del. May 5, 2009); *In re Monaco Coach Corporation, et al.*, Case No. 09-10750 (KJC) (Bankr. D. Del. March 10, 2009).

29. It is well within the Court's equitable power under section 105(a) to approve the continued use of the Cash Management System, and to authorize the Debtors' continued use of their existing business forms, including, but not limited to, purchase orders,

letterhead, envelopes, promotional materials, checks and business forms, without reference to the Debtors' debtor in possession status, substantially in the forms existing immediately before the Petition Date. The Debtors' requests for continued access to corporate credit cards and limited funding for the wind-up of foreign subsidiaries similarly fall within the Debtors' sound business judgment and the equitable powers of the Court.

**B.   An Interim Waiver of Section 345(b) to Allow the Debtors to Continue to Use Their Bank Accounts Without the Need for Posting a Bond or Providing Other Security is Appropriate in These Cases**

30.   The Debtors seek an interim waiver of the requirements of Bankruptcy Code section 345, subject to final approval by this Court. Bankruptcy Code section 345(a) authorizes deposits or investments of money "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." Section 345(b) provides:

> Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested --
>
> 1)   a bond –
>
>   a.   in favor of the United States;
>
>   b.   secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
>
>   c.   conditioned on --
>
>     (1)   a proper accounting of all money so deposited or invested and for any return on such money;
>
>     (2)   prompt repayment of such money and return; and

(3) faithful performance of duties as a depository; or

2) the deposit of securities of the kind specified in section 9303 of title 31 unless the court for cause orders otherwise.

31. The Court's ability to excuse strict performance of the deposit and investment requirements of section 345(b) "for cause" arises from the 1994 amendments to the Bankruptcy Code. The legislative history of that amendment provides:

> Section 345 of the Code governs investments of funds of bankruptcy estates. The purposes (sic) is to make sure that funds of a bankrupt that are obliged to creditors are invested prudently and safely with the eventual goal of being able to satisfy all claims against the bankruptcy estate. Under current law, all investments are required to be FDIC insured, collateralized or bonded. While this requirement is wise in the case of smaller Debtor with limited funds that cannot afford a risky investment to be lost, it can work to needlessly handcuff larger, more sophisticated Debtors. This section would amend the Code to allow the courts to approve investments other than those permitted by section 345(b) for just cause, thereby overruling In re Columbia Gas Systems, Inc., 33 F.3d 294 (3d Cir. 1994).

*In re Service Merchandise Company, Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (quoting H.R. Rep. 103-834, 103rd Cong., 2nd Sess. 224 (Oct. 4, 1994); 140 Cong. Rec. H10767 (Oct. 4, 1994)) (emphasis added).

32. In determining whether the "for cause" standard has been met, the Court should consider a "totality of the circumstances," utilizing the following factors:

  a. The sophistication of the debtor's business;

  b. The size of the debtor's business operations;

  c. The amount of the investments involved;

  d. The bank ratings (Moody's and Standard and Poors) of the financial institutions where the debtor in possession funds are held;

e. The complexity of the case;

f. The safeguards in place within the debtor's own business of insuring the safety of the funds;

g. The debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

h. The benefit to the debtor;

i. The harm, if any, to the estate; and

j. The reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.

*Id.*

33. Because of the nature of their business, the Debtors may, at certain times, have funds accumulated in their Bank Accounts that exceed the limits provided in section 345, and therefore necessitate a waiver of section 345(b). Unless the Debtors are granted a waiver from Bankruptcy Code section 345(b), the Debtors' restructuring will be prejudiced for the reasons discussed above. Subject to the one exception noted below, the Debtors' Bank Accounts are either (a) covered by FDIC insurance and/or (b) held at financial institutions that have standing agreements with the office of the United States Trustee. The Debtors have one securities account at U.S. Bank that is invested in money market funds. The Debtors will endeavor to promptly transfer existing deposits and customer collections out of this securities account to the Operating Account as soon as practicable.

34. In other chapter 11 cases, courts have liberally construed the requirement of section 345(b) that a debtor in possession obtain a bond from any entity with which its money is deposited or invested. In those instances, courts, including many within this district, have waived the requirements of section 345(b) and replaced them with alternative procedures. *See, e.g., In re NetEffect, Inc.*, Case No. 08-12008 (KJC) (Bankr. D. Del. Aug. 28, 2008); *In re Western Nonwovens, Inc., et al.*, Case No. 08-11435 (PJW) (Bankr. D. Del. July 15, 2008); *In re Global Motorsport Group, Inc., et al.*, Case No. 08-10192 (KJC) (Bankr. D. Del. Feb. 1, 2008); *In re Aegis Mortgage Corp.*, Case No 07-11119 (BSL) (Bank. D. Del. Aug. 16, 2007); *In re Mortgage Lenders Network, USA, Inc.*, Case No. 07-10146 (PJW) (Bank. D.Del. Feb. 5, 2007.

35. For the foregoing reasons, it is critical that the Debtors continue to utilize their existing Cash Management System and continue to use their existing business forms as set forth herein, without disruption. Accordingly, it is appropriate and entirely consistent with applicable provisions of the Bankruptcy Code and case law for the Court to approve the Debtors' Cash Management System in its current form and grant a waiver of the requirements of section 345(b) of the Bankruptcy Code on an interim basis pending a final hearing.

### Notice

36. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; and (b) the Debtors' prepetition and postpetition lenders. As the Motion is seeking "first day" relief, within forty-eight hours of the entry of the order respecting the Motion, the Debtors will serve copies of

the Motion and such order as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

37. No prior motion for the relief requested herein has been made to this or any other Court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto: (i) authorizing the Debtors to maintain the Bank Accounts; (ii) authorizing the Debtors to continue to use their existing business forms and checks without reference to the debtor in possession status, as provided herein; (iii) authorizing the Debtors to continue to employ their existing Cash Management System; (iv) authorizing the Debtors to continue to have access to corporate credit cards; (v) authorizing limited funding for the wind-up of foreign subsidiaries; (vi) granting a limited waiver of the investment and deposit guidelines set forth in Bankruptcy Code Section 345(b) on an interim basis pending a final hearing; and (vii) granting such other and further relief as the Court deems appropriate.

Dated: September 6, 2011

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ signature*

Richard M. Pachulski (CA Bar No. 90073)
Debra I. Grassgreen (CA Bar No. 169978)
Bruce Grohsgal (DE Bar No. 3583)
Joshua M. Fried (CA Bar No. 181541)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail: rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
bgrohsgal@pszjlaw.com
jfried@pszjlaw.com

[Proposed] Counsel for the Debtors and Debtors in Possession