# EXHIBIT C

# Engagement Letter



August 31, 2011

Solyndra LLC
Attn: Benjamin H. Schwartz
47488 Kato Road
Fremont, CA 94538

Re: Agreement for Claims Agent and Noticing Services

Dear Ben:

This letter, together with the attached Schedule(s) and General Terms and Conditions, sets forth the agreement ("Agreement") between AlixPartners, LLP, a Delaware limited liability partnership ("AlixPartners") and Solyndra LLC (the "Company") for the engagement of AlixPartners to provide bankruptcy administration services to the Company.

## OBJECTIVE AND TASKS

The objective of this engagement is to provide bankruptcy administration services including claims agent, notice agent and ballot agent services with respect to the overall bankruptcy process in connection with the Chapter 11 bankruptcy proceedings involving the Company.

AlixPartners will perform the following tasks in connection with serving as claims agent, notice agent and ballot agent:

- Assist with preparation for a potential bankruptcy filing under Chapter 11 of the United States Bankruptcy Code.

- Assist with developing the complete notice database system to inform all potential creditors as to the filing of the case and the bar date notice.

- Process and mail all notices including the initial bankruptcy notices and bar date notice.

- Receive and process all proofs of claim and maintain the claims register.

- Track all claims transfers and update ownership of claims in the claims register accordingly.

- Provide both the Company and its counsel access to the claims database system.

- Provide all voting ballots to necessary parties, quantify the ballot results and provide a final report to the Bankruptcy Court ("Court").

- Be available for testimony such as results of balloting.

- Prepare creditors matrix listing all potential creditors.



- Develop and host a case website including a secure document room for legal and transactional diligence as necessary.

- File monthly claims register with the Court.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

## STAFFING

Meade Monger and will be the managing director responsible for the overall engagement. He will be assisted in the day-to-day management by John Franks or another Director who will provide the necessary oversight and project management. We will be assisted by a staff of colleagues at various levels, all of whom have a wide range of skills and abilities related to this type of assignment.

## TIMING, FEES AND RETAINER

AlixPartners will commence this engagement on or about September 1, 2011 after receipt of a copy of the Agreement executed by the Company accompanied by the Retainer, as set forth on Schedule 1.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1.

The Company agrees that it will promptly seek approval of the retention of AlixPartners by the Court nunc pro tunc to the date of filing. AlixPartners acknowledges that its retention and the terms thereof are subject to Court approval.

\* \* \*



Solyndra LLC
August 31, 2011
Page 3 of 3

If these terms meet with your approval, please sign and return the enclosed copy of the Agreement. If you have questions, I can be reached at (214) 647-7621, or mmonger@alixpartners.com.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP

*[signature: Meade Monger]*

Meade Monger
Managing Director


Acknowledged and Agreed to:

SOLYNDRA LLC

By: _*[signature]*_

Its: _VP, Deputy General Counsel_

Dated: _08/31/11_



Schedule 1
Claims and Noticing Agent Services Agreement

| Notice Printing & Mailing, Publication Services | Proposed AlixPartners Pricing |
|---|---|
| Standard Notice & Envelope Printing | $0.10 per impression |
| Document Finishing Collate/Fold/Insert | $0.05 per page |
| USPS First Class/Priority Mail Postage & Processing Fees | at cost |
| Express/Overnight Shipment Delivery Fees | at cost |
| Electronic Noticing | $0.02 per page |
| Claim Acknowledgement Noticing | $0.25 per notice |
| Legal Notice Publishing | quoted as required |
| Public Debt and Equity Holder Noticing | quoted as required |

| Photocopying, Printing, Claim Duplication, Facsimile | Proposed AlixPartners Pricing |
|---|---|
| Photocopying or Printing | $0.10 per page |
| Facsimile Transmission (domestic) | $0.20 per page |

| Solicitation Mailings, Vote Tabulations | Proposed AlixPartners Pricing |
|---|---|
| Ballot Solicitation/Disclosure Statement & Plan Mailings | quoted as required |
| Voting Tabulation | see hourly rates |

| Claims Docketing, Imaging, Document Management | Proposed AlixPartners Pricing |
|---|---|
| Claims Docketing, Examination, Data Entry, & Review | see hourly rates |
| Document Scanning | $0.30 per page |
| Database and System Access | no charge |
| Document Archival Storage | no charge |



