# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Solyndra LLC, *et al.*,[1] | Case No. 11-12799 (MFW) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. 12** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION SECURED FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION, AND (IV) MODIFYING THE AUTOMATIC STAY**

Upon the motion (the "**DIP Motion**") dated September 6, 2011 of Solyndra LLC ("**Solyndra**" or the "**DIP Borrower**") and 360 Degree Solar Holdings, Inc. (the "**DIP Guarantor**"), as debtors and debtors in possession (together, the "**Debtors**") in the above-referenced chapter 11 cases (collectively, the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(d)(1), 364(e), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the corresponding local rules of this District (the "**Local Rules**"), for entry of a final order (the "**Final Order**") authorizing the Debtors to, among other things:

      (i)      Obtain senior secured postpetition financing (the "**DIP Financing**") pursuant to the terms and conditions of the DIP Financing Documents (as defined below) and the Final Order;

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Solyndra, LLC (9771) and 360 Degree Solar Holdings, Inc. (5583). The Debtors' address is 47488 Kato Road, Fremont, CA 94538.

(ii)     Enter into (a) a $4,000,000 Senior Secured, Superpriority Debtor in Possession Term Loan and Security Agreement (the "**DIP Credit Agreement**"), as executed and filed with Court by the Debtors at Docket No. 90 (as may be amended in accordance with its terms, the Interim Order (as defined herein) and by this Final Order), by and among each of the DIP Borrower and the DIP Guarantor, and AE DIP 2011, LLC, as Lender (the "**DIP Lender**") and (b) all other loan documents (together with the DIP Credit Agreement, the "**DIP Financing Documents**");

(iii)     Borrow, on a final basis, pursuant to the DIP Financing Documents, postpetition financing in an aggregate principal amount of up to $4,000,000 (the "**DIP Loan**", together with the Interim DIP Loan (as defined herein), the "**DIP Facility**") and seek other financial accommodations from the DIP Lender pursuant to the DIP Credit Agreement, the other DIP Financing Documents, and the Final Order;

(iv)     Authorize the DIP Borrower and the DIP Guarantor to execute and deliver (to the extent not already executed and delivered) and to perform under the DIP Credit Agreement and the DIP Financing Documents;

(v)     Grant to the DIP Lender allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Cases (as defined below) for the DIP Financing and all obligations of the Debtors owing under the DIP Financing Documents (collectively, and including all "Obligations" of the Debtors as defined and described in the DIP Credit Agreement, the "**DIP Obligations**") subject to the priorities set forth in paragraph 2(g)(i) below;

(vi)     Grant to the DIP Lender automatically perfected security interests in and liens on all of the DIP Collateral (as defined below), including, without limitation, all property

constituting "cash collateral," (as defined in section 363(a) of the Bankruptcy Code, "**Cash Collateral**"), which liens shall be subject to the priorities set forth in paragraphs 2(d)(i)-(iii) below;

(vii)     Obtain authorization to use the proceeds of the DIP Financing in all cases in accordance with the Budget (as defined in the DIP Credit Agreement), a copy of which is annexed hereto as **Exhibit A** and as otherwise provided in the DIP Financing Documents;

(viii)     Obtain authorization to use Cash Collateral, including the Restricted Funds (as defined below), of the Prepetition Tranche A Term Loan Facility Representative, the Prepetition Tranche A Lenders, the Prepetition Tranche B/D Agent, the Prepetition Tranche B/D Lenders, the Prepetition Tranche E Agent, and the Prepetition Tranche E Lenders (each as defined herein) (collectively, the "**Prepetition Secured Parties**") in accordance with the Budget;

(ix)     Provide adequate protection to the Prepetition Secured Parties pursuant to the terms of the Final Order for any diminution in value of their respective interests in the Prepetition Collateral (as defined below) of the Debtors, including any Cash Collateral;

(x)     Release the Inventory Accounts Receivable Trust Funds (as defined below) to the Inventory A/R Purchasers (as defined below);

(xi)     Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms of the DIP Financing Documents and this Final Order; and

(xii)     Waive any applicable stay as provided in the Bankruptcy Rules and providing for immediate effectiveness of this Final Order.

The Court having considered the DIP Motion, the Declaration of W.G. Stover, Jr., Senior Vice President and Chief Financial Officer, in Support of First Day Motions (the "**First Day**

**Declaration**"), the exhibits attached thereto, the DIP Credit Agreement, the objections to the DIP Motion and the responses thereto, and the evidence submitted or adduced and the arguments of counsel made at the hearing (the "**Interim Hearing**") on the Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Secured Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing (Docket No. 40) (the "**Interim Order**"), and at the hearing on the Final Order (the "**Final Hearing**"); and notice of the DIP Motion and the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014; and the Final Hearing having been held and concluded; and it appearing that approval of the relief requested in the DIP Motion is necessary and is otherwise fair and reasonable and in the best interests of the Debtors, their estates and their creditors, and is essential for the preservation of the value of the Debtors' assets; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

     **IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:**

     A.    **Petition Date**. On September 6, 2011 (the "**Petition Date**"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with this Court.

     B.    **Jurisdiction and Venue**. This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Committee Formation**.  On September 15, 2011, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Committee**") in the Chapter 11 Cases.

D.    **Interim DIP Order**.  Based upon the DIP Motion, the First Day Declaration and the evidence submitted by the Debtors at the Interim Hearing, the Court approved the Debtors' entry into and performance under the DIP Financing Documents on an interim basis and, on September 7, 2011, entered the Interim DIP Order, pursuant to which the Debtors were authorized to borrow up to $2,500,000 on an interim basis (the "**Interim DIP Loan**").

E.    **Notice**.  Notice of the Final Hearing has been provided by the Debtors to (i) the U.S. Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' thirty-five largest unsecured creditors on a consolidated basis; (vi) counsel to the Prepetition Tranche A Term Loan Facility Representative; (vii) counsel to the Prepetition Tranche B/D Agent, (viii) counsel to the Prepetition Tranche E Agent, (ix) all other known parties asserting a lien against the Debtors' assets, (x) the DIP Lender, and (xi) the Master Collateral Agent (each as defined herein), by telecopy, email, regular mail, overnight courier and/or hand delivery.  Under the circumstances, such notice of the Final Hearing constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b), (c), and (d), and the Local Rules.

F.    **Stipulations as to the Prepetition Secured Credit Facilities**.  Without prejudice to the rights of parties in interest as set forth in paragraphs 9 and 10 below, the Debtors admit, stipulate, acknowledge and agree that (collectively, paragraphs E (i) through E (x) hereof shall be referred to herein as the "**Debtors' Stipulations**"):

(i)  **Prepetition Tranche A Term Loan Facility.**  Pursuant to that certain Term Loan Agreement (Tranche A), dated as of February 23, 2011 (the "**Prepetition Tranche A Term Loan Agreement**" and together with all other loan and security documents executed in connection therewith, the "**Prepetition Tranche A Credit Documents**"), by and among Solyndra, the lender parties thereto (collectively, the "**Prepetition Tranche A Lenders**"), and Argonaut Ventures I, L.L.C., as Tranche A Representative (in such capacity, the "**Prepetition Tranche A Term Loan Facility Representative**"), the Prepetition Tranche A Lenders provided a first lien secured credit facility comprised of up to $75,000,000 in aggregate principal amount of term loan commitments (the "**Prepetition Tranche A Term Loan Facility**").

