IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SOLYNDRA, LLC, et al. | : | Case No. 11-12799 (MFW) |
| | : | |
| Debtors. | : | **Objection Deadline: October 11, 2011 at 4:00 p.m.** |
| | : | **Hearing Date: October 17, 2011 at 2:00 p.m.** |

# UNITED STATES TRUSTEE'S MOTION FOR ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE UNDER 11 U.S.C. § 1104 OR, IN THE ALTERNATIVE, CONVERSION OF THE CASE TO CHAPTER 7 UNDER 11 U.S.C. § 1112(b)

Roberta A. DeAngelis, the United States Trustee for Region Three, through her counsel, hereby files a Motion for Entry of an Order Directing the Appointment of a Chapter 11 Trustee under 11 U.S.C. § 1104 or, in the Alternative, Conversion of the Case to Chapter 7 under 11 U.S.C. § 1112(b) (the "Motion") and in support respectfully represents as follows:

## PRELIMINARY STATEMENT

1.  The United States Trustee files this Motion because of the refusal by the CEO and CFO of Solyndra LLC ("Solyndra")[1] and 360 Degree Solar Holdings, Inc.[2] (collectively, the "Debtors") to testify and answer questions about the Debtors' business affairs and because of on-going investigations which threaten to distract those officers from the performance of their duties in the bankruptcy cases.

2.  Although the United States Trustee recognizes the fundamental importance of the constitutional privilege against self-incrimination, the Debtors' officers' assertion of that privilege,

---

[1] Solyndra LLC, a Delaware limited liability company, was formerly known as Solyndra Fab 2 LLC. (Stover Declaration, ¶ 10).

[2] 360 Degree Solar Holdings, Inc., a Delaware corporation, was formerly known as Solyndra, Inc. (Stover Declaration, ¶ 10). Solyndra, Inc. changed its name to 360 Degree Solar Holdings, Inc. in June 2011. (Solyndra, Inc. Consolidated Financial Statements, p. 28).

as well as the other facts and circumstances of this case, will prevent the Debtors' current management from fulfilling the disclosure and reporting obligations incumbent upon all debtors-in-possession and from serving with the transparency so vital to the proper functioning of the bankruptcy system.

3. This motion does not present the issue of whether management's assertion of a Fifth Amendment privilege supports the appointment of a trustee. Rather, the issue is whether management's refusal to answer questions about the debtors' finances and operations prevents the Debtors' current management from properly exercising their fiduciary responsibilities.

4. At this juncture, the United States Trustee alleges no specific wrongdoing. The inability or refusal of the corporate officers to answer material questions, however, establishes cause for the appointment of a trustee and establishes that such an appointment is in the best interests of the creditors and the estates. In the alternative, these cases should be converted to a liquidation under chapter 7 of the Bankruptcy Code.

## UNITED STATES TRUSTEE'S ROLE

5. The United States Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 586.[3] This duty is part of the United States Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the United States Trustee has "public interest standing" under 11 U.S.C. § 307,

---

[3]/ The United States Trustee does not represent the interest of the Government as a creditor in bankruptcy cases.

which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States Trustee as a "watchdog").

6. Pursuant to 11 U.S.C. § 307, the United States Trustee has standing to be heard with regard to this Motion. *See also* 11 U.S.C. § 1104(e); 28 U.S.C. § 586.

## BACKGROUND

7. On September 6, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

8. On September 15, 2011, the United States Trustee appointed a statutory committee of unsecured creditors.

9. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10. Founded in 2005, Solyndra is a U.S. manufacturer of solar photovoltaic solar power systems specifically designed for large commercial and industrial rooftops. (Stover Declaration, ¶ 4). Solyndra, the Debtors' primary operating company, is the wholly owned subsidiary of 360 Degree Solar Holdings, Inc. (Stover Declaration, ¶ 10).

11. The Debtors' primary corporate officers are (a) Brian Harrison, Chief Executive Officer, (b) W.G. Stover, Chief Financial Officer, (c) Benjamin Bierman, Executive Vice President of Operations and Engineering, and (d) John Gaffney, General Counsel and Senior Vice President of Corporate Development. (Stover Declaration, ¶ 12).

12. On September 8, 2011, the Federal Bureau of Investigation ("FBI"), acting together with the Department of Energy Office of Inspector General ("OIG"), executed search warrants at the Debtors' headquarters in Fremont, California. *See* Exhibit A, Letters from counsel for Mr. Harrison

and Mr. Stover to Chair and Ranking Member of the Subcommittee on Oversight and Investigations of the U.S. House of Representatives Committee on Energy & Commerce ("Subcommittee").

