## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | |
| **SOLYNDRA LLC, *et al.*,** | ) | **Case No. 11-12799 (PJW)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | **Re: Docket Nos. 91, 148 and 150** |

## VDL ENABLING TECHNOLOGIES GROUP EINDHOVEN BV'S
## OMNIBUS OBJECTION TO DEBTORS' SALE MOTIONS

VDL Enabling Technologies Group Eindhoven BV ("VDL"), by and through its undersigned counsel, hereby files this omnibus objection (the "Objection") to the above-captioned debtors' (the "Debtors") sale motions, including (1) the Motion of Solyndra LLC for an Order (A) Approving Procedures for Sale of Business Assets on Turnkey Basis; (B) Scheduling Auction and Hearing to Consider Approval of Sale and Assumption and Assignment of Certain Executory Contacts and Unexpired Leases; (C) Approving Forms of Notice; and (D) Granting Related Relief [Docket No. 91] (the "Turnkey Sale Motion"); (2) the Motion of Solyndra LLC for Entry of an Order Approving Procedures for the Sale, Transfer and Abandonment of De Minimis Assets and Sales of Inventory and Raw Materials [Docket No. 148] (the "De Minimis Asset Sale Motion"); and (3) the Motion of Solyndra LLC Pursuant to Section 105(a) and 363 of the Bankruptcy Code, for Authority to (A) Conduct an Auction for Non-Core Assets, and (B) Sell Assets to the Successful Bidder at an Auction Free and Clear of All Encumbrances [Docket No. 150] (the "Non-Core Asset Sale Motion," together with the Turnkey Sale Motion and the De Minimis Asset Sale Motion as the "Sale Motions"), as follows:

### BACKGROUND

1.     On September 6, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. On September 15, 2011, the United States Trustee appointed a statutory committee of unsecured creditors (the "Committee"). VDL sits on the Committee.

3. Since the Petition Date, the Debtors have operated their businesses and managed their assets as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4. According to the various pleadings filed by the Debtors in these cases, Solyndra LLC (the "Debtor") is a U.S. manufacturer of solar photovoltaic solar power systems specifically designed for large commercial and industrial rooftops and for certain shaded agriculture applications. The Debtor's worldwide headquarters and its manufacturing operations are located in Fremont, California (the "Fremont Facility").

5. Based in the Netherlands, VDL is a tier one contract manufacturing partner, delivering high tech capital equipment to leading OEM companies and users of advanced production lines. Among other equipment, VDL is experienced in the design and building of elongated glass tubing manufacturing equipment.

6. On or about December 11, 2009, the Debtor and VDL entered into an Equipment Design and Manufacturing Agreement (the "Agreement"), pursuant to which VDL would design, build and install two encapsulation lines with agreed upon specifications at the Debtor's Fremont Facility. Due to the confidential nature of the Agreement, VDL will seek to file the Agreement under seal. The Debtors should be in possession of a copy of the Agreement.

7. VDL proceeded to design and build the manufacturing equipment in its factory in the Netherlands, which culminated with an extensive test of the equipment. At great expense to VDL, VDL then shipped the encapsulation lines (the "Encapsulation Lines") for installation at the Freemont Facility.

8.    Certain VDL proprietary software (the "VDL Software") is necessary to operate the Encapsulation Lines. To that end, section 14.4 of the Agreement includes a nonexclusive, nontransferable software license (the "VDL Software License"), as follows:

> 14.4 <u>Software and Software License Included at No Additional Charge</u>. VDL shall license or provide fully paid licenses for all Software for the life of the Equipment, as stated herein. VDL hereby grants to [the Debtor] a nonexclusive, nontransferable, fully aid, royalty free, perpetual license (the "Software License") to use all Software on all [Debtor] Equipment, whether acquired under the terms of this Agreement or otherwise. During the applicable warranty period, VDL will provide all service for the Software at no additional charge. VDL shall include all Software Maintenance Services for all Software to [the Debtor] as part of the Maintenance Services purchased by [the Debtor]. [The Debtor] may install the Software on a backup server, database and/or operating system located at any [Debtor] facility only for use in the case of backup disaster recovery purposes by [the Debtor]. In addition, [the Debtor] may make copies of the Software for archival or backup purposes as reasonably required by [the Debtor].

9.    In addition to the Encapsulation Lines, VDL also shipped to the Freemont Facility certain VDL owned equipment including, spare parts, tools and even a machine shop in a large shipping container (collectively, the "VDL Owned Equipment"). A list of the VDL Owned Equipment is attached hereto as **Exhibit A** and incorporated by reference herein.

10.    Up to the Petition Date, VDL maintained a staff of 20-25 engineers and technicians at the Fremont Facility. The VDL Owned Equipment was used by VDL personnel at the Fremont Facility to, *inter alia*, install, calibrate and test the Encapsulation Lines and to train the Debtor's employees on the Encapsulation Lines.

11.    Prior to the Petition Date, VDL worked diligently to install and operate the Encapsulation Lines for the Debtor, eventually transferring the operation of line 1 to the Debtor.

12.    As of the Petition Date, VDL continued to operate line 2 and work on both lines using the VDL Owned Equipment.

13. As of the Petition Date, the Debtors owed VDL approximately $12.7 million (US) under the Agreement, with additional amounts due upon certain events and completion and acceptance of the Encapsulation Lines.

