**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Solyndra LLC, *et al.*,[1] | ) | Case No. 11-12799 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Docket No. 176** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS TO UNITED STATES TRUSTEE'S MOTION FOR**
**ENTRY OF AN ORDER DIRECTING THE APPOINTMENT**
**OF A CHAPTER 11 TRUSTEE UNDER 11 U.S.C. § 1104**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its undersigned proposed counsel, objects to the motion of the United States Trustee ("UST") for the appointment of a chapter 11 trustee under 11 U.S.C. § 1104 (the "Trustee Motion")[2] and in support of its Objection states as follows:

**PRELIMINARY STATEMENT**

The Trustee Motion is not only premature, but based on the facts as they stand today, is not warranted in these cases. Under the present circumstances, the Committee believes that the best outcome for these estates, their creditors and taxpayers is a successful, value maximizing sale (or alternative restructuring) that results in an operating company that can re-hire terminated employees and continue to conduct business with its suppliers and vendors. The appointment of a chapter 11 trustee will not benefit the sale process or the estates. Indeed, the Trustee Motion adds to the already highly charged negative atmosphere surrounding Solyndra at a critical stage

---

[1]    The Debtors in these cases and the last four digits of each Debtor's federal taxpayer identification number are as follows: Solyndra LLC (9771) and 360 Degree Solar Holdings, Inc. (5583). The Debtors' address is 47488 Kato Road, Fremont, CA 94538.

[2]    The Trustee Motion initially sought alternative relief for conversion of these cases to cases under chapter 7. On October 7, 2011, the UST withdrew, without prejudice, the alternative relief of conversion. *See* Dkt. No. 195.

in these cases and actually may delay the sale process.   Should the process become derailed, the likelihood of recoveries is reduced substantially and the prospect of employees returning to work or creditors having a customer for their highly specialized products and technology is remote at best.  The request for appointment of a trustee must fail as a matter of law since "cause" does not exist to justify the extraordinary act of imposing a trustee on the Debtors.  Moreover, given the likely negative impact of a trustee on these cases, such appointment certainly is not "in the interests of creditors."

**<u>BACKGROUND</u>**

1.      The Debtors filed petitions for relief under chapter 11 on September 6, 2011 (the "Petition Date") and remain in possession of their property and continue to manage their business and operations pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Committee was formed on September 15, 2011, and is comprised of the following members: (a) Schott North America, Inc., (b) MGS Manufacturing Group, Inc., (c) Certified Thermoplastics Co. Inc., (d) West Valley Staffing Group, (e) Plastikon Industries, Inc., (f) VDL Enabling Technologies Group, and (g) Peter M. Kohlstadt.  On that date, the Committee selected Blank Rome LLP as its counsel and, one day later, selected BDO Consulting, a Division of BDO USA, LLP and BDO Capital Advisors, LLC, respectively, as its financial advisors and investment bankers.

3.      Almost immediately after the Debtors filed their chapter 11 petitions, the FBI appeared at the company's headquarters with search warrants and seized possession of the Debtors' books and records, which on information and belief, have since been returned to the Debtors.  In addition, a Congressional subcommittee began investigating the government backed loan to the Debtors.  As of this date, there have been no substantiated claims of any wrongdoing

2

by the Debtors. Nevertheless, the government loan to Solyndra have been the subject of highly publicized political discussion and negative press.

4.      On September 28, 2011, this Court entered an order approving bidding procedures (the "Bidding Procedures Order") in connection with the sale of substantially all of the Debtors' assets on a turnkey basis. [Dkt No. 167].  The Debtors, together with their financial advisors and investment bankers, Imperial Capital, have been actively marketing the Debtors' assets in hopes of attracting the best price for the assets on a going concern basis.

5.      The Committee raised concerns at the bidding procedures hearing that the Debtors did not have sufficient time to conduct a robust marketing process and that the truncated time period may negatively impact the outcome of a sale.  Presently, the bids are due on October 25, 2011, the auction will be held on October 28, 2011, and the sale hearing is scheduled for November 2, 2011.  While these dates have been established by Court order, the Debtors have acknowledged that they have the ability to seek more time if the circumstances warrant.

