IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Solyndra LLC, *et al.*,[1] | ) | Case No.: Case No. 11-12799 (MFW) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**MOTION OF THE DEBTORS PURSUANT TO 11 U.S.C. § 363 FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT OF BERKELEY RESEARCH GROUP, LLC AND DESIGNATING R. TODD NEILSON AS CHIEF RESTRUCTURING OFFICER TO THE DEBTORS <u>*NUNC PRO TUNC* TO OCTOBER 6, 2011</u>**

Solyndra LLC ("Solyndra") and 360 Degree Solar Holdings, Inc. ("Holdings"), the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby submit this motion (this "Motion") for entry of an order authorizing the Debtors to employ Berkeley Research Group, LLC ("BRG") to perform restructuring services for the Debtors and designating R. Todd Neilson as Chief Restructuring Officer (the "CRO") to the Debtors pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") *nunc pro tunc* to October 6, 2011. Concurrently herewith, the Debtors have submitted a declaration of R. Todd Neilson (the "Neilson Declaration") with respect to this Motion. A copy of the Neilson Declaration is attached hereto as Exhibit A and incorporated herein by reference. In further support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Solyndra LLC (9771) and 360 Degree Solar Holdings, Inc. (5583). The Debtors' address is 47488 Kato Road, Fremont, CA 94538.

## Jurisdiction

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code.

## Background

3. On September 6, 2011 (the "Petition Date"), the Debtors commenced the above-captioned cases (the "Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and to manage their affairs as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Cases.

4. On September 15, 2011, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Cases.

5. On September 30, 2011, the Office of the United States Trustee filed a motion seeking the appointment of a chapter 11 trustee in the Cases or, alternatively, conversion of the Cases to chapter 7 of the Bankruptcy Code. The United States Trustee subsequently withdrew the alternative request to convert the Cases.

## Relief Requested

6. By this Motion, the Debtors seek to employ and retain (a) BRG to assist and perform restructuring services for the Debtors in these chapter 11 cases, and (b) R. Todd Neilson, a director with BRG, as the CRO to the Debtors, each *nunc pro tunc* to October 6, 2011, pursuant to section 363 of the Bankruptcy Code and on the terms set forth herein and in the engagement letter between the Debtors and BRG dated October 7, 2011 (the "Engagement Letter"). A copy of the Engagement Letter is attached hereto as Exhibit B and incorporated herein by reference.

7. Pursuant to the Engagement Letter, Mr. Neilson will serve as the Debtors' CRO and will effectively replace the Debtors' CEO, Brian Harrison, who left the company as scheduled on October 7, 2011. The CRO will assist the Debtors in their ongoing efforts to sell estate assets, winding-down the Debtors' operations following such sale or sales, and otherwise managing the Cases, including negotiating with parties in interest, and coordinating with the Debtors' employees and external professionals who are assisting the Debtors in the Cases.

8. In accordance with the Engagement Letter, BRG will provide staffing at various levels, if needed, to assist the CRO and guide the Debtors through the chapter 11 process. The Board of Directors of Holdings (the "Board") will have direct oversight and control over the CRO and other BRG professionals in these cases, and all officers will report to the CRO in connection with the chapter 11 process.

## Qualifications of R. Todd Neilson as CRO

9. Mr. Neilson is well-suited to provide the restructuring services required by the Debtors. Mr. Neilson helps operationally and financially distressed organizations and individuals through out-of-court workouts and chapter 11 reorganizations, and frequently acts as a court-appointed examiner or trustee. Mr. Neilson has been instrumental in a number of prominent restructurings, including:

- (a) Le-Nature's (W.D. Penn. 06-25454 (MBM)
- (b) Death Row Records, Inc. (LA 06-11205 VZ);
- (c) IT Group (DE 02-10118 MFW)
- (d) DVI, Inc. (DE 03-12656 MFW)
- (e) Adelphia Communications Corporation (SDNY 02-41729 RG)
- (f) Reed E. Slatkin (ND 01-11549 RR); and
- (g) Michael G. Tyson (S.D.N.Y. 03-41900 ALG).

## Qualifications of BRG and Scope of Services of BRG and the CRO

10. The Debtors are familiar with the professional standing and reputation of BRG. The firm has no prior relationship with the Debtors. The Debtors understand that BRG has a wealth of experience in providing advisory services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

11. Among other things, the CRO will provide assistance to the Debtors with respect to the management of the overall chapter 11 process, including the sale of the Debtors' assets for the benefit of creditors and developing an exit strategy for the Debtors in the Cases.

