IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Solyndra LLC, et al.,[1] | ) | Case No.: 11-12799 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**DECLARATION OF SHIG HAMAMATSU IN SUPPORT OF THE DEBTORS'
OPPOSITION TO THE UNITED STATES TRUSTEE'S MOTION FOR ENTRY
OF AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11
TRUSTEE UNDER 11 U.S.C. SECTION 1104 OR, IN THE ALTERNATIVE,
<u>CONVERSION OF THE CASE TO CHAPTER 7 UNDER 11 U.S.C. SECTION 1112(B)</u>**

Shig Hamamatsu, under penalty of perjury, deposes and says:

1. This Declaration is submitted in support of the opposition (the "<u>Opposition</u>") of Solyndra LLC and 360 Degree Solar Holdings, Inc., the above-captioned debtors and debtors in possession (together, the "<u>Debtors</u>"), to the motion filed by the Office of United States Trustee to appoint a chapter 11 trustee in these cases or, alternatively, to convert these cases to chapter 7 under the Bankruptcy Code. The facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify thereto. Each of the Debtors, as they were created and taking into account any name changes, are referred to herein together or separately, as the context may require, as the "Company." Capitalized terms not defined herein shall have the meanings set forth in the Opposition.

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Solyndra LLC (9771) and 360 Degree Solar Holdings, Inc. (5583). The Debtors' address is 47488 Kato Road, Fremont, CA 94538.

DOCS_SF:78479.5 80368-002

2. I am the Vice President of Finance for the Company. I have been employed with the Company since February 2008.

3. In my capacity as Vice President of Finance, I am generally familiar with, and am responsible for, many aspects of the Company's internal finance functions, including compilation of financial projections and budgeting, financial reporting (including closing of the Company's books and records and revenue regonition), accounts payable, working capital management, government financial compliance, banking relationships, sales support, and tax. Prior to the Company's lay-offs on August 31, 2011, I had thirty-three direct and indirect subordinates working under my supervision. I report directly to the Company's Chief Financial Officer.

4. In my capacity as Vice President of Finance, I have significant experience and familiarity with the Company's assets and liabilities. Specifically, I have been charged with the task of coordinating the Company's preparation of its schedules of assets and liabilities and statements of financial affairs, which is currently in process.

5. During the course of these cases, I have been involved in many aspects of the Company's finance functions, including responding to inquiries from the Company's bankruptcy professionals and creditor constituents, coordinating with the Company's banking relationships, managing the Company's liquidity, and providing input on the Company's financial projections and budgeting.

6. Among other things, in connection with governmental financial compliance, I prepared weekly reports to be provided to the Department of Energy, from

2

November 2010 through August 2011, called the "Solyndra Weekly Dashboard." These reports set forth, among other things, weekly operational/financial performance showing actual production output, customer shipments, cash balances, and accounts payable balances. These reports also included information on expected customer shipments. These reports were in a format that was specifically requested by the DOE at a meeting I attended in October 2010.

7. Based on the foregoing, I have extensive experience and familiarity with most aspects of the Company's finances. I am ready, willing, able and intend to testify on behalf of the Company at the creditors' meeting currently scheduled for October 18, 2011 without invoking my Fifth Amendment rights.

8. In June 2010, in order to meet Holdings' additional working capital needs, Holdings raised an additional $175 million in convertible debt (the "Notes"). The Notes were secured by substantially all of the assets of Fab 1 and other personal property of Holdings, including intellectual property.

9. In February 2011, the Debtors' investors and creditors agreed to the a global out-of-court restructuring (the "February Restructuring") summarized as follows:

- The Company received a new $75 million loan from private investors ("the Tranche A Debt") with a liquidation priority over secured debt;

- The assets of Holdings (including the Fab 1 assets and the Debtors' intellectual property) were transferred to Solyndra (resulting in the consolidation of Fab 1 and Fab 2) to secure the new Tranche A Debt as well as the DOE Loan which was previously only secured by assets of Fab 2 and did not include the Company's intellectual property;

3

- The DOE Loan was split into two tranches: Tranche B and Tranche D with Tranche D and Tranche B having a first priority security interest in all assets of the Combined Company;

- The Notes were exchanged for Tranche E debt,

- All preferred stock was converted to common equity; and

- The DOE obtained the right to have an observer attend all board meetings of the Company and to receive all board materials.

10. As a result of the February Restructuring, all Fab 1 and Fab 2 assets, including the ownership of the intellectual property, were consolidated into Solyndra with that entity becoming obligated on the following four tranches of secured debt:

| | |
|---|---|
| Tranche A Secured Debt | $69 million drawn/$75 million committed |
| Tranche B Secured Debt (DOE) | $114 million drawn/$150 million committed |
| Tranche D Secured Debt (DOE) | $385 million |
| Tranche E Secured Debt | $187 million |
| **Total:** | $783 million |

11. Thereafter, in response to foreign government subsidies and aggressive competition, the Company was forced to reduce prices to remain competitive at the same time as it was ramping production to reduce its per unit costs. In addition, the reduction or elimination of governmental subsidies and incentives for the purchase of solar energy, particularly in Germany, Italy and France, negatively impacted the availability of capital for prospective customers, further reducing demand for the Company's panels. Finally, the Company's ability to timely collect on its accounts receivables was negatively impacted as foreign competitors offered extended payment terms, resulting in the Company's customers refusing to honor their previously agreed payment terms.

12. Although the February Restructuring provided for a commitment of an incremental $75 million, it left the Company with more than $783 million in senior secured debt

4

and the need to raise further incremental capital to fund operations until the Company could generate positive cash flow from operations.

13. In order to provide near term liquidity during June and July of 2011, the Company sold accounts receivable and inventory to certain investors.

14. Unfortunately, since the February Restructuring, the decline in solar panel pricing accelerated as Chinese companies flooded the market with inexpensive panels and Europe's deepening economic crisis reduced its demands. In early August, the Company and its creditors undertook negotiations regarding a further restructuring that would allow the Company to attract the necessary new investment. Ultimately, the parties were unable to agree upon terms of incremental financing necessary to accomplish an overall restructuring.

15. I have had primary responsibility for responding to creditor information requests. In that regard, the Debtors have promptly and diligently responded to numerous inquiries for documents and information from (a) the UST, (b) the DIP Financing and Tranche A lenders, (c) the Committee and its proposed advisor, BDO Seidman, (d) the U.S. Department of Justice acting on behalf of the DOE and its advisor, Lazard Freres & Co., and (e) other creditor constituents.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 12 day of October 2011.

Shig Hamamatsu

5

DOCS_SF:78479.5 80368-002