# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Solyndra LLC, *et al.*,[1] | ) | Case No.: 11-12799 (MFW) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Requested Hearing Date: November 22, 2011, 2011 at 4:00 p.m. (ET)**
**Requested Objection Deadline: November 18, 2011, 2011 at 4:00 p.m. (ET)**

## MOTION OF SOLYNDRA LLC PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE, FOR AUTHORITY TO (A) CONDUCT A SUPPLEMENTAL AUCTION FOR ADDITIONAL NON-CORE ASSETS, (B) SELL ASSETS TO THE SUCCESSFUL BIDDERS AT AN AUCTION FREE AND CLEAR OF ALL ENCUMBRANCES, AND (C) EXPAND RETENTION OF HERITAGE GLOBAL PARTNERS AS AUCTIONEER AND SALES AGENT

Solyndra LLC ("Solyndra"), one of the above captioned debtors and debtors in possession, along with its affiliate 360 Degree Holdings, Inc. (collectively, the "Debtors"), by and through its undersigned counsel, files this motion (the "Motion") for entry of an order, in the form annexed hereto as **Exhibit A**, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing Solyndra to (A) conduct a supplemental auction (the "Supplemental Auction") for additional non-core assets not sold at the prior auction and that are not necessary to conduct and run its business, substantially as described in **Exhibit B** hereto (collectively, the "Additional Non-Core Assets"), (B) sell the Additional Non-Core Assets to the successful bidder(s) at an auction free and clear of all encumbrances in accordance with the auction procedures described herein, and (C) expand the existing retention of Heritage Global Partners ("HGP") as Solyndra's auctioneer and sales agent to conduct the Supplemental Auction

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Solyndra LLC (9771) and 360 Degree Solar Holdings, Inc. (5583). The Debtors' address is 47488 Kato Road, Fremont, CA 94538.

on the same terms as described in the *Order Under Section 327(a) and 328 of the Bankruptcy Code, Rules 2014 and 6005 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 Authorizing Employment and Retention of Heritage Global Partners as Sales Agent and Auctioneer to the Debtors and Debtors in Possession Nunc Pro Tunc to September 19, 2011* (the "HGP Retention Order") [Docket No. 241], as modified by this Motion. In support of the Motion, Solyndra respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      On November 2 and 3, 2011 (the "November Auction"), Solyndra conducted an auction of certain of their non-core assets that were not necessary to the operation of its business (the "Non-Core Assets") pursuant to the *Order Granting Motion of Solyndra LLC Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Authorizing Them to (A) Conduct Auction for Non-Core Assets, and (B) Sell Such Assets to the Successful Bidders at an Auction Free and Clear of All Encumbrances* [Docket No. 260] (the "Non-Core Auction Procedures Order") and the HGP Retention Order. As set forth in the *Notice of Auction Results and Auction Report* filed with the Court on November 5, 2011 [Docket No. 310], Solyndra generated over $6.2 million i from the proposed sale of the Non-Core Assets, subject to final approval by this Court, pursuant to the auction procedures set forth in the Non-Core Auction Procedures Order.

2.      The results of the November Auction exceeded expectations . 3,500 buyers registered to participate at the November Auction and Solyndra received higher-than-expected offers on several of the Non-Core Assets. Thus, in spite of the large amount of solar

2

manufacturing equipment already on the market and the removal of certain Non-Core Assets

from the November Auction by the request of certain parties, Solyndra was able to generate over

$1.2 million more than previously estimated.

3.    In light of the success of the sale of the Non-Core Assets at the November

Auction, Solyndra seeks authority to sell the Additional Non-Core Assets[2] at a Supplemental

Auction commencing on December 7, 2011 at 9:00 a.m. Prevailing Pacific Time.

## JURISDICTION

4.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases

and this Motion in this district is proper pursuant to 28 U.S,C. §§ 1408 and 1409. The bases for

the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Rules 6004(h)

and 6005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule

6005-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware

(the "Local Rules").

