# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Solyndra LLC, *et al.*, | ) | Case No. 11-12799 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Objection Deadline: November 15, 2011 at 4:00 p.m. (ET)** |
| | ) | **Hearing: November 22, 2011 at 4:00 p.m. (ET)** |

## GLOBAL KATO HG, LLC'S OBJECTION TO DEBTORS' SECOND MOTION FOR ORDER UNDER SECTION 365(A) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS (A) TO REJECT UNEXPIRED LEASE AND (B) ABANDON ANY PERSONAL PROPERTY LOCATED AT SUCH PREMISES AND FIXING A BAR DATE FOR CLAIMS OF COUNTERPARTY

Global Kato, HG, LLC ("Global"), the lessor of debtor-in-possession Solyndra, LLC (with affiliated co-debtors, "Debtors") with respect to certain real property located at 47700 Kato Road and 1055 Page Avenue, Fremont, California (the "Leased Premises"), respectfully submits its objection to *Debtors' Second Motion For Order Under Section 365(A) Of The Bankruptcy Code Authorizing The Debtors (A) To Reject Unexpired Lease And (B) Abandon Any Personal Property Located At Such Premises And Fixing A Bar Date For Claims Of Counterparty* [Docket No. 305] (the "Lease Rejection Motion"), as follows:

## I.   PRELIMINARY STATEMENT

1.   As a threshold matter, Debtors' Lease Rejection Motion seeks to reject an expired lease for the Leased Premises under which Debtors were subtenants, not the currently operative Lease (as defined below) under which Debtors occupy the Leased Premises. See *Declaration of Carol Stensrud Supporting Limited Objection to Motion of Solyndra LLC for Authority to (A) Conduct an Auction for Non-Core Assets and (B) Sell Assets to the Successful Bidders at an Auction Free and Clear of All Encumbrances*, filed October 11, 2011 [Docket No. 206] ("Stensrud October 11, 2011 Declaration") at ¶¶ 4-7 and Exhibits 1-6.

2. Assuming Debtors' Lease Rejection Motion seeks the rejection of Debtors' Lease with Global (as defined below), Global does not object to the Debtors' exercise of its business judgment to ultimately reject the Lease. Global does, however, object to the proposed November 30, 2011 Rejection Effective Date[1] because such date is unrealistic based on current facts and circumstances at the Leased Premises bearing on Debtors' ability to comply with environmental regulations relating to the closure of the facility and providing access to the Leased Premises for removal of equipment, machinery and other personal property by "Successful Buyers" under this Court's *Order Granting Motion of Solyndra, LLC Pursuant To Sections 105(a) and 363 of the Bankruptcy Code and Authorizing Them To (A) Conduct Auction For Non-Core Assets, and (B) Sell Such Assets To The Successful Bidders At An Auction Free and Clear of All Encumbrances* [Docket No. 260] ("Non-Core Auction Procedures Order") and Debtors' ability to return possession of the Leased Premises to Global on or before its self-imposed deadline of November 30, 2011. As Debtors admit in their Lease Rejection Motion, they only "**anticipate** that they will have vacated the Leased Premises on or before the November 30, 2011 Rejection Effective Date." (emphasis added). Lease Rejection Motion at ¶ 12. Rejection of the Lease should be tied to actual return of possession of the Leased Premises.

3. Debtors' Lease Rejection Motion also seeks authority for Debtors to abandon any personal property remaining on the Leased Premises on the Rejection Effective Date. No more specific description of the property to be abandoned is provided. If the Rejection Effective Date is artificially set before the hazardous materials have fully been secured or disposed of, then Debtors will be abandoning personal property at the Leased Premises in violation of applicable environmental laws. This Court should not set the Rejection Effective Date and permit abandonment of Debtors' equipment, machinery and other personal property at the Leased Premises until such time as Debtors can (1) demonstrate compliance with the City of Fremont's facility closure requirements, or (2) provide additional disclosures regarding the identity, nature

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Lease Rejection Motion.

and location of equipment and materials containing hazardous substances to be abandoned and the anticipated removal and compliance dates.

