# EXHIBIT A

**Consignment Agreement**

(See attached)

# CONSIGNMENT AGREEMENT

THIS CONSIGNMENT AGREEMENT (the "Agreement") by and between Solyndra, Inc., a Delaware corporation, with offices located at 47700 Kato Road, Fremont, CA 94538, and its wholly owned subsidiaries (collectively "Solyndra"), and Shin-Etsu MicroSi, Inc., a Delaware corporation, with offices at 10028 South 51st Street, Phoenix, AZ 85044 ("Supplier"), is effective as of March 3, 2011 (the "Effective Date").

1. **Consignment Inventory.** Supplier will provide an agreed consignment inventory of Pyolitic Boron Nitride ("PBN") and PBN coated graphite parts as set forth herein at Solyndra's logistics supplier's warehouse. The agreed consignment inventory and quantities of PBN parts are described on Exhibit A hereto, which is specifically incorporated by this reference ("Consignment Inventory"). The sales price of Consignment Inventory is set forth on Exhibit A hereto. The Consignment Inventory is Supplier's property, and title to such shall remain with Supplier at all times, until it is removed from Consignment Inventory by Solyndra. Supplier agrees to stock Consignment Inventory owned by Seller at Solyndra's logistic supplier's (Menlo Logistics) warehouse. The location of such Consignment Inventory will be referred to as the Seller Inventory Location ("SIL"). The Consignment Inventory shall be managed by Solyndra.

2. **Term.** This Agreement is effective for a period of one (1) year from the Effective Date. At the end of such initial term, the Agreement will continue on a month-to-month basis on the same terms and conditions, until: (i) a new arrangement is agreed upon; or (ii) one of the parties, upon sixty (60) days prior written notice, terminates the Agreement.

3. **Delivery and Storage.** Supplier will deliver the Consignment Inventory to the SIL at its expense. Risk of loss or damage shall stay with Supplier until the Consignment Inventory is removed by Solyndra from the Consignment Inventory location, at which time risk of loss shall pass to Solyndra. Solyndra will cause Menlo Logistics to provide a designated area in a stock room at the SIL that affords reasonable protection and control of the Consignment Inventory.

4. **Control System.** Solyndra will support the Consignment Inventory with an inventory control system capable of showing up-to-date status (at least weekly) on the Consignment Inventory. Solyndra shall notify Supplier within one (1) week of removing any part from the Consignment Inventory. The Consignment Inventory control system will identify Consignment Inventory and releases by Supplier's lot numbers. Solyndra shall relay by Electronic Data Interchange or web-based supplier interface system or manually placed blanket purchase orders (the "Blanket PO"), the required quantities of Consignment Inventory along with the required delivery dates of Consignment Inventory requirements and inventory levels on a weekly basis to the Supplier ( updated monthly 12-month rolling forecast).

5. **Order Placement and Supplier Owned Inventory.** Supplier agrees to plan and build Consignment Inventory to support Solyndra's forecast for the part numbers in Exhibit A pursuant to this Agreement ("Forecast"). Solyndra will update the Forecast on a two (2) week basis, and Supplier will ship and maintain four (4) to eight (8) weeks of quantities of each Forecast in the SIL with an additional two (2) weeks of forecasted product at Supplier's facility

on a rolling basis based on the updated Forecasts. Solyndra agrees to be liable for Consignment Inventory produced to support the first sixteen (16) weeks of each Forecast and the raw material needed to cover three to six (3-6) months projected usage. Solyndra will issue a Blanket PO for three to six (3-6) months of projected usage. Supplier shall ensure that it has the raw material secured to cover the Forecast period. Solyndra agrees to remove and purchase individual parts comprising all Consignment Inventory within one hundred twenty (120) days after delivery of such parts to the SIL, provided that Supplier has not delivered quantities of Consignment Inventory in excess of Solyndra's Forecast.

6. **Warranty**. Supplier warrants as follows: (i) Supplier has all rights and title necessary to convey good title to the Consignment Inventory; and (iii) the Consignment Inventory purchased hereunder will conform fully to applicable specifications agreed upon from time to time by the parties. The current specifications are attached hereto as Exhibit B. Seller's liability for damages shall not exceed the purchase price of the particular shipment with respect to which such damages are claimed and shall not include liability for special, incidental, indirect, punitive or consequential damages. The warranties for Consignment Inventory from the SIL shall extend for a period of ninety (90) days from the date of removal of such Consignment Inventory (the "Warranty Period"). If any parts from the Consignment Inventory does not conform to the warranty herein, Solyndra may return such defective or non-conforming Consignment Inventory to Supplier at Supplier's expense and obtain a refund. The foregoing warranties shall survive any inspection, delivery, acceptance, payment, expiration or earlier termination of this Agreement, and such warranties shall run to Solyndra, its successors and assigns.

7. **Invoicing and Payment**. Upon the removal of any Consignment Inventory from the SIL to a Solyndra inventory location, Solyndra will send Supplier a notice of the removal. Supplier shall issue invoices on the 1st and the 15th of each month, and Solyndra shall make payment within fifteen (15) days of receiving a correct invoice. Payment may be made by standard payment methods, ERS or other electronic or internet based payment methods.

