# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Solyndra LLC, et al.,[1] | ) | Case No.: 11-12799 (MFW) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

ORDER GRANTING MOTION OF SOLYNDRA LLC
PURSUANT TO SECTIONS 105(A) AND 363 OF THE BANKRUPTCY
CODE AND AUTHORIZING THEM TO (A) CONDUCT AUCTION FOR
CORE ASSETS, AND (B) SELL SUCH ASSETS TO THE SUCCESSFUL
BIDDERS AT AN AUCTION FREE AND CLEAR OF ALL ENCUMBRANCES

This matter having come before the Court on the *Motion of Solyndra LLC Pursuant to Sections 105(a) and 363 of the Bankruptcy Code, For Authority to (A) Conduct an Auction for Core Assets, and (B) Sell Assets to the Successful Bidders at an Auction Free and Clear of All Encumbrances* (the "Motion"),[2] filed by Solyndra; the Court having reviewed the Motion; the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) notice of the Motion was sufficient under the circumstances, (d) the Auction Procedures, the Auction, and the sale of the Core Assets pursuant to the terms of the Motion are in the best interests of Solyndra and its estate and creditors, and (e) any objections to the Motion or the relief requested therein having been withdrawn, resolved or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Solyndra LLC (9771) and 360 Degree Solar Holdings, Inc. (5583). The Debtors' address is 47488 Kato Road, Fremont, CA 94538.

[2] Unless otherwise noted, capitalized terms used herein have the meanings ascribed in the Motion.

1

# NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The relief requested in the Motion, as modified by this Order, is GRANTED.

2. To facilitate the Auction, Solyndra proposes the implementation and approval of the following Auction Procedures:

    a. <u>Assets.</u> The Auction will include all Core Assets, including the assets set forth on **<u>Exhibit A</u>**[3] hereto.

    b. <u>Pricing.</u> The Auction will be conducted on an asset-by-asset basis or in lots or combinations of lots as determined by Solyndra and Auctioneers in their discretion. Solyndra, in consultation with Auctioneers, will set the initial bid on each Core Asset or lot of Core Assets.

    c. <u>Participation Requirements.</u> Any person that wishes to participate in the Auction must become a "Qualified Bidder." As a prerequisite to becoming a Qualified Bidder, a potential Qualified Bidder must deliver to the satisfaction of Solyndra:

        (i) A list of Core Asset(s) on which the bidder seeks to bid; and

        (ii) Sufficient information, as requested by Solyndra, to allow Solyndra to determine that the potential Qualified Bidder has the financial wherewithal and any required authorizations to close the sale, including without limitation, such entity's current audited (if applicable) financial statements and a good faith, cash deposit (the amount of which shall to be set by Solyndra in consultation with Auctioneers) (the "Good Faith Deposit").

    d. <u>Auction:</u> The Auction shall commence during the week of January 23, 2012 and continue to the extent necessary to sell the Core Assets, at 47700 Kato Road, Fremont, CA 94538 as well as other locations where the Core Assets are stored ("Auction Period") and shall be administered by Auctioneers. The Auction shall be conducted on-site and over the Internet using webcast technology. Only Qualified Bidders will be permitted to participate in the Auction. The Auction shall be conducted on the following terms:

        (i) In order to participate in the Auction, each Qualified Bidder shall, to Solyndra's satisfaction, register its acknowledgement of the Auction terms (which shall include a statement that such Qualified Bidders do not have any connection to the Debtors).

---

[3] Solyndra reserves the ability to add additional Core Assets to the list of assets to be sold at the Auction.

2

(ii) Each Core Asset, lot of Core Assets or combinations of such lots will be auctioned either separately or in lots determined by Auctioneers and Solyndra at the Auction. During the Auction Period, bidding shall begin at an amount set by Solyndra and Auctioneers and subsequently continue in minimum bid increments of no less than 5% of the suggested purchase price.

(iii) None of the bids may contain any financing, due diligence or "material adverse change" contingencies and the bid of any Successful Bidder will be binding whether or not (a) the Successful Bidder has obtained financing or completed its due diligence investigation, or (b) a "material adverse change" has occurred.

