# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Solyndra LLC, *et al.*,[1] | ) Case No. 11-12799 (MFW) |
| | ) (Jointly Administered) |
| | ) |
| Debtors. | ) |
| | ) |

**Hearing Date:  October 17, 2012**

## DEBTORS' AMENDED JOINT CHAPTER 11 PLAN

PACHULSKI STANG ZIEHL & JONES LLP
Richard M . Pachulski (CA Bar No. 90073)
Debra I. Grassgreen (CA Bar No. 169978)
Bruce Grohsgal (DE Bar No. 3583)
Maxim B. Litvak (CA Bar No. 215852)
919 Market Street, 17th Floor | P.O. Box 8705
Wilmington, Delaware  19899-8705
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

Counsel to Debtors and Debtors in Possession

Dated:  September 7, 2012

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Solyndra LLC (9771) and 360 Degree Solar Holdings, Inc. (5583).  The Debtors' address is 47488 Kato Road, Fremont, CA 94538.

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................... 1

II. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ............................................................. 3

    A.    Rules of Interpretation, Computation of Time, and Governing Law ..................... 3

    B.    Defined Terms ................................................................... 4

III. TREATMENT OF ADMINISTRATIVE EXPENSES AND TAX CLAIMS ..................... 29

    A.    Introduction ..................................................................... 29

    B.    Administrative Expenses ....................................................... 29

    C.    DIP Credit Facility Claims ...................................................... 30

    D.    Tax Claims ...................................................................... 30

IV. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS 31

    A.    Summary ......................................................................... 31

    B.    Classification and Treatment of Claims and Interests .......................... 32

V. ACCEPTANCE OR REJECTION OF PLAN ........................................... 45

    A.    Identification of Unimpaired Classes ........................................... 45

    B.    Identification of Impaired Classes .............................................. 46

    C.    Classes Permitted and Not Permitted to Vote .................................. 46

    D.    Effect of Non-Voting ........................................................... 47

    E.    Nonconsensual Confirmation .................................................. 47

    F.    Postpetition Interest ............................................................ 47

VI. MEANS FOR IMPLEMENTATION OF THE PLAN ................................... 47

    A.    Plan Settlement ................................................................. 47

    B.    No Substantive Consolidation .................................................. 49

    C.    Continued Corporate Existence and Vesting of Assets of Holdings .................... 50

    D.    Holdings Settlement Fund ...................................................... 51

    E.    Establishment of Solyndra Settlement Trust and Vesting of Solyndra Settlement Trust Assets .................................................................. 51

F.     Purpose of Solyndra Settlement Trust .................................................. 53

G.    Solyndra Settlement Fund and Solyndra Settlement Trust Contribution............. 53

H.    Solyndra Settlement Trustee .............................................................. 54

I.     Solyndra Settlement Trust Committee................................................. 60

J.     Establishment of Solyndra Residual Trust and Vesting of Solyndra Residual Trust Assets ........................................................................................ 62

K.    Purpose of Solyndra Residual Trust ................................................... 63

L.     Solyndra Residual Trustee ................................................................ 64

M.    Solyndra Residual Trust Committee ................................................... 72

N.    U.S. Federal Income Tax Treatment of Liquidating Trusts................... 73

O.    U.S. Federal Income Tax Treatment of Disputed Ownership Funds.................... 75

P.     Exit Facility for Solyndra Residual Trust ............................................ 76

Q.    Retained Rights of Action of the Debtors............................................ 77

R.     Corporate Action/Dissolution ........................................................... 78

S.     Interests in Affiliates and Subsidiaries ............................................... 81

T.     Payment of Plan Expenses ................................................................ 81

U.    Dissolution of Creditors' Committee................................................... 82

V.     Final Decree .................................................................................. 82

VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES............. 82

A.    Rejection of Executory Contracts and Unexpired Leases...................... 82

B.    Bar Date for Rejection Damages ....................................................... 83

VIII. DISTRIBUTIONS AND RELATED MATTERS ............................................... 83

A.    Dates of Distribution....................................................................... 83

B.    Cash Distributions.......................................................................... 84

C.    Rounding of Payments..................................................................... 85

D.    Disputed Claims............................................................................. 85

E.    Undeliverable and Unclaimed Distributions........................................ 86

F.     Distributions by Solyndra Settlement Trustee ..................................... 87

G.      Compliance with Tax Requirements..................................................... 87

H.      Record Date in Respect to Distributions.............................................. 88

I.      Reserves ............................................................................................... 89

IX. LITIGATION, OBJECTIONS TO CLAIMS, AND DETERMINATION OF TAXES ........ 89

A.      Litigation; Objections to Claims; Objection Deadline............................ 89

B.      Temporary or Permanent Resolution of Disputed Claims..................... 91

C.      Setoffs .................................................................................................. 92

D.      Preservation of Retained Rights of Action .......................................... 93

X. INJUNCTION AND EXCULPATION PROVISIONS.......................................... 94

A.      Injunctions............................................................................................ 94

B.      Exculpation .......................................................................................... 97

C.      Estate Releases of Prepetition Lenders and Debtors' Employees ......... 98

D.      Reservation of Rights of United States................................................. 99

XI. PENSION PLANS, OTHER RETIREE BENEFITS AND LABOR CONTRACTS ........... 99

XII. NO REGULATED RATE CHANGE WITHOUT GOVERNMENT APPROVAL ............ 99

XIII. EXEMPTION FROM CERTAIN TRANSFER TAXES...................................... 99

XIV. RETENTION OF JURISDICTION AND MISCELLANEOUS MATTERS .................. 100

A.      Retention of Jurisdiction...................................................................... 100

B.      Miscellaneous Matters ........................................................................ 103

XV. CONDITIONS TO CONFIRMATION AND EFFECTIVENESS..................................... 109

A.      Conditions Precedent to Plan Effectiveness ........................................ 109

B.      Effect of Non-Occurrence of Conditions to Effective Date................. 110

XVI. EFFECT OF CONFIRMATION ................................................................. 110

A.      Binding Effect of Confirmation............................................................ 110

B.      Good Faith .......................................................................................... 111

C.      No Limitations on Effect of Confirmation............................................ 111

XVII. MODIFICATION OR WITHDRAWAL OF PLAN........................................ 111

iii

A.      Modification of Plan ........................................................................ 111

B.      Withdrawal of Plan ......................................................................... 112

XVIII. CONFIRMATION REQUEST ..................................................................... 112

DOCS_SF:79717.19 80368-002

Debtors and debtors in possession 360 Degree Solar Holdings, Inc. and Solyndra LLC hereby propose the following *Debtors' Amended Joint Chapter 11 Plan* pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* Capitalized terms used in this Plan shall have the meanings set forth in Article II hereof.

## I.

## INTRODUCTION

The Plan effectuates a reorganization of Holdings and a liquidation of Solyndra that maximizes recovery to Creditors and provides an efficient mechanism for monetizing assets of the Debtors' Estates. Among other things, the Plan incorporates multiple settlements among the Debtors, certain Prepetition Lenders, the WARN Plaintiffs, certain Creditors, certain Holders of Interests, and the Creditors' Committee. As a result of these settlements, there will be distributions to the Holders of General Unsecured Claims and Priority Claims.

Under the Plan, Holdings will be reorganized and the Plan Sponsors will provide the Holdings Settlement Fund that will maximize value for the benefit of Holders of Holdings General Unsecured Claims, result in the reduction of Claims against Solyndra, and preserve certain tax attributes of the Holdings Estate. Holders of Interests in Holdings will retain their Interests, which will be unimpaired by the Plan.

Under the Plan, assets of Solyndra (except Trust Avoidance Claims which will vest in the Solyndra Settlement Trust) will be vested in the Solyndra Residual Trust, subject to existing Liens, and liquidated for the benefit of Creditors under the supervision of the Solyndra Residual Trustee. The Plan Sponsors will provide the Exit Facility. The Plan Sponsors will also

provide the Solyndra Settlement Fund Loan, the proceeds of which shall be contributed to the

Solyndra Settlement Trust for the benefit of Holders of Solyndra General Unsecured Claims who

agree to forego any claims against Holdings.[2]  In exchange for funding the Solyndra Settlement

Trust, the Creditors' Committee shall release any and all Claims and Rights of Action against the

Prepetition Lenders, including, but not limited to, those Claims and Rights of Action preserved

under the Final DIP Order.

The Plan provides that all Holders of Allowed Administrative Expenses and

Allowed Priority Claims against the Debtors will be paid in full.  Holders of Secured Claims

against the Debtors generally will retain their Liens or receive the benefit of their collateral under

the Plan.[3]  Taken together, the Plan proposes to fairly and efficiently restructure the Debtors'

liabilities and distribute the Debtors' assets in a manner that will allow these Chapter 11 Cases to

be promptly concluded.

The Disclosure Statement, distributed with this Plan, contains a discussion of the

Debtors' history, a summary of the Debtors' assets and liabilities, a summary of what Holders of

Claims and Interests will receive under the Plan, a discussion of certain alternatives to the Plan,

and a summary of the procedures and voting requirements necessary for Confirmation of the

Plan.  The Disclosure Statement is intended to provide Holders of Claims and Interests with

information sufficient to enable such Holders to vote on the Plan.  All Claim Holders entitled to

vote on this Plan are encouraged to carefully read the Disclosure Statement and this Plan before

voting to accept or reject this Plan.  No solicitation materials, other than the Disclosure

---

[2] The Prepetition Tranche A Lenders will reduce their Prepetition Tranche A Claims by a corresponding amount.
[3] All Interests in Solyndra will be cancelled.

Statement and related materials transmitted therewith and approved by the Bankruptcy Court,

have been authorized for use in soliciting acceptance or rejection of this Plan.