## Schedule 1
## Claims and Noticing Agent Services Agreement

| System Licensing, Database Storage, Web Hosting | Proposed AlixPartners Pricing |
|---|---|
| License Fees & Database Storage | no charge |
| Setup and/or Configuration | see hourly rates |
| Implementation Training and/or Technical Support | see hourly rates |
| Web Site Hosting (Case-Specific) | no charge |

| Creditor Setup | Proposed AlixPartners Pricing |
|---|---|
| Creditor Setup & Data Parsing | |
|     Data Transfer | see hourly rates |
|     Manually Entered (Clerical) | see hourly rates |

| Communications Center Services | Proposed AlixPartners Pricing |
|---|---|
| Standard Call Center Setup | no charge |
| Call Center Operator | see hourly rates |
| Voice Recorded Message | no charge |
| Standard Call Center Support/Maintenance | see hourly rates, only when applicable/needed |

| Consulting Services and Hourly Rates | Proposed AlixPartners Pricing |
|---|---|
| Clerical | $40 - $60 per hour |
| Project Specialist | $75 - $125 per hour |
| Case Manager | $130 - $185 per hour |
| IT Programming Consultant | $140 - $190 per hour |
| Consultant | $190 - $225 per hour |
| Senior Consultant | $250-$295 per hour |



**Schedule 1**
**Claims and Noticing Agent Services Agreement**

| Distributions | Proposed AlixPartners Pricing |
|---|---|
| Remittance Check Production | quoted as required |

| Miscellaneous Expenses | Proposed AlixPartners Pricing |
|---|---|
| Travel and Related Expenses | at cost |

Clients will be notified in an advance of any mailing that will require prepayment of print, postage, and/or shipping fees.



# SCHEDULE 2

## DISCLOSURES

AlixPartners has not completed a thorough check of the parties in interest with regard to the Company, as AlixPartners has not received a list of the parties in interest. However, as soon as practicable after beginning the engagement, AlixPartners will provide the Company with a listing of parties with which AlixPartners has current or prior relationships that may be related to the Company. AlixPartners will provide this so that the Company may assess the impact, if any, that the Company believes such relationships have.

This Schedule 2 may be updated by AlixPartners from time to time to disclose additional connections or relationships between AlixPartners and the interested parties.

# ALIXPARTNERS, LLP
# GENERAL TERMS AND CONDITIONS

These General Terms and Conditions ("Terms") are incorporated into the Agreement to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

### Section 1. Company Responsibilities.

The Company will undertake responsibilities as set forth below:

1.  Provide reliable and accurate detailed information, materials, documentation and

2.  Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

AlixPartners' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management. The Company shall be responsible for any delays, additional costs or other deficiencies caused by not completing its responsibilities.

In connection with any Chapter 11 filing, the Company shall apply promptly to the Bankruptcy Court for approval of the Company's retention of AlixPartners under the terms of the Agreement. The form of retention application and proposed order shall be reasonably acceptable to AlixPartners. AlixPartners shall have no obligation to provide any further services if the Company becomes a debtor under the Bankruptcy Code unless AlixPartners' retention under the terms of the Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to AlixPartners. The Company shall assist, or cause its counsel to assist, with filing, serving and noticing of papers related to AlixPartners' fee and expense matters.

### Section 2. Billing, Retainer and Payments.

**Billing.** AlixPartners will submit monthly invoices for services rendered and expenses incurred. Unless explicitly stated in the invoice, all amounts invoiced are not contingent upon or in any way tied to the delivery of any reports or other work product in the future and are not contingent upon the outcome of any case or matter. AlixPartners' fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company (other than taxes imposed on AlixPartners' income generally).

**Retainer.** Upon execution of the Agreement, the Company shall promptly pay AlixPartners the agreed-upon advance retainer ("Retainer"). Invoices shall be offset against the Retainer. Payments of invoices will be used to replenish the Retainer to the agreed-upon amount. Any unearned portion of the Retainer will be applied against our final invoice or returned to the Company at the end of the engagement

If the Company becomes a debtor under the Bankruptcy Code, due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the date of filing, AlixPartners may have incurred but not billed fees and reimbursable expenses which relate to the prepetition period. AlixPartners will seek Court approval to apply the Retainer to these amounts.

**Payments.** All payments to be made to AlixPartners shall be due and payable upon receipt of invoice via wire transfer to AlixPartners' bank account, as follows:

| | |
|---|---|
| Receiving Bank: | Deutsche Bank |
| | ABA #021-001-033 |
| Receiving Account: | AlixPartners, LLP |
| | A/C #003-58897 |
| Currency: | USD |

### Section 3. Relationship of the Parties.

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Of course, employees of AlixPartners will not be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Company or its Board of Directors.