(ii)  **Prepetition Tranche A Term Loan Facility Obligations.**  As of the Petition Date, the Debtors were indebted and liable to the Prepetition Tranche A Term Loan Facility Representative and the Prepetition Tranche A Lenders, without objection, defense, counterclaim or offset of any kind under the Prepetition Tranche A Credit Documents in the principal amount of no less than $69,302,901 plus interest accrued and accruing, costs and any fees and expenses due and owing thereunder (collectively, the "**Prepetition Tranche A Term Loan Facility Obligations**").

(iii)  **Prepetition Tranche B/D Term Loan Facility.**  Pursuant to that certain Payment and Reimbursement Agreement (Tranches B and D), dated as of February 23, 2011 (the "**Prepetition Tranche B/D Term Loan Agreement**," and together with all other loan and security documents executed in connection therewith, the "**Prepetition Tranche B/D Credit Documents**"), by and between Solyndra, as borrower, and the U.S. Department of Energy, acting by and through the Secretary of Energy, as loan servicer (the "**Prepetition Tranche B/D Agent**"), Solyndra is obligated to repay amounts owing to Federal Financing Bank, and its

guarantor, the U.S. Department of Energy (the "**Prepetition Tranche B/D Lenders**"), which consist of (i) the Tranche B Total Principal Amount (as defined in the Prepetition Tranche B/D Term Loan Agreement) (the "**Tranche B Debt**"), and (ii) the Tranche D Total Principal Amount (as defined in the Prepetition Tranche B/D Term Loan Agreement) (the "**Tranche D Debt**") (collectively, the "**Prepetition Tranche B/D Term Loan Facility**").

      (iv)    **Prepetition Tranche B/D Term Loan Facility Obligations**. As of the Petition Date, the Debtors were indebted and liable to the Prepetition Tranche B/D Lenders, without objection, defense, counterclaim or offset of any kind under the Prepetition Tranche B/D Term Loan Agreement (i) in the principal amount of no less than $142,808,544 plus interest accrued and accruing, costs and any fees and expenses due and owing thereunder on account of the Tranche B Debt and (ii) in the principal amount of no less than $385,000,000 plus interest accrued and accruing, costs and any fees and expenses due and owing thereunder on account of the Tranche D Debt (collectively, the "**Prepetition Tranche B/D Term Loan Facility Obligations**").

      (v)    **Prepetition Tranche E Facility.** Pursuant to that certain Tranche E Note Purchase Agreement, dated as of February 23, 2011 (the "**Prepetition Tranche E Agreement**" and together with all other loan and security documents executed in connection therewith, the "**Prepetition Tranche E Credit Documents**"), by and among Solyndra, as borrower, Argonaut Ventures I, L.L.C., as agent (the "**Prepetition Tranche E Agent**"), and each holder of a Tranche E note (together with the Tranche E Agent, the "**Prepetition Tranche E Lenders**"), Solyndra is obligated to repay amounts owing to the Prepetition Tranche E Lenders in the aggregate principal amount of $186,481,645 (the "**Prepetition Tranche E Facility**").

(vi)	**Prepetition Tranche E Facility Obligations**.  As of the Petition Date, the Debtors were indebted and liable to the Prepetition Tranche E Agent and the Prepetition Tranche E Lenders, without objection, defense, counterclaim or offset of any kind under the Prepetition Tranche E Credit Documents in the principal amount of no less than $186,644,319 plus interest accrued and accruing, costs and any fees and expenses due and owing thereunder (collectively, the "**Prepetition Tranche E Facility Obligations**" and, together with the Prepetition Tranche A Term Loan Facility Obligations and the Prepetition Tranche B/D Term Loan Facility Obligations, the "**Prepetition Secured Obligations**").

(vii)	**Prepetition Collateral**.  As more fully set forth in the Prepetition Tranche A Credit Documents, the Prepetition Tranche B/D Credit Documents, the Prepetition Tranche E Credit Documents, and that certain First Amended & Restated Common Agreement, dated as of February 23, 2011 (the "**Common Agreement**"), prior to the Petition Date, the Debtors granted security interests in and liens on, among other things, substantially all assets of the Debtors (collectively, the "**Prepetition Collateral**"), subject to certain limitations (the "**Prepetition Liens**") to U.S. Bank National Association, as master collateral agent (the "**Master Collateral Agent**") under the Common Agreement.

(viii)	**Priority of Prepetition Liens; Intercreditor Agreement.**  The Prepetition Tranche A Term Loan Facility Representative, the Prepetition Tranche B/D Agent, the Prepetition Tranche E Agent, and the Master Collateral Agent are party to that certain Intercreditor Agreement, dated as of February 23, 2011 (as amended, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "**Prepetition Intercreditor Agreement**"), that governs the respective rights, interests, obligations, priority, and positions of the various Prepetition Tranche A Lenders, Prepetition Tranche B/D Lenders, and Prepetition

Tranche E Lenders. Pursuant to the Prepetition Intercreditor Agreement as of the Petition Date, (i) the Prepetition Tranche A Lenders' right to payment is senior to the Prepetition Tranche B/D Lenders' right to payment with respect to the Tranche B Debt, and (ii) the Prepetition Tranche B/D Lenders' right to payment with respect to the Tranche B Debt is senior to both (a) the Prepetition Tranche B/D Lenders' right to payment with respect to the Tranche D Debt, and (b) the Prepetition Tranche E Lenders' right to payment, which rights are more specifically set forth in the Prepetition Intercreditor Agreement.

(ix) **Enforceability of Prepetition Secured Obligations.** The Prepetition Secured Obligations are (i) legal, valid, binding and enforceable against each applicable Debtor and (ii) not subject to any contest, attack, objection, recoupment, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise. The Debtors do not have, hereby forever release, and are forever barred from bringing or asserting any claims, counterclaims, causes of action, defense or setoff rights relating to the Prepetition Secured Obligations, whether arising under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise against any of the Prepetition Secured Parties and their respective officers, directors, employees or attorneys.

(x) **Enforceability of Prepetition Liens**. As of the Petition Date, the Prepetition Liens on the Prepetition Collateral were legal, valid, enforceable, non-avoidable and duly perfected and are not subject to avoidance, attack, offset, recharacterization or subordination under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise and, as of the Petition Date, and without giving effect to this Final Order or the Interim Order, the Debtors are not aware of any liens or security interests having priority over the Prepetition

Liens, subject only to certain liens otherwise permitted by the Prepetition Tranche A Credit Documents, the Prepetition Tranche B/D Credit Documents and/or the Prepetition Tranche E Credit Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date) (collectively the "**Permitted Prior Liens**").[2] The respective Prepetition Liens were granted for fair consideration and reasonably equivalent value.