13. The Subcommittee scheduled a hearing for September 23, 2011. On September 20, 2011, three days before the hearing, counsel for Mr. Harrison and Mr. Stover informed the Subcommittee that their clients would decline to answer any questions at that hearing. Counsel further stated that they had advised Mr. Harrison and Mr. Stover to assert the Fifth Amendment privilege as a result of the FBI's September 8, 2011, execution of a search warrant at the Debtors' facilities, as well as the "ongoing Department of Justice investigation" regarding Solyndra. *See* Exhibit A.

14. Mr. Harrison and Mr. Stover appeared and were sworn at the September 23, 2011, Subcommittee hearing. Both officers refused to answer any question asked by the Subcommittee including questions related to the financial affairs of the Debtor. *See* Exhibit B, Transcript of September 23 Subcommittee Hearing.

15. Even before the Subcommittee hearing, the Debtors refused to answer the United States Trustee's question about its contracts based on concerns about investigations and possible litigation. Specifically, on September 15, 2011, the United States Trustee conducted an Initial Debtor Interview with a corporate representative of the Debtors to review the Debtors' responsibilities and obligations as a debtor-in-possession. During that interview, while discussing the Debtors' financial status, Benjamin Schwartz, Vice President and in-house counsel, refused to answer a question regarding the extent and nature of Solyndra's contracts with customers. The Debtors' representative declined to answer on the advice of counsel, who asserted that the topic would likely be the subject of investigation and possibly litigation.

16. The Office of the United States Trustee asked the Debtors to identify who would testify under oath as required at the Section 341 meeting of creditors. Although Debtors stated that they intend to produce someone to testify, the Debtors could not—and did not—identify who will do so. *See* Exhibit C, Letter from Debtors' counsel to the Asst. United States Trustee. As recently as September 29, 2011, Debtors' counsel still could not confirm to the United States Trustee whether the CEO and CFO would be able to answer questions in the bankruptcy cases. Counsel indicated that the Debtors have taken steps with respect to retention of a CRO.

## APPLICABLE AUTHORITY

17. Section 1104(a) of the Bankruptcy Code provides that the Court may order the appointment of a trustee at any time after the commencement of the case but prior to confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing. 11 U.S.C. § 1104(a). This provision sets forth two grounds for the appointment of a trustee:

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor ...; or
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . . .
> 11 U.S.C. § 1104(a)(1),(2).[4]

18. The Bankruptcy Code does not define what constitutes "cause." Rather, it provides an illustrative, but not exhaustive, list of what grounds can be cause. As a result, cause for

---

[4] Although a number of courts have held that grounds for the appointment of a trustee must be established by "clear and convincing" evidence, those courts typically rely on decisions pre-dating the Supreme Court's ruling in *Grogan v. Garner,* 498 U.S. 279, 286 (1991). *See, e.g., In re G-1 Holdings, Inc.,* 385 F.3d 313 (3d Cir. 2004) (relying on *In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1989)). In *Grogan*, the Court ruled that when Congress does not specify the burden of proof in the Bankruptcy Code, the burden should generally be preponderance of the evidence: Congressional "silence is inconsistent with the view that Congress intended to require a special, heightened standard of proof." 489 U.S. at 286. Thus, the better view—and one adopted in more recent cases—is that *Grogan* applies and motions to appoint a trustee are governed by a preponderance of the evidence standard. *See In re Keeley and Grabanski Land P'ship*, No. 11-6020, 2011 WL 3890316 (8th Cir. B.A.P. Sept. 6, 2011); *Tradex Corp. v. Morse,* 339 B.R. 823, 829-32 (D. Mass. 2006).

appointment of a trustee can be something other than the specific listing provided in section 1104(a)(1). 11 U.S.C. § 102(e) ("includes" and "including" not limiting). Moreover, subsection 1104(a)(2) provides the court with "particularly wide discretion" to appoint a trustee even absent wrongdoing or mismanagement. *In re Bellevue Place Associates,* 171 B.R. 615, 623 (N.D. Ill. 1994); *accord In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988).

19. In determining whether a trustee is in the interests of the estates, creditors, and equity security holders, section 1104(a)(2) does not limit the court's consideration only to the interests of creditors who are most likely to receive a distribution from the estate.