14. Upon the conclusion of the Agreement, it was agreed and understood that VDL would ship the VDL Owned Equipment back to its factory in the Netherlands. At no time did either of the parties intend that the VDL Owned Equipment would remain at the Freemont Facility. The VDL Owned Equipment is general purpose items that VDL typically uses to assemble and work on large scale assemblies and is not specifically designed for the manufacture of the solar panels.

15. Since the Petition Date, VDL has tried, unsuccessfully, to gain access to the Fremont Facility to retrieve the VDL Owned Equipment.

16. Meanwhile, the Debtors have filed their Sale Motions seeking, *inter alia*, to establish procedures for the sale of various types of assets and the assumption and assignment of contacts and leases.

## OBJECTION

17. VDL objects to the Sale Motions for the reasons set forth below.

18. First, VDL objects to the Sale Motions, and specifically the Turnkey Sale Motion, under Section 365(b) of the Bankruptcy Code to the extent the Debtors' seek to assume and assign the Agreement to a third party, absent payment of all amounts due VDL under the Agreement and adequate assurance that the proposed assignee can perform under the Agreement going forward. The current cure amount due VDL is $12,661,972.91, as set forth in the invoices attached hereto as **Exhibit B** and incorporated by reference herein.

19.     Second, VDL objects to the Sale Motions, and specifically the Turnkey Motion, to the extent the Debtors seek to transfer the VDL Software or the VDL Software License to a third-party without VDL's consent.

20.     Section 365(c) of the Bankruptcy Code provides that a debtor may not assume and assign an executory contract if (A) applicable nonbankruptcy law precludes assignment and (B) the non-debtor contract counterparty does not consent to assignment. See 11 U.S.C. 365(c). For an assignment of a license of intellectual property, the issue of whether applicable law prohibits assignment generally turns on whether the license is exclusive or nonexclusive. In re Golden Books Family Entertainment, Inc., 269 B.R. 311, 314 (D. Del. 2001) (collecting cases).

21.     The determination of whether a license is exclusive or nonexclusive is made from the license agreement itself. Id. ("To determine whether the Madeline Agreement is an exclusive or nonexclusive license, the court must examine the terms of the agreement itself."). Here, the agreement between VDL and the Debtor is explicitly nonexclusive.

22.     Because the VDL Software License is nonexclusive, the Debtor may not assign the license without VDL's consent. See 11 U.S.C. § 365(c)(1); see, e.g., In re Golden Books Family Entertainment, Inc., 269 B.R. at 316 ("Prevailing case law holds that nonexclusive intellectual property licenses do not give rise to ownership rights and are not assignable over the objection of the licensor."); see also, e.g., Perlman v. Catapult Entertainment, Inc. (In re Catapult Entertainment, Inc.), 165 F.3d 747, 750–51 (9th Cir. 1999) (holding that patent law renders nonexclusive patent licenses personal and non-assignable under § 365(c)(1)) (cited favorably by In re ANC Rental Corp., Inc., 277 B.R. 226, 235–36 (Bankr. D. Del. 2002) (Walrath, J.)); In re CFLC, Inc., 89 F.3d 673, 679 (9th Cir. 1996) ("Federal law holds a nonexclusive patent license to be personal and nonassignable and therefore would excuse [the non-debtor contract

counterparty] from accepting performance from, or rendering it to, anyone other than [the debtor]."); In re Patient Educ. Media, 210 B.R. 237, 240 (Bankr. S.D.N.Y. 1997) ("Ownership is the sine qua non of the right to transfer, and the copyright law distinguishes between exclusive and nonexclusive licenses. A 'transfer of copyright ownership' includes the grant of an exclusive license, but not a nonexclusive license." (citations omitted)); see generally, MacLean Assocs., Inc. v. William M. Mercer–Meidinger–Hansen, Inc., 952 F.2d 769, 778–79 (3d Cir.1991) (discussing the Copyright Act and exclusive / non-exclusive licenses in the context of an asserted license of software).

23. Accordingly, absent VDL's consent, the Debtor cannot transfer the VDL Software License and the VDL Software should be removed from any Debtor owned assets before such assets are sold and transferred to any buyers.

24. VDL also objects to the Sale Motions to the extent the Debtors seek to sell the VDL Owned Equipment. Simply stated, the VDL Owned Equipment is owned by VDL. The Debtors have no right, title or interest in the VDL Owned Equipment, it is not property of the Debtors' estates, and the Debtors are without authority to sell such equipment.

25. Finally, as of the filing of this Objection, VDL's counsel continues to investigate the circumstances surrounding the delivery and installation of the Encapsulation Lines, and whether or not, title to the Encapsulation Lines transferred from VDL to the Debtors. Upon completion of such investigation, and if appropriate, VDL shall supplement this Objection to assert title to the Encapsulation Lines on or before October 28, 2011, the deadline set for objections to the Turnkey Sale Motion.

WHEREFORE, VDL prays that the Court enter an order (a) denying the Sale Motions; and (b) granting VDL such additional relief as is just and proper.

**SAUL EWING LLP**

By: _____
Mark Minuti (No. 2659)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6840

-and-

David Dornblaser, Esquire
Law Offices of David Dornblaser
890 Hillview Court, Suite 260
Milpitas, CA 95035
(408) 209-5879

*Attorneys for VDL Enabling Technologies Group*

Dated: October 10, 2011