6.      On September 30, 2011, only two days after the beginning of the formal sale process established by the Bidding Procedures Order, the UST filed the Trustee Motion seeking to displace management and appoint a chapter 11 trustee.

## OBJECTION TO TRUSTEE MOTION

7.      The UST moves for the appointment of a trustee under section 1104(a), which requires the UST to show one of two grounds in support of its request.  Section 1104(a) provides in relevant part:

> (a) At any time after the commencement of the case but before confirmation of a plan…the court shall order the appointment of a trustee-
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management…
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate…"

3

11 U.S.C. § 1104(a). The UST fails to meet its heavy burden for the appointment of a trustee on either ground by clear and convincing evidence.[3] *See In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 471 (3d Cir. 1998); *Official Committee of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.*, 385 F.3d 313, 315 (3d Cir. 2004).

### A. "Cause" Does Not Exist For Appointment of A Chapter 11 Trustee

8.     First and foremost, appointing a trustee in a chapter 11 case is not the norm; in fact, it is an extraordinary step. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1989) (the appointment of a trustee "should be the exception, rather than the rule"). While some would argue that this is not a normal case – the Committee disagrees. Unfortunately, in the past several years, it is not unusual for a company in chapter 11 to be accused of wrongdoing, criticized in the press, or the subject of political debate; but that does not constitute "cause" for the extraordinary act of appointing a trustee. In fact, if that were the law, every time an allegation is made against a chapter 11 debtor, an external investigation is commenced or a senior officer asserts his or her privilege against self incrimination in a non-bankruptcy forum, a trustee would be appointed. The chapter 11 cases filed over the past several years with allegations of wrongdoing are too numerous to recite, yet chapter 11 trustees have not been appointed automatically.[4]

9.     The "cause" alleged by the UST appears to be based on the fact that the CEO and CFO asserted their Fifth Amendment privilege at the congressional hearings in September 2011,

---

[3]     In the Trustee Motion, the UST attempts to argue that appointment of a trustee is governed by a preponderance of the evidence standard. This position is contrary to 3rd Circuit law. Even if the UST were correct, the preponderance of the evidence still does not weigh in favor of granting the Trustee Motion.

[4]     *See, e.g., In re Semcrude, L.P., et al.,* Case No. 08-11525 (Del.); *In re New Century TRS Holdings, Inc., et al.,* Case No. 07-10416 (Del.); *In re Adelphia Communications Corp., et al.,* Case No. 02-41729 (S.D.N.Y.); *In re Worldcom, Inc., et al.,* Case No. 02-13533 (S.D.N.Y.); and *In re Enron Corp., et al.,* Case No. 01-16034 (S.D.N.Y.).

4

and, by implication, the UST assumes they will not be forthcoming with information to the creditors and other interested parties in these cases. Also, because the company representative at the initial debtor interview with the UST was hesitant to respond to certain questions, the UST concludes that all communication will be stifled.[5] Upon information and belief, these conclusions are not supported by the facts of these cases.

10.     To buttress the request for a chapter 11 trustee, the UST cites to several cases in which courts have considered an officer's invocation of Fifth Amendment rights as a factor in ordering the appointment of a chapter 11 trustee. A closer review of the cases cited by the UST demonstrates, however, that it was actual wrongdoing, with specific evidence by the moving party, that resulted in the downfall of management in those cases, not their assertion of the Fifth Amendment. In *Tradex Corp. v. Morse*, 339 B.R. 823 (D. Mass. 2006), relied on extensively by the UST, the court determined that "cause" existed to appoint a chapter 11 trustee when the record established (i) various "inconsistencies and inaccuracies in the § 341 process", (ii) schedules that were contradicted by filed tax returns, (iii) a series of questionable transactions regarding the debtor and affiliated entities, and (iv) a "simple" business where "there is no reason to question that a trustee can adequately perform these functions". *Id*. at 833-836. None of these key facts has even been alleged, much less proven, in these cases.