12.    Pursuant to the Engagement Letter, the CRO and BRG will provide such business and restructuring services as BRG and the Debtors shall deem appropriate and feasible in order to manage and advise the Debtors in the course of Cases, as set forth below:

- Preparing and reviewing possible reorganization or liquidation plans and strategic alternatives for maximizing the value of the Debtors' estates;

- Serving as the principal contact with the Debtors' creditors with respect to the Debtors' financial, operational, and reorganization matters. The CRO shall be authorized to directly communicate with parties in interest in the Cases;

- Managing and directing the Debtors' professionals in the reorganization or liquidation process and coordinating their efforts and individual work product with the representatives of the Debtors' various stakeholders consistent with the Debtors' overall reorganization or liquidation goals;

- Evaluating purchase proposals from potential parties and participating in the Debtors' sale efforts;

- Conducting an investigation and preparing a report regarding the underlying financial obligations between various claimants and the Debtors, including certain governmental entities; and

- Performing such other services in connection with the Debtors' reorganization or liquidation efforts under chapter 11, as requested from time to time by the Board of Holdings.

### **Disinterestedness**

13.    To the best of the Debtors' knowledge and as disclosed herein and in the Neilson Declaration, (a) BRG and Mr. Neilson are "disinterested" within the meaning of section 101(14) of the Bankruptcy Code, and hold no interest adverse to the Debtors or their estates with respect to the matters as to which BRG and Mr. Neilson are to be employed and (b) neither BRG or Mr. Neilson have a connection to the Debtors, their creditors, or related parties except as disclosed in the Neilson Declaration.

14. Specifically, BRG and Mr. Neilson (a) are not creditors, equity security holders, or insiders of the Debtors, (b) are not and were not, within the two years before the Petition Date, directors, officers, or employees of the Debtors, and (c) do not have an interest materially adverse to the interest of the estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors.

15. Notwithstanding the efforts described in the Neilson Declaration to identify and disclose BRG's connections with any parties in interest in the Cases, because the Debtors are large enterprises, BRG is unable to state with certainty that every client relationship or other connection has been disclosed in the Neilson Declaration. In this regard, if BRG or Mr. Neilson discovers additional material information that it determines requires disclosure, BRG will file a supplemental disclosure with the Court.

**Compensation Terms**

16. BRG and the Debtors have entered into the Engagement Letter to govern the relationship between them. BRG has agreed to provide the CRO and other professionals all of whom have a wide range of skills and abilities related to this type of assignment. With respect to the CRO and the staff who will be assisting the CRO, BRG will be compensated at the following hourly rates:

| Professional | Rate Per Hour |
|---|---|
| Directors | $595 – 770 |
| Managing Consultant | $345 - 455 |
| Consultant | $280 - 340 |
| Associate | $235 - $275 |
| Para-Professionals | $100 - 170 |

17. In accordance with the normal billing practices of BRG, these hourly billing rates are revised periodically in the ordinary course of BRG's business. Because neither BRG, nor the CRO, are being employed as professionals under section 327 of the Bankruptcy Code such that they would be subject to the compensation requirements of sections 330 and 331 of the Bankruptcy Code, all fees and expenses will be payable monthly to BRG without the need for BRG to file fee applications with the Bankruptcy Court. BRG will, however, file quarterly statements of its fees and expenses and parties in interest shall have the right to object to fees paid within twenty-one (21) days following the filing of such quarterly reports.

18. The Debtors shall also pay directly or reimburse BRG upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment by BRG in providing the services as outlined herein.

19. The CRO and BRG anticipate that their total compensation through the confirmation date of a chapter 11 plan will be approximately between $900,000 to $1,100,000. The CRO and BRG will seek the approval of the Board prior to exceeding $1,100,000.

### Indemnification

20. The Engagement Letter contains the following indemnification provision which is generally consistent with indemnities previously approved in this district and will be subject to standard procedures set forth in the proposed form of order approving this Motion:

> Except for claims of willful misconduct and gross negligence, Client [the Debtors] agrees to indemnify, defend and hold harmless CRO and BRG and any member, principal, employee or agent thereof, from any and all claims, liabilities, obligations, governmental penalties, fines and causes of action, and all associated damages, costs, fees, and expenses (including attorney and professional fees and costs, and expenses associated with enforcing this provision), of whatsoever nature including injury to or death of any person or damages to or destruction of any property, resulting from any act or omission, or any breach of this Agreement by CRO or BRG or of their representations, warranties and covenants under this Agreement. CRO and/or BRG will promptly notify Client of any indemnifiable claim. Client may direct and CRO and BRG may participate in any defense of such claim, and CRO and BRG will cooperate in such defense on the condition that Client reimburses CRO's and BRG's costs thereof. No such claims may be settled or compromised by Client in any way without the prior written consent of CRO or BRG, as the case may be. Client's obligation to indemnify and defend CRO and BRG shall survive the cancellation, expiration, or termination of this Agreement, or the engagement which is the subject of this Agreement for any reason.