## RELIEF REQUESTED

5.    By this Motion, Solyndra seeks entry of an order (the "Order"), in the

form annexed hereto as **Exhibit A**, (a) authorizing Solyndra to conduct the Auction for the

Additional Non-Core Assets; (b) authorizing Solyndra to sell the Additional Non-Core Assets to

the successful bidders at an Auction free and clear of all Encumbrances (defined below); and (c)

approving the Auction Procedures. The Additional Non-Core Assets contain a number of assets

---

[2] The Additional Non-Core Assets include the items set forth on **Exhibit B**. Solyndra reserves the right to supplement the list of Additional Non-Core Assets in its discretion.

that were not purchased at the November Auction as well as other assets that were not marketed for sale at the November Auction, but which Solyndra has determined are not necessarily for the operation of its business.

6. In addition, Solyndra seeks to expand the employment of HGP to conduct the Supplemental Auction on the same terms as those provided in the HGP Retention Order, except that Solyndra shall not be obligated to reimburse HGP for any advertising and out-of-pocket costs beyond the $40,000 cap on such costs previously approved by the Court. Solyndra shall remit the same 5% commission from the sales of the Additional Non-Core Assets to HGP as was approved under the HGP Retention Order. HGP shall be entitled to payment of the same 15% buyer's premium from the sales of the Additional Non-Core Assets premium under the terms of the HGP Retention Order. The other provisions of the HGP Retention Order shall remain applicable to the sale of the Additional Non-Core Assets and the Supplemental Auction.

## CASE BACKGROUND

7. On September 6, 2011 (the "Petition Date"), each of the Debtors commenced voluntary cases (the "Chapter 11 Cases") under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession as authorized by sections 1107(a) and 1108 of the Bankruptcy Code.

8. The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the *Declaration of W.G. Stover, Jr., Senior Vice President and Chief Financial Officer, in Support of First Day Motions* (the "Stover Declaration") filed on the Petition Date and incorporated herein by reference.

4

# THE DEBTORS' BUSINESS

9.      Solyndra is a U.S. manufacturer of solar photovoltaic ("PV") solar power systems specifically designed for large commercial and industrial rooftops and for certain shaded agriculture applications. The Debtors' worldwide headquarters and its manufacturing operations are located in Fremont, California. Solyndra's innovative cylindrical solar PV panels are highly differentiated and unique in the PV industry. Unlike conventional flat solar panels, Solyndra's panels are a series of cylindrical modules connected to form a panel. As a result of the form factor, Solyndra panels require no ballast, tilting, or roof penetration and weigh approximately one-half of other solar panels per rooftop unit of area. In addition, Solyndra's current high-volume solar PV panels require no tools for installation and can be installed more quickly than conventional solar panels, resulting in an installation cost substantially below that of conventional solar panels. Solyndra manufactured all of its products in the United States with the support of a well-developed domestic supply chain.

10.      Prior to the lay-off of substantially all of the Solyndra workforce that occurred on August 31, 2011, Solyndra employed approximately 968 full time employees and 211 temporary employees.

11.      Solyndra has sold more than 500,000 of its panels since 2008 and has generated cumulative sales of over $250 million. Solyndra panels are estimated to be installed on more than 1,000 commercial and industrial roofs in 20 countries. Solyndra sells three primary types of solar panels: (i) 100 Series; (ii) 150 Series for higher power density; and (iii) 200 Series. In addition, the Company developed new mounting solutions that allow some of the Solyndra panels to be used in new situations: these solutions include (a) Elevated Shade

5

Structure (aka "Greenhouse") mounts, announced in February 2011; (b) mounts for metal roofs, announced in June 2011; and (c) an "Extreme Wind Solution", allowing for deployment of panels in areas with winds up to 180 miles per hour, announced in August 2011. The 100 Series is Solyndra's original PV system composed of panels and mounting hardware for low-slope, commercial rooftops. The 200 Series is Solyndra's second generation PV system, which has an enhanced form factor over the 100 Series thereby increasing its Watt peak performance, and requires no tools for installation. The 150 Series is a hybrid product, using the advanced PV modules of the 200 Series, but the existing mounting solution of the 100 Series.

12. For the fiscal year ended January 1, 2011, Solyndra had annual revenues of approximately $142 million and incurred a net loss of approximately $329 million. As of the year ended January 1, 2011, Solyndra had assets with a book value of approximately $859 million and liabilities with a book value of approximately $749 million.