4. Debtors further seek to establish a claim bar date with respect to claims arising from rejection of the Lease thirty (30) days after entry of an order granting the relief requested by the Lease Rejection Motion (Lease Rejection Motion at ¶ 22), potentially less than thirty (30) days after the Rejection Effective Date. No factual or legal justification is offered for requiring Global to file its proof of claim in advance of the general claims bar date for unsecured creditors, which debtors are seeking to fix as January 23, 2012.

## II. FACTUAL BACKGROUND

5. On or about January 24, 2007, Global, as landlord, and Solyndra, Inc., a Delaware corporation ("Solyndra, Inc."),[2] as tenant, entered into that certain Industrial Lease (the "Industrial Lease") providing for Solyndra, Inc.'s lease of certain real property located at 47700 Kato Road and 1055 Page Avenue, Fremont, California (the "Leased Premises"). The Industrial Lease was amended by that certain First Amendment to Industrial Lease dated as of January 29, 2009 (the "First Amendment"), that certain letter agreement dated September 30, 2010 (the "Letter Agreement"), that certain Second Amendment to Industrial Lease dated as of October 29, 2010 (the "Second Amendment"), and that certain Third Amendment to Industrial Lease dated as of April 28, 2011 (the "Third Amendment") (the Industrial Lease, First Amendment, Letter Agreement, Second Amendment, and Third Amendment shall be collectively referred to herein as the "Lease"). Pursuant to a Lease Assignment and Assumption Agreement dated as of April 1, 2011, Solyndra, Inc. assigned and Solyndra, LLC assumed the Lease. The term of the Lease commenced September 30, 2011. See Stensrud October 11, 2011 Declaration at ¶¶ 4-7 and Exhibits 1-6.[3]

6. As described in the recitals to the Lease, Solyndra, Inc. formerly subleased the Leased Premises from Seagate Technology (US) Holdings, Inc. ("Seagate"). The Sublease

---

[2] According to the Debtor, Solyndra, Inc. is presently known as 360 Degree Solar Holdings, Inc., which is also a debtor in these jointly administered bankruptcy cases.
[3] To the extent the Lease is Lease is rejected, as sought by Debtors, such rejection will relate back to the petition date, as provided in Bankruptcy Code section 365(g).

Agreement with Seagate was subject to a September 16, 2003 Industrial Lease between Global and Maxtor Corporation for the Leased Premises (the "Global-Maxtor Lease"), the "Rejected Lease" described in Exhibit A to Debtors' Lease Rejection Motion. Maxtor Corporation assigned its interest in the Global-Maxtor Lease to Seagate in 2006 and Seagate subsequently subleased the Leased Premises to Solyndra, Inc. See Stensrud October 11, 2011 Declaration at ¶ 7.

7. On October 19, 2011, this Court entered its Non-Core Auction Procedures Order. On November 2, 2011 through November 4, 2011, an auction took place to sell the "Non-Core Assets" at the Leased Premises.

8. This morning, November 15, 2011, Debtors for the first time tendered the information and evidence of insurance coverage with respect to removal of equipment, machinery and other personal property by "Successful Buyers" at the Auction, as provided in Exhibit B to the Non-Core Auction Procedures Order. See accompanying Supplemental Declaration of Carol Stensrud, filed herewith.

9. There can be no serious question that hazardous materials have been stored and used at the Leased Premises (see, e.g., "Hazardous Materials Inventory Statement" previously submitted by Debtor to the City of Fremont, California Fire Department, Exhibit 8 to Stensrud October 11, 2011 Declaration). To date, Global has not received any evidence as to whether Debtors can complete compliance with the City of Fremont's facility closure requirements relating to such hazardous materials prior to the proposed November 30, 2011 Rejection Effective Date.

10. While Debtors purportedly wind down their activities at the Leased Premises in anticipation of the rejection of the Lease and provide access to third parties to remove assets sold at the Auction, Debtors' insurance coverage expires today, November 15, 2011 (see Stensrud October 11, 2011 Declaration at ¶ 8 and Exhibit 7), and evidence of replacement coverage has not been provided. See accompanying Supplemental Declaration of Carol Stensrud, filed herewith. Section 8.5.1 of the Lease requires that Debtors provide Global, at least ten (10) days prior to the expiration of existing insurance policies, with evidence of renewals or "insurance binders" evidencing the renewals of required insurance coverage.