8. **Cycle Count Reporting**. Solyndra and/or its logistics provider will conduct a cycle count of the Consignment Inventory at least one (1) time a year according to its standard procedures. Any Consignment Inventory that becomes damaged or is missing during storage at the SIL, unless such damage or loss was caused by a Supplier's employee or contractor, will be invoiced to Solyndra at the then current price. Solyndra shall efficiently manage component(s) stocked at the SIL and shall rotate component(s) on a first in, first out basis. Solyndra or Menlo Logistics shall report to Seller the quantity and description of all components removed from the SIL a minimum of once per week.

9. **Requirements for Access to Solyndra Site**. Supplier's employees or representatives may participate in the onsite audits contemplated by this Agreement; provided that any Supplier's representative or employee who comes on Solyndra's premises shall not unduly disrupt Solyndra's business or activities and shall comply with Solyndra's security/safety regulations and clean room protocols and shall sign a confidentiality agreement acceptable to both Solyndra and Supplier, to which agreement all information confidential to Solyndra obtained pursuant to such examination and inspection shall be subject.

10. **Final Audit and Consignment Inventory Purchase.** Prior to the cancellation or termination of this Agreement, Solyndra's and Supplier's representative will jointly conduct an audit on a mutually agreed date to prepare an accurate list of the final Consignment Inventory, with any discrepancies noted. After Supplier and Solyndra have reconciled the final inventory, Solyndra shall purchase the remaining Consignment Inventory at the then current price.

11. **Intellectual Property Infringement Indemnification.** Supplier shall defend, indemnify and hold harmless Solyndra and its subsidiaries, affiliates, and their respective directors, officers, employees and permitted assignees from and against any and all claims and demands that any parts from the Consignment Inventory purchased from Supplier hereunder infringes any claim of any patent, trademark, copyright, mask work, or other right of a third party now or hereafter existing. If any such claim or demand is asserted against Solyndra, Supplier shall defend such action at its expense and shall pay any related costs, damages and liabilities, including reasonable attorneys' fees of both Solyndra and Supplier; provided that Solyndra provides Supplier with prompt notice of any such claim and all requested reasonable information, assistance and exclusive authority to defend and settle any such claim. Supplier shall not indemnify and shall not be liable for any claim or action of infringement, if it is arising out of (a) a claim on the products produced utilizing the Consignment Inventory hereunder; (b) Solyndra's modification on parts taken from the Consignment Inventory; (c) compliance by Supplier with Solyndra's specific directions to designs, specifications, instructions, modifications or improvements; (d) claims relating to Solyndra's combination of the Consignment Inventory with other products, and where the claim does not read on a specific and particular property of the part taken from the Consignment Inventory; or (e) claims relating to processes or methods performed utilizing the Consignment Inventory, and where the claim does not read on a specific and particular property of the part taken from the Consignment Inventory. If an injunction shall be obtained against Solyndra's use of such Consignment Inventory, Supplier shall, at its expense: (i) procure for Solyndra the right to continue to use such Consignment Inventory; (ii) replace or modify such Consignment Inventory, to become non-infringing, but substantially equivalent in form, fit and function; or (iii) If Supplier determines that it is not practically possible to accomplish either of the foregoing solutions to avoid violation of such injunction, Supplier shall have the right to terminate this Agreement by ninety (90) days written notice to Solyndra, in which event the remaining Consignment Inventory that is has not been purchased by Solyndra will be returned to Supplier, at Supplier's expense, following which neither party shall have any further rights or obligations hereunder.

12. **Confidentiality.** "Confidential Information" shall have the meaning set forth in that certain Mutual Confidentiality Agreement by and between Solyndra and Supplier, dated February 26, 2010, as replaced or modified from time to time (the "Confidentiality Agreement"). This Agreement and all Confidential Information exchanged in the performance of this Agreement are subject to such Confidentiality Agreement. If the Confidentiality Agreement expires without being replaced prior to the expiration of this Agreement, the Confidentiality Agreement shall remain in effect with respect to all Confidential Information exchanged hereunder.

13. **Indemnity.** Each party hereto, on behalf of itself and its employees, agents, permitted subcontractors and permitted assigns, shall indemnify, defend and hold harmless the

other party, its subsidiaries and affiliates and their directors, officers, agents and employees from and against any and all liabilities, claims, demands, damages, causes of action, losses, expenses and attorneys' fees, whether known or unknown, vested or contingent, in any way related to the performance of the indemnifying party's obligations under this Agreement.

14. **Damage Waiver.** To the fullest extent permitted by law, under no circumstances shall either party be liable to the other party for any consequential, special, indirect, reliance or incidental damages or losses arising out of any claim, demand, or action brought in connection with this Agreement or the performance thereof.