(iv) <u>Pre-Auction Bidding</u>. All bidding for the Core Assets will occur at the Auction. Notwithstanding the foregoing, a Qualified Bidder shall be permitted to submit a bid to Auctioneers prior to the Auction and designate Auctioneers as their proxy to make such a bid on its behalf at the Auction.

(v) The Auction shall be conducted openly and all creditors will be permitted to attend.

(vi) <u>Terms of Sale</u>. The Core Assets are being sold, (i) **"AS IS, WHERE IS, AND WITH ALL FAULTS AND WITH NO LICENSE,"** and the Debtors expressly disclaim all warranties, including (but not limited to) warranties of merchantability, warranties of non-infringement, and warranties of fitness for a particular purpose or use, and (ii) **"THERE IS NO WARRANTY RELATING TO QUIET ENJOYMENT, OR THE LIKE IN THE DISPOSITION OF ANY OF THE ASSETS."** Bidders are advised, and by submitting a bid each bidder is deemed to acknowledge, that Auctioneers, the Debtors and each of their respective directors, officers, managers, employees, agents, advisors and attorneys have no knowledge with respect to, and have no obligation to investigate, the merchantability or fitness for any particular purpose or use of any of the Assets. **NO WARRANTY OR REPAIR PROGRAM FOR THE ASSETS IS BEING OFFERED AS PART OF THE SALE.**

(vii) <u>Bid(s); Backup Bid(s)</u>. Upon the conclusion of the Auction, Auctioneers and Solyndra shall (a) identify and certify the bid or bids that constitutes the highest or best offer or offers for the Core Assets (each bid a "Prevailing

3

Bid" and each person submitting such bid a "Successful Bidder") and (b) identify and may, in its discretion, certify the bid or bids that constitute the next highest or best offer or offers for the Assets (each bid a "Backup Bid" and each person submitting such a bid a "Backup Bidder"), and, in each case, notify the Successful Bidder(s) and Backup Bidder(s).

(viii) Within two (2) business days of the conclusion of the Auction Period, Solyndra shall file with the Court the following (as described below, the "Post-Auction Disclosures"):

4. A list of each Successful Bidder, Backup Bidder (if any), the Core Asset(s) purchased by such bidder, and the price to be paid by each Successful Bidder for each Core Asset or lot(s) of Core Assets;

5. A declaration of one of the Auctioneers stating that the Auction was run without collusion, in good faith and at arms' length with each Successful Bidder or Backup Bidder; and

6. A declaration from a representative of Solyndra stating that no Successful Bidder is an insider of either Debtor.

(ix) Contemporaneous with the filing of the Post-Auction Disclosures, Solyndra will serve the Post-Auction Disclosures by email and/or facsimile on: (a) counsel to AE DIP 2011, LLC, the DIP Lender, and Argonaut Ventures I, L.L.C., as the Prepetition Tranche A Representative and the Prepetition Tranche E Agent, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166, Attn: Michael A. Rosenthal (email: mrosenthal@gibsondunn.com) and Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, DE 19899, Attn: Sean M. Beach, Esq. (email: sbeach@ycst.com); (b) counsel to the U.S. Department of Energy, acting by and through the Secretary of Energy, as the Prepetition Tranche B/D Agent, U.S. Department of Justice, Civil Division, 1100 L Street NW, Room 10030, Washington, D.C. 20530, Attn: Matthew J. Troy (email: matthew.troy@usdoj.gov); (c) counsel to any Official Committee of Unsecured Creditors (the "Committee"); and (d) Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn:

4

Jane M. Leamy (email: jane.m.leamy@usdoj.gov) (collectively, the "Notice Parties").

(x) No earlier than two (2) business days after Solyndra files the Post Auction Disclosures with the Court and if no timely objection is received by any of the Notice Parties prior to the expiration of such period, then Solyndra is authorized to immediately consummate the proposed sales contemplated under the Post Auction Disclosures upon entry of an order approving such Sale filed under certification of counsel.

(xi) No Successful Bid will be subject to higher and better offers. The highest cash bid at the Auction is the Successful Bid.