## II.

### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.    **Rules of Interpretation, Computation of Time, and Governing Law**

For purposes of the Plan: (a) whenever from the context it is appropriate, each

term, whether stated in the singular or the plural, shall include both the singular and the plural,

and pronouns stated in the masculine, feminine or neuter gender shall include the masculine,

feminine and neuter gender; (b) any reference in the Plan to a contract, instrument, release,

indenture, or other agreement or document being in a particular form or on particular terms and

conditions means that such document shall be substantially in such form or substantially on such

terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to

be Filed, shall mean such document or exhibit, as it may have been or may be amended,

modified or supplemented; (d) unless otherwise specified, all references in the Plan to sections

and exhibits are references to sections and exhibits of or to the Plan; (e) the words "herein" and

"hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions

and headings to sections are inserted for convenience of reference only and are not intended to be

a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section

102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan

that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules

DOCS_SF:79717.19 80368-002

shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, and subject to the provisions of the Plan or any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

**B.** **Defined Terms**

The following definitions shall apply to capitalized terms used in the Plan:

1.      "Administrative Expense" means an unpaid administrative expense of the kind described in sections 503(b) and 507(a)(2) of the Bankruptcy Code against either of the Debtors, including, without limitation, (i) the actual, necessary costs and expenses of preserving the Estates of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Cases, (ii) compensation and reimbursement of expenses of professionals to the extent allowable under sections 327, 328, 330(a), 331, 503(b) and/or 1103 of the Bankruptcy Code and actually Allowed pursuant to a Final Order of the Bankruptcy Court, and (iii) all fees and charges assessed against the Estates under chapter 123 of title 28, United

States Code, 28 U.S.C. §§ 1911–1930, including the fees, if any, due to the United States Trustee.

   2.  "Allowed" means

     (a)  when used in respect of a Claim, Interest, or Administrative Expense, such amount of the Claim, Interest, Administrative Expense or portion thereof which is (i) determined and allowed in whole or in part by a Final Order of the Bankruptcy Court, (ii) expressly allowed under the Plan, or (iii) allowed under a stipulation or settlement with the Debtors, Reorganized Holdings, the Solyndra Residual Trust, or the Solyndra Settlement Trust, as applicable; and

     (b)  if not "Allowed" in accordance with subsection (a) above, a Claim, Interest or Administrative Expense that has not been Disallowed and is not subject to a pending objection or appeal from an order allowing or disallowing the claim, also will be deemed "Allowed" as follows:

       (1)  If no proof of Claim or Interest has been Timely Filed, (A) a Claim also is deemed "Allowed" in the amount and of the type of the Claim that has been scheduled in the Debtors' Schedules as liquidated in amount and not disputed or contingent and (B) an Interest also is deemed "Allowed" in the number and of the type of the Interests which have been listed by the Debtors' Lists of Equity Security Holders;

       (2)  If a proof of Claim or Interest is Timely Filed, so long as there is no objection to such Claim or Interest by the Objection Deadline, (A) a Claim also is deemed "Allowed" in the amount and of the type of the Claim reflected in the proof(s) of Claim and (B) an Interest also is deemed "Allowed" in the number and of the type of the Interest reflected in the proof(s) of Interest; and

       (3)  An Administrative Expense shall be deemed "Allowed," so long as there is no objection to such Administrative Expense by the Objection

5

Deadline, (A) if a Debtor pays it, or (B) if it is for income taxes, is properly asserted by the appropriate taxing authority in accordance with applicable law (including, without limitation, section 505 of the Bankruptcy Code), and is not timely contested.

3.       "Avoidance Claims" means any Rights of Action for the recovery of avoidable transfers arising under chapter 5 of the Bankruptcy Code or applicable state law and the proceeds thereof.

4.       "Ballot" means the form distributed to each Holder of an Impaired Claim entitled to vote, on which is to be indicated (a) acceptance or rejection of the Plan and (b) to the extent it is the Ballot of a Holder of an Allowed Solyndra General Unsecured Claim who votes to accept the Plan, approval of the General Unsecured Claim Release.

5.       "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, as set forth in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as now in effect or hereafter amended.

6.       "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court of competent jurisdiction as may be administering the Chapter 11 Cases or any part thereof.

7.       "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

8.       "Bar Date" means, when not otherwise specified, the date fixed by statute or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order of the Bankruptcy Court as the

6

deadline for filing proofs of Claims, Interests or Administrative Expenses (whether or not each and every proof of Claim, Interest or Administrative Expense is subject to such deadline).

9. "Budget" means the budget in form and substance acceptable to the Plan Sponsors in all respects, as amended or supplemented with the consent of the Plan Sponsors, for the payment of Plan Expenses; *provided*, *however*, if the payment of Plan Expenses requires any use of Cash that is subject to the Liens of the Prepetition Lenders, then such Budget must be approved by the Prepetition Tranche A Representative, the Prepetition B/D Agent, and the Prepetition Tranche E Agent or, in the absence of such approval, an order of the Bankruptcy Court (*provided that* the Prepetition Tranche A Representative, the Prepetition B/D Agent, and the Prepetition Tranche E Agent shall be deemed to have approved the Budget if such parties fail to object thereto in a writing received by counsel for the Solyndra Residual Trustee within ten (10) business days following written notification by the Solyndra Residual Trustee of such proposed use).

10. "Business Day" means any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

11. "Cash" means currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

12. "Chapter 11 Cases" means the cases commenced under chapter 11 of the Bankruptcy Code by each of the Debtors on the Petition Date and pending before the Bankruptcy Court.

7

13.     "Claim" means any claim against either or both of the Debtors within the meaning of section 101(5) of the Bankruptcy Code which is not an Administrative Expense, including, without limitation, claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

14.     "Claims Agent" means AlixPartners, LLP in its capacity as claims agent for the Debtors.

15.     "Class" means each category of Claims or Interests classified in Article IV of the Plan pursuant to section 1122 of the Bankruptcy Code.

16.     "Confirmation" means the approval by the Bankruptcy Court of the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, as effectuated by the Confirmation Order.

17.     "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

18.     "Confirmation Hearing" means the hearing(s) on Confirmation of the Plan, to be held on the date or dates established by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

19.     "Confirmation Order" means the order entered by the Bankruptcy Court confirming (approving) the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, in form and substance reasonably acceptable to the Debtors, the Creditors' Committee and the Plan Sponsors.

20.    "Consummation" means substantial consummation of the Plan as that term is used in section 1127(b) of the Bankruptcy Code.

21.    "Creditor" means any Person who is the Holder of a Claim or Administrative Expense against either of the Debtors.

22.    "Creditors' Committee" means the Official Committee of Unsecured Creditors of the Debtors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

23.    "Creditors' Committee Release" means the general release under Article X(C) of this Plan in favor of the Prepetition Lenders of any and all Claims and Rights of Action of the Creditors' Committee and/or the Solyndra Settlement Trustee, including, without limitation, any and all Claims and/or Rights of Action preserved pursuant to the Final DIP Order.

24.    "Debtors" means Holdings and Solyndra, either in their capacities as debtors and debtors-in-possession under chapter 11 of the Bankruptcy Code in the Chapter 11 Cases or otherwise from and after the Effective Date.

25.    "Debtors' Employees" means any current or former employees of either of the Debtors, including, without limitation, any current or former officer or director of any of the Debtors.

26.    "DIP Credit Facility" means that certain $7,000,000 Senior Secured, Superpriority Debtor in Possession Term Loan, Guaranty and Security Agreement, dated as of September 6, 2001, as amended, supplemented, or modified from time to time, by and among the Debtors, as Borrowers, and the DIP Lender, as lender

9

27. "DIP Lender" means AE DIP 2011, LLC, as lender to the Debtors under the DIP Credit Facility.

28. "Disallowed" means, with respect to a Claim, Interest, Administrative Expense, or portion thereof, that it is determined that the Claim, Interest, Administrative Expense or portion thereof is not allowed under the Bankruptcy Code by any of a Final Order, the Plan, or a stipulation or settlement with either of the Debtors (or, after the Effective Date, with either of Reorganized Holdings, the Solyndra Residual Trust, or the Solyndra Settlement Trust).

29. "Disclosure Statement" means the *Disclosure Statement in Respect of Debtors' Amended Joint Chapter 11 Plan*, as may be amended, modified or supplemented from time to time, submitted pursuant to section 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the Plan.

30. "Disputed Claim" means (i) a Claim, Interest or Administrative Expense that is subject to a pending objection or for which the Bankruptcy Court's order allowing or disallowing such Claim, Interest or Administrative Expense is on appeal; or (ii) until the Objection Deadline, a Claim for which a corresponding Claim has not been listed in the Debtors' Schedules or for which the corresponding Claim is listed in the Debtors' Schedules with a differing amount (to the extent of such difference), with a differing classification, or as disputed, contingent, or unliquidated, unless and until such Claim has been allowed either by a Final Order, the Plan, or under a stipulation or settlement with either of the Debtors (or, after the Effective Date, with either Reorganized Holdings, the Solyndra Residual Trustee, or the Solyndra Settlement Trustee).

10

31.     "Distributable Assets" means, except as otherwise noted below, any and all real or personal property of the Debtors of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, inventory, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Retained Rights of Action, books and records, any other general intangibles of the Debtors, and any and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, without limitation, property of the Estates within the scope of section 541 of the Bankruptcy Code.  Notwithstanding the foregoing, the term "Distributable Assets" does not include any property that has been abandoned by the Estates pursuant to a Final Order of the Bankruptcy Court.

32.     "Effective Date" means the first Business Day after the Confirmation Date immediately following the first day upon which all of the conditions to the occurrence of the Effective Date have been satisfied or waived in accordance with the Plan.

33.     "Entity" and "Entities" mean an entity as defined in section 101(5) of the Bankruptcy Code or more than one thereof.

34.     "Equity Security" means any equity security as defined in section 101(16) of the Bankruptcy Code in a Debtor.

35.     "Estate(s)" means each estate created pursuant to section 541(a) of the Bankruptcy Code upon the commencement of each Chapter 11 Case.

36.    "Exit Facility" means the Tranche I Exit Facility and Tranche II Exit Facility made available to the Solyndra Residual Trust in accordance with Article VI(P) of the Plan.

37.    "Fee Applications" mean applications of Professional Persons under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Cases.

38.    "File" or "Filed" means filed of record and entered on the docket in the Chapter 11 Cases or, in the case of a proof of claim, delivered to the Claims Agent.

39.    "Final DIP Order" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Secured Financing and (B) Utilize Cash Collateral; (II) Granting Liens and Superpriority Administrative Expense Status; (III) Granting Adequate Protection; and (IV) Modifying the Automatic Stay*, entered by the Bankruptcy Court in the Chapter 11 Cases on September 27, 2011, as such order was amended, supplemented, extended or modified by subsequent orders of the Bankruptcy Court.  For the avoidance of doubt, nothing in this Plan shall modify, alter, limit or affect any of the terms of the Final DIP Order other than provisions in the Plan relating to the Creditors' Committee Release.