### Section 4. Confidentiality.

AlixPartners shall use reasonable efforts to keep confidential all non-public confidential or proprietary information obtained from the Company during the performance of its services hereunder (the "Information"), and neither AlixPartners nor its personnel will disclose any Information to any other person or entity. "Information" includes non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of the Company, its

subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, AlixPartners from making such disclosures of Information that AlixPartners reasonably believes is required by law or any regulatory requirement or authority, or to clear client conflicts. AlixPartners may make reasonable disclosures of Information to third parties in connection with the performance of AlixPartners' obligations and assignments hereunder. In addition, AlixPartners will have the right to disclose to any person that it provided services to the Company or its affiliates and a general description of such services, but shall not provide any other information about its involvement with the Company. The obligations of AlixPartners under this Section 4 shall survive the end of any engagement between the parties for a period of two (2) years.

The Company acknowledges that all information (written or oral), including advice and Work Product (as defined in Section 5), and the terms of this Agreement, generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Company (limited to its management and its Board of Directors) in connection with the transactions to which it relates. The Company agrees that no such information shall be used for any other purpose or reproduced, disseminated, quoted or referred to with or without attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval, except as required by law.

Because of the nature of the services provided by AlixPartners, from time to time, separate teams of AlixPartners professionals may concurrently represent clients that are adverse to each other, or which may be viewed by clients to be adverse. Despite any such concurrent representation, each AlixPartners team shall strictly preserve all client confidences, and not disseminate such information externally, except pursuant to the terms of this Agreement, or to any AlixPartners professionals that are currently working for an entity adverse to the Company. The Company agrees that it does not consider such concurrent representation of the Company and any adversary by separate AlixPartners teams to be inappropriate and, therefore, waives any objections to any such present or future concurrent representation.

### Section 5. Intellectual Property.

Upon the Company's payment of all fees and expenses owed under this Agreement, all analyses, final reports, presentation materials, and other work product (other than any Engagement Tools, as defined below) that AlixPartners creates or develops specifically for the Company and delivers to the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Information as defined above. AlixPartners may retain copies of the Work Product and any Information necessary to support the Work Product subject to its confidentiality obligations in this Agreement.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, utilities and other intellectual property that AlixPartners has created, acquired or developed or will create, acquire or develop (collectively, "Engagement Tools"), are, and shall be, the sole and exclusive property of AlixPartners. The Company shall not acquire any interest in the Engagement Tools other than a limited non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product. The Company acknowledges and agrees that any Engagement Tools provided to the Company are provided "as is" and without any warranty or condition of any kind, express, implied or otherwise, including, implied warranties of merchantability or fitness for a particular purpose.

### Section 6. Framework of the Engagement.

The Company acknowledges that it is retaining AlixPartners solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

### Section 7. Indemnification and Other Matters.

The Company shall indemnify, hold harmless and defend AlixPartners and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "AlixPartners Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement. The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance. The AlixPartners Parties may, but are not required to, engage a single firm of separate counsel of their choice in connection with any of the matters to which these indemnification and advancement obligations relate.

If an AlixPartners Party is required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Company shall reimburse AlixPartners for any professional time and expenses (including reasonable external and internal legal costs) incurred to respond to the request, except in cases where an AlixPartners Party is a party to the proceeding or the subject of the investigation.

Notwithstanding anything to the contrary, the Company's indemnification and advancement obligations in this Section 7 shall be primary to (and without allocation against) any similar indemnification and advancement obligations of AlixPartners, its affiliates and insurers to the indemnitees (which shall be secondary).

AlixPartners is not responsible for any third-party products or services separately procured by the Company. The Company's sole and exclusive rights and remedies with respect to any such third party products or services are against the third-party vendor and not against AlixPartners, whether or not AlixPartners is instrumental in procuring such third-party product or service.

**Section 8. Governing Law and Arbitration.**

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.
Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in Southfield, Michigan under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Notwithstanding the foregoing, AlixPartners may in its sole discretion proceed directly to a court of competent jurisdiction to enforce the terms of this Agreement for any claim (and any subsequent counter claim) against the Company relating to either (i) the non-payment of fees or expenses due under this Agreement, or (ii) the non-performance of obligations under Section 7.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

**Section 9. Termination and Survival.**

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination AlixPartners will be entitled to any fees and expenses due under the provisions of the Agreement (for fixed fee engagements, fees will be pro rata based on the amount of time completed), including Success Fee and Break Fee in accordance with Schedule 1. Such payment obligation shall inure to the benefit of any successor or assignee of AlixPartners.