      (xi)    **Equity Funding Account.** Prior to the Petition Date, the DIP Guarantor issued $286,000,000 of preferred stock to investors, of which $198,000,000 (the "**Restricted Funds**") were placed in a segregated account (the "**Restricted Account**") controlled by the Master Collateral Agent to be used by the Debtors in combination with funds advanced pursuant to the Prepetition Tranche B/D Credit Documents in connection with the construction of a manufacturing facility. As of the Petition Date, the Restricted Funds were not available to the Debtors to pay general operating expenses because the Prepetition Tranche B/D Agent has not yet instructed the Master Collateral Agent to release the funds to the Debtors. As of September 2, 2011, the balance of Restricted Funds held in the Restricted Account was $3,040,311.51. The Debtors stipulate that the Restricted Funds are property of the Debtors' estates and constitute Cash Collateral. It is a condition to funding under the DIP Facility that the Restricted Funds being held in the Restricted Account are released to, and are authorized to be used by, the Debtors to pay general operating expenses in accordance with the Budget.

---

[2] Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Prior Liens are valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including but not limited to, the Debtors, the Prepetition Tranche A Term Loan Facility Representative, the Prepetition Tranche A Lenders, the Prepetition Tranche B/D Agent, the Prepetition Tranche B/D Lenders, the Prepetition Tranche E Agent, the Prepetition Tranche E Lenders, the DIP Lender, and the Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Permitted Prior Lien and/or security interest.

(xii) **Inventory Accounts Receivable Trust Funds.** Prior to the Petition Date, Debtor Solyndra LLC (as servicer), one of its subsidiaries, Solyndra Financing LLC (as seller), Argonaut Solar LLC (as agent), and Solyndra Solar LLC (as buyer), entered into that certain Amended and Restated Purchase and Sale Agreement dated as of July 29, 2011 (the "**A/R Sale Agreement**"). Pursuant to the A/R Sale Agreement, Solyndra Solar LLC purchased certain of the accounts receivable resulting from the sale of the Debtors' inventory and owns and has the right to receive the proceeds of collection of such accounts receivable (the "**A/R Trust Funds**"). In addition, Debtor Solyndra LLC (as servicer), one of its subsidiaries, Solyndra Financing LLC (as seller), Argonaut Solar LLC (as agent), and Solyndra Solar II LLC (as buyer), entered into that certain Inventory Purchase and Sale Agreement dated as of July 29, 2011 (the "**Inventory Sale Agreement**", and collectively with the A/R Sale Agreement, the "**Sale Agreements**"). Pursuant to the Inventory Sale Agreement, Solyndra Solar II LLC purchased certain of the Debtors' inventory (the "**Purchased Inventory**") and owns and has the right to receive the proceeds resulting from the sale of that inventory (the "**Inventory Trust Funds**", and collectively with the A/R Trust funds, the "**Inventory Accounts Receivable Trust Funds**"). Despite the fact that the Inventory Accounts Receivable Trust Funds are owned by Solyndra Solar LLC and Solyndra Solar II, LLC (together, the "**Inventory A/R Purchasers**"), as applicable, and not the Debtors, and the Inventory A/R Purchasers had and have the right to receive all Inventory Accounts Receivable Trust Funds, certain account debtors continued to pay the Debtors and their affiliates instead of the Inventory A/R Purchasers. Those payments are being held in accounts (the "**Inventory A/R Purchaser Trust Accounts**") that are controlled by the Master Collateral Agent. The Prepetition Tranche B/D Agent has yet to consent to the release of Inventory Accounts Receivable Trust Funds that are being held in the Inventory A/R

Purchaser Trust Accounts to the Inventory A/R Purchasers. The Debtors stipulate that the Purchased Inventory (including any proceeds thereof) and the Inventory Accounts Receivable Trust Funds (including any proceeds thereof) are property of the Inventory A/R Purchasers and not property of the Debtors' estates. It is a condition to funding under the DIP Facility that the Inventory Accounts Receivable Trust Funds being held in the Inventory A/R Purchaser Trust Accounts are released to Argonaut Solar, LLC, as agent for the Inventory A/R Purchasers.

G.    **Findings Regarding the Postpetition Financing**.

(i)    **Need for Postpetition Financing**. A need exists for the Debtors to obtain funds from the DIP Loan in order to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets and to maximize a return for all creditors requires the availability of working capital from the DIP Loan, the absence of which would irreparably harm the Debtors, their estates and their creditors and the possibility for a successful reorganization or sale of the Debtors' assets as a going concern or otherwise.

(ii)    **No Credit Available on More Favorable Terms**. The Debtors have been unable to obtain (a) unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, (b) credit for money borrowed secured solely by a lien on property of the estate that is not otherwise subject to a lien, or (c) credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien, in each case, on more favorable terms and conditions than those provided in the DIP Credit Agreement and this Final Order. The Debtors are unable to obtain credit for borrowed money without granting to the DIP Lender the DIP Protections (as defined below).

H.     **Section 506(c) Waiver**.  The Debtors shall be deemed to have waived the provisions of sections 506(c) of the Bankruptcy Code as part of the DIP Facility.

I.     **Use of Proceeds of the DIP Facility**.  Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Documents) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Credit Agreement and this Final Order and in accordance with the Budget; provided, that no more than $75,000 of the proceeds of the DIP Facility, DIP Collateral (as defined below) or Cash Collateral, may be used by the Committee to investigate the Prepetition Liens and/or claims of the Prepetition Secured Parties.

J.     **Adequate Protection for Prepetition Secured Parties**.  As a result of the automatic stay, the Debtors' use, sale or lease of the Prepetition Collateral during the Chapter 11 Cases, the grant of the DIP Liens (as defined below), and the subordination to the Carve Out (as defined below) authorized herein, the Prepetition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any decrease in the value of their respective interest in the Prepetition Collateral.  The Prepetition Tranche A Term Loan Facility Representative, and the Prepetition Tranche E Agent have negotiated in good faith regarding the Debtors' use of the Prepetition Collateral to fund the administration of the Debtors' estates.  Based on the DIP Motion and the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the proposed adequate protection arrangements and the use of Cash Collateral are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the consent of the Prepetition Tranche A Term Loan Facility Representative and the Prepetition

Tranche E Agent hereto; *provided, however,* that nothing herein shall limit the rights of the Prepetition Secured Parties to seek new or different adequate protection.

K. **Extension of Financing**. The DIP Lender has indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement. The DIP Lender is a good faith financier. The DIP Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to this Final Order and the DIP Financing Documents will not be affected by any subsequent reversal or modification of this Final Order, as provided in section 364(e) of the Bankruptcy Code.