20. Although courts apply a presumption that a debtor should remain in possession, they do so "based on the notion that the debtor is generally best equipped to oversee the company's reorganization." *Tradex Corp. v. Morse,* 339 B.R. 823, 830 (D. Mass. 2006). Here, Debtors intend a quick sale and not a reorganization. *See* Sale Procedures Order entered Sept. 28, 2011, Docket No. 167. Thus, any such presumption, even if appropriate in other circumstances, is inappropriate here. *See Petit v. New England Mortg. Servs., Inc.*, 182 B.R. 64, 69 n.7 (D. Me. 1995) (no presumption applied where individual chapter 11 debtor had no business requiring day-to-day operations to generate profits).

## ARGUMENT

21. Transparency and disclosure are the linchpins of the bankruptcy system. A debtor-in-possession has a duty to inform creditors, the United States Trustee, and the court about its finances and the circumstances leading to its bankruptcy. "One of the most fundamental and crucial duties of a debtor-in-possession upon the filing of a Chapter 11 petition is to keep the Court and creditors informed about the nature, status and condition of the business undergoing reorganization." *Tradex,*

6

339 B.R. at 833 (quoting *In re Savino Oil & Heating Co.*, 99 B.R. 518, 524 (Bankr. E.D.N.Y. 1989)).

22. Thus, at the outset of a case, the management of a debtor-in-possession must meet with the United States Trustee at an initial debtor interview and must submit to questioning under oath at the Section 341 meeting. *See* 11 U.S.C. § 343; *see also* 11 U.S.C. § 1112(b)(4)(H) (failure to timely provide information to the United States Trustee is grounds for conversion, dismissal, or appointment of a trustee). A debtor must also file detailed schedules, statements, and a disclosure statement in connection with a chapter 11 plan. *See* 11 U.S.C. §§ 521, 1125. "These disclosure requirements are crucial to the effective functioning of the federal bankruptcy system." *In re Ryan Operations G.P.*, 81 F.3d 355, 362 (3d Cir. 1996); *see also In re Alterra Healthcare Corp.*, 353 B.R. 66, 73 (D. Del. 2006) ("[d]uring a chapter 11 reorganization, a debtor's affairs are an open book . . . .").

23. Mr. Harrison's and Mr. Stover's refusal to testify about the Debtors' finances and circumstances resulting in bankruptcy, as well as Mr. Schwartz's refusal to answer the United States Trustee's question about the Debtors' contracts, cannot be reconciled with the broad duty of disclosure that the Bankruptcy Code imposes on the management of every debtor-in-possession. Such topics lie at the core of the information that debtors and debtors-in-possession must disclose. *See Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992). "[C]ourts and creditors should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs." *In re Juzwiak*, 89 F.3d 424, 428 (7th Cir. 1996). Among other questions, Mr. Harrison and Mr. Stover refused to answer the following:

- whether financial information submitted or represented to investors, creditors, and others was accurate;

- when the CEO and CFO realized the company was unprofitable;
- whether the company's unprofitability was discussed at a board meeting;
- whether the company paid management bonuses after management realized the company's poor financial condition;
- whether Solyndra has a plan to repay the loan obtained from the U.S. Government.

*See* Exhibit B, Transcript.

24. Similarly another officer, Benjamin Schwartz, declined to respond to questioning by the United States Trustee at the initial debtor interview with respect to the Debtors' prepetition contracts. The Debtors subsequently provided copies of certain contracts specifically requested by the United States Trustee but further clarification of the Debtors' contracts is still needed. Absent this information, creditors cannot independently apprise themselves of the Debtors' finances and liabilities or evaluate whether additional assets might be brought into the estate. *See In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984) (affirming denial of discharge of individual debtor based on failure to make full disclosure of allegedly worthless assets, and noting that "[c]reditors are entitled to judge for themselves what will benefit, and what will prejudice, them"). These circumstances raise serious doubt regarding the ability of Debtors' management to make the comprehensive disclosures required under the bankruptcy laws, including the preparation and verification by an officer of the Schedules and Statements and the required, sworn testimony at a meeting of creditors. *See also In re Modanlo*, 342 B.R. 238, 245-47 (D. Md. 2006) (debtor's refusal to answer certain questions at meeting of creditors based on a confidentiality agreement was one of several factors in the decision to appoint a trustee).