11.     The other cases cited by the UST in support of the Trustee Motion are equally inapposite. *See In re Vaughn*, 429 B.R. 14 (Bankr. D. N.M. 2010) (conversion of the case where (i) debtor was the principal in a Ponzi scheme, (ii) debtor could not explain millions of dollars in intercompany transfers, (iii) noteholders' committee approved of conversion, and (iv) the debtor was an individual with no operating business to preserve); *In re PRS Insurance Group, Inc.*, 274

---

[5]     The Committee is not in a position to respond to the UST's statements with respect to the initial debtor interview but has learned that the Debtors have offered to provide the UST with the requested information.

B.R. 381, 387 (Bankr. D. Del. 2001) (finding that appointment of chapter 11 trustee was appropriate in holding company case with no operating assets where movants demonstrated transfers of monies from subsidiaries to the principal's family, with court noting that it was not basing its decision solely on the principal's assertion of its Fifth Amendment rights); *see also In re Modanlo*, 342 B.R. 238, 244 (D. Md. 2006) (debtor's delivery of stock certificates in subsidiary to creditor in replevin action without advice of counsel or oversight by the court constitute "mismanagement" or "incompetence", leading to the appointment of a chapter 11 trustee).

12.     The Committee agrees that transparency is fundamentally important in chapter 11 cases. And thus far, the Committee believes that the Debtors have been transparent in their dealings with creditors. The Committee's advisors have met and discussed these cases with the Debtors and their advisors on several occasions. These discussions started within hours of the Committee's appointment and have continued to this day. The Debtors have provided the Committee with a substantial volume of documents in response to its requests, and the Debtors have not refused to answer any questions posed by the Committee's advisors. Thus, the UST's concern that information is being withheld and there is a lack of transparency has not been the Committee's experience in its dealings with the Debtors to date.

13.     The UST prematurely assumed that there would not be a knowledgeable, responsible company representative at the section 341(a) meeting in these cases who would testify under oath at that time. This was not a fair assumption and has since been rebutted by the Debtors' identification of two representatives that will attend the section 341(a) meeting scheduled for October 18, 2011: Mr. Ben Biernan, Vice President of Operations, and Shigeyuki

6

Hamamatsu, Vice President of Finance.[6]  The UST should give these individuals an opportunity to provide their testimony at the scheduled 341(a) meeting, rather that prognosticate that information will not be forthcoming at the upcoming meeting.

14.     Under these circumstances, at this stage in these cases, the Trustee Motion simply fails to articulate "cause" in support of a chapter 11 trustee under section 1104(a)(1).

### B.  Appointment of Chapter 11 Trustee Is Not In "The Interests Of Creditors Or Other Parties In Interest"

15.     The second basis upon which the UST seeks relief is by attempting to demonstrate that the appointment of a trustee is in the interests of creditors, any equity security holders, and other interests of the estate.  *See* 11 U.S.C. § 1104(a)(2).  The Committee submits that the UST fails to carry its burden on this ground as well.

16.     The UST suggests that current management is too distracted by pending investigations to devote appropriate attention to these cases, and, thus it follows, that the interests of creditors would be served by a change in management.  The cases cited by the UST for this position are distinguishable for a number of reasons.  First, in *In re Keely & Grabanski Land P'ship*, 2011 WL 3890316 (8th Cir. B.A.P. Sept. 6, 2011), an individual debtor and his partnership filed separate chapter 11 bankruptcy cases.  The record in the case demonstrated that the debtor's principal engaged in significant misconduct and that creditors had lost all confidence in his ability to manage the debtor's affairs, with several creditors commencing adversary proceedings against the debtor for alleged fraud.  Furthermore, there was evidence that the debtor failed to consider a substantial offer to sell some of the partnership's property which would have provided a distribution to creditors.  Thus, while the UST cites to the fact that the *Keely &*

---

[6]     It is not unusual for a debtor to advise the UST of the persons who will testify at the section 341(a) meeting a few days prior to such meeting. In this case, while the Debtors were not prepared to provide those names at the initial debtor interview, they have identified the representatives within at least 11 days of the section 341(a) meeting.