21. Finally, BRG has agreed that the Court shall hear all disputes arising under this engagement so long as the Debtors' cases are pending and thereafter shall be addressed through the dispute resolution procedures set forth in the Engagement Letter.

## Authority for the Relief Requested

22. The Debtors request that the Court authorize the employment and indemnification of the BRG and the CRO *nunc pro tunc* to October 6, 2011 pursuant to the terms of the Engagement Letter, in the ordinary course of business.

23. Section 363(c) of the Bankruptcy Code authorizes the Debtors to enter into certain transactions and use property of the estate in the ordinary course of business. The retention of interim corporate officers and other temporary employees is proper under section 363 of the Bankruptcy Code. This Court and others in this district have regularly authorized

DOCS_SF:78504.3 80368-002

retention of officers, including restructuring officers, utilizing Bankruptcy Code section 363. *See In re Point Blank, et al.*, Case No. 10-11255 (PJW) (Bankr. D. Del. May 13, 2010); *In re Washington Mutual, Inc., et al.*, Case No. 08-12229 (MFW) (Bankr. D. Del. November 7, 2008); *In re Accredited Home Lenders Holding Co.*, Case No. 09-11516 (MFW) (Bankr. D. Del. July 2, 2009); *In re CB Holdings Corp., et al.*, Case No. 10-13683 (MFW) (Bankr. D. Del. January 10, 2011); *In re DHP Holdings II Corp., et al.*, Case No. 08-13422 (MFW) (Bankr. D. Del. April 28, 2009); *In re Filene's Basement, et al.*, Case No. 09-11525 (MFW) (Bankr. D. Del. May 26, 2009); *In re Fleming Companies, Inc., et al.*, Case No. 03-10945 (MFW) (Bankr. D. Del. June 4, 2003); *In re Flying J, et al.*, Case No. 08-13384 (MFW) (Bankr. D. Del. April 3, 2009); *In re Harry & David*, Case No. 11-10884 (MFW) (Bankr. D. Del. April 27, 2011); *In re Universal Building Products, Inc.*, Case No. 10-12453 (MFW) (Bankr. D. Del. August 23, 2010); *In re Western Nonwovens, et al.*, Case No. 08-11435 (PJW) (Bankr. D. Del. August 4, 2008); *In re Mortgage Lenders Network USA, Inc.*, Case No. 07-10146 (PJW) (Bankr. D. Del. February 28, 2007); *In re Global Home Products, LLC*, Case No. 06-10340 (KG) (Bankr. D. Del. May 4, 2006); *In re Meridian Automotive Systems-Composite Operations, Inc., et al.*, Case No. 05-11168 (MFW) (Bankr. D. Del. July 19, 2005); *In re Cable & Wireless USA, Inc.*, Case No. 03-13711 (KJC) (Bankr. D. Del. Jan. 16, 2004).

24. Once a debtor articulates a valid business justification, "the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992)

9

(quoting *Smith v. VanGorkom*, 488 A.2d 858, 872 (Del. 1985). The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. *In re Integrated Resources, Inc.,* 147 B.R. 650- 656 (S.D.N.Y. 1992) (quoting *Smith v. VanGordom* 488 A.2d 858, 872 (Del. 1985)); *In re Johns-Manville Corp.,* 60 B.R. 612, 615 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.")

25. The Debtors submit that the employment of BRG and Mr. Neilson under the terms of the Engagement Letter would inure to the benefit of the Debtors' estates and their creditors. Moreover, both BRG and Mr. Neilson are clearly qualified for the positions for which they are being employed. The Debtors have determined that the compensation terms of the Engagement Letter are within the range for senior executive officers employed with companies of comparable size, value and reputation. Accordingly, the Debtors' decision to enter into the Engagement Letter reflects an exercise of the Debtors' sound business judgment.

## Notice

26. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the Debtors' prepetition and postpetition secured lenders; (iii) the Official Committee of Unsecured Creditors; and (iv) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

DOCS_SF:78504.3 80368-002

## No Prior Request

27. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested herein and such other and further relief as the Court deems just and proper.

DOCS_SF:78504.3 80368-002

Dated: October 11, 2011

          **Solyndra LLC and**
          **360 Degree Solar Holdings, Inc.**

          By: _____
               Benjamin Bierman
          Title: Executive Vice President,
                 Operations and Engineering

PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski (CA Bar No. 90073)
Debra I. Grassgreen (CA Bar No. 169978)
Bruce Grohsgal (DE Bar No. 3583)
Maxim B. Litvak (CA Bar No. 215852)
919 North Market Street, Seventeenth Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail:     rpachulski@pszjlaw.com
             dgrassgreen@pszjlaw.com
             bgrohsgal@pszjlaw.com
             mlitvak@pszjlaw.com

Counsel to Debtors and Debtors in Possession