13. Solyndra is actively engaged in efforts to effectuate a sale of its business to a "turnkey" buyer who would acquire all or substantially all of its core assets (the "Core Assets") and business as a going concern (the "Turnkey Sale"). Solyndra believes that pursuing a sale on a turnkey basis offers the best chance for it to maximize the value of its assets and to reemploy certain of the employees who were terminated prior to the commencement of the Chapter 11 Cases. Solyndra believes that a Turnkey Sale would yield a far greater return to creditors than a piecemeal liquidation of Solyndra's assets. The Non-Core Assets sold at the November Auction and the Additional Non-Core Assets that are the subject of this Motion are

6

not the subject of the Turnkey Sale and are unrelated to the operation of Solyndra as a going concern.

## THE AUCTION PROCEDURES

14.     To facilitate the Supplemental Auction, the Debtors propose the implementation and approval of the following Auction Procedures:

(a)     Assets.  The Supplemental Auction will include all Additional Non-Core Assets as substantially set forth on **Exhibit A** hereto.

(b)     Pricing.  The Supplemental Auction will be conducted on an asset-by-asset basis or in lots or combinations of lots as determined by Solyndra and HGP in their discretion.  HGP, in consultation with Solyndra, will set the initial bid on each Additional Non-Core Asset or lot of Additional Non-Core Assets.

(c)     Participation Requirements.  Any person that wishes to participate in the Supplemental Auction must become a "Qualified Bidder" to the extent not previously qualified in connection with the November Auction.  As a prerequisite to becoming a Qualified Bidder, a potential Qualified Bidder must deliver to the satisfaction of Solyndra:

(i)     A list of Additional Non-Core Asset(s) on which the bidder seeks to bid; and

(ii)     Sufficient information, as requested by Solyndra, to allow Solyndra to determine that the potential Qualified Bidder has the financial wherewithal and any required authorizations to close the sale, including without limitation, such entity's current audited (if applicable) financial statements and a good faith, cash deposit (the amount of which shall be set by Solyndra in consultation with HGP) (the "Good Faith Deposit").

(d)     Supplemental Auction:  The Supplemental Auction shall commence on-line commencing on December 7, 2011 at 9:00 a.m. (prevailing Pacific Time) and continue to the extent necessary to sell the Additional Non-Core Assets in Solyndra's discretion ("Supplemental Auction Period") the Supplemental Auction shall by administered by HGP.  The Supplemental Auction shall be conducted over the Internet using webcast technology.  Only Qualified Bidders will be permitted to participate in the

7

Supplemental Auction. The Supplemental Auction shall be conducted on the following terms:

(i)     To the extent not previously done in connection with the November Auction, in order to participate in the Supplemental Auction, each Qualified Bidder shall, to Solyndra's satisfaction, register its acknowledgement of the Supplemental Auction terms (which shall include a statement that such Qualified Bidders do not have any connection to the Debtors).

(ii)    Each Additional Non-Core Asset, lot of Additional Non-Core Assets or combinations of such lots will be Supplemental Auctioned either separately or in lots determined by HGP and Solyndra at the Supplemental Auction. During the Supplemental Auction Period, bidding shall begin at an amount set by Solyndra and HGP and subsequently continue in minimum bid increments of no less than 5% of the suggested purchase price.

(iii)   None of the bids may contain any financing, due diligence or "material adverse change" contingencies and the bid of any Successful Bidder will be binding whether or not (a) the Successful Bidder has obtained financing or completed its due diligence investigation, or (b) a "material adverse change" has occurred.

(iv)    <u>Pre-Supplemental Auction Bidding</u>. All bidding for the Additional Non-Core Assets will occur at the Supplemental Auction. Notwithstanding the foregoing, a Qualified Bidder shall be permitted to submit a bid to HGP prior to the Supplemental Auction and designate HGP as its proxy to make such a bid on its behalf at the Supplemental Auction.

(v)     The Supplemental Auction shall be conducted openly and all creditors will be permitted to attend.