III. **OBJECTION TO LEASE REJECTION MOTION**

   A. <u>Debtors Seek Rejection of the Wrong Lease</u>

   11. Though Section 365 of the Bankruptcy Code grants to trustees, or in this case debtors-in-possession, the right to assume or reject executory contracts and unexpired leases, such right can only be exercised on a contract or lease of the debtor. Section 365 of the Bankruptcy Code reads in pertinent part: "[T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease <u>of the debtor</u>." 11 U.S.C. § 365(a) (emphasis added). As explained above, the tenant under the lease that Debtors identified in Exhibit A of the Lease Rejection Motion was Maxtor, not Solyndra, LLC. Maxtor is not a debtor in bankruptcy. While Debtors presumably seek rejection of its current Lease with Global (as opposed to the Global-Maxtor Lease), the Lease is not what Debtors identify in Exhibit A to the Lease Rejection Motion. Thus, this Court cannot grant the Lease Rejection Motion, as presented, because it seeks rejection of a lease to which Debtors were not a party and which has already expired by its terms.

   B. <u>Even Assuming Debtors Have the Right To Reject the Lease, Rejection Should Be Linked To The Actual Return of Possession After Removal of Sold Assets and Debtors' Compliance With Environmental Regulations Is Completed</u>

   12. Section 365 of the Bankruptcy Code authorizes a debtor to reject an executory contract or lease if the rejection of such executory contract or lease is within the debtor's reasonable business judgment. 11 U.S.C. § 365. Here, the decision to reject the Lease (Lease Rejection Motion at ¶ 9) is not at issue but Debtors' proposed Rejection Effective Date of November 30, 2011 is unrealistic and contrary to existing conditions and, therefore, should not be approved by this Court.

   13. Under the Non-Core Auction Procedures Order, buyers of equipment, machinery, trade fixtures and other personal property among the Non-Core Assets weighing more than 100 pounds must provide certain information to Global before access is provided to the Premises for

removal of such property. See Exhibit B to Non-Core Auction Procedures Order at ¶ 4. To date, no such information has been provided to Global.

14.     Since the Non-Core Auction Procedures Order provides that Non-Core Assets sold at the Auction are to be removed within fifteen (15) days after the Auction (Non-Core Auction Procedures Order at ¶ 2), and the Auction concluded November 4, 2011 (see Notice of Auction Results and Auction Report, filed November 4, 2011 [Docket No. 310]), third party purchasers have only until November 19, 2011 to remove purchased property. Given Debtors' delayed transmission (only today, November 15, 2011) of post-auction disclosures (identity of Successful Buyer seeking access to Premises, their contractors and license information, evidence of insurance, permits, etc.), as a practical matter, it is unlikely that the property removal process can be timely completed consistent with the Non-Core Auction Procedures Order. Indeed, given the intervention of the Thanksgiving Holiday, it is increasingly unlikely that the removal of property sold at the Auction can be completed by November 30, 2011, the proposed effective date of rejection of the Lease.

15.     Having received the benefit of the sales proceeds from the Auction, Debtors cannot avoid the responsibility to provide access to the Premises in accordance with the Non-Core Auction Procedures Order. Global should not be forced into the position of having to involuntarily provide access to the Premises <u>after</u> November 30, 2011, interfering with its recovery of possession of the Premises following rejection. Such a situation would be contrary to Debtors' obligation to surrender possession of the Premises following rejection. See 11 U.S.C. § 365(d)(4); see <u>In re Chi-Chi's, Inc.</u>, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (Chapter 11 debtor's request for retroactive rejection of two restaurant leases denied where subtenants remained in possession, precluding debtor's surrender of possession).[4]

16.     The unrealistic nature of the Debtors' proposed November 30, 2011 Rejection Effective Date is only exacerbated by potential environmental issues caused by the presence of

---

[4] See also <u>In re Muma Services, Inc.</u>, 279 B.R. 478, 484-486 (Bankr. D. Del. 2002) (rejection of personal property lease vacated where motion asserted cargo containers were no longer necessary when, in fact, containers used for months after rejection date, demonstrating continued business purpose for the property).