15. **Publicity.** Except to the extent required by law, neither party shall disclose to third parties, excepting Solyndra's logistics provider (including denial or confirmation thereof), the existence or terms of this Agreement, Solyndra's purchases hereunder or the Consignment Inventory without the prior written consent in each instance from the other party.

16. **Force Majeure.** Neither party shall be deemed in default if its performance or obligations hereunder are delayed or become impossible or impractical due to causes beyond its reasonable control, including acts of God, war, fire, earthquake, and acts of civil or military authority. Force majeure events shall not include economic impossibilities or inefficiencies. The time for performance of any such obligation shall be extended for the time period lost by reason of the delay, except that if a delay by Supplier exceeds ninety (90) days, Solyndra may terminate this Agreement without any liability.

17. **Survival of Provisions.** Any obligations and duties that by their nature extend beyond the expiration or earlier termination of this Agreement shall survive any such expiration or termination and remain in effect.

18. **Notices.** All notices required or permitted under this Agreement shall be in writing, shall be effective when delivered and shall be delivered or addressed as follows:

Solyndra, Inc.  
47700 Kato Rd.  
Fremont, CA 94538  
Attn: Sanat Dave  
Fax: (510) 440-2401

Shin-Etsu MicroSi, Inc.  
10028 South 51st Street  
Phoenix, AZ 85044  
Attn: Deborah Heath  
Fax: (480) 893-8637

With a mandatory copy to:  
Attn: General Counsel  
Fax: (510) 440-2401

19. **Documentation.** Solyndra may copy, scan, download, print and/or photocopy documentation, information, manuals, training materials, drawings and computer disks provided by Supplier under this Agreement for its internal use, subject in all respects to the Confidentiality Agreement.

20. **Compliance With Laws.** Supplier shall perform all services hereunder and manufacture, deliver and sell Consignment Inventory in strict accordance with all applicable

federal, state, local and other governmental laws, ordinances, rules, orders, regulations, directives and guidelines, including but not limited to labor, environmental safety and health.

21. **Amendments**. This Agreement may not be amended, modified, altered or changed in any respect whatsoever, except by further written agreement duly executed by the Parties. This Agreement shall not be supplemented or modified by any course of dealing or other trade usage.

22. **Assignment**. Neither party shall assign, delegate or subcontract any of its rights or obligations under this Agreement without the prior written consent of the other party.

23. **Choice of Law; Jurisdiction**. This Agreement shall not be governed by and construed in accordance with the laws of California without giving effect to choice of law principles or the 1980 United Nations Convention on Contracts for the International Sale of Goods.

24. **No Implied Waivers**. Any waiver of a breach of this Agreement must be in writing, shall be effective only to the extent set forth in such writing and shall not operate or be construed as a waiver of any subsequent breach. No course of dealing between the parties, nor any prior waiver, nor any delay or omission in exercising any right, power or remedy pursuant to a breach or default by a party shall impair any right, power or remedy that either party may have with respect to a future breach or default. No remedy or election shall be deemed exclusive but shall, wherever possible, be cumulative with all other remedies at law or in equity.

25. **Severability**. If it is determined by a court of competent jurisdiction as part of a final non-appealable ruling, government action or binding arbitration that any provision of this Agreement (or part thereof) is invalid, illegal or otherwise unenforceable, such provision shall be enforced as nearly as possible in accordance with the stated intention of the parties, while the remainder of this Agreement shall remain in full force and effect and bind the parties according to its terms.

26. **Integration**. This Agreement and the Confidentiality Agreement contain the entire agreement and understanding of Solyndra and Supplier with respect to the subject matter hereof, and merge and supersede all prior or contemporaneous communications, representations, proposals, agreements and understandings (whether written, oral or implied) between the parties with respect thereto. In the event of any conflict between the Agreement and any Blanket PO issued by Solyndra, the terms hereof shall control.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

| SOLYNDRA, INC. | SHIN-ETSU MICROSI, INC. |
|---|---|
| Signature: *[signed]* | Signature: *[signed]* |
| Title: VP Supply chain | Title: Jim Edmonds, President |
| Date: 3/24/11 | Date: 3/3/2011 |

# Exhibit A

Pricing and Quantities:

Solyndra agrees to purchase the quantities of the products listed below within the first twelve (12) month period of the Agreement. If Solyndra does not purchase at least ninety percent (90%) of the parts listed in the forecasted volume within fifteen (15) months (twelve (12) months plus a three (3) month grace period) Solyndra will agree to purchase the remaining minimum forecasted volume over the following six (6) months (twenty-one (21) months in total) at the below prices plus a five percent (5%) late purchase premium. Supplier agrees to produce and sell the forecasted volume plus a twenty-five percent (25%) overage if requested by Solyndra

| Part Number | Forecasted Volume | 90% | 125% | Sales Price |
|---|---|---|---|---|
| | 895 | 806 | 1,119 | $510.00 |
| | 150 | 135 | 188 | $510.00 |
| | 60 | 54 | 75 | $2,400.00 |
| | 40 | 36 | 50 | $4,070.00 |

These prices will be valid from Jan 7, 2011 through Jan 7, 2012.