(xii) All sales of Core Assets shall be, subject to section 363 of the Bankruptcy Code, free and clear of all third-party liens, claims, encumbrances and security interests (each an "Encumbrance" and collectively, "Encumbrances"); provided that such Encumbrances shall attach to the net proceeds of the sale of such Core Assets with the same enforceability, validity and priority as such Encumbrances had against the Core Assets.

e. Sales Commission, Buyer's Premium, Auction Expenses Reimbursement Procedures:

(i) The Auctioneers will charge a buyer's premium of fifteen percent (15%) of the aggregate gross proceeds for the sale of a Core Asset or lot of Core Assets, payable by the buyers of such assets (the "Buyer's Premium"), and which Buyer's Premium shall be split as follows: 7.5% to be remitted to the Debtors and the remaining 7.5% to be remitted to the Auctioneers.

(ii) No sales commission shall be paid to any of the Auctioneers proceeds from the sale of any Core Assets.

(iii) The Auctioneers shall receive reimbursement of actually incurred and reasonable expenses (including, without limitation, labor, advertising, travel and lodging, digital photography of the Core Assets, print and electronic media production, brochure and catalog production, and telemarketing) up to $40,000.00 (the "Auction Expenses").

(iv) The Auctioneers guarantee that the Debtors will receive a minimum of $4.25 million in net proceeds from the Auction, after payment of the Auctioneers' portion of the

5

Buyer's Premium and Auction Expenses that are ultimately allowed by the Court and paid to the Auctioneers (the "Guaranteed Minimum Net Proceeds"). The Guaranteed Minimum Net Proceeds shall be paid to the Debtors upon the later of (i) entry of an order by the Court approving Auctioneer Retention Application or (ii) January 1, 2012. If either (i) a Break-up Fee (as described below), is paid to the Auctioneer, or (ii) the Auction does not occur on or before an outside date of March 31, 2012, unless such outside date is otherwise extended by agreement of the Debtors and Auctioneer, the Debtors will promptly refund the Guaranteed Minimum Net Proceeds to the Auctioneers.

(v) The Debtors and the Auctioneers each agree and acknowledge that the Debtors may continue to pursue a sale of the Debtors assets pursuant to the Turnkey Sale up to and including the week of January 16, 2012. To the extent the Core Assets are sold pursuant to the Turnkey Sale, the Auctioneers will be entitled to a breakup fee of $250,000 (the "Breakup Fee") plus reimbursement of the Auction Expenses. The Breakup Fee and Auction Expenses represent the Auctioneer's sole compensation to the extent the Turnkey Sale is approved by the Court.

f. Closing Deadline; Asset Removal Deadline. The sale(s) contemplated by the Successful Bid(s) shall be closed within two (2) business days after entry of the order approving sales contemplated under the Post-Auction Disclosures as provided herein or by such other deadline agreed to between Solyndra and the Successful Bidder(s) (the "Closing Deadline"). At the closing of the sale of any Core Asset, the purchaser shall (a) pay Auctioneers with a certified check, bank check or wire transfer for the full outstanding cash balance of the purchase price, and (b) pay Auctioneers with a certified check, bank check or wire transfer in favor of Auctioneers for any Buyer's Premium due to Auctioneers in accordance with these Auction Procedures and the Court's order approving Auctioneers' employment. Each Successful Bidder's or Backup Bidder's sole remedy in the event that a sale fails to close as a result of Solyndra's refusal or inability to close shall be a refund of the monies deposited by such bidder.

g. Disbursement of Proceeds. Following the Closing Deadline(s), Auctioneer shall promptly disburse to Solyndra the net Auction proceeds owed to Solyndra not including Auctioneers' asserted 7.5% Buyer's Premium amounts, and Expense Reimbursement, which amounts shall be paid to Auctioneers pursuant to further order of the Court. For avoidance of doubt, Auctioneer will not be required to remit to Solyndra the Guaranteed Minimum Net Proceeds previously paid pursuant to section 2.e.(iv) above.

h. Removal of Core Assets. Any Successful Bidder that is purchasing any Core Assets shall be required to remove such Core Assets from Solyndra's facility immediately and, in any event, by no later than 21 days after the Auction or by such other deadline agreed to between Solyndra and such Successful Bidder. Each Successful Bidder shall be solely responsible for any and all fees, costs and expenses associated with any purchased Core