40.    "Final Order" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal which judgment, order, ruling or other decree has not been reversed, stayed, revoked, modified, supplemented or amended and as to which (a) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari

12

is pending, or (b) any appeal or petition for review, rehearing or certiorari has been finally

decided and no further appeal or petition for review, rehearing or certiorari can be taken or

granted.

41.    "Final Resolution Date" means the date on which all Disputed Claims of

Creditors shall have been resolved by Final Order or otherwise finally determined.

42.    "General Unsecured Claim" means, with respect to any Debtor, a Claim

against such Debtor other than (a) an Administrative Expense, (b) a Tax Claim, (c) a Priority

Non-Tax Claim, (d) a Secured Claim, (e) any deficiency claims of the Prepetition Lenders, or

(f) any Claim of any other Debtor.

43.    "General Unsecured Creditor Release" means a waiver as to any and all

Claims that such Holder of an Allowed Solyndra General Unsecured Claim may have against

Holdings executed prior to or in connection with the receipt of any distribution from the

proceeds of the Solyndra Settlement Fund.

44.    "Holder" means the beneficial owner of any Claim, Interest, or

Administrative Expense.

45.    "Holdings" means 360 Degree Solar Holdings, Inc., a Debtor in these

Chapter 11 Cases.

46.    "Holdings Creditors" means Von Ardenne Anlagentechnik GmbH, Global

Kato HG, LLC, iStar CTL I, L.P., and Calaveras, LLC.

47.    "Holdings General Unsecured Claims" means the General Unsecured

Claims asserted by the Holdings Creditors against Holdings.  For the avoidance of doubt,

13

Holdings General Unsecured Claims shall not include any Administrative Claims of any Holdings Creditor.

48.     "Holdings Settlement Fund" means a contribution of $810,000, or such other amount needed to provide Allowed Holdings General Unsecured Claims with not less than a 3% distribution on account of their Allowed Claims, funded by the Plan Sponsors to Holdings in accordance with Article VI(D) of the Plan.

49.     "Impaired" has the meaning set forth in section 1124 of the Bankruptcy Code.

50.     "Interest" means, as to either of the Debtors, (i) any Equity Security, including all shares or similar securities, whether or not transferable or denominated "stock" and whether issued, unissued, authorized or outstanding; (ii) any warrant, option, or contractual right to purchase, sell, subscribe or acquire such Equity Securities at any time and all rights arising with respect thereto; and (iii) any similar interest in a Debtor.

51.     "IRS" means the Internal Revenue Service.

52.     "Lien" means any charge against or interest in property to secure payment or performance of a Claim, debt, or obligation.

53.     "Miscellaneous Secured Claim" means (a) as to Solyndra:  any Secured Claim other than a Prepetition Lender Claim, and (b) as to Holdings:  the non-recourse Claim under section 1111(b)(2) of the Bankruptcy Code of the Prepetition Tranche B Lenders and Prepetition Tranche D Lenders and any other Secured Claim that is not a Prepetition Lender Claim.

54.    "Net WARN Settlement Proceeds" means that amount of Cash remaining from the WARN Settlement Amount, net of deductions by Reorganized Solyndra on account of withholding and payroll taxes, fees and expenses (including noticing costs in connection with the class settlement) of counsel to the settlement class represented by the WARN Plaintiffs as described and identified in the WARN Settlement.

55.    "Objection Deadline" means the deadline to object to Claims specified in Article IX(A) of the Plan.

56.    "Person" means an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit or other entity of whatever nature.

57.    "Petition Date" means September 6, 2011, the date on which each of the Debtors filed their petitions for relief under chapter 11 of the Bankruptcy Code.

58.    "Plan" means this Debtors' Amended Joint Chapter 11 Plan.

59.    "Plan Expenses" means the expenses incurred or payable by the Solyndra Residual Trust or Reorganized Holdings following the Effective Date (including the reasonable fees and costs of attorneys and other professionals) in an amount consistent with the Budget relating to implementation of the Plan, for the purpose of (i) prosecuting the Retained Rights of Action of Solyndra, (ii) resolving Administrative Expenses and Priority Claims and effectuating distributions to Creditors under the Plan other than those Creditors receiving distributions from the Solyndra Settlement Trust, (iii) resolving Holdings General Unsecured Claims and

15

effectuating distributions of the Holdings Settlement Fund, (iv) otherwise implementing the Plan and closing the Chapter 11 Cases, or (v) undertaking any other matter relating to the Plan.

60.    "Plan Settlement" shall have the meaning ascribed to such term in Article VI(A) hereof.

61.    "Plan Sponsors" means Argonaut Ventures I, L.L.C. and Madrone Partners, LP.  The Plan Sponsors are Holders of certain of the Interests in Holdings and two of the Prepetition Tranche A Lenders who shall provide the Holdings Settlement Fund, the Solyndra Settlement Fund Loan, the WARN Settlement Loan and the Exit Facility under this Plan.

62.    "Plan Supplement" means the supplement to the Plan to be Filed by the Debtors with the Bankruptcy Court, which supplement shall contain forms of certain substantially final documents required for the implementation of the Plan.

63.    "Prepetition Common Agreement" means that certain First Amended & Restated Common Agreement, dated as of February 23, 2011, as amended or supplemented, by and among Solyndra, as borrower, the Prepetition Tranche A Representative, the Prepetition Tranche B/D Agent, the Prepetition Tranche E Agent, and the Prepetition Master Collateral Agent.

64.    "Prepetition Intercreditor Agreement" means that certain Intercreditor Agreement, dated as of February 23, 2011, as amended or supplemented, by and among the Prepetition Tranche A Representative, the Prepetition Tranche B/D Agent, the Prepetition Tranche E Agent, and the Prepetition Master Collateral Agent.

16

65.     "Prepetition Lender Claims" means, together, the Prepetition Tranche A Claims, Prepetition Tranche B Claims, Prepetition Tranche D Claims, and Prepetition Tranche E Claims.

66.     "Prepetition Lenders" means the Prepetition Tranche A Lenders, Prepetition Tranche B Lenders, Prepetition Tranche D Lenders, and Prepetition Tranche E Lenders.

67.     "Prepetition Lender Deficiency Claim" means the aggregate Claims of the Prepetition Lenders resulting from the difference between (i) the value of the collateral securing the Prepetition Lender Claims and (ii) the Prepetition Lender Claims.

68.     "Prepetition Master Collateral Agent" means U.S. Bank National Association, as master collateral agent, and any successors thereto or assigns thereof.

69.     "Prepetition Tranche A Claim" means a Claim arising under the Prepetition Tranche A Credit Documents.

70.     "Prepetition Tranche A Credit Documents" means that certain Term Loan Agreement (Tranche A), dated as of February 23, 2011, together with all other loan and security documents executed in connection therewith, as amended or supplemented, by and among Solyndra, as borrower, the Prepetition Tranche A Lenders, and the Prepetition Tranche A Representative.

71.     "Prepetition Tranche A Lenders" means the lenders that are party to the Prepetition Tranche A Credit Documents and are Holders of Prepetition Tranche A Claims.

72.    "Prepetition Tranche A Representative" means Argonaut Ventures I, L.L.C., in such capacity, and any successors thereto or assigns thereof.

74.    "Prepetition Tranche B Claim" means a Claim on account of the Tranche B Debt (as defined in the Final DIP Order) arising under the Prepetition Tranche B/D Credit Documents.

75.    "Prepetition Tranche B/D Agent" means the U.S. Secretary of Energy, as loan servicer.

76.    "Prepetition Tranche B/D Credit Documents" means that certain Payment and Reimbursement Agreement (Tranches B and D), dated as of February 23, 2011, together with all other loan and security documents executed in connection therewith, as amended or supplemented, by and between Solyndra, as borrower, and the U.S. Department of Energy, acting by and through the Prepetition Tranche B/D Agent.

77.    "Prepetition Tranche B Lenders" means the lenders that are party to the Prepetition Tranche B/D Credit Documents and are Holders of Prepetition Tranche B Claims.

79.    "Prepetition Tranche D Claim" means a Claim on account of the Tranche D Debt (as defined in the Final DIP Order) arising under the Prepetition Tranche B/D Credit Documents.

80.    "Prepetition Tranche D Lenders" means the lenders that are party to the Prepetition Tranche B/D Credit Documents and are Holders of Prepetition Tranche D Claims.

81.    "Prepetition Tranche E Agent" means Argonaut Ventures I, L.L.C., in such capacity, and any successors thereto or assigns thereof.

18

82.    "Prepetition Tranche E Claim" means a Claim arising under the Prepetition Tranche E Credit Documents.

83.    "Prepetition Tranche E Credit Documents" means that certain Tranche E Note Purchase Agreement, dated as of February 23, 2011, together with all other loan and security documents executed in connection therewith, as amended or supplemented, by and among Solyndra, as borrower, the Prepetition Tranche E Lenders, and the Prepetition Tranche E Agent.

84.    "Prepetition Tranche E Lenders" means each holder of a Tranche E note issued pursuant to the Prepetition Tranche E Credit Documents.

85.    "Priority Non-Tax Claim"[4] means any Claim, other than a Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

86.    "Pro Rata" means proportionately, so that with respect to any distribution, the ratio of (a) (i) the amount of property to be distributed on account of a particular Claim or particular group of Claims to (ii) the amount of such particular Claim or group of Claims, is the same as the ratio of (b) (i) the amount of property to be distributed on account of all Claims or groups of Claims sharing in such distribution to (ii) the amount of all Claims or groups of Claims sharing in such distribution.

87.    "Professional Person" shall mean Persons retained or to be compensated pursuant to sections 326, 327, 328, 330, 503(b), and/or 1103 of the Bankruptcy Code.

88.    "Record Date" means the Effective Date.

---

[4] For avoidance of doubt, Priority Non-Tax Claims shall include the Allowed WARN Priority Claims of the WARN Employees.

89.     "Relevant Books and Records" has the meaning ascribed to such term in Article VI(E) of the Plan.

90.     "Reorganized" means, when used with reference to Holdings, such Debtor on and after the Effective Date.