Additionally, unless the Agreement is terminated by the Company for Cause (as defined below) or due to circumstances described in the Success Fee provision in the Agreement, AlixPartners shall remain entitled to the Success Fee(s) that otherwise would be payable for the greater of 12 months from the date of termination or the period of time that that has elapsed from the date of the Agreement to the date of termination. Cause shall mean:

(a) an AlixPartners employee acting on behalf of the Company is convicted of a felony, or

(b) it is determined in good faith by the Board of Directors of the Company after 30 days notice and opportunity to cure, that either (i) an AlixPartners employee is engaging in misconduct injurious to the Company, or (ii) an AlixPartners employee is breaching any of his or her material obligations under this Agreement, or (iii) an AlixPartners employee is willfully disobeying a lawful direction of the Board of Directors or senior management of the Company.

Sections 2, 4, 5, 7, 8, 9, 10, 11 and 12 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

**Section 10. Non-Solicitation of Employees**

The Company acknowledges and agrees that AlixPartners has made a significant monetary investment recruiting, hiring and training its personnel. During the term of this Agreement and for a period of two years after the final invoice is rendered by AlixPartners with respect to this engagement (the "Restrictive Period"), the Company and its affiliates agree not to directly or indirectly hire, contract with, or solicit the employment of any of AlixPartners' Managing Directors, Directors, or other employees/contractors.

If during the Restrictive Period the Company or its affiliates directly or indirectly hires or contracts with any of AlixPartners' Managing Directors, Directors, or other employees/contractors, the Company agrees to pay to AlixPartners as liquidated damages and not as a penalty the sum total of: (i) for a Managing Director, one million U.S. dollars ($1,000,000 USD); (ii) for a Director, five hundred thousand U.S. dollars ($500,000 USD); and (iii) for any other employee/contractor, two hundred fifty thousand U.S. dollars ($250,000 USD). The Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse AlixPartners for the costs of recruiting, hiring and training its employees as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that AlixPartners has made in its Managing Directors, Directors, and other employees/consultants; and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment.

The Company also acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of this provision, and the Company agrees that AlixPartners shall have the right to seek a restraining order and/or an injunction for any breach of this non-solicitation

provision. If any provision of this section is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

### Section 11. Limit of Liability.

The AlixPartners Parties shall not be liable to the Company, or any party asserting claims on behalf of the Company, except for direct damages found in a final determination to be the direct result of the bad faith, self-dealing or intentional misconduct of AlixPartners. The AlixPartners Parties shall not be liable for incidental or consequential damages under any circumstances, even if it has been advised of the possibility of such damages. The AlixPartners Parties aggregate liability, whether in tort, contract, or otherwise, is limited to the amount of fees paid to AlixPartners for services on this engagement (the "Liability Cap"). The Liability Cap is the total limit of the AlixPartners Parties' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by AlixPartners pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the AlixPartners Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against the AlixPartners Parties pursuant to this Agreement exceed the Liability Cap.

### Section 12. General.

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** This Agreement, including the letter, the Terms and the schedule(s), contains the entire understanding of the parties relating to the services to be rendered by AlixPartners and supersedes any other communications, agreements, understandings, representations, or estimates among the parties (relating to the subject matter hereof) with respect to such services. The Agreement, including the letter, the Terms and the schedule(s), may not be amended or modified in any respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Joint and Several.** If more than one party signs this Agreement, the liability of each party shall be joint and several.

**Third-Party Beneficiaries.** The indemnitees shall be third-party beneficiaries with respect to Section 7 hereof.

**Data Protection.** AlixPartners acknowledges and the Company agrees that in performing the services AlixPartners may from time to time be required to process certain personal data on behalf of the Company. In such cases AlixPartners may act as the Company's data processor and AlixPartners shall endeavor to (a) act only on reasonable instructions from the Company within the scope of the services of this Agreement; (b) have in place appropriate technical and organizational security measures against unauthorized or unlawful processing of personal data and against accidental loss or destruction of, or damage to, personal data; and (c) comply (to the extent applicable to it and/or the process) with relevant laws or regulations.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

> AlixPartners, LLP
> 2000 Town Center, Suite 2400
> Southfield, MI 48075
> Attention: General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to the other party. All notices under the Agreement shall be sufficient only if delivered by overnight mail. Any notice shall be deemed to be given only upon actual receipt.