L. **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)     The terms and conditions of the DIP Facility and the DIP Financing Documents, and the fees paid and to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration;

(ii)     the DIP Financing Documents were negotiated in good faith and at arms' length between the Debtors and the DIP Lender; and

(iii)     the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

M. **Relief Essential; Best Interest; Good Cause**. The relief requested in the DIP Motion (and as provided in the Interim Order and this Final Order) is necessary, essential, and appropriate for the preservation of the Debtors' assets, business and property. It is in the best interest of the Debtors' estates to be allowed to establish the DIP Facility contemplated by the

DIP Credit Agreement and to perform in accordance with the DIP Financing Documents. Good cause has been shown for the relief requested in the DIP Motion (and as provided in the Interim Order and this Final Order).

NOW, THEREFORE, on the DIP Motion and the record before this Court with respect to the DIP Motion, including the record created during the Interim Hearing and the Final Hearing, and with the consent of the Debtors, the Prepetition Tranche A Lenders, the Prepetition Tranche E Lenders, and the DIP Lender to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. **Motion Granted**. The DIP Motion is granted in accordance with the terms and conditions set forth in this Final Order and the DIP Credit Agreement. Any objections to the DIP Motion with respect to entry of this Final Order to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled.

2. **DIP Financing Documents**.

(a) **Approval of Entry Into DIP Financing Documents**. The Debtors are authorized, empowered and directed to execute and deliver (to the extent not previously executed or delivered) the DIP Financing Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Financing Documents, and to execute and deliver (to the extent not previously executed or delivered) all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Financing Documents and the creation and perfection of the DIP Liens described in and provided for by this Final Order and the DIP Financing Documents. The Debtors are hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses, indemnities and other amounts described in the DIP Credit Agreement and all other DIP

Financing Documents as such become due, including, without limitation, commitment fees and reasonable attorneys' fees and disbursements as provided for in the DIP Credit Agreement, which amounts shall not otherwise be subject to approval of this Court; *provided, however*, that prior to its receipt of any cash payment from the Debtors, the DIP Lender shall deliver copies of professional fee and expense invoices to the Office of the United States Trustee, the Prepetition Tranche B/D Agent, and the Committee at the same time such invoices are forwarded to the Debtors for payment; *provided further, however*, that the fees contemplated in Section 2.4 of the DIP Credit Agreement shall be limited to the Closing Fee (as such term is defined in the DIP Credit Agreement). Such parties shall have five business days to review such invoices and notify counsel to the Debtors and the DIP Lender of any objections to the requested attorneys' fees and expenses. To the extent any party notifies counsel to Debtors and the DIP Lender of any objection to the payment and/or allowance of any of the DIP Lender's attorneys' fees and expenses during the five business day review period, the objectionable amount of the DIP Lender's attorneys' fees and expenses shall not be paid until such objection is resolved by the parties; if the parties are unable to resolve any objection within ten (10) days after the objecting party notifies counsel to Debtors and the DIP Lender, the objecting party shall file its objection with this Court, which shall be heard on the next available omnibus hearing date.

(b) **Authorization to Borrow/and or Guarantee**. To enable them to continue to preserve the value of their estates and dispose of their assets in an orderly fashion, subject to the terms and conditions of this Final Order and the DIP Financing Documents, upon the execution of the DIP Credit Agreement and the other DIP Financing Documents, the Debtors are hereby authorized to borrow and/or guarantee, as applicable, up to a total committed amount of $4,000,000 under the DIP Financing Documents.

(c)     **Conditions Precedent**.  The DIP Lender shall have no obligation to make any loan or advance under the DIP Credit Agreement unless the conditions precedent to making such loan under the DIP Credit Agreement have been satisfied in full or waived by the DIP Lender in its sole discretion.

(d)     **DIP Liens**.  Effective immediately upon the entry of the Interim Order, on account of the Interim DIP Loan, the DIP Lender was granted, on an interim basis, postpetition security interests in and liens (which immediately became valid, binding, permanent, continuing, enforceable and non-avoidable) on all of the real, personal and mixed property, whether now owned or hereafter acquired of the Debtors, including, without limitation, any cash, any investments of such cash, deposit accounts, inventory, equipment, goods, general intangibles, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interest in leaseholds, real property, patents, copyrights, trademarks, trade names, other intellectual property, Equity Interests (as defined in the DIP Credit Agreement), the proceeds of all of the foregoing (collectively, the "**Interim DIP Collateral**"), and immediately upon entry of this Final Order, on account of the DIP Facility, are granted, on a final basis the following postpetition security interests in and liens (which shall immediately be valid, binding, permanent, continuing, enforceable and non-avoidable) on the Interim DIP Collateral and the proceeds thereof (collectively, the "**DIP Collateral**" and all such liens and security interests granted in the DIP Collateral pursuant to the Interim Order, this Final Order and the DIP Financing Documents, the "**DIP Liens**"), which Interim DIP Collateral, DIP Collateral, and DIP Liens shall exclude avoidance actions under chapter 5 of the Bankruptcy Code (other than actions under section 549

of the Bankruptcy Code) and any other avoidance or similar actions under the Bankruptcy Code or similar state law (collectively, the "**Avoidance Actions**") and the proceeds thereof:

(i)      Subject to the Carve Out (as defined below), pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, first priority lien on all DIP Collateral that is unencumbered as of the Petition Date;

(ii)      Subject to the Carve Out (as defined below), pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected junior lien upon all DIP Collateral that is subject to valid and perfected and unavoidable liens, including the Permitted Prior Liens, in existence on the Petition Date or that is subject to valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, other than the Primed Liens (as defined below) (the "**Prepetition Senior Liens**");

(iii)      Subject to the Carve Out (as defined below), pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority senior priming lien on all DIP Collateral that is subject to the Prepetition Liens, subject only to the Permitted Prior Liens (collectively, the "**Primed Liens**"), which Primed Liens shall be primed by and made subject and subordinate to the perfected first priority senior priming liens to be granted to the DIP Lender, which senior priming liens in favor of the DIP Lender shall also prime any liens granted after the Petition Date to provide adequate protection in respect of the Primed Liens.

(iv)      Notwithstanding anything to the contrary herein, nothing in this Final Order shall affect, impair or otherwise prejudice any rights that the Debtors' landlords may have or have the effect of encumbering, pledging or collateralizing the

leasehold interests of the Debtors with respect to premises owned by such landlord to the extent otherwise prohibited under the terms of the applicable lease with such landlord.

(v) Notwithstanding anything that may be to the contrary herein, nothing in this Final Order shall, in any way, affect, impair, modify, or otherwise prejudice any rights that Global Kato HG, LLC ("**Global Kato**"), one of the Debtors' landlords, may have under any letters of credit issued in connection with Global Kato's lease (as amended), constitute a determination that such letters of credit (or the proceeds thereof) are, in any way, property of the Debtors' bankruptcy estates, or grant a lien or security interest in: (i) such letters of credit (or the proceeds thereof); or (ii) the leasehold estate of the Debtors with respect to premises owned by Global Kato.