25. Even if the Debtors provide witnesses other than the CEO or CFO to testify at the

Section 341 meeting, the refusal by Mr. Harrison and Mr. Stover to address the Debtors' finances in other forums—as well as the limitation Mr. Schwartz placed on the scope of the initial debtor interview—raise questions about the reliability of the information Debtors would provide to their creditors from any subordinate source. Indeed, if the CEO and the CFO refuse to answer questions, then substantial questions arise regarding proper corporate governance and authority as well as a subordinate's ability and authority to testify under these circumstances.

26. This motion does not present the issue of whether management's assertion of a Fifth Amendment privilege supports the appointment of a trustee. The issue presented here is whether management's refusal to answer questions about the debtors' finances and operations prevents the Debtors' current management from properly exercising their fiduciary responsibilities.

27. Management's invocation of the Fifth Amendment does not excuse them from performing their fundamental disclosure and reporting duties under the Bankruptcy Code. Courts have not hesitated to order conversion or the appointment of trustees when a debtor's management is unwilling or unable to explain the debtor's financial condition and history based on the privilege against self-incrimination. *See In re PRS Group, Inc.*, 274 B.R. 381, 387 (Bankr. D. Del. 2001) (ordering appointment of trustee where Debtor's president invoked Fifth Amendment and refused to explain suspicious diversion of funds); *In re Vaughan*, 429 B.R. 14, 17-18 (Bankr. D.N.M. 2010) (converting chapter 11 case after debtor's principal asserted Fifth Amendment privilege 121 times during 11 U.S.C. § 341 meeting, and holding alternatively that cause also existed for appointment of a trustee); *Tradex*, 339 B.R. at 834 (affirming bankruptcy court's order appointing a trustee based on many concerns, including the principal's invocation

of the Fifth Amendment in refusing to testify at the section 341 meeting). Although each of these cases involved some indicia of wrongdoing, which the United States Trustee does not allege here, the courts nevertheless found a debtor's failure to respond to material questions incompatible with the duty of a fiduciary to act in the best interests of the estate and its creditors. "His [president's and sole shareholder's] unwillingness to testify prevents the bankruptcy court and creditors from receiving direct information regarding the ongoing management of the company from the person entrusted to act as a fiduciary." *Tradex*, 339 B.R. at 834.

28. Appointment of a trustee is also required because Debtors' management may be distracted by other pressing and serious matters. According to the Debtors, there are ongoing investigations involving Solyndra. Regardless of the outcome of any pending investigations, management will undoubtedly be distracted by them.

29. Where a debtor's existing managers are consumed by investigations or litigation, the interests of creditors and the estate are best served by an independent trustee who can devote undivided attention to the bankruptcy case. *See In re Keeley & Grabanski Land P'ship*, No. 11-6020, 2011 WL 3890316 at *10 (8th Cir. B.A.P. Sept. 6, 2011) (holding that "even if the Grabanskis were to prevail in the adversaries and other actions against them, the Grabanskis will have to focus their attention on those matters . . . the Grabanskis will not be able to effectively perform their duties as principals in the KJLP case"). Similarly, the distraction of criminal investigations is relevant to the determination of whether a trustee is in the interest of the estates. *Tradex*, 339 B.R. at 835 (affirming appointment of trustee based on, among other factors, grand jury investigation that was likely to distract management); *accord In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 n.2 (10th Cir. 1988) (noting that pendency of criminal charges against

10

debtor's principal was relevant to determination of whether to appoint trustee).

## CONCLUSION

30.     In this case, the lack of disclosures and information support the appointment of a trustee for cause and in the best interests of creditors and the estates.   In the alternative, the United States Trustee seeks conversion of the case so that a chapter 7 trustee can perform the fiduciary responsibilities on behalf of the Debtors.  11 U.S.C. § 1112(b).

WHEREFORE the United States Trustee requests that this Court issue an order granting the Motion and/or granting such other relief as this Court deems appropriate, fair and just.

Respectfully submitted,

**ROBERTA A. DeANGELIS**
**UNITED STATES TRUSTEE**


By:    /s/ Jane M. Leamy
     T. Patrick Tinker
     Assistant U.S. Trustee (FL 64874)
     Jane M. Leamy (#4113)
     Trial Attorney
     J. Caleb Boggs Federal Building
     844 King Street, Suite 2207, Lockbox
     Wilmington, DE 19801
     (302) 573-6491
     (302) 573-6497 (Fax)

Dated: September 30, 2011