7

*Grabanski* court found that the debtor's principals would be distracted by adversary litigation as one reason for a chapter 11 trustee, there were many other factors which led to the court's conclusion. Unlike *Keely & Grabanski*, there is no evidence of fraud on the part of the Debtors' management or an unwillingness to sell assets which may maximize value for creditors. Similarly, *In re Oklahoma Refining Co.*, 838 F.2d 1133 (10th Cir. 1988) is distinguishable. The UST cites to a footnote in that decision in which the court noted that there was case law supporting the position that a debtor's efforts to manage a company can be impeded by pending criminal cases. *Id*. at 1136, fn. 2. However, that was not the key holding in the case. The court found appointment of a chapter 11 trustee appropriate based on the evidence that the debtor appeared unwilling to collect receivables due from affiliated non-debtors, and that the debtor deposited $800,000 in inventory sale proceeds into bank accounts not controlled by its lenders to prevent the lenders from offsetting those funds. By comparison, as the UST concedes, these cases lack any specific evidence of wrongdoing by Debtors' management. *See* Trustee Motion, ¶ 4.

17.     Importantly, the Committee, representing "the interests of creditors", is opposed to the appointment of a trustee. As stated previously, the best interests of creditors and the estates is to have a fulsome marketing process that results in a purchaser for the Debtors' assets that will continue to operate the business and maximize the return to creditors. Appointing a chapter 11 trustee in the midst of the sale process, with no knowledge of the business or its assets, adds no value and, in fact, may chill bidding. Any interested purchaser will likely be concerned that the appointment of a trustee at this time will be disruptive to the sale process, may result in delay as the trustee gets up to speed, and may cause essential employees to resign, thereby putting the sale in jeopardy.

8

18.     The Committee has been monitoring the sale process carefully and understands that buyers' interest in the Debtors' assets is encouraging.  As a result, the Committee and the Debtors are negotiating a brief extension of the sale timelines to enable the Debtors to continue to pursue any and all leads.  As the Court directed, the Debtors' investment banker plans to attend the international solar energy conference in mid-October and additional time for marketing should give prospective buyers attracted at the conference the opportunity to participate actively in the sale.  An extension of the timeline also will allow parties to, *inter alia*, complete due diligence, meet with management, analyze the business, arrange for financing, formulate their bid and negotiate an asset purchase agreement with the Debtors.  The Committee believes that the negotiations with the Debtors concerning the new sale timelines will be concluded in the next few days.

19.     The Committee views all of these developments as a positive step in the right direction, and submits that interjecting an unknown, *i.e.*, a chapter 11 trustee, at this crucial stage will impede the progress that has been made thus far.  It is imperative that the Debtors be permitted to pursue the sale unhindered by the imposition of a chapter 11 trustee, and particularly where the UST has not proven that "cause" exists for the appointment of a chapter 11 trustee or that appointment of a chapter 11 trustee would be in "the best interests of creditors" - which the Committee submits it would not.

137623.01600/7058627v.4

WHEREFORE, the Committee respectfully requests that the Court deny the Trustee Motion, and grant such other and further relief as is just and proper.

Dated: October 11, 2011

BLANK ROME LLP

By: ___/s/ Bonnie Glantz Fatell_____
    Bonnie Glantz Fatell (DE No. 3809)
    David W. Carickhoff (DE No. 3715)
    1201 N. Market Street, Suite 800
    Wilmington, Delaware 19801
    (302) 425-6400

    -and-

    Rocco A. Cavaliere
    The Chrysler Building
    405 Lexington Avenue
    New York, New York 10174
    (212) 885-5000

    *Proposed Counsel for the Official*
    *Committee of Unsecured Creditors*

137623.01600/7058627v.4