(vi)    <u>Terms of Sale</u>. The Additional Non-Core Assets are being sold, (i) **"AS IS, WHERE IS, AND WITH ALL FAULTS AND WITH NO LICENSE,"** and the Debtors expressly disclaim all warranties, including (but not limited to) warranties of merchantability, warranties of non-infringement, and fitness for a particular purpose or use, and (ii) **"THERE IS NO WARRANTY RELATING TO QUIET ENJOYMENT, OR THE LIKE IN THE DISPOSITION OF ANY OF THE ASSETS."** Bidders are advised, and by submitting a bid each bidder is deemed

8

to acknowledge, that HGP, the Debtors and each of their respective directors, officers, managers, employees, agents, advisors and attorneys have no knowledge with respect to, and have no obligation to investigate, the merchantability or fitness for any particular purpose or use of any of the Assets. **NO WARRANTY OR REPAIR PROGRAM FOR THE ASSETS IS BEING OFFERED AS PART OF THE SALE.**

(vii) Bid(s); Backup Bid(s). Upon the conclusion of the Supplemental Auction, HGP and Solyndra may (a) identify and certify the bid or bids that constitutes the highest or best offer or offers for the Additional Non-Core Assets (each bid a "Prevailing Bid" and each person submitting such bid a "Successful Bidder") and (b) identify and certify the bid or bids that constitute the next highest or best offer or offers for the Additional Non-Core Assets (each bid a "Backup Bid" and each person submitting such a bid a "Backup Bidder"), and, in each case, notify the Successful Bidder(s) and Backup Bidder(s).

(viii) Within two (2) business days of the conclusion of the Supplemental Auction Period, Solyndra shall file with the Court the following (as described below, the "Post-Auction Disclosures"):

(1) A list of each Successful Bidder, and/or Backup Bidder, the Additional Non-Core Asset(s) purchased by such bidder, the price to be paid by each Successful Bidder for each Additional Non-Core Asset or lot(s) of Additional Non-Core Assets;

(2) A declaration of HGP stating that the Supplemental Auction was run without collusion, in good faith and at arms' length with each Successful Bidder or Backup Bidder; and

(3) A declaration from a representative of Solyndra stating that no Successful Bidder is an insider of either Debtor.

(ix) Contemporaneous with the filing of the Post-Auction Disclosures, Solyndra will serve the Post-Auction Disclosures by email and/or facsimile on: (a) counsel to AE DIP 2011, LLC, the DIP Lender, and Argonaut Ventures I, L.L.C., as the Prepetition Tranche A Representative and the Prepetition Tranche E Agent, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New

York, NY 10166, Attn: Michael A. Rosenthal (email: mrosenthal@gibsondunn.com) and Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, DE 19899, Attn: Sean M. Beach, Esq. (email: sbeach@ycst.com); (b) counsel to the U.S. Department of Energy, acting by and through the Secretary of Energy, as the Prepetition Tranche B/D Agent, U.S. Department of Justice, Civil Division, 1100 L Street NW, Room 10030, Washington, D.C. 20530, Attn: Matthew J. Troy (email: matthew.troy@usdoj.gov); (c) counsel to any Official Committee of Unsecured Creditors (the "Committee"); (d) the Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jane M. Leamy (email: jane.m.leamy@usdoj.gov); and counsel for Global Kato HG, LLC, Allen Matkins Leck Gamble Mallory & Natsis LLP, Four Embarcadero Center, 12th Floor, San Francisco, CA 94111, Attn: Michael S. Greger (email: mgreger@allenmatkins.com); and Ivan M. Gold (email: igold@allenmatkins.com) (collectively, the "Notice Parties").

(x) No earlier than two (2) business days after Solyndra files the Post- Auction Disclosures with the Court and if no timely objection is received by any of the Notice Parties prior to the expiration of such period, then Solyndra is authorized to immediately consummate the proposed sales contemplated under the Post-Auction Disclosures upon entry of an order approving such sale filed under certification of counsel.

(xi) No Successful Bid will be subject to higher and better offers. The highest cash bid at the Supplemental Auction is the Successful Bid.

(xii) All sales of Additional Non-Core Assets shall be, subject to section 363 of the Bankruptcy Code, free and clear of all third-party liens, claims, encumbrances and security interests (each an "Encumbrance" and collectively, "Encumbrances"); *provided,* that such Encumbrances shall attach to the net proceeds of the sale of such Additional Non-Core Assets with the same enforceability, validity and priority as such Encumbrances had against the Additional Non-Core Assets.