hazardous materials at the Premises. Several cases have observed that it may be appropriate to apply a higher standard than business judgment for rejection of executory contracts and leases where local laws designed to protect health and safety are implicated. See, e.g, In re Caribbean Petroleum Corp., 444 B.R. 263, 269 (Bankr. D. Del. 2010). As discussed below in the context of the proposed abandonment of personal property at the Premises, Debtors will likely need time to comply with facility closure requirements imposed by the City of Fremont due to the use and storage of hazardous materials at and on the Premises. Global should not be compelled to provide access to Debtors after an artificial lease rejection date to enable the Debtors to comply with regulatory requirements.

17. For these reasons, the effective date of rejection of the Lease should be tied to actual return of possession of the Premises not some artificial date that attempts to unreasonably shift the burden of Debtors' activities and liquidation of assets to Global. Debtors should only be permitted to reject the Lease when third parties have completed the removal of purchased assets from the Premises and Debtors have satisfied local regulatory requirements. Rather than an artificial rejection date based on the date Debtors "intend" to return possession (Lease Rejection Motion at ¶ 7) or "anticipate" they will have vacated the Leased Premises (Lease Rejection Motion at ¶ 12), rejection of the Lease should be accomplished on notice certifying satisfaction of these conditions and **unequivocally** returning possession of the Premises based on actual, not intended or anticipated, facts.

C. **Debtors Cannot Abandon the Personal Property at The Premises Until They Satisfy Their Environmental Closure Obligations or Make Further Disclosures To Assess The Risk To Public Health and Safety**

18. In addition to rejection of the Global Kato Lease, Debtors' Lease Rejection Motion seeks authority to abandon "any owned personal property located at [the] Leased Premises on the Rejection Effective Date, as is, where is, and in accordance with section 554(a) of the Bankruptcy Code." (Lease Rejection Motion at ¶ 21.) According to Debtors, "the costs associated with liquidating any personal property assets remaining at the Leased Premises on the Rejection Effective Date will likely approach or exceed the value of such assets." (Id.)

19. It cannot be seriously disputed that Debtor's manufacturing activities at the Leased Premises involved the use and generation of hazardous materials (such as toxic metals, acids and solvents) and liquid and solid hazardous waste, subject to Federal, State and local regulation and monitoring.[5] Debtors' Lease Rejection Motion makes no mention of what steps the Debtors have taken, or will take, to decontaminate, idle or secure the equipment and materials in the Leased Premises that contain hazardous materials or remediate any contamination that may have occurred. As provided in the "Hazardous Materials Inventory Statement" submitted by Debtor to the City of Fremont, California Fire Department (Exhibit 8 to Stensrud October 11, 2011 Declaration), the City of Fremont requires that a closure plan be submitted to the City of Fremont at least thirty (30) days prior to the termination of the storage or use of hazardous materials. Such requirement implements the closure standards of Title 22, California Code of Regulations Sections 66265.111-66265.115.

20. Debtors have neither provided evidence of satisfaction of such requirements nor provided any description of the personal property they intend to abandon such that any assessment of the status of hazardous materials on the Leased Premises may be made.

21. While Bankruptcy Code section 554 allows a trustee or debtor-in-possession to abandon certain personal property of the estate, case law has placed limits on a debtor's ability to abandon property when that would be in contravention of applicable environmental laws. See, e.g., Midlantic National Bank v. New Jersey Department of Environmental Protection, 474 U.S. 494, 106 S.Ct. 755 (1986). In Midlantic, the United States Supreme Court made clear that "a trustee [or debtor in possession] could not exercise his abandonment power in violation of certain state and federal laws." Id. at 501. Under 28 U.S.C. § 959(b), a debtor must comply with environmental laws. Furthermore, "a trustee may not abandon property in contravention of a