6

Assets on and immediately after the Closing Deadline, including, without limitation, any costs and expenses attributable to rent and related expenses for the period of time following the Closing Deadline (regardless of when payment of such rent became due or related expenses of Solyndra were incurred in connection with such Core Asset following the Closing Deadline).

        i.    <u>Customs and Taxes</u>. Purchasers of the Core Assets shall be solely responsible for paying any customs duties and taxes due and owing on any of the Core Assets including, without limitation, any sales taxes, stamp taxes, recording taxes or transfer taxes.

        j.    <u>Publicity.</u> Auctioneers may, in their discretion, distribute a prospectus (the "Prospectus") to all persons who have previously shown an interest in purchasing the Core Assets or whom Auctioneers have identified as a potential bidder. The Prospectus will include, among other things, a listing of the Core Assets, the associated suggested pricing, and a copy of the Order specifying the date and time of the Auction and the participation requirements. Solyndra may, in its discretion but without any obligation, publish a notice of the Auction in the national edition of *The Wall Street Journal* or similar publication.

        k.    <u>Return of Good Faith Deposit</u>. All Good Faith Deposits will be held in a non-interest-bearing account and will be returned to any Qualified Bidder who is not a Successful Bidder; provided, however, that if a Successful Bidder fails to consummate a transaction within five (5) days of the conclusion of the Auction with respect to a Successful Bid (other than as a result of the failure of Solyndra to convey title to the applicable Core Asset to the applicable Successful Bidder), Solyndra will not have any obligation to return the Good Faith Deposit and such Good Faith Deposit shall irrevocably become the property of Solyndra.

        l.    <u>Additional Requirements</u>. Solyndra shall be permitted to adopt such additional reasonable rules and procedures that will serve to maximize the value of the Core Assets.

        m.    <u>Modification</u>. Auctioneers may determine, in their business judgment, but only following the receipt of Solyndra's consent, which bid or bids, if any, constitute the highest or otherwise best offer(s) for the Core Assets, and may reject at any time any bid that, in Auctioneers' discretion, but subject to Solyndra's consent, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Auction Procedures or the terms and conditions of sale, or (c) contrary to the best interests of Solyndra. At any time before or at the Auction, and subject to the consent of Solyndra, Auctioneers (y) may impose such other bidding procedures and terms and conditions as they may determine are in the best interests of Solyndra and other parties in interest, and (z) may modify or amend these Auction Procedures.

        n.    <u>Additional Procedures for Disassembly and sale and auction of the encapsulation lines manufactured by VDL</u> (the "VDL Encapsulation Lines"). There is an actual dispute by and between Solyndra and VDL Enabling Technologies Group Eindhoven BV ("VDL") over their respective rights and title to the VDL Encapsulation Lines and other equipment and property, as well as claims by and against the parties in connection with that certain *Equipment Design and Manufacturing Agreement*, by and between VDL and Solyndra (collectively, the "VDL Disputes"). Solyndra and VDL are negotiating a potential agreement over procedures by which the VDL Encapsulation Lines may be sold pending the adjudication of the VDL Disputes. To the extent that the parties are able to agree on any such procedures,

7

Solyndra reserves the right to supplement this Motion to propose additional procedures with respect to the potential sale of the VDL Encapsulation Lines and/or other property that are the subject of the VDL Disputes.

3. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

4. This court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this Order.

Dated: _____, 2011  _____
Honorable Mary F. Walrath
United States Bankruptcy Judge