91.     "Representative" means, as to the referenced Person, such Person's present and former officers, directors, shareholders, trustees, partners and partnerships, members, agents, employees, representatives, attorneys, accountants, professionals, and successors or assigns, in each case solely in their capacity as such.

92.     "Retained Rights of Action" means all Rights of Action belonging to Reorganized Holdings, the Solyndra Residual Trust, or the Solyndra Settlement Trust as of the Effective Date, including, without limitation, the Solyndra Avoidance Claims and Trust Avoidance Claims, but excluding those Rights of Action specifically released under the Plan, including, without limitation, the Waived Avoidance Claims.  The Retained Rights of Action include, without limitation, any and all rights of the Debtors to pursue the following claims against third parties:  (i) avoidance claims against any parties disclosed in the Schedules and Statements, (ii) any claims against third parties relating to the claims asserted by the WARN Plaintiffs, and (iii) any antitrust and other claims against certain defendants for, inter alia, such defendants' anticompetitive or tortious conduct.

93.     "Rights of Action" means any and all claims, demands, rights, defenses, actions, causes of action (including without limitation Avoidance Claims), suits, contracts, agreements, obligations, accounts, defenses, offsets, powers and privileges of any kind or

20

character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, held by any Person against any other Person, and any proceeds thereof.

94.   "Schedules" means the schedules of assets and liabilities filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended from time to time.

95.   "Secured Claim" means any Claim of any Person (i) that is secured by a Lien on property in which either of the Debtors or its Estate has an interest, which Lien is valid, perfected and enforceable and not subject to avoidance under applicable law or by reason of a Final Order but only to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest of the claimant in the property of the Estate securing such Claim or (ii) to the extent that such Person has a valid right of setoff under section 553 of the Bankruptcy Code.

96.   "Solyndra" means Solyndra LLC, a Debtor in these Chapter 11 Cases.

97.   "Solyndra Avoidance Claims" means those Avoidance Claims against entities that have timely filed a request for allowance and/or payment of an Administrative Expense against the Debtors under section 503(b)(9) of the Bankruptcy Code.

98.   "Solyndra General Unsecured Claim" means a General Unsecured Claim against Solyndra, subject to the special provision for Holdings Creditors at Article IV(B)(8)(c) of the Plan.

21

99.    "Solyndra Net Lender Distributable Assets" means the Distributable Assets of Solyndra that are encumbered by any Liens of the Prepetition Lenders, from and after the Effective Date, once such assets have been reduced to Cash. The Solyndra Net Lender Distributable Assets exclude:  (i) the Solyndra Settlement Trust Assets; (ii) proceeds of the Exit Facility up to the amount necessary to fund the payment of Allowed Administrative Expenses, Tax Claims, Priority Non-Tax Claims, and Plan Expenses of the Solyndra Residual Trust; (iii) proceeds of the WARN Settlement Loan; (iv) Solyndra Unencumbered Assets; and (vi) those Distributable Assets of Solyndra that are subject to Permitted Prior Liens as defined in the Final DIP Order until such time that such Permitted Prior Liens are satisfied in full.

100.    "Solyndra Residual Trust" means the liquidating trust or trusts that may be created under this Plan for the benefit of the Solyndra Settlement Trust and the Holders of Prepetition Lender Deficiency Claims as and solely to the extent set forth in this Plan, and governed by the Solyndra Residual Trust Agreement.  The Solyndra Residual Trust will contain certain assets that are subject to existing Liens, including the Liens of the Prepetition Lenders.

101.    "Solyndra Residual Trust Agreement" means the liquidating trust agreement or agreements governing the Solyndra Residual Trust that shall be filed as part of the Plan Supplement.

102.    "Solyndra Residual Trust Assets" means the assets held by the Solyndra Residual Trust which, as of the Effective Date, shall be composed of the Solyndra Net Lender Distributable Assets and the Solyndra Unencumbered Assets.

22

103.    "Solyndra Residual Trust Committee" means the Persons selected to fill the role of the supervisory committee of the Solyndra Residual Trust in accordance with the Solyndra Residual Trust Agreement and this Plan.

104.    "Solyndra Residual Trustee" means the Person selected to fill the role of trustee of the Solyndra Residual Trust in accordance with the Solyndra Residual Trust Agreement and this Plan.

105.    "Solyndra Residual Trust Interests" means the beneficial interests in the Solyndra Residual Trust and the Solyndra Residual Trust Assets consistent with the terms of this Plan and subject to the terms of the Solyndra Residual Trust Agreement.  The Solyndra Residual Trust Interests shall be uncertificated and non-transferable, except by will, intestate succession, or operation of law.

106.    "Solyndra Settlement Fund" means the sum of $3,000,000 to be funded by a portion of the proceeds of the Solyndra Settlement Fund Loan.

107.    "Solyndra Settlement Fund Loan" means that certain loan in original principal amount of $3,175,000, evidenced by a note issued to the Plan Sponsors by the Solyndra Residual Trust, bearing interest that is payable in kind, and containing such other terms and conditions as are acceptable to the Plan Sponsors.  The Solyndra Settlement Fund Loan shall be secured by a Lien on the same assets and shall have the same priority as the Tranche I Exit Facility.  A substantially final form of the note evidencing the Solyndra Settlement Fund Loan shall be filed with the Plan Supplement.

108.    "Solyndra Settlement Trust" means the liquidating trust or trusts that may be created under this Plan solely for the benefit of Holders of Solyndra General Unsecured Claims in Class 8 and governed by the Solyndra Settlement Trust Agreement.

109.    "Solyndra Settlement Trust Agreement" means the liquidating trust agreement or agreements governing the Solyndra Settlement Trust that shall be filed as part of the Plan Supplement.

110.    "Solyndra Settlement Trust Assets" means the assets held by the Solyndra Settlement Trust which, as of the Effective Date, shall be composed of the Solyndra Settlement Fund, the Solyndra Settlement Trust Contribution, Trust Avoidance Claims, certain of the Solyndra Residual Trust Interests, and the Relevant Books and Records.

111.    "Solyndra Settlement Trust Committee" means the Persons selected to fill the role of the supervisory committee of the Solyndra Settlement Trust in accordance with the Solyndra Settlement Trust Agreement and this Plan.

112.    "Solyndra Settlement Trust Contribution" means an amount equal to $175,000 to be funded by a portion of the proceeds of the Solyndra Settlement Fund Loan.

113.    "Solyndra Settlement Trustee" means the Person selected to fill the role of trustee of the Solyndra Settlement Trust in accordance with the Solyndra Settlement Trust Agreement and this Plan.

114.    "Solyndra Settlement Trust Interests" means the beneficial interests in the Solyndra Settlement Trust and the Solyndra Settlement Trust Assets, subject to the terms of the

24

Solyndra Settlement Trust Agreement. The Solyndra Settlement Trust Interests shall be uncertificated and non-transferable, except by will, intestate succession, or operation of law.

115. "Solyndra Unencumbered Assets" means any Distributable Assets of Solyndra as of the Effective Date that are not encumbered by any Liens, including, without limitation, any Retained Rights of Action, but not including the Trust Avoidance Claims or any other Solyndra Settlement Trust Assets.

116. "Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

117. "Tax Claim" means any Claim for any Tax to the extent that it is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

118. "Timely Filed" means, with respect to a Claim, Interest or Administrative Expense, that a proof of such Claim or Interest or request for payment of such Administrative Expense was filed with the Bankruptcy Court or the Claims Agent, as applicable, within such applicable period of time fixed by the Plan, statute, or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order (*e.g.*, the Bar Date), or has otherwise been deemed timely filed by a Final Order of the Bankruptcy Court.

119. "Tranche I Exit Facility" means that certain financing facility in the principal amount of up to $11,500,000, or such higher amount to which the Plan Sponsors agree,

made available to the Solyndra Residual Trust in accordance with Article VI(P) of the Plan, which shall be secured by a Lien on the same assets and shall have the same priority as the DIP Credit Facility, the proceeds of which shall be used to fund payment of Allowed Administrative Expenses, Priority Tax Claims (except any Secured Claims), Priority Non-Tax Claims (other than WARN Priority Claims) and Solyndra's Plan Expenses, in each case not funded and paid through the Tranche II Exit Facility.

120.    "Tranche II Exit Facility" means that certain financing facility in the principal amount of up to $3,500,000, or such higher amount to which the Plan Sponsors agree, made available to the Solyndra Residual Trust in accordance with Article VI(P) of the Plan, which shall be secured by a first priority Lien (subject to the Liens of the WARN Settlement Loan in specific Retained Rights of Action) on any and all Solyndra Unencumbered Assets, the proceeds of which shall be used to satisfy certain Claims and expenses, including, without limitation, Priority Claims of current or former employees of Solyndra (other than the WARN Priority Claims), Claims under section 503(b)(9) of the Bankruptcy Code, and Priority Tax Claims (except any Secured Claims).

121.    "Trust Avoidance Claims" means: (i) Avoidance Claims of Solyndra against any party other than the Waived Avoidance Claims and the Solyndra Avoidance Claims; and (ii) any rights of setoff, counterclaims, and/or defenses that Solyndra may have against Holders of Solyndra General Unsecured Claims, net of any rights of setoff, counterclaims and/or defenses available to, and preserved for, the Solyndra Residual Trust against Holders of

26

Administrative Expenses, including Claims under section 503(b)(9) of the Bankruptcy Code, Tax

Claims, Priority Non-Tax Claims, and Secured Claims.

122.    "Unclaimed Property" means all Cash deemed to be "Unclaimed

Property" pursuant to Article VIII(E) of the Plan.

123.    "Unimpaired" means, with respect to a Class of Claims or Interests, a

Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the

Bankruptcy Code.

124.    "Waived Avoidance Claims" means any purported Avoidance Claims

against current or former employees of the Debtors or against the Prepetition Lenders.

125.    "WARN Employees" means those former employees of the Debtors,

including the WARN Plaintiffs, who are described and identified as the settlement class in the

WARN Settlement.

126.    "WARN Plaintiffs" means Peter M. Kohlstadt and Dan Braun, on behalf

of themselves and a putative class of similarly-situated former employees of Solyndra, in respect

of litigation brought and threatened to be brought pursuant to the Workers Adjustment and

Retraining Notification Act, 29 U.S.C. §§ 2101-2109 and analogous provisions of the California

Labor Code.

127.    "WARN Priority Claims" means the Priority Non-Tax Claims of the

WARN Employees under the WARN Settlement.