(vi) Notwithstanding anything that may be to the contrary herein, nothing in this Final Order shall, in any way, grant a priming lien against any assets that U.S. Bank National Association ("**U.S. Bank**") may have a prior perfected lien (i) under common law rights of setoff or (ii) under that certain Possessory Collateral Pledge Agreement dated as of April 27, 2011 executed by the Solyndra and that certain Control Agreement dated as of April 27, 2011, each pertaining to that certain Reimbursement Agreement for Letters of Credit dated as of March 24, 2011 between U.S. Bank and Solyndra.

(e) **DIP Lien Priority**. The DIP Liens securing the DIP Obligations shall be junior and subordinate to (a) the Carve Out (as defined below) and (b) the Prepetition Senior Liens and shall otherwise be senior in priority and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral. Other than as expressly set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any

court order heretofore or hereafter granted in the Chapter 11 Cases. The DIP Liens shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "**Successor Cases**"), and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.

(f)     **Enforceable Obligations**. The DIP Financing Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates and any successors thereto and their creditors or representatives thereof, in accordance with their terms and the terms of this Final Order.

(g)     **Protection of DIP Lender's and Other Rights**.   From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Credit Agreement and this Final Order and in strict compliance with the Budget (subject to any variances thereto permitted by the DIP Credit Agreement). The DIP Lender shall be offered the following, additional protections:

(i)     **Superpriority Administrative Claim Status**.   Subject to the Carve Out (as defined below), all DIP Obligations shall constitute an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**" and, together with the DIP Liens, the "**DIP Protections**") with priority in all of the Chapter 11 Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c),

546(d), 726 (to the extent permitted by law), 1113 and 1114 and any other provision of the Bankruptcy Code except as otherwise set forth herein, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. The DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (excluding Avoidance Actions or the proceeds thereof), subject to the Carve Out (as defined below).

3. **Authorization to Use Cash Collateral and Proceeds of DIP Facility**. Pursuant to the terms and conditions of this Final Order, the DIP Credit Agreement and the other DIP Financing Documents, and in accordance with the Budget, (a) the Debtors are authorized to use the advances under the DIP Credit Agreement during the period commencing immediately after the entry of the Interim Order and/or this Final Order, as applicable, and terminating upon the occurrence of an Event of Default (as defined below) and the termination of the DIP Credit Agreement in accordance with its terms and subject to the provisions hereof and (b) the Debtors are authorized to use all Cash Collateral of the Prepetition Secured Parties, provided that the Prepetition Secured Parties are granted adequate protection as hereinafter set forth. Subject to prior notice to counsel for the Committee, the Debtors and the DIP Lender may agree in writing to modify the Budget in their discretion at any time that the DIP Financing remains outstanding, provided, that if the DIP Facility is repaid in full, the Budget may only be modified with the prior written consent of the Prepetition Tranche A Term Loan Facility Representative, the Tranche B/D Agent, and the Tranche E Agent. To the extent that any Budget modifications pertain to any Committee professional fees, such modifications shall require the consent of the Committee.

4. **Release of Restricted Funds**. The Restricted Funds being held in the Restricted Account are property of the Debtors' estates and constitute Cash Collateral. The Master

Collateral Agent is hereby authorized and directed to release the Restricted Funds to the Debtors to be used by the Debtors to fund general operating expenses in accordance with the Budget.

5.    **Transfer of Inventory Accounts Receivable Trust Funds**.    All Purchased Inventory (including any proceeds thereof) and Inventory Accounts Receivable Trust Funds (including any proceeds thereof), including those held in the Inventory A/R Purchaser Trust Accounts, are property of the applicable Inventory A/R Purchasers and not the Debtors' estates and all Inventory Accounts Receivable Trust Funds shall be immediately released and turned over to the Inventory A/R Purchasers and with the consent of the A/R Purchasers shall be retained by the Debtors and deemed to be proceeds of the DIP Facility.  The Master Collateral Agent is hereby authorized and directed to release the Inventory Accounts Receivable Trust Funds to the Debtors, as agent for the Inventory A/R Purchasers, upon the closing of the DIP Facility.  Any and all Inventory Accounts Receivable Trust Funds received by the Debtors on or after the Petition Date are property of the Inventory A/R Purchasers and not the Debtors' estates and shall be immediately released and turned over to the Inventory A/R Purchasers.  Further, the Master Collateral Agent is hereby authorized and directed to release all funds in a collections account (acct. no. 133430002) held with the Master Collateral Agent that do not constitute Inventory Accounts Receivable Trust Funds to the Debtors and the Debtors may use such Cash Collateral in accordance with the terms of this Final Order.  Nothing in this paragraph is intended to nor shall limit the Committee's ability to bring any claims or challenges consistent with Paragraph 9 of this Final Order arising from or related to the Sale Agreements.  In the event that any or all of the Inventory Accounts Receivable Trust Funds are found to be property of the Debtors, (i) such funds shall be treated as Cash Collateral in accordance with the terms of this Final Order and (ii) the DIP Facility shall be reduced to the extent previously deemed funded

upon the closing of the DIP Facility with Inventory Accounts Receivable Trust Funds that are subsequently found by the Court to be property of the Debtors.

6. **Adequate Protection for Prepetition Secured Parties**. As adequate protection for the interest of the Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, subordination to the Carve Out (as defined below), the Debtors' use of Cash Collateral and any other decline in value arising out of the automatic stay or the Debtors' use, sale, or disposition or other depreciation of the Prepetition Collateral, the Prepetition Secured Parties shall receive adequate protection as follows:

(a) **Adequate Protection Replacement Liens.** To the extent of the diminution of value of the interests of the Prepetition Secured Parties in the Prepetition Collateral of the Debtors, the Prepetition Secured Parties shall be granted replacement liens in the DIP Collateral as follows:

(i) *Replacement Liens*: Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral of the Debtors, the Debtors hereby grant to the Master Collateral Agent, for the benefit of the Prepetition Secured Parties, continuing valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests in and liens on the DIP Collateral (the "**Replacement Liens**").

(ii) *Priority of the Replacement Liens*:

(A) The Replacement Liens shall be junior only to (i) the Carve Out (as defined below), (ii) the DIP Liens, and (iii) the Prepetition Senior Liens. The Replacement Liens shall otherwise be senior to all other security interests in, liens on, or

claims against any of the DIP Collateral. The Prepetition Secured Parties' respective rights with respect to the property secured by the Replacement Liens shall continue to be governed by the Prepetition Intercreditor Agreement.

(B)     Except as provided herein, the Replacement Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases or any successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Chapter 11 Cases or any successor Cases, or upon the dismissal of any of the Chapter 11 Cases or Successor Cases. The Replacement Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Replacement Liens.

(b)     **Adequate Protection Superpriority Claims**. To the extent of the diminution of value of the interests of the Prepetition Secured Parties in the Prepetition Collateral of the Debtors, the Prepetition Secured Parties shall have an allowed superpriority administrative expense claim as follows:

(i)     *Adequate Protection Superpriority Claim*: As further adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral of the Debtors against any diminution in value of such interests in the Prepetition

Collateral of the Debtors, the Prepetition Secured Parties are each hereby granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Cases (the "**Adequate Protection Superpriority Claims**").