(e) Sales Commission, Buyer's Premium; Expense Reimbursement. HGP will receive a 5% commission from sale proceeds of the

Additional Non-Core Assets at Supplemental Auction (the "Sales Commission") and will also charge each Successful Bidder a buyer's premium of fifteen percent (15%) of the gross sale proceeds to be paid by such Successful Bidder pursuant to its Prevailing Bid(s) (the "Buyer's Premium"). The Successful Bidder shall be required to pay the Buyer's Premium at or prior to the closing of the sale. Neither of the Debtors' estates shall be liable for any unpaid portion of the Buyer's Premium.

(f)     Closing Deadline; Asset Removal Deadline. The sale(s) contemplated by the Successful Bid(s) shall be closed within two (2) business days after entry of the order approving the sales contemplated under the Post-Auction Disclosures as provided under section 2(d)(x) of this Order, or by such other deadline agreed to between Solyndra and the Successful Bidder(s) (the "Closing Deadline"). At the closing of the sale of any Additional Non-Core Asset, the purchaser shall (a) pay HGP with a certified check, bank check or wire transfer for the full outstanding cash balance of the purchase price, and (b) pay HGP with a certified check, bank check or wire transfer in favor of HGP for any Buyer's Premium due to HGP in accordance with these Supplemental Auction Procedures and HGP Retention Order. Each Successful Bidder's or Backup Bidder's sole remedy in the event that a sale fails to close as a result of Solyndra's refusal or inability to close shall be a refund of the monies deposited by such bidder.

Following the Closing Deadline(s), HGP shall promptly disburse to Solyndra the net Supplemental Auction proceeds owed to Solyndra less HGP's asserted Buyer's Premium, Sales Commission and Expense Reimbursement, which amounts shall be paid to HGP pursuant to further order of the Court.

Any Successful Bidder that is purchasing any Additional Non-Core Assets shall be required to remove such Additional Non-Core Assets from Solyndra's facilities immediately upon closing and, in any event, by no later than fifteen (15) days after the Supplemental Auction or by such other deadline agreed to between Solyndra and such Successful Bidder. Each Successful Bidder shall be solely responsible for any and all fees, costs and expenses associated with any purchased Additional Non-Core Assets on and immediately after the Closing Deadline, including, without limitation, any costs and expenses attributable to rent and related expenses for the period of time following the Closing Deadline (regardless of when payment of such rent became due or related expenses of Solyndra were incurred in connection with such Additional Non-Core Asset

11

following the Closing Deadline).[3]

(g)  <u>Customs and Taxes</u>. Purchasers of the Additional Non-Core
Assets shall be solely responsible for paying any customs duties
and taxes due and owing on any of the Additional Non-Core
Assets including, without limitation, any sales taxes, stamp taxes,
recording taxes or transfer taxes.

(h)  <u>Publicity</u>. HGP may distribute a prospectus (the "<u>Prospectus</u>") to
all persons who have previously shown an interest in purchasing
the Additional Non-Core Assets or whom HGP has identified as a
potential bidder. The Prospectus will include, among other things,
a listing of the Additional Non-Core Assets, the associated
suggested pricing, and a copy of the Order specifying the date and
time of the Supplemental Auction and the participation
requirements. Solyndra may, in its discretion but without any
obligation, publish a notice of the Supplemental Auction in the
national edition of *The Wall Street Journal* or similar publication.

(i)  <u>Return of Good Faith Deposit.</u> All Good Faith Deposits will be
held in a non-interest-bearing account and will be returned to any
Qualified Bidder who is not a Successful Bidder; *provided,
however,* that if a Successful Bidder fails to consummate a
transaction within five (5) days of the conclusion of the
Supplemental Auction with respect to a Successful Bid (other than
as a result of the failure of Solyndra to convey title to the
applicable Additional Non-Core Asset to the applicable Successful
Bidder), Solyndra will not have any obligation to return the Good
Faith Deposit and such Good Faith Deposit shall irrevocably
become the property of Solyndra.