---

[5] According to the "Hazardous Materials Inventory Statement" previously submitted by Debtor to the City of Fremont, California Fire Department (Exhibit 8 to Stensrud Declaration), the hazardous materials stored and used at the Leased Premises include sulfuric acid, hydrochloric acid, helium, argon, and liquid nitrogen. Similarly, as part of the regulation of "Hazardous Substances" under Section 6.2 of the Lease, Debtor was required to complete an "Environmental Exposure Questionnaire," attached to the Lease as Exhibit "C" and incorporated therein (see Section 6.2(g) of Lease), describing hazardous materials made, used or stored in the Leased Premises.

state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." Midlantic, 474 U.S. at 507. Such requirements are imposed even when a trustee exercises its business judgment when determining that complying with such environmental laws will not result in a benefit to the estate. See Midlantic, 474 U.S. at 494 (trustee may not abandon property in violation of health and safety laws); and Matter of H.L.S. Energy Co., Inc., 151 F.3d 434, 439 (5th Cir. 1998) (requiring the chapter 7 trustee to cap nonperforming oil wells that the trustee sought to abandon in compliance with Texas law).

22. Here, Debtors are attempting to skirt their environmental closure obligations under California law. According to the "Hazardous Materials Inventory Statement" previously submitted by Debtor to the City of Fremont, California Fire Department, the hazardous materials stored and used at the Premises (as defined below) include sulfuric acid, hydrochloric acid, helium, argon, and liquid nitrogen. Before any hazardous items can be removed from a facility to be closed, the City of Fremont, California, requires that a "Closure Plan" be submitted to and approved by the Fremont Fire Department. See Exhibit 8 to Stensrud October 11, 2011 Declaration. The Lease Rejection Motion is silent as to compliance with these requirements.

23. Global recognizes that this Court has held that the exception to the abandonment power recognized in Midlantic is a narrow one which is not to be fettered by laws or regulations not reasonably calculated to protect the public health or safety from "imminent and identifiable harm." In re Unidigital, Inc., 262 B.R. 283, 286-287 (Bankr. D. Del. 2001). Unlike the single piece of large equipment (the 25-foot long "Champion printer") abandoned in Unidigital, Debtors are potentially abandoning multiple pieces of unidentified equipment and quantities of stored materials throughout the 183,050 square foot Leased Premises. In Unidigital, the landlord was unable to produce evidence that the equipment and chemicals remaining at the premises contained hazardous materials. Here, in contrast, Debtors have acknowledged that hazardous materials, such as sulfuric acid, hydrochloric acid, helium, argon, and liquid nitrogen, are used and stored at the Leased Premises. The conditions at the Leased Premises and what equipment and materials are to be abandoned is not disclosed by Debtors' Rejection Motion and, apart from the disclosures accompanying the Lease, Global has limited knowledge of the hazardous

materials used by Debtors at the Leased Premises or how the materials were used, handled or disposed of by Debtors. Indeed, potentially the description of the property to be abandoned is effectively nothing more sophisticated or detailed than whatever the Debtors fail to remove (whether intended or not) by the proposed November 30, 2011 Rejection Effective Date. Thus, without further disclosure by Debtors, while hazards can be identified, no realistic assessment can necessarily be made as of the November 22, 2011 hearing date as to whether an "imminent and identifiable harm" exists or will exist as of November 30, 2011. See In re Lyondell Chem. Co., 416 B.R. 108, 117 (Bankr. S.D.N.Y. 2009) (requiring further disclosures in connection with proposed abandonment of environmentally hazardous property).[6]

24. Accordingly, Debtors should be required to either (1) demonstrate compliance with the City of Fremont's facility closure requirements before any abandonment becomes effective, or (2) provide additional disclosures regarding the identity, nature and location of hazardous materials to be abandoned on November 30, 2011 so a determination can be made as to whether the proposed abandonment presents a situation in contravention of applicable statutes or regulations protecting public health and safety, implicating Midlantic.[7]

D. **The Bar Date For Global's Lease Rejection Claims Should Be Consistent With That of General Unsecured Creditors**

25. Debtors propose that a claims bar date be fixed with respect to Global's lease rejection damages claim thirty (30) days after entry of an order granting the relief requested by the Lease Rejection Motion. (Lease Rejection Motion at ¶ 22.) Significantly, Debtors do not

---

[6] Landlord does not control the Leased Premises prior to rejection in order to make its own assessment and, indeed, the property removal activities of the Debtors and third party purchasers of the so-called "non-core" assets at the Leased Premises presents a "moving target" between now and the proposed November 30, 2011 Rejection Effective Date. This posture further distinguishes this case from Unidigital, where the landlord had recovered possession following rejection and sought an administrative priority claim for removal of the abandoned equipment.