8
DOCS_DE:173603.4 80368-00001

## Solyndra LLC
## Fixed Assets - M&E
### As of 11/02/11

| Summary Description | Location |
|---|---|
| BE Binning Tool (4) | B6 - 1210 California Circle, Milpitas |
| CATS201 | B4 - 47488 Kato Road, Fremont |
| CdS Chemical Bath Deposition Tools (8) | B4 - 47488 Kato Road, Fremont |
| CIGS Deposition Tool: Complete (7) | B4 - 47488 Kato Road, Fremont |
| CIGS Deposition Tool: Partial (1) | B4 - 47488 Kato Road, Fremont |
| ELMA Glass Clean Workcell (3) | B4 - 47488 Kato Road, Fremont |
| Bulk Chemical Mixing System (2) | B4 - 47488 Kato Road, Fremont |
| Robotic Tray Handler (Cosmetic inspection) (2) | B6 - 1210 California Circle, Milpitas |
| Cox Encapsulation Tool (4) | B6 - 1210 California Circle, Milpitas |
| Bulk Liquid Storage and Dispensing system ~30K gallons | B3 - 901 Page Ave, Fremont |
| VDL Encapsulation Lines (2) | B3 - 901 Page Ave, Fremont |
| Environmental Chambers - Reliability Lab (2) | B3 - 901 Page Ave, Fremont |
| Fab 1: Computer Equipment Individually < $100K | All Facilities |
| Fab 1: Furniture and Fixtures Individually < $100K | All Facilities |
| Fab 1: Machinery and Equipment Individually < $100K | All Facilities |
| Murata Building Wide Automatic Material Handling System | B3 - 901 Page Ave, Fremont |
| Murata Building Wide Automatic Material Handling System | B4 - 47488 Kato Road, Fremont |
| FAB 2 FE Intial Furniture & Fixtures | B4 - 47488 Kato Road, Fremont |
| FAB 2 Offline Fisher XRF Module | B4 - 47488 Kato Road, Fremont |
| FAB 2 Offline Raman & Photoluminescence | B4 - 47488 Kato Road, Fremont |
| FAB 2 Offline Reflectometer | B4 - 47488 Kato Road, Fremont |
| FAB 2 Wet Lab | B4 - 47488 Kato Road, Fremont |
| Fab 2: Computer Equipment Individually < $100K | All Facilities |
| Fab 2: Machinery and Equipment Individually < $100K | All Facilities |
| Fab 2: Other Equipment Individually < $100K | All Facilities |
| Stand Alone IVT System (Solar Simulator) (5) | B4 - 47488 Kato Road, Fremont |
| FEI SEM | B4 - 47488 Kato Road, Fremont |
| Orihiro Gas Bag Formation Tools (11) | B6 - 1210 California Circle, Milpitas |
| Gas Bag Insertion Workcell (2) | B3 - 901 Page Ave, Fremont |
| Glass Tube Machine Vision Inspection Workcell (2) | B3 - 901 Page Ave, Fremont |
| TCO Sputtering Tool Workcell (3) | B4 - 47488 Kato Road, Fremont |
| Immersion Polariscope | B4 - 47488 Kato Road, Fremont |
| Integrated Solar Simulator Module on VDL tool (2) | B3 - 901 Page Ave, Fremont |
| Automated IVT tool with Overhead Gantry (3) | B4 - 47488 Kato Road, Fremont |
| Overhead Gantry Tray and Tube Handling Robot (2) | B3 - 901 Page Ave, Fremont |
| Molybdenum Sputtering Workcell (3) | B4 - 47488 Kato Road, Fremont |
| Laser Scribe Workcells (2) | B4 - 47488 Kato Road, Fremont |
| Mechanical Scribe Workcells (6) | B4 - 47488 Kato Road, Fremont |
| Hybrid Scribe Workcells (2) | B4 - 47488 Kato Road, Fremont |
| Overhead Gantry Machine Vision Inspection Tools (3) | B4 - 47488 Kato Road, Fremont |
| Panel Framing Line for 150 Series Panels | B6 - 1210 California Circle, Milpitas |
| Panel Framing Line for 200 Series Panels (3) | B3 - 901 Page Ave, Fremont |
| Sierratherm conveyor ovens (3) with Automated load/unload | B6 - 1210 California Circle, Milpitas |
| Gas Bag Leak Detection Workcell (2) | B3 - 901 Page Ave, Fremont |
| SCRF201 | B4 - 47488 Kato Road, Fremont |
| Solar Simulator Room | B4 - 47488 Kato Road, Fremont |
| Solar Simulator Room | B3 - 901 Page Ave, Fremont |
| Overhead Gantry Tray Handling Robot (6) | B4 - 47488 Kato Road, Fremont |
| Stand Alone XRF System (2) | B4 - 47488 Kato Road, Fremont |

Note: Parenthetical figures represent quantity.