128.    "WARN Settlement" means a proposed settlement of the putative class of Claims asserted by the WARN Plaintiffs, subject to Bankruptcy Court approval, which approval is a condition to the Effective Date.

129.    "WARN Settlement Amount" means an amount equal to $3,500,000 made available to the Solyndra Residual Trust for distribution in accordance with the WARN Settlement in respect of the Allowed WARN Priority Claims of the WARN Employees.

130.    "WARN Settlement Loan" means that certain loan in the original principal amount of $3,500,000 evidenced by a note issued to the Plan Sponsors by the Solyndra Residual Trust and containing such other terms and conditions as are acceptable to the Plan Sponsors, the proceeds of which shall made available to the Solyndra Residual Trust on a non-recourse basis to fund the WARN Settlement Amount upon the later of:  (i) the Effective Date, and (ii) the entry date of a Final Order of the Bankruptcy Court approving the WARN Settlement.  A substantially final form of the note evidencing the WARN Settlement Loan shall be filed with the Plan Supplement.  The WARN Settlement Loan shall be payable solely out of the proceeds, if any, of Retained Rights of Action against third parties relating to the claims asserted by the WARN Plaintiffs.  The Debtors are in the process of negotiating a settlement of one of these claims that will allow for a partial repayment of the WARN Settlement Loan.  The terms of the proposed settlement are confidential.

## III.

## TREATMENT OF ADMINISTRATIVE EXPENSES AND TAX CLAIMS

### A.    Introduction

As required by the Bankruptcy Code, Administrative Expenses and Tax Claims are not placed into voting Classes. Instead, they are left unclassified, are not considered Impaired, do not vote on the Plan, and receive treatment specified by statute or agreement of the parties. All postpetition payments by or on behalf of either of the Debtors in respect of an Administrative Expense or Tax Claim shall either reduce the Allowed amount thereof or reduce the amount to be paid under the Plan in respect of any Allowed amount thereof; provided that the method of application that is most beneficial to the Debtors' Estates shall be employed.

### B.    Administrative Expenses

Under the Plan, on or as soon as practicable after the Effective Date, each Holder of an Allowed Administrative Expense against either of the Debtors will receive, in full satisfaction, settlement, release, and extinguishment of such Allowed Administrative Expense, Cash from Reorganized Holdings or the Solyndra Residual Trust, as applicable, equal to the full amount of such Allowed Administrative Expense, unless such Holder and Reorganized Holdings or the Solyndra Residual Trust, as applicable, with the consent of the Plan Sponsors, have mutually agreed in writing to other terms, or an order of the Bankruptcy Court provides for other terms; provided, however, that, unless otherwise agreed to by the Debtors, Reorganized Holdings, or the Solyndra Residual Trust, as applicable (and in either case with the consent of the Plan Sponsors) (a) requests for payment of all Administrative Expenses must be Filed and

29

served as described in Article XIV(B)(3) of the Plan, and (b) certain different and additional requirements shall apply to the Administrative Expenses of Professional Persons as set forth in Article XIV(B)(2) and (3) of the Plan; provided further, however, that no interest or penalties of any nature shall be paid in respect of an Allowed Administrative Expense.

## C.    **DIP Credit Facility Claims**

On the Effective Date, all Claims and other required payments, including, without limitation, all fees, costs, and expenses due and owing under the DIP Credit Facility shall be indefeasibly paid in Cash in full to the DIP Lender from the proceeds of the Tranche I Exit Facility.

## D.    **Tax Claims**

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Tax Claims are not to be classified and thus Holders of Tax Claims are not entitled to vote to accept or reject the Plan.

As required by section 1129(a)(9) of the Bankruptcy Code, on or as soon as practicable after the Effective Date, each Holder of an Allowed Tax Claim against either of the Debtors will receive, in full satisfaction, settlement, release, and extinguishment of such Allowed Tax Claim, Cash from Reorganized Holdings or the Solyndra Residual Trust, as applicable, equal to the portion of the Allowed Tax Claim due and payable on or prior to the Effective Date according to applicable non-bankruptcy law. Any Allowed Tax Claim (or portion thereof) against either of the Debtors not yet due and payable as of the Effective Date will be paid by Reorganized Holdings or the Solyndra Residual Trust, as applicable, no later than when due and payable under applicable non-bankruptcy law without regard to the commencement of the

30

Chapter 11 Cases; provided that upon request of Reorganized Holdings or the Solyndra Residual

Trust, as applicable, the Bankruptcy Court shall determine the amount of any Disputed Claim

for, or issues pertaining to, Tax Claims. Any Holder of a Tax Claim may agree to accept

different treatment as to which Reorganized Holdings or the Solyndra Residual Trust, as

applicable, with the consent of the Plan Sponsors, and such Holder have agreed upon in writing.

IV.

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

A.    **Summary**

The categories of Claims and Interests listed below classify Claims and Interests

for all purposes, including voting, confirmation and distribution pursuant to the Plan and

pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is

classified in a particular Class only to the extent that the Claim or Interest qualifies within the

description of that Class and is classified in other Classes only to the extent that any remainder of

the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest

is also classified in a particular Class only to the extent that such Claim or Interest is an Allowed

Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied

prior to the Effective Date.

In accordance with section 1122 of the Bankruptcy Code, the Plan provides for

the classification of Claims and/or Interests as set forth below. Administrative Expenses and Tax

Claims have not been classified and are excluded from the following Classes in accordance with

section 1123(a)(1) of the Bankruptcy Code. Inasmuch as the Plan does not provide for

31

substantive consolidation, for purposes of establishing whether the requirements of sections

1129(a)(8) and (a)(10) of the Bankruptcy Code have been satisfied, the Debtors will tabulate

votes on the Plan on a Debtor-by-Debtor basis, subject to Article V(D) of the Plan.

**B.**    **Classification and Treatment of Claims and Interests**

The treatment of each Class of Claims and/or Interests is set forth below.  Unless

the Bankruptcy Court has specified otherwise prior to Confirmation, Reorganized Holdings or

the Solyndra Residual Trust, as applicable, shall determine whether a postpetition payment by or

on behalf of either of the Debtors in respect of a Claim either (x) shall reduce the Allowed

amount thereof or (y) shall reduce the amount to be paid under the Plan in respect of any

Allowed amount thereof by considering which method is most advantageous to the Debtors'

Estates.

**1.**    **Class 1 – Priority Non-Tax Claims**

a.    Classification:  Class 1 consists of all Priority Non-Tax Claims

against either of the Debtors.

b.    Treatment:  At the election of Reorganized Holdings or the

Solyndra Residual Trust, as applicable, the Holder of each Priority Non-Tax Claim against either

of the Debtors shall receive, in full satisfaction, settlement, release, and extinguishment of such

Priority Non-Tax Claim, a Cash payment from Reorganized Holdings or the Solyndra Residual

Trust, as applicable, equal to the Allowed amount of such Claim (a) on or as soon as practicable

after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a

Final Order determining or allowing such Claim; or (b) as otherwise agreed by the Holders of

32

such Claims and Reorganized Holdings or the Solyndra Residual Trust, as applicable, and in either case with the consent of the Plan Sponsors.

        c.    <u>Impairment/Voting</u>: Class 1 is Unimpaired. Class 1 therefore is conclusively presumed to have accepted the Plan and Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

        2.    **<u>Class 2 – Miscellaneous Secured Claims</u>**

        a.    <u>Classification</u>: Class 2 consists of all Miscellaneous Secured Claims (if any such Claims exist) against either of the Debtors.

        b.    <u>Treatment</u>: On or as soon as practicable after the Effective Date, each Holder of an Allowed Miscellaneous Secured Claim shall, on account of such Claim, at the election of Reorganized Holdings or the Solyndra Residual Trust, as applicable, and as the sole distribution or dividend by the Debtors or their Estates under this Plan on account of such Miscellaneous Secured Claim, either: (i) be paid by Reorganized Holdings or the Solyndra Residual Trust, as applicable, in Cash in full, (ii) have surrendered to such Holder, without representation or warranty, the collateral securing its Claim, (iii) notwithstanding any contractual provision or applicable law that entitles the Holder of such Miscellaneous Secured Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (A) be paid by Reorganized Holdings or the Solyndra Residual Trust, as applicable, a cure of any such default that occurred prior to the Effective Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (B) have reinstated the maturity of such Miscellaneous Secured Claim as such maturity existed before such default, (C) be compensated

33

by Reorganized Holdings or the Solyndra Residual Trust, as applicable, for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law, and (D) otherwise not have altered the legal, equitable, or contractual rights to which such Miscellaneous Secured Claim entitles the Holder of such Claim, or (iv) have left unaltered the legal, equitable, and contractual rights to which such Claim entitles the Holder of such Claim.  In the case of option (ii) or (iii), in the event that any such Miscellaneous Secured Claim is not paid in full by such distribution, any deficiency against the applicable Debtor will be treated as a General Unsecured Claim against such Debtor.  Any Holder of a Miscellaneous Secured Claim may agree to accept different treatment as to which Reorganized Holdings or the Solyndra Residual Trust, as applicable, and such Holder have agreed upon in writing, and in either case with the consent of the Plan Sponsors.

          c.      <u>Impairment/Voting</u>:  Class 2 is Unimpaired.  Holders of Claims in Class 2 are conclusively presumed to have accepted the Plan and Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

        **3.**      **<u>Class 3 – Prepetition Tranche A Claims</u>**

          a.      <u>Classification</u>:  Class 3 consists of all Prepetition Tranche A Claims against Solyndra.

          b.      <u>Treatment</u>:  Subject to the last sentence hereof, on or as soon as practicable after the date when the Tranche I Exit Facility and Solyndra Settlement Fund Loan is paid in full or such later date when any assets of the Solyndra Residual Trust become available for distribution, each Holder of a Prepetition Tranche A Claim shall receive, subject to the