(ii)    *Priority of Adequate Protection Superpriority Claims*:    The Adequate Protection Superpriority Claims shall be junior only to the Carve Out (as defined below) and the DIP Superpriority Claims and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (excluding Avoidance Actions or the proceeds thereof).    Except as otherwise provided in this Final Order, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code.    The Prepetition Secured Parties' respective rights with respect to the payment of any Adequate Protection Superpriority Claims shall continue to be governed by the Prepetition Intercreditor Agreement and all payments on account of Adequate Protection Superpriority Claims shall constitute Specified Debt Payments (as defined in the Prepetition Intercreditor Agreement).

7.    **Postpetition Lien Perfection**.   The Interim Order and/or this Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Replacement Liens without the necessity of filing or recording any financing statement, deed

of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the DIP Liens and the Replacement Liens or to entitle the DIP Liens and the Replacement Liens to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender, the Prepetition Tranche A Term Loan Facility Representative (on behalf of the Prepetition Tranche A Lenders), the Prepetition Tranche B/D Agent (on behalf of the Prepetition Tranche B/D Lenders), and the Prepetition Tranche E Agent (on behalf of the Prepetition Tranche E Lenders) may, each in their sole discretion, file such financing statements, mortgages, notices of liens and other similar documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.

8.      The Debtors shall execute and deliver (to the extent not previously executed or delivered) to the DIP Lender, the Prepetition Tranche A Term Loan Facility Representative, the Prepetition Tranche B/D Agent, and the Prepetition Tranche E Agent all such financing statements, mortgages, notices and other documents as the DIP Lender, the Prepetition Tranche A Term Loan Facility Representative, the Prepetition Tranche B/D Agent, and the Prepetition Tranche E Agent may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Replacement Liens granted pursuant hereto. The DIP Lender, in its discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property,

and in such event, the recording officer shall be authorized to file or record such copy of this Final Order.

9. **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**. Nothing in this Final Order or the DIP Credit Agreement shall prejudice the rights the *or Peter M. Kohlstadt, on behalf of himself and a class of similarly-situated former employees* Committee may have to object to or challenge the findings herein and the Debtors' Stipulations in Paragraph F (and its subsections) of this Final Order. Accordingly, during the Challenge *and, to the extent he has standing, Kohlstadt,* Period, the Committee may, without limitation, object to or challenge (i) the validity, extent, perfection or priority of the mortgage, security interests and liens of the Prepetition Secured Parties in and to the Prepetition Collateral of the Debtors, (ii) the validity, allowability, priority, status or amount of the Prepetition Obligations, or (iii) any releases provided in the Debtors' Stipulations or the DIP Credit Agreement for the benefit of the Prepetition Secured Parties, each in their capacity as such. For the avoidance of doubt, the Committee may not challenge any releases given to the DIP Lender in its capacity as such under the DIP Credit Agreement or this *and, to the extent he has standing, Kohlstadt,* Final Order. The Committee must commence an adversary proceeding raising such objection or challenge, including without limitation, asserting any claim against the Prepetition Secured Parties in the nature of a setoff, counterclaim or defense to the Prepetition Obligations (including but not limited to, those under sections 506, 544, 547, 548, 549 and 550 of the Bankruptcy Code or by way of suit against any of the Prepetition Secured Parties), within (a) 75 days following the date the U.S. Trustee formed the Committee, (b) such later date consented to in writing by the Prepetition Tranche A Term Loan Facility Representative, the Prepetition Tranche B/D Agent, and/or the Prepetition Tranche E Agent, as applicable (the "**Challenge Period**"), or (c) such later *or, to the extent he has standing, Kohlstadt,* date ordered by the Court for cause shown, *provided, however*, that the Committee shall seek an expedited hearing in connection with any request to the Court to extend the Challenge Period for *of the Debtors, to the extent he has requisite standing ("Kohlstadt"),*

cause. The date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "**Challenge Period Termination Date**". Upon the Challenge Period Termination Date, any and all challenges, claims, causes of action and objections by any party (including, without limitation, any Committee, any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest) shall be deemed to be forever waived and barred, and the Prepetition Secured Obligations shall be deemed to be allowed in full and shall be deemed to be allowed as secured claims to the extent of the value of the Prepetition Collateral within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Cases or any Successor Case, and the Debtors' Stipulations shall be binding on all creditors, interest holders and parties in interest. For the avoidance of doubt, (i) any trustee appointed or elected in these Chapter 11 Cases prior to the Challenge Period Termination Date or any chapter 7 trustee appointed in a Successor Case prior to the Challenge Period Termination Date shall be deemed a party other than the Debtors and shall not be bound by the acknowledgement, admissions, confirmations, and stipulations of the Debtors in this Final Order until the occurrence of the Challenge Period Termination Date, and (ii) if the trustee is appointed or elected in these Chapter 11 Cases after the Challenge Period Termination Date or a chapter 7 trustee is appointed in a Successor Case after the Challenge Period Termination Date, such trustee shall not be bound by the acknowledgement admissions, confirmations and stipulations of the Debtors in this Final Order solely to the extent of any Challenge asserted prior to the Challenge Period Termination Date. The Committee is hereby granted standing to bring any such adversary proceeding with respect to any claim, objection or challenge, if any, contemplated by this Paragraph 9 of this Final Order.

10.     For the avoidance of doubt and to remedy any inconsistency in the DIP Financing Documents and this Final Order, neither the DIP Lender nor any Prepetition Secured Party shall have any liens on the proceeds of the Avoidance Actions, whether received by judgment, settlement or otherwise.   Further, neither the DIP Superpriority Claims nor the Adequate Protection Superpriority Claims shall be payable from or otherwise have recourse to the proceeds of Avoidance Actions.   Notwithstanding anything herein to the contrary, nothing in this Final Order shall preclude any of the Prepetition Secured Parties from sharing the proceeds of the Avoidance Actions ratably with other general unsecured creditors to the extent that any portion of the Prepetition Secured Obligations are undersecured claims pursuant to section 506(a)(1) of the Bankruptcy Code.

11.     To the extent any such objection or complaint is filed, the Prepetition Secured Parties may be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or complaint as part of their prepetition claims to the extent allowable under Section 506(b) of the Bankruptcy Code.