(j)  <u>Additional Requirements.</u> Solyndra shall be permitted to adopt
such additional reasonable rules and procedures that will serve to
maximize the value of the Additional Non-Core Assets.

(k)  <u>Modification</u>. HGP may determine, in its business judgment, but
only following the receipt of Solyndra's consent, which bid or
bids, if any, constitute the highest or otherwise best offer(s) for the
Additional Non-Core Assets, and may reject at any time any bid
that, in HGP's discretion, but subject to Solyndra's consent, is
(a) inadequate or insufficient, (b) not in conformity with the
requirements of the Auction Procedures or the terms and
conditions of sale, or (c) contrary to the best interests of Solyndra.
At any time before or at the Supplemental Auction, and subject to
the consent of Solyndra, HGP (y) may impose such other bidding

---

[3] Nothing in this order or the asset sales shall affect or alter any respective rights and obligations of any Debtor or of any landlord
under any applicable real property lease, all such rights and obligations being expressly preserved to each respective party.

procedures and terms and conditions as it may determine are in the best interests of Solyndra and other parties in interest, and (z) may modify or amend these Supplemental Auction Procedures.

## BASIS FOR RELIEF

A.    **Applicable Legal Standards for the Supplemental Auction and the Auction Procedures**

15.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363(b) does not set forth a standard for determining when it is appropriate for a court to authorize the disposition of a debtor's assets prior to confirmation of a plan. However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon a debtor's sound business judgment. *See In re Martin,* 911 F.3d 389, 395 (3d Cir. 1996); *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 175-76 (D. Del, 1991); *In re Trans World Airlines Inc.,* No, 01-0056, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr, 2, 2001).

16.    In structuring bidding procedures, auctions and sales pursuant to section 363(b) of the Bankruptcy Code, a debtor has broad discretion to construct a transaction that, in its business judgment, will deliver the most value to the entire estate, including its creditors and all stakeholders. *See In re Quality Stores, Inc.,* 272 B.R. 643, 647 (Bankr. W.D. Mich. 2002) (noting that debtors have "wide business discretion" in selling assets under section 363); *In re Wilson Freight Co.,* 30 B.R. 971, 975 (Bankr. S.D.N.Y. 1983) (in approving a debtor's right to set a minimum price threshold at an auction conducted pursuant to section 363(b), the court noted that "the Code grants the debtor substantial discretion as to the method of conducting the

13

sale and as to negotiating and obtaining bids."); *see also In re Williams,* 152 B.R. 123, 127

(Banks. N.D. Tex. 1992) (holding that a debtor in possession has fiduciary obligations to the

entire estate).

      17.    Furthermore, a debtor's showing of a sound business purpose need not

be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed

disposition with sound business reasons." *In re Baldwin United Corp.,* 43 B.R. 888, 906

(Bankr. S.D. Ohio 1984). Whether there are sufficient business reasons to justify a transaction

depends upon the facts and circumstances of each case, *Lionel*, 722 F.2d at 1071. A sound

business purpose for the sale of a debtor's assets outside the ordinary course of business may

be found where the sale maximizes the value of the debtor's estate. *See In re Integrated*

*Resources, Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (citing *In re Atlanta Packaging Products,*

*Inc.,* 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988) ("It is a well-established principle of

bankruptcy law that the... [debtor's] duty with respect to such sales is to obtain the highest

price or greatest overall benefit possible for the estate.").

      18.    In evaluating whether a debtor has exercised sound business judgment in

the context of section 363(b), courts often scrutinize the propriety of the sale process. *See In re*

*Summit Global Logistics, Inc.,* No 08-11566, .2008 WL 819934, at *14 (Bankr. D.N.J. March 26,

2008) ("The Debtors and the Secured Lenders have proposed a transaction that is the result of a

fair and open sale process facilitated by the investment bankers that maximizes value and return

to interested parties,"); *In re Castre, Inc.,* 312 B.R. 426, 428 (Bankr. D. Colo, 2004) (citing *In re*

*Gulf States Steel Inc. of Alabama,* 285 B.R. 497 (Bankr. D. Ala. 2002) (noting that most of the

factors considered by courts for § 363(b) purposes focus on "process" issues — such as adequate procedures, proper notice to interested parties, proper market exposure and the preparation for and conduct during the auction "rather than the business rationale for why the successful bid was chosen."); *Quality Stores,* 272 B.R. at 643 ("a sale of assets is appropriate if all provisions of § 363 are followed, the bid is fair, and the sale is in the best interests of the estate and its creditors.").

19. Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a "sound business purpose" justifies the sale of assets outside the ordinary course of business; (b) whether adequate and reasonable notice has been provided to interested persons; (c) whether the debtor has obtained a fair and reasonable price; and (d) whether the parties have acted in good faith. *See Abbotts Dairies*, 788 F.2d 143 (3d Cir. 1986); *Delaware & Hudson Ry.*, 124 B.R. at 176; *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (D. Del. 1987); *In re Sovereign Estates. Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989); *In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987).

20. Section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under title 11. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *See In re Fesco Plastics Corp.,* 996 F.2d 152, 154 (7th Cir.

1993); *In re Pincus,* 280 B.R. 303, 312 (Bank. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g., In re Chinichian,* 784 F. 2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.,* 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

**B.**     **The Supplemental Auction and the Auction Procedures Should Be Approved**

      **(a)**     **A "Sound Business Purpose" Justifies the Supplemental Auction and the Sale of the Additional Non-Core Assets**

      21.     Solyndra submits that the Auction Procedures set forth herein are a sound exercise of its business judgment, which is in the best interests of its estate and all parties in interest. The Additional Non-Core Assets consist almost entirely of the same assets not sold at the November Auction, but which may generate additional proceeds for Solyndra's estate if they are separately marketed at the Supplemental Auction. Like the Non-Core Assets previously sold at the November Auction, the Additional Non-Core Assets are not related to the operation of Solyndra's core business and, therefore, are of no value to any purchaser of Solyndra's business under the Turnkey Sale. In order to continue to maintain such Additional Non-Core Assets at Solyndra's facility, Solyndra would have to expend resources on, among other things, rent, utilities, security and personnel costs. The Auction Procedures allow Solyndra to expeditiously liquidate the Additional Non-Core Assets in the most efficient and cost-effective manner.

16

22.     The Auction Procedures provide sufficient protections for Solyndra's estate. First, Solyndra developed the Supplemental Auction and the Auction Procedures in order to maximize return to its estate. Second, immediately after the Supplemental Auction, Solyndra will make the requisite disclosures to the Court and key parties, which will be required to show that (a) the Supplemental Auction was conducted in good faith, (b) no prospective purchasers are insiders of the Debtors, and (c) the Supplemental Auction complied with the Auction Procedures. In addition, Solyndra will not be permitted to close on any Successful Bid until the Post-Auction Disclosures are filed with the Court and served on the Notice Parties, and the Court has entered an order authorizing the sale of Additional Non-Core Assets.

23.     Solyndra submits that the Supplemental Auction is a sound exercise of its business judgment. At this stage of Solyndra's chapter 11 case, a fair and expedited sale process is crucial to maximizing creditor recoveries by liquidating the Additional Non-Core Assets and minimizing costs. Accordingly, Solyndra submits that the Supplemental Auction and the related procedures are in the best interests of Solyndra's estate and all parties in interest.

24.     Moreover, Solyndra believes that it will be able to build on the momentum generated from the November Auction and strike while the iron is still hot in order to maximize attendance and sales proceeds at the Supplemental Auction. These procedures are almost identical to the procedures approve in the Non-Core Auction Procedures Order, except that Solyndra will not pay any additional advertising or expense costs to HGP beyond the $40,000 cap on such expenses previously approved by the Court.

17

25.     Solyndra submits that the Supplemental Auction and Auction Procedures are designed to generate purchase prices that are fair and reasonable and the best obtainable under the circumstances. As the Supplemental Auction is being conducted based on price alone, by definition, each Successful Bid will be the highest and best price for each Additional Non-Core Asset under the circumstances.