[7] Such disclosures are consistent with the approach utilized in In re Franklin Signal Corporation, 65 B.R. 268, 273-274 (Bankr. D. Minn. 1986), where the trustee's abandonment of drums of various chemicals was conditioned on the trustee's (a) investigation and report of what hazardous materials were involved and (b) notice to appropriate state and federal agencies of the situation.

even propose that Global have thirty (30) days after the proposed November 30, 2011 Rejection Effective Date to file its proof of claim.

26. On November 4, 2011, Debtors filed their Motion of Debtors For An Order (1) Fixing Bar Date For The Filing of Proofs of Claim, etc. [Docket No. 306] (the "Bar Date Motion"), seeking to establish a bar date for general unsecured claims of January 23, 2012. (Bar Date Motion at ¶ 9.) Such proposed general bar date is consistent with Local Bankruptcy Rule 2002-1(e), affording sixty (60) days' notice of the bar date.

27. In contrast, under the timeframe proposed by the Lease Rejection Motion, Global would potentially have as little as three weeks to submit its proof of claim. No explanation or justification is offered for the disparate treatment proposed for the prospective lease rejection claims of Global. The time for Global to file its proof of claim for damages arising from the rejection of the Lease should be the later of (1) thirty days after the effective date of rejection, or (2) the general claims bar date for unsecured claims, proposed to be January 23, 2012.

### E. Pending Rejection of the Lease, Debtors Must Provide Evidence of Current Insurance Coverage

28. The Lease requires that Debtor maintain certain liability, property and business interruption insurance coverage, as more particularly provided in Sections 8.2 through 8.6 of the Lease and provide Global with evidence of continuing coverage. Debtors' existing insurance coverage expired today, November 15, 2011 (see Exhibit 7 to Stensrud October 11, 2011 Declaration) and evidence of replacement coverage has not been delivered to Global. Pending the rejection of the Lease, whether effective November 30, 2011 as proposed by Debtors or otherwise, Debtors must provide evidence of current insurance coverage consistent with the requirements of the Lease. 11 U.S.C. § 365(d)(3).

### IV. RESERVATION OF RIGHTS

29. Global reserves the right to make such other and further objections to the Lease Rejection Motion and relief requested as may be appropriate based upon any new information provided by the Debtors or upon any different relief requested by Debtors, or as may be developed through formal or informal discovery.

## V. CONCLUSION

30. As presented, Debtors' Lease Rejection Motion should be denied. Not only does the Lease Rejection Motion seek to reject the wrong lease, assuming it applies to Debtors' Lease with Global, Debtors propose an unrealistic and ultimately unworkable date for rejection that does not permit sufficient time for the completion of the property removal process contemplated by the Non-Core Auction Procedures Order and Debtors' satisfaction of local regulatory requirements relating to hazardous materials at the Leased Premises.

Dated: November 15, 2011

CONNOLLY BOVE LODGE & HUTZ LLP

*[signature]*

Karen C. Bifferato (Bar No. 3279)
Kelly M. Conlan (Bar No. 4786)
The Nemours Building
1007 North Orange Street
P. O. Box 2207
Wilmington, Delaware 19899
Telephone: (302) 658-9141

-and-

Michael S. Greger (CA Bar No. 156525)
Ivan M. Gold (CA Bar No. 121486)
Richard N. Dinets (CA Bar No. 265197)
Allen Matkins Leck Gamble Mallory & Natsis LLP
1900 Main Street, Fifth Floor
Irvine, California 92614-7321
Telephone: (949) 553-1313
Facsimile: (949) 553-8354
Email: mgreger@allenmatkins.com
Email: igold@allenmatkins.com
Email: rdinets@allenmatkins.com

*Attorneys for Global Kato HG, LLC*

#4546787