34

provisions of the Prepetition Tranche A Credit Documents, the Prepetition Common Agreement, and the Prepetition Intercreditor Agreement: (i) a Pro Rata share (calculated as a percentage of Prepetition Tranche A Claims) of the Solyndra Net Lender Distributable Assets up to the full Allowed amount of such Prepetition Tranche A Claim; and (ii) to the extent that any Prepetition Tranche A Claim is not paid in full by the foregoing distribution, the Holder of such Claim shall be entitled, as soon as practicable after payment in full of the Tranche II Exit Facility, to a Pro Rata share (calculated as a percentage of Prepetition Tranche A Claims) of the Solyndra Residual Trust Interests that are distributed to the Holders of Prepetition Tranche A Claims up to the full Allowed amount of such Prepetition Tranche A Claims, which distribution shall be calculated by multiplying the aggregate of the Solyndra Residual Trust Interests by a fraction equal to (A) the amount of Prepetition Lender Deficiency Claims as the numerator and (B) the sum of Prepetition Lender Deficiency Claims and Allowed Solyndra General Unsecured Claims as the denominator. Notwithstanding the foregoing, the Prepetition Tranche A Lenders shall not receive any distribution from or on account of the Solyndra Settlement Fund, the Solyndra Settlement Trust Contribution, or the Trust Avoidance Claims. The existing Liens securing the Prepetition Tranche A Claims will be retained on the Solyndra Net Lender Distributable Assets subject to the terms of the Plan and the distributions contemplated hereby. The Prepetition Tranche A Claims are deemed Allowed in the full amount reflected in the Final DIP Order, the Prepetition Intercreditor Agreement, and the Debtors' books and records as of the Record Date; provided, however, that, pursuant to the Plan Settlement, the Allowed amount of the Prepetition Tranche A Claims held by the Plan Sponsors shall be reduced by the aggregate of the amount of the

35

Solyndra Settlement Fund Loan (*i.e.*, reduced by $3,175,000, plus any interest or fees accrued

thereon).  Notwithstanding anything to the contrary herein, the reasonable fees and expenses of

the Prepetition Master Collateral Agent permitted under the Prepetition Tranche A Credit

Documents, the Prepetition Common Agreement, and the Prepetition Intercreditor Agreement

shall be paid in full prior to any distribution to Holders of Prepetition Tranche A Claims.

    c. <u>Impairment/Voting</u>:  Class 3 is Impaired.  Holders of Claims in

Class 3 are therefore entitled to vote to accept or reject the Plan.

    **4.** **<u>Class 4 – Prepetition Tranche B Claims</u>**

    a. <u>Classification</u>:  Class 4 consists of all Prepetition Tranche B

Claims against Solyndra.

    b. <u>Treatment</u>:  From and after the date when each Allowed

Prepetition Tranche A Claim is paid in full in accordance with the terms hereof, on or as soon as

practicable thereafter when any additional assets of the Solyndra Residual Trust become

available for distribution, each Holder of a Prepetition Tranche B Claim shall receive, subject to

the provisions of the Prepetition Tranche B/D Credit Documents, the Prepetition Common

Agreement, and the Prepetition Intercreditor Agreement: (i) a Pro Rata share (calculated as a

percentage of Prepetition Tranche B Claims) of the proceeds of the Solyndra Net Lender

Distributable Assets up to the full Allowed amount of such Prepetition Tranche B Claim; and (ii)

to the extent that any Prepetition Tranche B Claim is not paid in full by the foregoing

distribution, the Holder of such Claim shall be entitled, until payment of such Prepetition

Tranche B Claim in full and as soon as practicable after payment in full of the Tranche II Exit

36

Facility, to a Pro Rata share (calculated as a percentage of Prepetition Tranche B Claims) of the Solyndra Residual Trust Interests that were distributed or made available to the Holders of Prepetition Tranche A Claims until such Claims were paid in full. Notwithstanding the foregoing, the Prepetition Tranche B Lenders shall not receive any distribution from or on account of the Solyndra Settlement Fund or the Solyndra Settlement Trust Contribution. In addition, notwithstanding anything to the contrary herein or in the Prepetition Intercreditor Agreement, the Holder of a Prepetition Tranche B Claim shall be entitled, until payment of such Prepetition Tranche B Claim in full, to a Pro Rata share (calculated as a percentage of any deficiency claims of the Prepetition Tranche B Lenders and Prepetition Tranche D Lenders) of the net proceeds of any Trust Avoidance Claims calculated by multiplying the aggregate of such proceeds by a fraction equal to (A) the sum of Prepetition Tranche B Claims and Prepetition Tranche D Claims as the numerator and (b) the sum of Prepetition Tranche B Claims, Prepetition Tranche D Claims, and Allowed Solyndra General Unsecured Claims (subject to the special provision for Holdings Creditors at Article IV(B)(8)(c) of the Plan) as the denominator. The existing Liens securing the Prepetition Tranche B Claims will be retained on the Solyndra Net Lender Distributable Assets subject to the terms of the Plan and the distributions contemplated hereby. The Prepetition Tranche B Claims are deemed Allowed in the full amount reflected in the Final DIP Order and the Debtors' books and records as of the Record Date.

   c. <u>Impairment/Voting</u>: Class 4 is Impaired. Holders of Claims in Class 4 are therefore entitled to vote to accept or reject the Plan.

5.    **Class 5 – Prepetition Tranche D Claims**

a.    <u>Classification</u>: Class 5 consists of all Prepetition Tranche D

Claims against Solyndra.

b.    <u>Treatment</u>: From and after the date when each Allowed

Prepetition Tranche A Claim and each Allowed Prepetition Tranche B Claim is paid in full in

accordance with the terms hereof, on or as soon as practicable thereafter when additional assets

of the Solyndra Residual Trust become available for distribution, each Holder of a Prepetition

Tranche D Claim shall receive, subject to the provisions of the Prepetition Tranche B/D Credit

Documents, the Prepetition Tranche E Credit Documents, the Prepetition Common Agreement,

and the Prepetition Intercreditor Agreement: (i) a Pro Rata share (calculated as a percentage of

Prepetition Tranche D Claims and Prepetition Tranche E Claims) of the proceeds of the Solyndra

Net Lender Distributable Assets up to the full Allowed amount of such Prepetition Tranche D

Claim; and (ii) to the extent that any Prepetition Tranche D Claim is not paid in full by the

foregoing distribution, the Holder of such Claim shall be entitled, until payment of such

Prepetition Tranche D Claim in full and as soon as practicable after payment in full of the

Tranche II Exit Facility, to a Pro Rata share (calculated as a percentage of Prepetition Tranche D

Claims and Prepetition Tranche E Claims) of the Solyndra Residual Trust Interests that were

distributed or made available to the Holders of Prepetition Tranche B Claims until such Claims

were paid in full.  Notwithstanding the foregoing, the Prepetition Tranche D Lenders shall not

receive any distribution from or on account of the Solyndra Settlement Fund or the Solyndra

Settlement Trust Contribution.  In addition, notwithstanding anything to the contrary herein or in

38

the Prepetition Intercreditor Agreement, the Holder of a Prepetition Tranche D Claim shall be entitled, until payment of such Prepetition Tranche D Claim in full, to a Pro Rata share (calculated as a percentage of any deficiency claims of the Prepetition Tranche B Lenders and Prepetition Tranche D Lenders) of the net proceeds of any Trust Avoidance Claims calculated by multiplying the aggregate of such proceeds by a fraction equal to (A) the sum of Prepetition Tranche B Claims and Prepetition Tranche D Claims as the numerator and (b) the sum of Prepetition Tranche B Claims, Prepetition Tranche D Claims, and Allowed Solyndra General Unsecured Claims (subject to the special provision for Holdings Creditors at Article IV(B)(8)(c) of the Plan) as the denominator. The existing Liens securing the Prepetition Tranche D Claims will be retained on the Solyndra Net Lender Distributable Assets subject to the terms of the Plan and the distributions contemplated hereby. The Prepetition Tranche D Claims are deemed Allowed in the full amount reflected in the Final DIP Order and the Debtors' books and records as of the Record Date. For the avoidance of doubt, Prepetition Tranche D Claims and Prepetition Tranche E Claims that are Prepetition Lender Deficiency Claims shall be *pari passu* hereunder pursuant to and consistent with the Prepetition Intercreditor Agreement.

c.    Impairment/Voting: Class 5 is Impaired. Holders of Claims in Class 5 are therefore entitled to vote to accept or reject the Plan.

6.    **Class 6 – Prepetition Tranche E Claims**

a.    Classification: Class 6 consists of all Prepetition Tranche E Claims against Solyndra.

39

b.    Treatment:  From and after the date when each Allowed

Prepetition Tranche A Claim and each Allowed Prepetition Tranche B Claim is paid in full in

accordance with the terms hereof, on or as soon as practicable thereafter when additional assets

of the Solyndra Residual Trust become available for distribution, each Holder of a Prepetition

Tranche E Claim shall receive, subject to the provisions of the Prepetition Tranche B/D Credit

Documents, Prepetition Tranche E Credit Documents, the Prepetition Common Agreement, and

the Prepetition Intercreditor Agreement:  (i) a Pro Rata share (calculated as a percentage of

Prepetition Tranche D Claims and Prepetition Tranche E Claims) of the Solyndra Net Lender

Distributable Assets up to the full Allowed amount of such Prepetition Tranche E Claim; and (ii)

to the extent that any Prepetition Tranche E Claim is not paid in full by the foregoing

distribution, the Holder of such Claim shall be entitled, until payment of such Prepetition

Tranche E Claim in full and as soon as practicable after payment in full of the Tranche II Exit

Facility, to a Pro Rata share (calculated as a percentage of Prepetition Tranche D Claims and

Prepetition Tranche E Claims) of the Solyndra Residual Trust Interests that were distributed or

made available to the Holders of Prepetition Tranche B Claims until such Claims were paid in

full.  Notwithstanding the foregoing, the Prepetition Tranche E Lenders shall not receive any

distribution from or on account of the Solyndra Settlement Fund, the Solyndra Settlement Trust

Contribution, or the Trust Avoidance Claims.  The existing Liens securing the Prepetition

Tranche E Claims will be retained on the Solyndra Net Lender Distributable Assets subject to the

terms of the Plan and the distributions contemplated hereby.  The Prepetition Tranche E Claims

are deemed Allowed in the full amount reflected in the Final DIP Order and the Debtors' books

40

and records as of the Record Date.  For the avoidance of doubt, Prepetition Tranche D Claims

and Prepetition Tranche E Claims that are Prepetition Lender Deficiency Claims shall be *pari*

*passu* hereunder pursuant to and consistent with the Prepetition Intercreditor Agreement.

           c.        <u>Impairment/Voting</u>:  Class 6 is Impaired.  Holders of Claims in

Class 6 are therefore entitled to vote to accept or reject the Plan.