12.     **Carve Out**.  The DIP Liens, DIP Superpriority Claims, Replacement Liens, and the Adequate Protection Superpriority Claims are subordinate only to the following (the "**Carve Out**"): (i) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6), together with interest payable thereon pursuant to applicable law and any fees payable to the Clerk of the this Court; (ii) until the issuance of a Carve Out Notice (as defined in the DIP Credit Agreement) (which the DIP Lender may only issue upon an Event of Default), the allowed and reasonable fees and expenses of professionals employed by the Debtors and the Committee pursuant to Sections 327 and 1103 of the Bankruptcy Code (the "**Case Professionals**") in the amounts set forth in the Budget; (iii) following delivery of a Carve Out Notice, an aggregate amount (the

"**Residual Carve Out**") not to exceed $50,000, provided that (a) any payments made to Case Professionals for services rendered prior to the delivery of the Carve Out Notice and in accordance with the Budget and (b) any fees and expenses of Case Professionals accrued prior to the delivery of the Carve Out Notice in the amounts set forth in the Budget and subsequently allowed, shall not reduce the Residual Carve Out. Amounts set forth in the Budget for Case Professionals will be funded in the amounts and at the times set forth in the Budget and held in a segregated account or treated as restricted funds pending the allowance of such fees and expenses by this Court or interim allowance as pursuant to any Court-approved interim compensation procedures. To the extent that a Case Professional does not use all of the amounts budgeted for it in any given week, such unused amounts shall carry-forward and be available for future use.

13. Notwithstanding anything set forth herein, the Carve Out shall exclude any fees and expenses incurred in connection with initiating or prosecuting any claims, causes of action, adversary proceedings, or other litigation against any of the DIP Lender or the Prepetition Secured Parties, including, without limitation, the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief (i) invalidating, setting aside, disallowing, avoiding, challenging or subordinating, in whole or in part, (a) the DIP Obligations, (b) the Prepetition Secured Obligations, (c) the Prepetition Liens, or (d) the DIP Liens, or (ii) subject to Paragraph 19 hereof, upon the occurrence of any Event of Default and any time thereafter during the continuance of such Event of Default, preventing, hindering or delaying, whether directly or indirectly, the DIP Lender's or Prepetition Secured Parties' assertion or enforcement of their liens or security interests or realization upon any DIP

Collateral or Prepetition Collateral, (iii) prosecuting any Avoidance Actions against the DIP Lender or any Prepetition Secured Party, or (iv) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to, the Prepetition Secured Obligations, or the adequate protection granted herein.

14.  Notwithstanding the preceding Paragraph 13, the Committee shall be authorized to use up to $75,000 in the aggregate of the Carve Out to investigate the liens, claims and interests of the Prepetition Secured Parties with respect to the Debtors; provided, however that such right shall cease upon the issuance of a Carve-Out Notice (as defined in the DIP Credit Agreement). Nothing herein shall be construed to obligate the Prepetition Secured Parties, or the DIP Lender, in any way, to pay any professional fees, or to assure that a Debtor has sufficient funds on hand to pay any professional fees.

15.  **Payment of Compensation**.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors or the Committee or shall affect the right of the DIP Lender or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses or to permit the Debtor to pay any such amounts not set forth in the Budget.

16.  **Section 506(c) Claims**.  Immediately upon the entry of this Final Order, the Debtors shall irrevocably waive, and shall be prohibited from asserting, any surcharge claim under sections 105 or 506(c) of the Bankruptcy Code or otherwise for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Lender or the Prepetition Secured Parties upon the DIP Collateral or the Prepetition Collateral (as applicable).

17.     **Collateral Rights**.  Unless the DIP Lender has provided its prior written consent or all DIP Obligations have been paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below), and all commitments to lend have terminated:

(a)     The Debtors shall not seek entry, in these proceedings, or in any Successor Case, of any order which authorizes the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral or the Prepetition Collateral and/or entitled to priority administrative status which is senior or *pari passu* to those granted to the DIP Lender pursuant to this Final Order (other than the Prepetition Senior Liens); and

(b)     The Debtors shall not consent to relief from the automatic stay by any person other than the DIP Lender with respect to all or any portion of the DIP Collateral without the express written consent of the DIP Lender.

18.     **Commitment Termination Date**.  All DIP Obligations of the Debtors to the DIP Lender shall be immediately due and payable, and the Debtors' authority to use the proceeds of the DIP Facility and to use Cash Collateral shall cease, both on the date that is the earliest to occur of: (i) the date that is one hundred and eighty (180) days after the Petition Date and (ii) the date on which the maturity of the DIP Obligations is accelerated and the commitments under the DIP Facility are irrevocably terminated in accordance with the DIP Credit Agreement (the "**Commitment Termination Date**").

19.     **Disposition of Collateral**.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, without the prior written consent of the DIP Lender (and no such consent shall be implied, from any other action, inaction or

acquiescence by the DIP Lender or an order of this Court), except as provided in the DIP Credit Agreement and this Final Order and approved by this Court to the extent required under applicable bankruptcy law. Nothing herein shall prevent the Debtors from making sales in the ordinary course of business to the extent consistent with the Budget.

(a) **Events of Default**. The occurrence of an "Event of Default" pursuant to Section 7.1 the DIP Credit Agreement shall constitute an event of default under this Final Order, unless expressly waived in writing in accordance with the consents required in the DIP Financing Documents (collectively, the "**Events of Default**"). In addition to the foregoing, as set forth in section 6.1(k) and/or enumerated in Section 7.1 of the DIP Credit Agreement, the following event (the "**Bankruptcy Milestone**") shall constitute an Event of Default thereunder: no later than 45 days after the Petition Date, the DIP Borrower shall have agreed with the DIP Lender, after consultation with counsel for the Prepetition Tranche B/D Agent and the Committee, on bankruptcy milestones consistent with Budget to be incorporated into clause (l) of Section 6.1 of the DIP Credit Agreement.

20. **Rights and Remedies Upon Event of Default**.

(a) Any otherwise applicable automatic stay is hereby modified so that after the occurrence of any Event of Default and at any time thereafter during the continuance of such Event of Default, upon five business (5) day's prior written notice of such occurrence (the "**Remedies Notice Period**"), in each case given to each of the Debtors and counsel thereto, counsel for the Committee, counsel for the Prepetition Tranche A Term Loan Facility Representative, counsel for the Prepetition Tranche B/D Agent, counsel for the Prepetition Tranche E Agent, and the U.S. Trustee, the DIP Lender shall be entitled to exercise its rights and remedies with respect to the Debtors in accordance with the DIP Financing Documents. Nothing

in this Final Order shall limit the ability of any party to immediately exercise rights and remedies with respect any non-Debtors.

(b)     Notwithstanding the preceding paragraph, immediately following the giving of notice by the DIP Lender of the occurrence of an Event of Default: (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Lender as provided in the DIP Credit Agreement and this Final Order; (ii) the DIP Lender shall continue to apply such proceeds in accordance with the provisions of this Final Order and of the DIP Credit Agreement; (iii) the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral other than towards the satisfaction of the DIP Obligations and the Carve Out, as provided in the DIP Financing Documents; and (iv) any obligation otherwise imposed on the DIP Lender to provide any loan or advance to the Debtors pursuant to the DIP Financing Documents shall immediately be suspended. Following the giving of notice by the DIP Lender of the occurrence of an Event of Default, the Debtors and the Committee shall be entitled to an emergency hearing before this Court for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing. If the Debtors or the Committee do not contest the right of the DIP Lender to exercise its remedies based upon whether an Event of Default has occurred within the Remedies Notice Period, the automatic stay, as to the DIP Lender, shall automatically terminate at the end of the Remedies Notice Period.