> **(b)     All Parties Will Demonstrate That
> They Have Acted in Good Faith**

26.     Although the Court cannot prospectively find that the parties have acted in good faith, Solyndra submits that the filing of the Post-Auction Disclosures and the waiting period thereafter is a sufficient basis upon which to approve the sales if Solyndra complies with the procedures. Pursuant to *Abbotts Dairies*, 788 F.2d 143 (3d Cir. 1986), the Court and all parties in interest will have an opportunity to review the results of the Supplemental Auction and declarations regarding the Supplemental Auction process, non-collusion and good faith. Under the circumstances, Solyndra submits that this is sufficient to meet the requisite legal requirements.

**C.     To the Extent Applicable, the Sale of Encumbered Additional Non-Core
Assets Satisfies the Requirements of Section 363(f) of the Bankruptcy Code**

27.     Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if:

> (a)     such a sale is permitted under applicable non-bankruptcy law;
>
> (b)     the party asserting such a lien, claim or interest consents to such sale;

18

(c)  the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property;

(d)  the interest is the subject of a *bona fide* dispute; or

(e)  the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.

*See* 11 U.S.C. § 363(1); *Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (ED. Pa. 1988) (noting that section 363(f) is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).  Any secured creditor that fails to object to the Auction procedures can be deemed by the Court to have consented to the Auction Procedures.  Furthermore, regarding the interests of holders of Encumbrances, such interests are adequately protected by the terms of the Order.  Specifically, all Encumbrances on the Additional Non-Core Assets will attach with the same priority, enforceability and validity to the consideration paid by the applicable Successful Bidder to Solyndra as such Encumbrances currently have with respect to the Additional Non-Core Assets.

**D.    Relief From the Fourteen Day Waiting Period
Under Bankruptcy Rule 6004(h) Is Appropriate**

28.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Solyndra requests that any order approving the sale of the Additional Non-Core Assets be effective immediately by providing that the fourteen day stay under Bankruptcy Rule 6004(h) is waived.

29.    The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee

19

Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory

Committee Notes are silent as to when a court should "order otherwise" and eliminate or

reduce the fourteen day stay period, *Collier on Bankruptcy* suggests that the stay period should

be eliminated to allow a sale or other transaction to close immediately "where there has been

no objection to the procedure." 10 COLLIER ON BANKRUPTCY 15th Ed. Rev., ¶ 6064.09

(1996). Furthermore, *Collier on Bankruptcy* provides that if an objection is filed and

overruled, and the objecting party informs the court of its intent to appeal, the stay may be

reduced to the amount of time actually necessary to file such appeal. *Id.*

   30. Waiver of the Rule 6004(h) automatic stay is equally critical to the success

of the Supplemental Auction. Absent a waiver of the Rule 6004(h) automatic stay, it is likely

that many bidders will refrain from participating in the Supplemental Auction, or, in the

alternative, demand reduced purchase prices. Thus, Solyndra requests that the Court waive the

fourteen-day stay period under Bankruptcy Rule 6004(b).

   31. No previous request for the relief sought herein has been made to this or

any other Court.

**NOTICE**

   32. Notice of this Motion has been or will be given to the following parties or,

in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the

Debtors' prepetition lenders; (iii) counsel for the Committee; and (iv) those persons who have

requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The

20

Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, Solyndra respectfully requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit A**, (i) authorizing Solyndra to conduct the Supplemental Auction for the Non-Core Assets pursuant to the Auction Procedures; (ii) authorizing Solyndra to sell the Additional Non-Core Assets to the successful bidders at a Supplemental Auction free and clear of all Encumbrances; (iii) approving of the Auction Procedures, (iv) approving the expansion of the employment of HGP to conduct the Supplemental Auction on the terms set forth in the HGP Retention Order, as modified by this Motion, and (v) granting such other and further relief as the Court deems just and proper.

Dated: November __, 2011

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Bruce Grohsgal*
Richard M. Pachulski (CA Bar No. 90073)
Bruce Grohsgal (DE Bar No. 3583)
Debra I. Grassgreen (CA Bar No. 169978)
Joshua M. Fried (CA Bar No. 181541)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail:     rpachulski@pszjlaw.com
            bgrohsgal@pszjlaw.com
            dgrassgreen@pszjlaw.com
            jfried@pszjlaw.com

Attorneys for the Debtors and Debtors in Possession