       7.        **<u>Class 7 – Holdings General Unsecured Claims</u>**

           a.        <u>Classification</u>:  Class 7 consists of all Holdings General Unsecured

Claims.

           b.        <u>Treatment</u>:  On or as soon as practicable after the Effective Date,

each Holder of an Allowed Holdings General Unsecured Claim shall receive, as the sole

distribution by Holdings or its Estate under this Plan on account of such Holdings General

Unsecured Claim:  (i) a Pro Rata share (calculated as a percentage of Allowed Holdings General

Unsecured Claims) of the Holdings Settlement Fund; and (ii) as soon as practicable after

payment in full of the Tranche II Exit Facility, a Pro Rata share (calculated as a percentage of

Allowed Holdings General Unsecured Claims) of any proceeds of Retained Rights of Action of

Reorganized Holdings up to the full Allowed amount of such Holdings General Unsecured

Claim.

           c.        <u>Impairment/Voting</u>:  Class 7 is Impaired.  Holders of Claims in

Class 7 are therefore entitled to vote to accept or reject the Plan.

41

8.      **Class 8 – Solyndra General Unsecured Claims**

a.      Classification:  Class 8 consists of all Solyndra General Unsecured Claims.

b.      Treatment:  On or as soon as practicable following the Effective Date, each holder of an Allowed Solyndra General Unsecured Claim (including Holdings Creditors with Allowed Solyndra General Unsecured Claims only as set forth in subsection (c) below) shall receive, up to the full Allowed amount of such Solyndra General Unsecured Claim, a Pro Rata share (calculated as a percentage of Solyndra General Unsecured Claims subject to subsection (c) below) of the Solyndra Settlement Trust Interests which shall entitle such Holder to:  (i) subject to execution of the General Unsecured Creditor Release, a Pro Rata share (calculated as a percentage of Allowed Solyndra General Unsecured Claims subject to subsection (c) below) of the Solyndra Settlement Fund, net of any costs subtracted from such fund as permitted by Article VI(G) of the Plan; (ii) a Pro Rata share (calculated as a percentage of Allowed Solyndra General Unsecured Claims subject to subsection (c) below) of the net proceeds of any Trust Avoidance Claims calculated by multiplying the aggregate of such proceeds by a fraction equal to (A) the amount of Allowed General Unsecured Claims subject to subsection (c) below as the numerator and (B) the sum of Prepetition Tranche B Claims, Prepetition Tranche D Claims, and Allowed Solyndra General Unsecured Claims subject to subsection (c) below as the denominator; (iii) as soon as practicable after payment in full of the Tranche II Exit Facility, a Pro Rata share (calculated as a percentage of Allowed Solyndra General Unsecured Claims) of the Solyndra Residual Trust Interests that are distributed to the

42

Holders of Solyndra General Unsecured Claims, which distribution shall be calculated by multiplying the aggregate of the Solyndra Residual Trust Interests by a fraction equal to (A) the amount of Allowed Solyndra General Unsecured Claims as the numerator and (B) the sum of Prepetition Lender Deficiency Claims and Allowed Solyndra General Unsecured Claims as the denominator; and (iv) a Pro Rata share (calculated as a percentage of the Allowed Solyndra General Unsecured Claims) of the proceeds from any residual Solyndra Net Lender Distributable Assets after all Prepetition Lender Claims have been paid in full.  Such distribution shall be the sole and exclusive dividend to holders of Allowed Solyndra General Unsecured Claims under the Plan.  All distributions to Holders of Class 8 Claims under this Plan shall be made by the Solyndra Settlement Trustee.  For the avoidance of doubt, the amount of Allowed Solyndra General Unsecured Claims for purposes of distributions out of the Solyndra Settlement Fund and proceeds of Trust Avoidance Claims, as set forth in subsections (b)(i) and (ii) above, shall be calculated subject to subsection (c) below, such that the pool of Allowed Solyndra General Unsecured Claims shall not include Allowed Solyndra General Unsecured Claims held by a Holdings Creditor until distributions out of the Solyndra Settlement Fund and Trust Avoidance Claims, collectively, to Holders of Solyndra General Unsecured Claims in Class 8 (excluding Holdings Creditors) exceed three percent (3%) of such Allowed Solyndra General Unsecured Claims.

   c. <u>Special Provision for Holdings Creditors</u>:  Holders of Allowed Holdings General Unsecured Claims in Class 7 shall receive from the Holdings Settlement Fund ratable distributions under the Plan equal to three percent (3%) of such  Holders' Allowed

43

Holdings General Unsecured Claims and shall be deemed to have waived any right to a distribution out of the Solyndra Settlement Fund and Trust Avoidance Claims on account of any Allowed Solyndra General Unsecured Claims that such Holdings Creditor may have against Solyndra; *provided, however,* that, in the event distributions out of the Solyndra Settlement Fund and Trust Avoidance Claims, collectively, to Holders of Solyndra General Unsecured Claims in Class 8 (excluding Holdings Creditors) exceed three percent (3%) of such Allowed Solyndra General Unsecured Claims, then any Allowed Solyndra General Unsecured Claim held by a Holdings Creditor shall participate in any distributions from such assets above three percent (3%) on a Pro Rata basis with the Holders of Allowed Solyndra General Unsecured Claims to the extent of such Holdings Creditor's Allowed Solyndra General Unsecured Claims.  Except as set forth above with reference to distributions out of the Solyndra Settlement Fund and Trust Avoidance Claims, Holders of Allowed Holdings General Unsecured Claims who are also Holders of Allowed Solyndra General Unsecured Claims shall participate on account of such Solyndra General Unsecured Claims in distributions out of any other assets made available to Holders of Class 8 Claims under the Plan.

        d.      <u>Impairment/Voting</u>:  Class 8 is Impaired.  Holders of Claims in Class 8 are therefore entitled to vote to accept or reject the Plan.

        **9.**      <u>**Class 9 – Interests in Holdings**</u>

        a.      <u>Classification</u>:  Class 9 consists of all Interests in Holdings.

44

b.      <u>Treatment</u>:  Holders of Interests in Holdings shall have left unaltered the legal, equitable, and contractual rights to which each such Holder is entitled on account of such Interest.

c.      <u>Impairment/Voting</u>:  Class 9 is Unimpaired.  Class 9 therefore is conclusively presumed to have accepted the Plan and Holders of Interests in Class 9 are not entitled to vote to accept or reject the Plan.

**10.    <u>Class 10 – Interests in Solyndra</u>**

a.      <u>Classification</u>:  Class 10 consists of all Interests in Solyndra.

b.      <u>Treatment</u>:  Holders of Interests in Solyndra shall receive no distributions or recoveries on account of such Interests and such Interests shall be extinguished on the Effective Date.

c.      <u>Impairment/Voting</u>:  Class 10 is Impaired.  Because Holders of Interests in Class 10 will receive no recovery on account of such Interests under the Plan, they are conclusively presumed to reject the Plan.

**V.**

**<u>ACCEPTANCE OR REJECTION OF PLAN</u>**

**A.    <u>Identification of Unimpaired Classes</u>**

The following Classes are Unimpaired under the Plan:

1.      Class 1 – Priority Non-Tax Claims

2.      Class 2 – Miscellaneous Secured Claims

3.      Class 9 – Interests in Holdings

45

**B.**    **Identification of Impaired Classes**

The following Classes of Claims and Interests are Impaired under the Plan.

1.    Class 3 – Prepetition Tranche A Claims

2.    Class 4 – Prepetition Tranche B Claims

3.    Class 5 – Prepetition Tranche D Claims

4.    Class 6 – Prepetition Tranche E Claims

5.    Class 7 – Holdings General Unsecured Claims

6.    Class 8 – Solyndra General Unsecured Claims

7.    Class 10 – Interests in Solyndra

**C.**    **Classes Permitted and Not Permitted to Vote**

Classes 1, 2 and 9 are Unimpaired.  Holders of Claims or Interests in such Classes are conclusively presumed pursuant to section 1126(f) of the Bankruptcy Code to have accepted the Plan and therefore shall not be entitled to vote to accept or reject the Plan.

Classes 3 through 8 and 10 are Impaired.  Holders of Claims and Interests in Classes 3 through 8 are permitted to vote to accept or reject the Plan.  Class 10 is not permitted to vote because the Holders in such Class receive no recovery under the Plan and are therefore conclusively presumed to reject the Plan.

An Impaired Class of Claims that votes shall have accepted the Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

46

**D.**    **Effect of Non-Voting**

If no Holder of a Claim or Interest eligible to vote in a particular Class timely votes to accept or reject the Plan, the Debtors will seek to have the Plan deemed **accepted** by the Holders of such Claims or Interests in such Class for purposes of section 1129(b) of the Bankruptcy Code.

**E.**    **Nonconsensual Confirmation**

In the event any Class of Claims or Interests votes to reject the Plan, the Debtors intend to request that the Bankruptcy Court confirm the Plan notwithstanding such rejection pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the Holders of any Class of Claims or Interests.

**F.**    **Postpetition Interest**

Nothing in the Plan or the Disclosure Statement shall be deemed to entitle the Holder of a Claim to receive postpetition interest on account of such Claim, except to the extent that Holder of a Claim has the benefit of a Lien on assets that exceed the value of such Claim.