(c)     Nothing included herein shall prejudice, impair, or otherwise affect the Prepetition Secured Parties' or the DIP Lender's rights to seek any other or supplemental relief in respect of the DIP Lenders' rights, as provided in the DIP Credit Agreement.

21.     **Proofs of Claim**. The Prepetition Tranche A Term Loan Facility Representative, the Prepetition Tranche B/D Agent, the Prepetition Tranche E Agent, and the DIP Lender will

not be required to file proofs of claim in the Chapter 11 Cases or any Successor Case. Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Prepetition Secured Parties.

22. **Other Rights and Obligations**.

(a) <u>Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Final Order and/or the Interim Order</u>. The DIP Lender has acted in good faith in connection with negotiating the DIP Financing Documents, extending credit under the DIP Facility and allowing the use of Cash Collateral, and its reliance on the Interim Order and/or the Final Order is in good faith. Based on the findings set forth in the Interim Order and/or this Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order and/or the Interim Order are hereafter reversed, modified amended or vacated by a subsequent order of this or any other Court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such reversal, modification, amendment or vacatur shall not affect the validity and enforceability of any advances made pursuant to this Final Order and/or the Interim Order or the liens or priority authorized or created hereby. Any claims, liens or DIP Protections granted to the DIP Lender hereunder arising prior to the effective date of such reversal, modification, amendment or vacatur shall be governed in all respects by the original provisions of this Final Order and/or the Interim Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted herein, with respect to any such claim. Since the loans made pursuant to the DIP Credit Agreement are made in reliance on this Final Order and/or the Interim Order, the obligations owed to the DIP Lender prior to the effective date of any reversal or modification of

this Final Order and/or the Interim Order cannot, as a result of any subsequent order in the Chapter 11 Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this Final Order, the Interim Order and/or the DIP Financing Documents.

(b)     Binding Effect.  The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Lender, the Prepetition Secured Parties, the Debtors and each of their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 Case.

(c)     No Waiver.  The failure of the Prepetition Secured Parties or the DIP Lender to seek relief or otherwise exercise their rights and remedies under the DIP Financing Documents, the DIP Facility, this Final Order or otherwise, as applicable, shall not constitute a waiver of any of the Prepetition Secured Parties' or the DIP Lender's rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any rights of the Prepetition Secured Parties or the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Prepetition Secured Parties and the DIP Lender to (i) request conversion of the Chapter 11 Cases to cases under Chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan of reorganization, (iii) exercise any of the rights, claims or privileges (whether legal,

equitable or otherwise) the DIP Lender or the Prepetition Secured Parties (subject to the terms of the Prepetition Intercreditor Agreement) may have pursuant to this Order, the DIP Financing Documents, the Prepetition Tranche A Credit Documents, the Prepetition Tranche B/D Credit Documents, the Prepetition Tranche E Credit Documents, or applicable law, or (iv) enforce the Prepetition Intercreditor Agreement. Nothing in this Final Order shall interfere with the rights of any party with respect to any non-Debtors.

(d)     No Third Party Rights. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(e)     No Marshaling. Neither the DIP Lender nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral, as applicable.

(f)     Section 552(b). In light of their agreement to subordinate their liens and superpriority claims (i) to the Carve Out in the case of the DIP Lender, and (ii) to the Carve Out and the DIP Liens in the case of the Prepetition Secured Parties, the DIP Lender and each of the Prepetition Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

(g)     Amendment. Upon prior notice to the U.S. Trustee and the Committee, the Debtors and the DIP Lender may amend or waive any provision of the DIP Financing Documents, provided that such amendment or waiver, in the reasonable judgment of the Debtors and the DIP Lender, is both non-prejudicial to the rights of third parties or is not material. Except as otherwise provided herein, no waiver, modification, or amendment of any of the

provisions of the DIP Financing Documents shall be effective unless set forth in writing, signed on behalf of all the Debtors and the DIP Lender, and approved by this Court.

23. **Survival of Final Order and Other Matters**. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or any Successor Cases, (iii) to the extent authorized by applicable law, dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court. The terms and provisions of this Final Order, including, without limitation, the DIP Protections granted pursuant to this Final Order and the DIP Financing Documents and any protections granted to the Prepetition Secured Parties, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections and protections for the Prepetition Secured Parties shall maintain their priority as provided by this Final Order until all the obligations of the Debtors to the DIP Lender pursuant to the DIP Financing Documents and to the Prepetition Secured Parties have been indefeasibly paid in full and in cash and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Financing Documents which survive such discharge by their terms). The DIP Obligations shall not be discharged by the entry of an order confirming a plan of reorganization.

(a) <u>Inconsistency</u>. In the event of any inconsistency between the terms and conditions of the DIP Financing Documents and of this Final Order, the provisions of this Final Order shall govern and control.

(b)  <u>Enforceability</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Final Order. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

(c)  <u>Objections Overruled</u>.  All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled on a final basis.

(d)  <u>No Waivers or Modification of Final Order</u>.  The Debtors irrevocably waive any right to seek any modification or extension of this Final Order without the prior written consent of the DIP Lender and the Prepetition Secured Parties and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lender and the Prepetition Secured Parties.

24.  **No Effect on Non-Debtor Collateral**.  Nothing set forth herein shall modify or otherwise impair the rights of any of the Prepetition Secured Parties with respect to any non-Debtor or any of their assets.

25.  **Governmental Consents**.  Except as otherwise provided herein, the execution, delivery and performance by the Debtors of the DIP Financing Documents and the consummation of the transactions contemplated by the DIP Financing Documents do not and will not require any registration with, consent or approval of, or notice to, or other action to, with or by, any Governmental Authority (as defined in the DIP Credit Agreement).

26.     **Revisions to DIP Credit Agreement.** The releases provided in Section 10.14(a) of the DIP Credit Agreement as they relate to the DIP Lender's past and present officers, directors, servants, agents, attorneys, parents, subsidiaries and each Person acting for or on behalf of any of them, shall only apply to such persons in their representative capacity on behalf of the DIP Lender. For the avoidance of doubt, the releases provided to the Lenders in Section 10.14(a) are not intended to and do not release the Lenders from their obligations under the Loan Documents. The releases provided in Section 10.14(b) of the DIP Credit Agreement as they relate to the Prepetition Secured Parties' past and present officers, directors, servants, agents, attorneys, parents, subsidiaries, and each Person acting for or on behalf of any of them, shall only apply to such persons in their representative capacity on behalf of the Prepetition Secured Parties. The releases contained in Section 10.14(b) shall only become effective upon the Challenge Period Termination Date. The references to paragraphs 7-8 in the Financing Order in Section 10.14(b) shall be deemed replaced with paragraphs 9-10 of the Financing Order.

27.     **Retention of Jurisdiction.** This Court has and will retain jurisdiction to enforce this Final Order.

Dated:  _____ , 2011           _____
              Wilmington, Delaware                          United States Bankruptcy Judge