**VI.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.**    **Plan Settlement**

The provisions of the Plan incorporate the terms of a settlement among the Debtors, certain Prepetition Lenders, certain Creditors and Holders of Interests, and the Creditors' Committee that, upon the Effective Date, will be deemed approved and consummated

47

pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 (the "Plan

Settlement"). The salient terms of the Plan Settlement are as follows:

(1) The Plan Sponsors shall make the advances under the Exit Facility, the Solyndra Settlement Fund Loan, and the WARN Settlement Loan available to the Solyndra Residual Trust on the Effective Date;

(2) The Plan Sponsors shall make the Holdings Settlement Fund available to Holdings or Reorganized Holdings, as applicable, on or before the Effective Date;

(3) The Prepetition Tranche A Claims held by the Plan Sponsors shall be reduced dollar for dollar by the amount of the Solyndra Settlement Fund Loan (i.e., the Allowed amount of the Prepetition Tranche A Claim shall be reduced by $3,175,000, plus any interest or fees accrued thereon);

(4) The Solyndra Residual Trust shall transfer (A) $175,000 in amount of the proceeds of the Solyndra Settlement Fund Loan to the Solyndra Settlement Trust to fund the Solyndra Settlement Trust Contribution and (B) $3,000,000 in amount of the Solyndra Settlement Fund Loan to the Solyndra Settlement Trust to fund the Solyndra Settlement Fund;

(5) Reorganized Holdings shall make distributions to Holdings Creditors in accordance with Article IV(B)(7) of this Plan;

(6) Upon receipt of the distributions contemplated by Article IV(B)(7) of the Plan, the Holdings Creditors shall be deemed to have waived any distributions from the Solyndra Settlement Fund and Trust Avoidance Claims on account of their Solyndra General Unsecured Claims, except as set forth in Article IV(B)(7) of the Plan;

(7) The Plan Sponsors shall fund the payment of (A) Allowed Administrative Expenses, Allowed Priority Tax Claims and Allowed Non-Priority Tax Claims and (B) the Plan Expenses payable through the Exit Facility;

(8) The Plan Sponsors will distribute the WARN Settlement Amount to the Solyndra Residual Trust via the WARN Settlement Loan on the Effective Date, and the Solyndra Residual Trust will in turn distribute the Net WARN Settlement Proceeds to the WARN Employees in accordance with the WARN Settlement in full and final satisfaction of all Allowed WARN Priority Claims of the WARN Employees;

(9)     The Plan Sponsors shall be entitled to recourse to and repayment of the WARN Settlement Loan from the Retained Rights of Action against third parties relating to the claims asserted by the WARN Plaintiffs, including a potential settlement of one such claim that is in the process of being documented and is confidential, which shall be the sole recourse of the WARN Settlement Loan;

(10)    (A) The Solyndra Net Lender Distributable Assets shall be used to repay the Plan Sponsors in respect of the Tranche I Exit Facility and the Solyndra Settlement Fund Loan prior to any other distributions made to any Holders of Prepetition Lender Claims contemplated by Article IV of this Plan and (B) after the payments described in (A) are made, the Solyndra Net Lender Distributable Assets shall be used to repay the Prepetition Lender Claims contemplated by Article IV of this Plan;

(11)    The Prepetition Tranche A Lenders and the Prepetition Tranche E Lenders shall not be entitled to receive any distribution on account of their Prepetition Lender Deficiency Claims out of the Solyndra Settlement Fund, the Solyndra Settlement Trust Contribution, or the Trust Avoidance Claims;

(12)    The Debtors, Reorganized Holdings, the Solyndra Residual Trust and the Solyndra Settlement Trust shall release and agree not to bring any claim or right of action against the Prepetition Lenders as set forth in Article X(C) of the Plan; and

(13)    Upon the Effective Date of the Plan, provided that the Solyndra Settlement Trust receives the Solyndra Settlement Trust Contribution and Solyndra Settlement Fund, the Creditors' Committee Release as set forth in Article X(C) of the Plan shall be deemed effective and, as a result thereof, the Creditors' Committee shall have released and agreed not to bring any challenge, objection, or contest to the Debtors' stipulations in favor of the Prepetition Lenders as set forth in the Final DIP Order or to otherwise bring, or support any other party in bringing, any Claim or Right of Action against the Prepetition Lenders.

**B.    No Substantive Consolidation**

Nothing in the Plan is intended to substantively consolidate, nor shall have the effect of substantively consolidating, the Debtors or their Estates, and Holdings shall maintain its separate corporate existence from and after the Effective Date.

49

## C.    Continued Corporate Existence and Vesting of Assets of Holdings

On and after the Effective Date, Reorganized Holdings will continue to exist as a separate corporation and shall retain all of the powers of corporations under applicable non-bankruptcy law, and without prejudice to any right to amend its charter, dissolve, merge or convert into another form of business entity, or to alter or terminate its existence.

Except as otherwise provided in the Plan, on and after the Effective Date, all Distributable Assets and property of Holdings and its Estate, including any "net operating losses" or similar tax attributes and any Retained Rights of Action of Holdings, will vest in Reorganized Holdings free and clear of all Claims, Liens, charges, other encumbrances and Interests.

On and after the Effective Date, Reorganized Holdings shall be permitted to conduct its business without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.  Except as to the Holdings Settlement Fund, Reorganized Holdings shall be authorized, without limitation, to use and dispose of the Distributable Assets of Holdings and its Estate, to investigate and pursue any Retained Rights of Action of Holdings as the representative of Holdings' Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, to acquire and dispose of other property, and to otherwise administer its affairs.  It is anticipated that the Holders of Interests in Holdings will contribute capital to Reorganized Holdings to enable Reorganized Holdings to acquire assets after the Effective Date and that Holdings will have future business operations.

**D.**     **Holdings Settlement Fund**

On the Effective Date, the Plan Sponsors will distribute the proceeds of the

Holdings Settlement Fund to Reorganized Holdings in Cash.  The Holdings Settlement Fund

shall be held by Reorganized Holdings solely for the benefit of the Holders of Holdings General

Unsecured Claims in Class 7 under the Plan and distributed by Reorganized Holdings in

accordance with the Plan.  For the avoidance of doubt, the entirety of the Holdings Settlement

Fund shall be distributed to the Holders of Holdings General Unsecured Claims and not used for

any other purposes.

**E.**     **Establishment of Solyndra Settlement Trust and Vesting of Solyndra Settlement Trust Assets**

On the Effective Date, Solyndra shall take any and all actions as may be

necessary or appropriate to establish the Solyndra Settlement Trust and to cause the transfer and

assignment of the Trust Avoidance Claims, Solyndra Settlement Fund, the Solyndra Settlement

Trust Contribution, and relevant books and records (the "Relevant Books and Records") to the

Solyndra Settlement Trust.[5]  On the Effective Date, the Solyndra Settlement Trust Contribution,

the Solyndra Settlement Fund, the Trust Avoidance Claims and the Relevant Books and Records

shall constitute the Solyndra Settlement Trust Assets.  Upon the Effective Date, the Solyndra

Settlement Trust shall be vested with all right, title and interest in the Solyndra Settlement Trust

Assets, and such property shall become the property of the Solyndra Settlement Trust free and

---

[5] "Relevant Books and Records" shall include those books and records of Solyndra with information concerning Solyndra General Unsecured Claims and any rights of setoff associated therewith (including without limitation accounts payable information, accounts receivable information, invoices, shipping receipts, *etc.*) and information concerning Trust Avoidance Claims and any defenses thereto (including without limitation accounts payable information, accounts receivable information, invoices, purchase orders, shipping receipts, bank statements, wire transfer records, *etc.*).

clear of all Claims, Liens, charges, other encumbrances and interests. It is intended that the

Solyndra Settlement Trust qualify as a liquidating trust for federal income tax purposes.

      The sole beneficiaries of the Solyndra Settlement Trust shall be the Holders of

Allowed Solyndra General Unsecured Claims in Class 8 under the Plan. As to the Solyndra

Settlement Fund, the only Holders of Allowed Solyndra General Unsecured Claims (subject to

the special provision for Holdings Creditors at Article IV(B)(8)(c) of the Plan) who shall share in

such assets are those who provide the General Unsecured Creditor Release on their Ballot or

otherwise. As to any net proceeds of Trust Avoidance Claims or any other Solyndra Settlement

Trust Assets, all Holders of Allowed Solyndra General Unsecured Claims (subject to the special

provision for Holdings Creditors at Article IV(B)(8)(c) of the Plan) shall share in such assets,

provided that, any net proceeds of Trust Avoidance Claims also will be shared with the

Prepetition Tranche B Lenders and the Prepetition Tranche D Lenders to the extent of their

deficiency claims. In the event that there are any net proceeds of Trust Avoidance Claims

payable to the Prepetition Tranche B Lenders and the Prepetition Tranche D Lenders, the

Solyndra Settlement Trust shall make such payments directly to the Prepetition Tranche B

Lenders and the Prepetition Tranche D Lenders as contractual obligations of the Solyndra

Settlement Trust. The Prepetition Tranche B Lenders and the Prepetition Tranche D Lenders

shall not be considered beneficiaries of the Solyndra Settlement Trust. For federal income tax

purposes, the beneficiaries of the Solyndra Settlement Trust shall be treated as the grantors of the

Solyndra Settlement Trust and deemed to be the owners of the assets of the Solyndra Settlement

Trust, and the transfer of the Solyndra Settlement Trust Assets to the Solyndra Settlement Trust

shall be deemed a transfer to such beneficiaries by Solyndra followed by a deemed transfer by

such beneficiaries to the Solyndra Settlement Trust.  The preceding sentence does not apply to

the portion of the Solyndra Settlement Trust which is treated as a disputed ownership fund and

may be subject to different treatment, as described in Article VI(O) of the Plan.

**F.**     **Purpose of Solyndra Settlement Trust**

The Solyndra Settlement Trust shall be established for the primary purpose of

liquidating and distributing the Solyndra Settlement Trust Assets in accordance with Treasury

Regulation section 301.7701-4(d).  In particular, this includes:  (i) reviewing and reconciling,

including where appropriate objecting to, the Claims of Holders of Solyndra General Unsecured

Claims, (ii) reviewing, litigating, settling, dismissing or releasing Trust Avoidance Claims; and

(iii) distributing the Solyndra Settlement Fund and the proceeds of any Trust Avoidance Claims

and any other Solyndra Settlement Trust Assets in accordance with the Plan and the terms of the

Solyndra Settlement Trust Agreement.  The Solyndra Settlement Trust shall have no objective to

continue or engage in the conduct of a trade or business and shall not be deemed a successor-in-

interest of Solyndra or its Estate for any purpose other than as specifically set forth herein.

**G.**     **Solyndra Settlement Fund and Solyndra Settlement Trust Contribution**

On the Effective Date, the Plan Sponsors shall remit the proceeds of the Solyndra

Settlement Fund Loan to the Solyndra Residual Trust in Cash.  The Solyndra Residual Trust

shall hold such funds in trust and such funds shall not be considered property of the Solyndra

Residual Trust or Solyndra's Estate.  The Solyndra Settlement Fund and the Solyndra Settlement

Trust Contribution shall be transferred by the Solyndra Residual Trust to the Solyndra Settlement

53