Bankruptcy Code or the Bankruptcy Rules. Except as to the Holdings Settlement Fund, Reorganized Holdings shall be authorized, without limitation, to use and dispose of the Distributable Assets of Holdings and its Estate, to investigate and pursue any Retained Rights of Action of Holdings as the representative of Holdings' Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, to acquire and dispose of other property, and to otherwise administer its affairs. The initial officers and directors of Reorganized Holdings shall be disclosed prior to the Confirmation Hearing.

### D.    Holdings Settlement Fund

On the Effective Date, the Plan Sponsors will distribute the proceeds of the Holdings Settlement Fund to Reorganized Holdings in Cash. The Holdings Settlement Fund shall be held by Reorganized Holdings solely for the benefit of the Holders of Holdings General Unsecured Claims in Class 7 under the Plan and distributed by Reorganized Holdings in accordance with the Plan. For the avoidance of doubt, the entirety of the Holdings Settlement Fund shall be distributed to the Holders of Holdings General Unsecured Claims and not used for any other purposes.

### E.    Establishment of Solyndra Settlement Trust and Vesting of Solyndra Settlement Trust Assets

On the Effective Date, Solyndra shall take any and all actions as may be necessary or appropriate to establish the Solyndra Settlement Trust and to cause the transfer and assignment of the Trust Avoidance Claims, Solyndra Settlement Fund, the Solyndra Settlement Trust Contribution, and relevant books and records (the "Relevant Books and Records") to the Solyndra Settlement Trust.[7] On the Effective Date, the Solyndra Settlement Trust Contribution, the Solyndra Settlement Fund, the Trust Avoidance Claims and the Relevant Books and Records shall constitute the Solyndra Settlement Trust Assets. Upon the Effective Date, the Solyndra Settlement Trust shall be vested with all right, title and interest in the Solyndra Settlement Trust Assets, and such property shall become the property of the Solyndra Settlement Trust free and clear of all Claims, Liens, charges, other encumbrances and interests. It is intended that the Solyndra Settlement Trust qualify as a liquidating trust for federal income tax purposes.

The sole beneficiaries of the Solyndra Settlement Trust shall be the Holders of Allowed Solyndra General Unsecured Claims in Class 8 under the Plan. As to the Solyndra Settlement Fund, the only Holders of Allowed Solyndra General Unsecured Claims (subject to the special provision for Holdings Creditors at Article IV(B)(8)(c) of the Plan) who shall share in such assets are those who provide the General Unsecured Creditor Release on their Ballot or otherwise. As to any net proceeds of Trust Avoidance Claims or any other Solyndra Settlement Trust Assets, all Holders of Allowed Solyndra General Unsecured Claims (subject to the special provision for Holdings Creditors at Article IV(B)(8)(c) of the Plan) shall share in such assets,

---

[7] "Relevant Books and Records" shall include those books and records of Solyndra with information concerning Solyndra General Unsecured Claims and any rights of setoff associated therewith (including without limitation accounts payable information, accounts receivable information, invoices, shipping receipts, etc.) and information concerning Trust Avoidance Claims and any defenses thereto (including without limitation accounts payable information, accounts receivable information, invoices, purchase orders, shipping receipts, bank statements, wire transfer records, etc.).

provided that, any net proceeds of Trust Avoidance Claims also will be shared with the Prepetition Tranche B Lenders and the Prepetition Tranche D Lenders to the extent of their deficiency claims. In the event that there are any net proceeds of Trust Avoidance Claims payable to the Prepetition Tranche B Lenders and the Prepetition Tranche D Lenders, the Solyndra Settlement Trust shall make such payments directly to the Prepetition Tranche B Lenders and the Prepetition Tranche D Lenders as contractual obligations of the Solyndra Settlement Trust. The Prepetition Tranche B Lenders and the Prepetition Tranche D Lenders shall not be considered beneficiaries of the Solyndra Settlement Trust. For federal income tax purposes, the beneficiaries of the Solyndra Settlement Trust shall be treated as the grantors of the Solyndra Settlement Trust and deemed to be the owners of the assets of the Solyndra Settlement Trust, and the transfer of the Solyndra Settlement Trust Assets to the Solyndra Settlement Trust shall be deemed a transfer to such beneficiaries by Solyndra followed by a deemed transfer by such beneficiaries to the Solyndra Settlement Trust. The preceding sentence does not apply to the portion of the Solyndra Settlement Trust which is treated as a disputed ownership fund and may be subject to different treatment, as described in Article VI(O) of the Plan.

F.      **Purpose of Solyndra Settlement Trust**

        The Solyndra Settlement Trust shall be established for the primary purpose of liquidating and distributing the Solyndra Settlement Trust Assets in accordance with Treasury Regulation section 301.7701-4(d). In particular, this includes: (i) reviewing and reconciling, including where appropriate objecting to, the Claims of Holders of Solyndra General Unsecured Claims, (ii) reviewing, litigating, settling, dismissing or releasing Trust Avoidance Claims; and (iii) distributing the Solyndra Settlement Fund and the proceeds of any Trust Avoidance Claims and any other Solyndra Settlement Trust Assets in accordance with the Plan and the terms of the Solyndra Settlement Trust Agreement. The Solyndra Settlement Trust shall have no objective to continue or engage in the conduct of a trade or business and shall not be deemed a successor-in-interest of Solyndra or its Estate for any purpose other than as specifically set forth in the Plan.

G.      **Solyndra Settlement Fund and Solyndra Settlement Trust Contribution**

        On the Effective Date, the Plan Sponsors shall remit the proceeds of the Solyndra Settlement Fund Loan to the Solyndra Residual Trust in Cash. The Solyndra Residual Trust shall hold such funds in trust and such funds shall not be considered property of the Solyndra Residual Trust or Solyndra's Estate. The Solyndra Settlement Fund and the Solyndra Settlement Trust Contribution shall be transferred by the Solyndra Residual Trust to the Solyndra Settlement Trust on the Effective Date. The Solyndra Residual Trust shall be obligated to satisfy the Solyndra Settlement Fund Loan with the first dollars available for distribution to the Holders of Prepetition Tranche A Claims from Solyndra Net Lender Distributable Assets until the amounts contributed by the Plan Sponsors to the Solyndra Residual Trust in respect of the Solyndra Settlement Fund are repaid in full. The Solyndra Settlement Trust shall have no liability or obligation whatsoever with respect to the Solyndra Settlement Fund Loan. The Solyndra Settlement Trust Contribution may be used by the Solyndra Settlement Trustee to fund the expenses of the Solyndra Settlement Trust as determined by the Solyndra Settlement Trustee in his or her sole discretion. To the extent any portion of the Solyndra Settlement Trust Contribution is not used to pay the expenses of the Solyndra Settlement Trust, such unused

portion shall be made available for distribution to the Holders of Class 8 Claims pursuant to the Plan. To the extent expenses of the Solyndra Settlement Trustee exceed the Solyndra Settlement Trust Contribution, payments may be made from other Solyndra Settlement Trust Assets with approval from the Solyndra Settlement Trust Committee.

## H.    Solyndra Settlement Trustee

### 1.    Generally

The initial Solyndra Settlement Trustee shall be designated by the Creditors' Committee prior to the Confirmation Hearing. Any successor Solyndra Settlement Trustee shall be appointed pursuant to the Solyndra Settlement Trust Agreement and subject to the approval of the Bankruptcy Court. On the Effective Date and subject to the oversight of the Solyndra Settlement Trust Committee, the Solyndra Settlement Trustee shall be the sole authorized representative and signatory of the Solyndra Settlement Trust, with authority to render any and all services necessary to effectuate the terms of the Plan as they relate to the Solyndra Settlement Trust. From and after the Effective Date, the Solyndra Settlement Trustee shall be deemed to have been appointed as the representative of Solyndra's Estate by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code for purposes of the Solyndra Settlement Trust Assets, specifically including Trust Avoidance Claims. The powers, authority, responsibilities and duties of the Solyndra Settlement Trustee shall be governed by the Plan, the Confirmation Order, and the Solyndra Settlement Trust Agreement. The Solyndra Settlement Trustee may execute, deliver, file or record such documents, instruments, releases and other agreements, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan as they relate to the Solyndra Settlement Trust.

### 2.    Responsibilities and Authority of Solyndra Settlement Trustee

The responsibilities and authority of the Solyndra Settlement Trustee shall include (a) calculating and implementing all distributions from the Solyndra Settlement Trust in accordance with the Plan; (b) filing all required tax returns and paying taxes and all other obligations on behalf of the Solyndra Settlement Trust from funds held by the Solyndra Settlement Trust; (c) periodic reporting to the beneficiaries of the Solyndra Settlement Trust as frequently as the Solyndra Settlement Trustee reasonably believes is appropriate; (d) distributing the assets of the Solyndra Settlement Trust in accordance with the provisions of the Plan, including distributions of the Solyndra Settlement Fund; (e) retaining and paying at normal and customary rates (or on a contingency fee basis) professionals in connection with the Solyndra Settlement Trustee's duties; (f) paying the reasonable expenses of the members of the Solyndra Settlement Trust Committee, in accordance with the provisions of the Plan and the Solyndra Settlement Trust Agreement; (g) reconciling and, if appropriate, objecting to Solyndra General Unsecured Claims with authority to settle any objections; (h) establishing a reserve for Disputed Claims; (i) analyzing Trust Avoidance Claims and deciding whether to abandon, pursue, litigate, or settle such claims; (j) updating the Solyndra Settlement Trust Committee on the progress of the implementation of the Plan as frequently as may be reasonably requested by the Solyndra Settlement Trust Committee; and (k) such other responsibilities as may be vested in the Solyndra Settlement Trustee pursuant to the Plan, the Solyndra Settlement Trust Agreement or the Confirmation Order or as may be necessary and proper to carry out the provisions of the Plan.

The Solyndra Settlement Trust, the Solyndra Settlement Trustee and the Solyndra Settlement Trust Committee shall not be required to post a bond in favor of the United States.

3.    **Powers of the Solyndra Settlement Trustee**

Subject to the oversight of the Solyndra Settlement Trust Committee as set forth in the Plan and the Solyndra Settlement Trust Agreement, the powers of the Solyndra Settlement Trustee to administer the Solyndra Settlement Trust shall, without any need for approval of the Bankruptcy Court in each of the following instances, include *inter alia*, (a) the power to invest Solyndra Settlement Trust funds as permitted in the Solyndra Settlement Trust Agreement, withdraw funds, make distributions and pay taxes and other obligations owed by the Solyndra Settlement Trust from funds held by the Solyndra Settlement Trustee in accordance with the Plan and the Solyndra Settlement Trust Agreement, (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Solyndra Settlement Trustee with respect to his or her responsibilities, (c) the power to prosecute, compromise and settle Solyndra General Unsecured Claims, (d) the power to abandon, pursue, litigate, or settle any Trust Avoidance Claim, subject to at least five (5) business days' notice and an opportunity to object by the Prepetition Tranche B/D Agent, (e) the power to abandon or destroy any of the Relevant Books and Records when they are no longer necessary to administer the Solyndra Settlement Trust, and (f) such other powers as may be vested in or assumed by the Solyndra Settlement Trustee pursuant to the Plan, the Solyndra Settlement Trust Agreement, order of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan.  Subject to the oversight of the Solyndra Settlement Trust Committee as set forth in the Plan and the Solyndra Settlement Trust Agreement, the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust, shall have absolute discretion to pursue or not to pursue any and all objections to Solyndra General Unsecured Claims and any and all Trust Avoidance Claims, as he or she determines is in the best interests of the beneficiaries and consistent with the purposes of the Solyndra Settlement Trust, and shall have no liability for the outcome of his/her decision, other than those decisions constituting gross negligence or willful misconduct.  Any determination by the Solyndra Settlement Trustee as to what actions are in the best interests of the Solyndra Settlement Trust shall be conclusive.

For the avoidance of doubt, on the Effective Date, the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust, shall have standing as the representative of Solyndra's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to commence and prosecute any Trust Avoidance Action and/or objections to Solyndra General Unsecured Claims on behalf of Solyndra's Estate without need for notice or order of the Bankruptcy Court.  The Solyndra Residual Trust shall cooperate with the Solyndra Settlement Trustee as reasonably necessary to enable the Solyndra Settlement Trustee to perform his or her duties under the Plan or the Solyndra Settlement Trust Agreement and a common interest privilege shall exist between the Solyndra Residual Trustee and the Solyndra Settlement Trustee in connection with such matters.

4.    **Compensation of Solyndra Settlement Trustee and Professionals**

The Solyndra Settlement Trustee shall serve on (i) the terms, conditions and rights set forth in the Plan, the Confirmation Order and the Solyndra Settlement Trust Agreement, or (ii) such terms, conditions and rights as otherwise agreed to by the Solyndra Settlement Trustee and

the Solyndra Settlement Trust Committee.  The compensation for the Solyndra Settlement Trustee shall be set forth in the Solyndra Settlement Trust Agreement or otherwise disclosed in a filing with the Bankruptcy Court.  The Solyndra Settlement Trustee shall not be required to file a Fee Application to receive compensation, but the Solyndra Settlement Trustee's fees shall be subject to the oversight of the Solyndra Settlement Trust Committee.  The Solyndra Settlement Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents in the discretion of the Solyndra Settlement Trustee to assist and advise the Solyndra Settlement Trustee in the performance of his/her duties and compensate such professionals from the assets of the Solyndra Settlement Trust, subject to the oversight of the Solyndra Settlement Trust Committee.  Any professionals retained by the Solyndra Settlement Trustee shall not be required to file a Fee Application to receive compensation.

5.    **Limitations on Solyndra Settlement Trustee**

The Solyndra Settlement Trustee, in such capacity, shall not at any time: (a) enter into or engage in any trade or business (other than the management and disposition of the Solyndra Settlement Trust Assets), and no part of the Solyndra Settlement Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed of by the Solyndra Settlement Trust in furtherance of any trade or business, or (b) except as provided below, reinvest any Solyndra Settlement Trust Assets.

With regard to any sale, disposition, release, modification or waiver of existing rights as to an asset of the Solyndra Settlement Trust or compromise or settlement of a controverted matter such as an objection to a Solyndra General Unsecured Claim or a Trust Avoidance Claim, if the asset or matter at issue exceeds $500,000 in value (after accounting for any applicable defenses in the case of a Trust Avoidance Claim) or amount asserted, the Solyndra Settlement Trustee must consult with, and obtain approval from, the Solyndra Settlement Trust Committee, and the Prepetition Tranche B/D Agent with respect to any such transaction or, in the absence of such approval, an order of the Bankruptcy Court approving such transaction (*provided that* the Solyndra Settlement Trust Committee and the Prepetition Tranche B/D Agent shall be deemed to have approved such transaction if such parties fail to object thereto in a writing received by the Solyndra Settlement Trustee within five (5) business days following written notification by the Solyndra Settlement Trustee of the intended transaction).

Other than as provided in the Plan and the Solyndra Settlement Trust Agreement, the Solyndra Settlement Trustee is not empowered to incur indebtedness.

The Solyndra Settlement Trustee may only invest funds held in the Solyndra Settlement Trust consistent with the requirements of the Solyndra Settlement Trust Agreement, the Bankruptcy Code or any order of the Bankruptcy Court modifying such requirements and, provided that the Solyndra Settlement Trustee does so, he or she shall have no liability in the event of insolvency of any institution in which he or she has invested any funds of the Solyndra Settlement Trust.  Notwithstanding the above, the Solyndra Settlement Trustee may only invest funds in the Solyndra Settlement Trust in investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

The Solyndra Settlement Trustee shall hold, collect, conserve, protect and administer the Solyndra Settlement Trust in accordance with the provisions of the Plan and the Solyndra Settlement Trust Agreement, and pay and distribute amounts as set forth in the Plan and the Solyndra Settlement Trust Agreement. Any determination by the Solyndra Settlement Trustee as to what actions are in the best interests of the Solyndra Settlement Trust shall be conclusive.

**I.**     **Solyndra Settlement Trust Committee**

    **1.**     **Generally**

The Solyndra Settlement Trust Committee shall be created on the Effective Date consistent with the terms of the Solyndra Settlement Trust Agreement. The Solyndra Settlement Trust Committee shall consist of no more than three (3) Persons initially selected by the Creditors' Committee and may consist of members of the Creditors' Committee.

    **2.**     **Duties of Solyndra Settlement Trust Committee**

The Solyndra Settlement Trust Committee shall generally monitor the status and progress of the Solyndra Settlement Trust and approve certain material transactions in accordance with Article VI(H)(5) of the Plan. The Solyndra Settlement Trust Committee may meet and/or consult periodically with the Solyndra Settlement Trustee and keep itself apprised of the affairs of the Solyndra Settlement Trust.

    **3.**     **Reimbursement of Expenses of Solyndra Settlement Trust Committee**

Members of the Solyndra Settlement Trust Committee shall be entitled to reimbursement of reasonable and necessary expenses incurred in carrying out their duties as members of the Solyndra Settlement Trust Committee, all of which shall be paid from the Solyndra Settlement Trust. Members of the Solyndra Settlement Trust Committee shall not be entitled to compensation for time spent on the Solyndra Settlement Trust Committee, nor shall they be reimbursed for any fees or expenses of any professional retained by an individual member of the Solyndra Settlement Trust Committee. The Solyndra Settlement Trust shall provide an indemnity to members of the Solyndra Settlement Trust Committee for all suits, demands, actions, claims, losses and liabilities such members may suffer or incur other than to the extent arising from such member's willful misconduct or gross negligence.

**J.**     **Establishment of Solyndra Residual Trust and Vesting of Solyndra Residual Trust Assets**

On the Effective Date, Solyndra shall take any and all actions as may be necessary or appropriate to establish the Solyndra Residual Trust and to cause the transfer and assignment of the Solyndra Net Lender Distributable Assets and Solyndra Unencumbered Assets, including all Retained Rights of Action of Solyndra (excluding Trust Avoidance Claims), to the Solyndra Residual Trust. On the Effective Date, the Solyndra Net Lender Distributable Assets and Solyndra Unencumbered Assets shall constitute the Solyndra Residual Trust Assets. Upon the Effective Date, the Solyndra Residual Trust shall be vested with all right, title and interest in the Solyndra Residual Trust Assets, and such property shall become the property of the Solyndra Residual Trust free and clear of all Claims, Liens, charges, other encumbrances and interests,

except as to any Liens that are expressly preserved and survive under the Plan, including the Liens securing the Exit Facility, the WARN Settlement Loan, and the Prepetition Lender Claims. Proceeds of the Residual Trust Assets subject to such liens shall be distributed to the Plan Sponsors and the Holders of such Prepetition Lender Claims in accordance with the Plan. It is intended that the Solyndra Residual Trust qualify as a liquidating trust for federal income tax purposes.

The sole beneficiaries of the Solyndra Residual Trust shall be the Solyndra Settlement Trust and the Holders of Prepetition Lender Deficiency Claims to the extent set forth in the Plan. For federal income tax purposes, the beneficiaries of the Solyndra Residual Trust shall be treated as the grantors of the Solyndra Residual Trust and deemed to be the owners of the assets of the Solyndra Residual Trust, and the transfer of the Solyndra Residual Trust Assets to the Solyndra Residual Trust shall be deemed a transfer to such beneficiaries by Solyndra followed by a deemed transfer by such beneficiaries to the Solyndra Residual Trust. The preceding sentence does not apply to the portion of the Solyndra Residual Trust which is treated as a disputed ownership fund and may be subject to different treatment, as described in Article VI(O) of the Plan.

## K.    Purpose of Solyndra Residual Trust

The Solyndra Residual Trust shall be established for the primary purpose of liquidating and distributing the Solyndra Residual Trust Assets in accordance with Treasury Regulation section 301.7701-4(d). In particular, this includes: (i) reviewing and reconciling, including where appropriate objecting to, the Claims of Holders of Administrative Expenses, Priority Tax Claims, Priority Non-Tax Claims and Miscellaneous Secured Claims; (ii) reviewing, litigating, settling, dismissing or releasing Retained Rights of Action of Solyndra (excluding Trust Avoidance Claims); and (iii) distributing the Solyndra Lender Net Distributable Assets, the Solyndra Settlement Fund (to the Solyndra Settlement Trust), the Net WARN Settlement Proceeds, and the proceeds of any Solyndra Unencumbered Assets in accordance with the Plan and the terms of the Solyndra Residual Trust Agreement. The Solyndra Residual Trust shall have no objective to continue or engage in the conduct of a trade or business and shall not be deemed a successor-in-interest of Solyndra or its Estate for any purpose other than as specifically set forth in the Plan.

Notwithstanding anything to the contrary in the Plan, the Solyndra Residual Trust shall at all times make distributions to the Prepetition Lenders and the Prepetition Master Collateral Agent consistent with, and subject to, the terms of the Prepetition Intercreditor Agreement. To the extent that the proceeds of any Solyndra Unencumbered Assets, or any residual Solyndra Net Lender Distributable Assets after payment of Prepetition Lender Claims in full, are to be distributed to Holders of Solyndra General Unsecured Claims under the Plan, such proceeds shall be transferred by the Solyndra Residual Trust to the Solyndra Settlement Trust for the benefit of Holders of Solyndra General Unsecured Claims.

### L.    Solyndra Residual Trustee

#### 1.    Generally

The initial Solyndra Residual Trustee shall be R. Todd Neilson. Any successor Solyndra Residual Trustee shall be appointed pursuant to the Solyndra Residual Trust Agreement and subject to the approval of the Bankruptcy Court. On the Effective Date and subject to the oversight of the Solyndra Residual Trust Committee, the Solyndra Residual Trustee shall be the sole authorized representative and signatory of the Solyndra Residual Trust, with authority to render any and all services necessary to effectuate the terms of the Plan as they relate to the Solyndra Residual Trust. From and after the Effective Date, the Solyndra Residual Trustee shall be deemed to have been appointed as the representative of Solyndra's Estate by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code for purposes of the Solyndra Residual Trust Assets, specifically including the Retained Rights of Action of Solyndra (excluding Trust Avoidance Claims). The powers, authority, responsibilities and duties of the Solyndra Residual Trustee shall be governed by the Plan, the Confirmation Order, and the Solyndra Residual Trust Agreement. The Solyndra Residual Trustee may execute, deliver, file or record such documents, instruments, releases and other agreements, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan as they relate to the Solyndra Residual Trust.

#### 2.    Responsibilities and Authority of Solyndra Residual Trustee

The responsibilities and authority of the Solyndra Residual Trustee shall include (a) calculating and implementing all distributions from the Solyndra Residual Trust in accordance with the Plan; (b) filing all required tax returns and paying taxes and all other obligations on behalf of the Solyndra Residual Trust from funds held by the Solyndra Residual Trust; (c) periodic reporting to the beneficiaries of the Solyndra Residual Trust as frequently as the Solyndra Residual Trustee reasonably believes is appropriate; (d) liquidating and distributing the assets of the Solyndra Residual Trust in accordance with the provisions of the Plan, including distributions of the Solyndra Net Lender Distributable Assets and the proceeds of Solyndra Unencumbered Assets; (e) retaining and paying at normal and customary rates (or on a contingency fee basis) professionals in connection with the Solyndra Residual Trustee's duties; (f) paying the reasonable expenses of the members of the Solyndra Residual Trust Committee, in accordance with the provisions of the Plan and the Solyndra Residual Trust Agreement; (g) reconciling and, if appropriate, objecting to Allowed Administrative Expenses, Allowed Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Miscellaneous Secured Claims with authority to settle any objections; (h) establishing a reserve for Disputed Claims; (i) analyzing Retained Rights of Action of Solyndra (excluding Trust Avoidance Claims) and deciding whether to abandon, pursue, litigate, or settle such claims; (j) updating the Solyndra Residual Trust Committee on the progress of the implementation of the Plan as frequently as may be reasonably requested by the Solyndra Residual Trust Committee; (k) providing commercially reasonable cooperation with the Solyndra Settlement Trust to reconcile Solyndra General Unsecured Claims and to support Trust Avoidance Claims; (l) winding-up the affairs of Solyndra and its subsidiaries and affiliates to the extent necessary (other than the Solyndra Settlement Trust); (m) determining Tax issues or liabilities in accordance with section 505 of the Bankruptcy Code (other than Tax issues specifically relating to the Solyndra Settlement Trust);

(n) incurring and pay all of Solyndra's Plan Expenses and any reasonable costs and expenses incident to the performance of the duties of the Solyndra Residual Trustee under the Plan, including without limitation, reasonable rent for office space and storage, office supplies, travel and expense reimbursement, insurance, and other obligations; and (o) such other responsibilities as may be vested in the Solyndra Residual Trustee pursuant to the Plan, the Solyndra Residual Trust Agreement or the Confirmation Order or as may be necessary and proper to carry out the provisions of the Plan. The Solyndra Residual Trust, the Solyndra Residual Trustee and the Solyndra Residual Trust Committee shall not be required to post a bond in favor of the United States.

3.    **Powers of the Solyndra Residual Trustee**

Subject to the oversight of the Solyndra Residual Trust Committee as set forth in the Plan and the Solyndra Residual Trust Agreement, the powers of the Solyndra Residual Trustee to administer the Solyndra Residual Trust shall, without any need for approval of the Bankruptcy Court in each of the following instances, include *inter alia*, (a) the power to invest Solyndra Residual Trust funds as permitted in the Solyndra Residual Trust Agreement, withdraw funds, make distributions and pay taxes and other obligations owed by the Solyndra Residual Trust from funds held by the Solyndra Residual Trustee in accordance with the Plan and the Solyndra Residual Trust Agreement, (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Solyndra Residual Trustee with respect to his or her responsibilities, (c) the power to prosecute, compromise and settle Allowed Administrative Expenses, Allowed Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Miscellaneous Secured Claims, (d) the power to abandon, pursue, litigate, or settle any Retained Right of Action of Solyndra (excluding Trust Avoidance Claims), (e) the power to abandon or destroy any of books and records of Solyndra (excluding the Relevant Books and Records) when they are no longer necessary to administer the Solyndra Residual Trust, and (f) such other powers as may be vested in or assumed by the Solyndra Residual Trustee pursuant to the Plan, the Solyndra Residual Trust Agreement, order of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan. Subject to the oversight of the Solyndra Residual Trust Committee as set forth in the Plan and the Solyndra Residual Trust Agreement, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, shall have absolute discretion to pursue or not to pursue any and all Retained Rights of Actions (excluding Trust Avoidance Claims) or objections to Allowed Administrative Expenses, Allowed Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Miscellaneous Secured Claims, as he or she determines is in the best interests of the beneficiaries and consistent with the purposes of the Solyndra Residual Trust, and shall have no liability for the outcome of his/her decision, other than those decisions constituting gross negligence or willful misconduct. Any determination by the Solyndra Residual Trustee as to what actions are in the best interests of the Solyndra Residual Trust shall be conclusive.

For the avoidance of doubt, on the Effective Date, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, shall have standing as the representative of Solyndra's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to commence and prosecute any Retained Right of Action (excluding Trust Avoidance Claims) and/or objections to Allowed Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Miscellaneous Secured Claims on behalf of Solyndra's Estate without need for notice or order of the Bankruptcy Court.

4.       **Compensation of Solyndra Residual Trustee and Professionals**

The Solyndra Residual Trustee shall serve on (i) the terms, conditions and rights set forth in the Plan, the Confirmation Order and the Solyndra Residual Trust Agreement, or (ii) such terms, conditions and rights as otherwise agreed to by the Solyndra Residual Trustee and the Solyndra Residual Trust Committee.  The compensation for the Solyndra Residual Trustee shall be set forth in the Solyndra Residual Trust Agreement or otherwise disclosed in a filing with the Bankruptcy Court.  The Solyndra Residual Trustee shall not be required to file a Fee Application to receive compensation, but the Solyndra Residual Trustee's fees shall be subject to the oversight of the Solyndra Residual Trust Committee.  The Solyndra Residual Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents in the discretion of the Solyndra Residual Trustee to assist and advise the Solyndra Residual Trustee in the performance of his/her duties and compensate such professionals from the assets of the Solyndra Residual Trust, subject to the oversight of the Solyndra Residual Trust Committee.  Any professionals retained by the Solyndra Residual Trustee shall not be required to file a Fee Application to receive compensation.

5.       **Limitations on Solyndra Residual Trustee**

The Solyndra Residual Trustee, in such capacity, shall not at any time: (a) enter into or engage in any trade or business (other than the management and disposition of the Solyndra Residual Trust Assets), and no part of the Solyndra Residual Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed of by the Solyndra Residual Trust in furtherance of any trade or business, or (b) except as provided below, reinvest any Solyndra Residual Trust Assets.

With regard to any sale, disposition, release, modification or waiver of existing rights as to an asset of the Solyndra Residual Trust or compromise or settlement of litigation or controverted matter that constitutes a Retained Right of Action of the Solyndra Residual Trust, if the asset or matter at issue exceeds $500,000 in value or amount asserted, the Solyndra Residual Trustee must consult with, and obtain approval of, the Solyndra Residual Trust Committee with respect to any such transaction or, in the absence of such approval, an order of the Bankruptcy Court approving such transaction (*provided that* the Solyndra Residual Trust Committee shall be deemed to have approved such transaction if it fails to object thereto in a writing received by the Solyndra Residual Trustee within ten (10) business days following written notification by the Solyndra Residual Trustee of the intended transaction).

With regard to any sale, disposition, release, modification or waiver of existing rights as to an asset of the Solyndra Residual Trust, or compromise or settlement of litigation or controverted matter that constitutes a Retained Right of Action of the Solyndra Residual Trust, that is the subject of a Lien securing the Allowed Prepetition Lender Claims, the Solyndra Residual Trustee must:  (a) consult with the Prepetition Tranche A Representative, the Prepetition Tranche B/D Agent and the Prepetition Tranche E Agent with respect to any such transaction, in each case so long as any debt in each such tranche remains outstanding; (b) obtain approval of the Prepetition Tranche A Representative with respect to any such transaction, so long as any Prepetition Tranche A Claims remain outstanding, or, in the absence of such

46

approval, an order of the Bankruptcy Court approving such transaction; (c) from and after the date when each of the Prepetition Tranche A Claims has been paid in full, obtain approval of the Prepetition Tranche B/D Agent with respect to any such transaction, so long as any Prepetition Tranche B Claims remain outstanding or, in the absence of such approval, an order of the Bankruptcy Court approving such transaction; and (d) from and after the date when each of the Prepetition Tranche A Claims and Prepetition Tranche B Claims has been paid in full, obtain approval of the Prepetition Tranche B/D Agent and the Prepetition Tranche E Agent with respect to any such transaction, so long as any Prepetition Tranche D Claims or Prepetition Tranche E Claims remain outstanding or, in the absence of such approval, an order of the Bankruptcy Court approving such transaction (*provided that* each of the foregoing parties, as applicable, shall be deemed to have approved such transaction if it fails to object thereto in a writing received by the Solyndra Residual Trustee within ten (10) business days following written notification by the Solyndra Residual Trustee of the intended transaction).

Other than as provided in the Plan and the Solyndra Residual Trust Agreement, the Solyndra Residual Trustee is not empowered to incur indebtedness.

The Solyndra Residual Trustee may only invest funds held in the Solyndra Residual Trust consistent with the requirements of the Solyndra Residual Trust Agreement, the Bankruptcy Code or any order of the Bankruptcy Court modifying such requirements and, provided that the Solyndra Residual Trustee does so, he or she shall have no liability in the event of insolvency of any institution in which he or she has invested any funds of the Solyndra Residual Trust. Notwithstanding the above, the Solyndra Residual Trustee may only invest funds in the Solyndra Residual Trust in investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

The Solyndra Residual Trustee shall hold, collect, conserve, protect and administer the Solyndra Residual Trust in accordance with the provisions of the Plan and the Solyndra Residual Trust Agreement, and pay and distribute amounts as set forth herein for the purposes set forth in the Plan and the Solyndra Residual Trust Agreement. Any determination by the Solyndra Residual Trustee, after consultation with the Solyndra Residual Trust Committee, as to what actions are in the best interests of the Solyndra Residual Trust shall be conclusive.

## M.   Solyndra Residual Trust Committee

### 1.   Generally

The Solyndra Residual Trust Committee shall be created on the Effective Date consistent with the terms of the Solyndra Residual Trust Agreement. The Solyndra Residual Trust Committee shall consist of consist of three (3) representatives selected as follows: one member selected by the Prepetition Tranche A Representative, one member selected by the Prepetition Tranche B/D Agent, and one member selected by the Prepetition Tranche E Agent. In the event that a member of the Solyndra Residual Trust Committee can no longer carry out his or her duties as a director (by reason of death, resignation or disability), the party that selected such member of the Solyndra Residual Trust Committee may appoint a successor, or in the event no such successor is appointed within ninety (90) days, the Solyndra Residual Trustee may petition

the Bankruptcy Court to appoint a successor. The members of the Solyndra Residual Trust Committee shall not be compensated for their service, aside from reimbursement of reasonable expenses. The Solyndra Residual Trust shall provide an indemnity to members of the Solyndra Residual Trust Committee for all suits, demands, actions, claims, losses and liabilities such members may suffer or incur other than to the extent arising from such member's willful misconduct or gross negligence.

    2.    **Duties of Solyndra Residual Trust Committee**

The Solyndra Residual Trust Committee shall generally monitor the status and progress of the Solyndra Residual Trust and approve certain material transactions in accordance with Article VI(L)(5) of the Plan. The Solyndra Residual Trust Committee may meet and/or consult periodically with the Solyndra Residual Trustee and keep itself apprised of the affairs of the Solyndra Residual Trust.

    3.    **Reimbursement of Expenses of Solyndra Residual Trust Committee**

Members of the Solyndra Residual Trust Committee shall be entitled to reimbursement of reasonable and necessary expenses incurred in carrying out their duties as members of the Solyndra Residual Trust Committee, all of which shall be paid from the Solyndra Residual Trust. Members of the Solyndra Residual Trust Committee shall not be entitled to compensation for time spent on the Solyndra Residual Trust Committee, nor shall they be reimbursed for any fees or expenses of any professional retained by an individual member of the Solyndra Residual Trust Committee.

**N.**    **U.S. Federal Income Tax Treatment of Liquidating Trusts**

The Solyndra Residual Trust and Solyndra Settlement Trust (other than the portion which is treated as a disputed ownership fund, which may be subject to different treatment, as described in Article VI(O) of the Plan) are intended to qualify as liquidating trusts for federal income tax purposes, treated for federal income tax purposes as "grantor" trusts. The Solyndra Residual Trust and Solyndra Settlement Trust have been structured with the intention of complying with such general criteria. Pursuant to the Plan, and in conformity with Revenue Procedure 94-45, supra, all parties (including the Solyndra Residual Trustee or Solyndra Settlement Trustee, as applicable, and the holders of beneficial interests in the Solyndra Residual Trust and Solyndra Settlement Trust, as applicable) are required to treat for federal income tax purposes, the Solyndra Residual Trust and Solyndra Settlement Trust as grantor trusts of which the holders of Allowed Claims are the owners and grantors.

After the Effective Date, any amount a Holder receives as a distribution from the Solyndra Residual Trust or Solyndra Settlement Trust, as applicable, in respect of its beneficial interest in such trusts should not be included, for federal income tax purposes, in the Holder's amount realized in respect of its Allowed Claim but should be separately treated as a distribution received in respect of such Holder's beneficial interest in the Solyndra Residual Trust or Solyndra Settlement Trust, as applicable.

For all federal income tax purposes, all parties (including the Solyndra Residual Trustee, Solyndra Settlement Trustee and the Holders of beneficial interests in such trusts) shall treat the

transfer of assets to the Solyndra Residual Trust or Solyndra Settlement Trust, as applicable, in accordance with the terms of the Plan, as a transfer of those assets directly to the Holders of Allowed Claims followed by the transfer of such assets by such Holders to the Solyndra Residual Trust or Solyndra Settlement Trust, as applicable. Consistent therewith, all parties shall treat the Solyndra Residual Trustee and Solyndra Settlement Trustee as grantor trusts of which such Holders are to be owners and grantors. Thus, such Holders (and any subsequent Holders of interests in the Solyndra Residual Trust and Solyndra Settlement Trust) shall be treated as the direct owners of an undivided beneficial interest in the assets of such trusts for all federal income tax purposes. Accordingly, each Holder of a beneficial interest in the Solyndra Residual Trust or Solyndra Settlement Trust, as applicable, will be required to report on its federal income tax return(s) the Holder's allocable share of all income, gain, loss, deduction or credit recognized or incurred by such trust.

The Solyndra Residual Trust or Solyndra Settlement Trust taxable income, as applicable, will be allocated to the Holders of beneficial interests in such trusts in accordance with each such Holder's Pro Rata share of such trusts. The Solyndra Residual Trustee and Solyndra Settlement Trustee will file with the IRS returns for their respective trusts each as a grantor trust pursuant to Treasury Regulations section 1.671-4(a). The Solyndra Residual Trustee and Solyndra Settlement Trustee, as applicable, will also send to each Holder of a beneficial interest in such trust a separate statement setting forth the Holder's share of items of income, gain, loss, deduction or credit and will instruct the Holder to report such items on its federal income tax return.

## O.    U.S. Federal Income Tax Treatment of Disputed Ownership Funds

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Solyndra Residual Trustee or Solyndra Settlement Trustee, as applicable, of an IRS private letter ruling if the Solyndra Residual Trustee or Solyndra Settlement Trustee, as applicable, so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Solyndra Residual Trustee or Solyndra Settlement Trustee, as applicable), the Solyndra Residual Trustee or Solyndra Settlement Trustee, as applicable, will (a) elect to treat any the Solyndra Residual Trust or Solyndra Settlement Trust assets, as applicable, allocable to, or retained on account of, Disputed Claims (the "Trust Claims Reserve") as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. Accordingly, the Trust Claims Reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the Solyndra Residual Trust or Solyndra Settlement Trust assets, as applicable, in such reserves, and all distributions from such reserves will be treated as received by Holders in respect of their Claims as if distributed by the Trust Claims Reserve. All parties (including, without limitation, the Solyndra Residual Trustee or Solyndra Settlement Trustee, as applicable, and the Holders of beneficial interests in the Solyndra Residual Trustee or Solyndra Settlement Trustee, as applicable) will be required to report for tax purposes consistently with the foregoing. References to the Solyndra Residual Trust and Solyndra Settlement Trust in Article VI(N) of the Plan shall be interpreted to refer only to that portion of such trusts that is not treated as a "disputed ownership fund" as described in this paragraph to the extent inconsistent with treatment under this paragraph.

### P.    **Exit Facility for Solyndra Residual Trust**

On the Effective Date, the Plan Sponsors shall make available the Exit Facility to the Solyndra Residual Trust.  Funding from the Exit Facility shall be utilized by the Solyndra Residual Trust:  (a) with respect to the Tranche I Exit Facility, to satisfy Allowed Administrative Expenses, Priority Tax Claims (except any Secured Claims), Priority Non-Tax Claims (other than WARN Priority Claims) and Plan Expenses of the Solyndra Residual Trust, in each case not funded and paid through the Tranche II Exit Facility; and (b) with respect to the Tranche II Exit Facility, to satisfy certain Claims and expenses, including, without limitation, Priority Claims of current or former employees of Solyndra (other than the WARN Priority Claims), Claims under section 503(b)(9) of the Bankruptcy Code, and Priority Tax Claims (except any Secured Claims).  The Solyndra Residual Trust shall satisfy the Tranche I Exit Facility from the Solyndra Net Lender Distributable Assets prior to making any distributions to Holders of Claims other than Allowed Administrative Expenses, Allowed Priority Tax Claims, or Allowed Priority Non-Tax Claims.  The Tranche I Exit Facility shall be secured by a Lien on the same assets and shall have the same priority as the DIP Credit Facility.  The Tranche II Exit Facility shall be secured by a first priority Lien (subject to the Liens of the WARN Settlement Loan in specific Retained Rights of Action) on, and shall have recourse solely to, any and all Solyndra Unencumbered Assets.  The specific terms of the Exit Facility shall be disclosed prior to the Confirmation Hearing in the Plan Supplement.  The Solyndra Residual Trust shall satisfy all obligations under the Tranche I Exit Facility from the Solyndra Net Lender Distributable Assets prior to distributions to Holders of Prepetition Lender Claims contemplated by Article IV of the Plan.

### Q.    **Retained Rights of Action of the Debtors**

Unless a Right of Action of the Debtors (including the right to object to any Claim asserted against the Estates) is, in writing, expressly waived, relinquished, released, assigned, compromised, or settled in the Plan, or in a Final Order, all rights of the Estates from and after the Effective Date with respect to the Retained Rights of Action are expressly preserved for the benefit of, assigned to, and fully vested in, Reorganized Holdings, the Solyndra Residual Trust, and/or the Solyndra Settlement Trust (solely as to Trust Avoidance Claims and objections to Solyndra General Unsecured Claims), as applicable.

Reorganized Holdings, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, and the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust (solely as to Trust Avoidance Claims and objections to Solyndra General Unsecured Claims), as applicable, shall have standing as the representatives of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to pursue, or decline to pursue, the Retained Rights of Action and objections to Claims, as appropriate, in the business judgment of Reorganized Holdings, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, and/or the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust, as applicable.  The Solyndra Residual Trust and the Solyndra Settlement Trust, subject to the limitations set forth in Articles VI(H)(5)) and VI(L)(5) of the Plan, as applicable, may settle, release, sell, assign, otherwise transfer, or compromise, Retained Rights of Action, Avoidance Claims, and/or objections to Claims without need for notice or order of the Bankruptcy Court.

To the extent that the Solyndra Residual Trustee seeks to allow a Solyndra General Unsecured Claim in the context of settling a Retained Right of Action (excluding Trust Avoidance Claims), written consent of the Solyndra Settlement Trustee shall be required of such settlement where the allowance of such Solyndra General Unsecured Claim exceeds the unsecured claim amount of such creditor as had been reflected by Solyndra's books and records.

For purposes of this Disclosure Statement, no value has been ascribed to potential claims against third parties. However, unless specifically released in the Plan, any and all rights of the Debtors to pursue claims against third parties are expressly preserved under the Plan, including without limitation, (1) avoidance claims against any parties disclosed in the Schedules and Statements, (2) any claims against third parties relating to the claims asserted by the WARN Plaintiffs, and (3) any antitrust and other claims against certain defendants for, inter alia, such defendants' anticompetitive or tortious conduct.

## R.    Corporate Action/Dissolution

On the Effective Date, the matters under the Plan involving or requiring corporate or limited liability company action of the Debtors, including but not limited to actions requiring a vote or other approval of the board of directors, shareholders, managers or members of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers, directors, managers or members of the Debtors.

From and after the Effective Date, the Holders of Interests in Reorganized Holdings may take any and all necessary or appropriate actions to appoint directors, officers, and managers of Reorganized Holdings consistent with the charter, articles of incorporation, and/or by-laws of Reorganized Holdings, subject to any limitations in applicable non-bankruptcy law.

On the Effective Date, all then-incumbent officers and directors of Solyndra shall be deemed to have been removed as of such date and replaced with the Solyndra Residual Trustee as sole officer and representative of Solyndra for the purpose of winding-up Solyndra consistent with the Plan.

On the Effective Date, the Debtors' charters shall be amended to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code. The Debtors may prepare, execute and/or file with the Delaware Secretary of State and other state governmental authorities having jurisdiction over the Debtors such amendments of their respective charters as may be necessary or appropriate under applicable non-bankruptcy law to fully effectuate such amendments.

Neither the occurrence of the Effective Date, nor the effectiveness of the Plan, nor any provision of applicable non-bankruptcy law requiring the dissolution of any business entity upon the cancellation or extinguishment of all equity interests or the termination of the sole remaining equity interest holder, shall cause a dissolution of Holdings, which shall be continued as a corporation immediately following the Effective Date.

51

The respective articles or certificate of incorporation and bylaws (or other applicable formation documents) in effect prior to the Effective Date for each Debtor shall continue to be in effect after the Effective Date, except as amended pursuant to the Plan or, as to Holdings, as otherwise amended as permitted by Holdings' charter, articles of incorporation, and/or by-laws, subject to any limitations in applicable non-bankruptcy law.

On the first Business Day following the Effective Date, Solyndra shall be dissolved without need for further action by any board of directors, shareholders, managers or members. In connection with the Effective Date, the Solyndra Residual Trustee is authorized to (a) execute, acknowledge and/or file with the Delaware Secretary of State, or any other state governmental authority having jurisdiction over Solyndra, any certificate of dissolution for Solyndra as may be necessary or appropriate under applicable non-bankruptcy law to cause the dissolution of Solyndra to occur and (b) execute any election to dissolve or other instrument as may be necessary or appropriate under applicable non-bankruptcy law to cause the dissolution of Solyndra to occur. Notwithstanding anything to the contrary in the Plan, the Solyndra Residual Trustee shall not be liable as a result of any action taken in accordance with the provisions of the Plan, and after the entry of the final decree in Solyndra's Chapter 11 Case, and the Solyndra Residual Trustee shall not have any responsibility for Solyndra following the Effective Date, including any further responsibility for the management, supervision, administration, liquidation, winding up, or cancellation of the charter of Solyndra.

## S.    Interests in Affiliates and Subsidiaries

As of the Effective Date, except as expressly provided in the Plan or by separate order of the Bankruptcy Court, the Solyndra Residual Trust shall retain any stock or interests that it may hold in its affiliates or subsidiaries and retain any rights to which such stock or interests may be entitled under applicable law with respect to such shares or other interests. After the Effective Date, the Solyndra Residual Trustee may sell, transfer, assign or otherwise dispose of such shares or interests as permitted by applicable law.

## T.    Payment of Plan Expenses

The Solyndra Residual Trustee may pay all reasonable Plan Expenses of the Solyndra Residual Trust consistent with the Budget without further notice to Creditors or Holders of Interests or approval of the Bankruptcy Court; provided, however, that an accounting of the Plan Expenses, including the fees and expenses of professionals, shall be provided to the Solyndra Residual Trust Committee for review. The payment of Plan Expenses that are not contemplated by the Budget shall require the consent of the Plan Sponsors. The Plan Expenses of the Solyndra Residual Trust may also be paid out of the Solyndra Unencumbered Assets. To the extent that Holdings incurs any Plan Expenses, such amounts shall be payable by Reorganized Holdings subject to the consent of the Plan Sponsors.

## U.    Dissolution of Creditors' Committee

As of the Effective Date, the Creditors' Committee shall be dissolved. Notwithstanding such dissolution, the Creditors' Committee's professionals may seek payment of any unpaid Administrative Expenses pursuant to the Plan.

## V.    **Final Decree**

At any time following the Effective Date, the Solyndra Residual Trustee shall be authorized to file a motion for the entry of a final decree closing either or both of the Chapter 11 Cases pursuant to section 350 of the Bankruptcy Code, subject to the consent of the Solyndra Settlement Trust prior to closing Solyndra's Chapter 11 case.

## IX.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    **Rejection of Executory Contracts and Unexpired Leases**

Except for any executory contracts or unexpired leases:  (i) that previously were assumed or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such contract or lease has been Filed and served prior to the Effective Date; (iii) that constitute contracts of insurance in favor of, or that benefit, the Debtors or the Estates; or (iv) that were previously sold, conveyed or otherwise assigned pursuant to Final Order, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

### B.    **Bar Date for Rejection Damages**

If the rejection of an executory contract or unexpired lease pursuant to the Plan or otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors or their Estates, Reorganized Holdings, the Solyndra Residual Trust or the Solyndra Settlement Trust unless a proof of Claim is Filed and served on the Debtors, Reorganized Holdings, the Solyndra Residual Trust and the Solyndra Settlement Trust, and their counsel, within thirty (30) days after the earlier of (a) Effective Date or (b) service of a notice that the executory contract or unexpired lease has been rejected.  All such Claims for which proofs of Claim are required to be Filed, if Allowed, will be, and will be treated as, General Unsecured Claims, subject to the provisions of the Plan.

## X.

## LITIGATION, OBJECTIONS TO CLAIMS, AND DETERMINATION OF TAXES

### A.    **Litigation; Objections to Claims; Objection Deadline**

Except as may be expressly provided otherwise in the Plan, Reorganized Holdings, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, or the Solyndra Settlement Trustee, on behalf of Solyndra Settlement Trust (solely as to Trust Avoidance Claims and objections to Solyndra General Unsecured Claims), as applicable, shall be responsible for

53

pursuing Retained Rights of Action, any objection to the allowance of any Claim, and the determination of Tax issues and liabilities.

As of the Effective Date, Reorganized Holdings, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, or the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust (solely as to objections to Solyndra General Unsecured Claims), as applicable, shall have exclusive authority to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims.  Unless another date is established by the Bankruptcy Court *sua sponte* (which may so act without notice or hearing) or is established by other provisions of the Plan, any objection to a Claim shall be filed with the Bankruptcy Court and served on the Person holding such Claim within one hundred twenty (120) days after the Effective Date (the "Objection Deadline"), provided that Reorganized Holdings, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, or the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust (solely as to objections to Solyndra General Unsecured Claims), as applicable, may seek extension(s) thereof subject to Bankruptcy Court approval and with notice only to parties that have requested such notice pursuant to Bankruptcy Rule 2002.

In addition to any other available remedies or procedures with respect to Tax issues or liabilities or rights to Tax refunds, Reorganized Holdings, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, or the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust (solely as to objections to Solyndra General Unsecured Claims), as applicable, at any time, may utilize (and receive the benefits of) section 505 of the Bankruptcy Code with respect to: (1) any Tax issue or liability or right to a Tax refund relating to an act or event occurring prior to the Effective Date; or (2) any Tax liability or right to a Tax refund arising prior to the Effective Date.  If Reorganized Holdings, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, or the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust (solely as to objections to Solyndra General Unsecured Claims), as applicable, utilize section 505(b) of the Bankruptcy Code: (1) the Bankruptcy Court shall determine the amount of the subject Tax liability or right to a Tax refund in the event that the appropriate governmental entity timely determines a Tax to be due in excess of the amount indicated on the subject return; and (2) if the prerequisites are met for obtaining a discharge of Tax liability in accordance with section 505(b) of the Bankruptcy Code, Reorganized Holdings, the Solyndra Residual Trust, or the Solyndra Settlement Trust (solely as to objections to Solyndra General Unsecured Claims), as applicable, shall be entitled to such discharge which shall apply to any and all Taxes relating to the period covered by such return.

**B.**    **Temporary or Permanent Resolution of Disputed Claims**

Reorganized Holdings, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, or the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust (solely as to objections to Solyndra General Unsecured Claims), as applicable, may request, at any time prior to the Effective Date or on and after the Effective Date, that the Bankruptcy Court estimate any contingent or unliquidated Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, irrespective of whether any party has previously objected to such Disputed Claim.  The Bankruptcy Court will retain jurisdiction to estimate any contingent or unliquidated Disputed Claim at any time during litigation concerning any objection to the Disputed Claim.  If the

Bankruptcy Court estimates any contingent or unliquidated Disputed Claim, that estimated amount would constitute either the Allowed amount of such Disputed Claim or a maximum limitation on such Disputed Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Disputed Claim, Reorganized Holdings, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, or the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust (solely as to objections to Solyndra General Unsecured Claims), as applicable, may elect from and after the Effective Date to pursue any supplemental proceedings to object to any ultimate payment on account of such Disputed Claim. In addition, Reorganized Holdings, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, or the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust (solely as to objections to Solyndra General Unsecured Claims), as applicable, may resolve or adjudicate any Disputed Claim from and after the Effective Date in the manner in which the amount of such Claim, Interest or Administrative Expense and the rights of the Holder of such Claim, Interest or Administrative Expense would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced. All of the aforementioned objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

## C.    Setoffs

Reorganized Holdings, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, or the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust may,[8] but shall not be required to, setoff against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that any Debtor, the Solyndra Residual Trust, or the Solyndra Settlement Trust may have against the Holder of such Claim; provided, however, neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Reorganized Holdings, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, or the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust, as applicable, of any such claim that the Debtors, the Solyndra Residual Trust, or the Solyndra Settlement Trustee may have against such Holder, unless otherwise agreed to in writing by such Holder and the Solyndra Residual Trustee or the Solyndra Settlement Trustee, as applicable.

## D.    Preservation of Retained Rights of Action

In accordance with section 1123(b) of the Bankruptcy Code, Reorganized Holdings, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, and the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust, as applicable, and their successors, any assigns hereunder and future assigns will retain and may exclusively enforce any Retained Rights of Action and the Confirmation Order shall be deemed a *res judicata* determination of such rights to retain and exclusively enforce such Retained Rights of Action. Absent such express waiver or release, Reorganized Holdings, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, and the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust, as applicable, or their successors or assigns shall have standing as the representatives of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to pursue Retained Rights of Action, as appropriate, in accordance with the best interests of

---

[8] For avoidance of doubt, no setoffs may be applied to any Allowed WARN Priority Claims of WARN Employees.

Reorganized Holdings, the Solyndra Residual Trust, and the Solyndra Settlement Trust, as applicable (or their successors or future assigns). The Retained Rights of Action may be asserted or prosecuted before or after solicitation of votes on the Plan or before or after the Effective Date.

Absent an express waiver or release set forth in the Plan, nothing in the Plan shall (or is intended to) prevent, estop or be deemed to preclude Reorganized Holdings, the Solyndra Residual Trustee, on behalf of the Solyndra Residual Trust, and the Solyndra Settlement Trustee, on behalf of the Solyndra Settlement Trust, as applicable, from utilizing, pursuing, prosecuting or otherwise acting upon all or any of their Retained Rights of Action and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Rights of Action upon or after Confirmation or Consummation.

## XI.

## INJUNCTION AND EXCULPATION PROVISIONS

### A.    Injunctions

#### 1.    Generally

Unless otherwise provided in the Plan or the Confirmation Order and subject to Article X(D) below, all injunctions and stays provided for in the Chapter 11 Cases pursuant to sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date. From and after the Effective Date, subject to Article X(D) below, all Persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action or other proceeding, or otherwise asserting any claim or interest, (a) seeking to hold (i) the Debtors, their Estates, Reorganized Holdings, the Solyndra Residual Trust, the Solyndra Residual Trustee, the Solyndra Residual Trust Committee, the Creditors' Committee, the Solyndra Settlement Trust, the Solyndra Settlement Trustee, or the Solyndra Settlement Trust Committee, (ii) the property of the Debtors, their Estates, Reorganized Holdings, the Solyndra Residual Trust, or the Solyndra Settlement Trust, liable for any Claim, obligation, right, interest, debt or liability that has been released pursuant to the Plan.

#### 2.    Injunction Related to Rights of Action and Claims, Administrative Expenses and Interests

*Except as provided in the Plan or in the Confirmation Order and subject to Article X(D) below, as of the Confirmation Date, all Entities that have held, currently hold or may hold a Claim, Administrative Expense, Interest or other debt or liability that is stayed, Impaired or terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against property of the Debtors, their Estates, the Solyndra Residual Trust, the Solyndra Residual Trustee, the Solyndra Residual Trust Committee, the Solyndra Settlement Trust, the Solyndra Settlement Trustee, or the Solyndra Settlement Trust Committee on account of all or such portion of any such Claims, Administrative Expenses, Interests, debts or liabilities that are stayed, Impaired or terminated:  (a) commencing or continuing, in any manner or in any*

*place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, (c) creating, perfecting or enforcing any lien or encumbrance; and (d) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan. To avoid any doubt, (i) except as otherwise expressly noted in the Plan, nothing in the Plan shall be construed or is intended to discharge Solyndra from any debt for purposes of section 1141(d) of the Bankruptcy Code, (ii) nothing in the Plan shall affect, enjoin, modify, release or waive any claims, rights, and actions that a third party may have against a person other than the Debtors, their Estates, the Solyndra Residual Trust, the Solyndra Residual Trustee, the Solyndra Residual Trust Committee, the Solyndra Settlement Trust, the Solyndra Settlement Trustee, or the Solyndra Settlement Trust Committee; and (iii) nothing in the Plan shall affect or diminish any defense to a Retained Right of Action or to any action brought by a third party against a Person other than the Debtors, or the right of any person to assert a right of setoff, right of subrogation or recoupment of any kind.*

### 3.    **Discharge of Holdings**

Except as otherwise provided in the Plan or in the Confirmation Order, rights afforded in, and all consideration distributed under, the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against Holdings or any of its assets or properties, except as to the Holdings Settlement Fund. Upon the Effective Date, Holdings shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, without limitation, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Claim based upon such debt is Allowed under Section 501 of the Bankruptcy Code, or (b) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based upon such debt accepted the Plan, *provided, however*, that as to the United States, its agencies, departments or agents, nothing in the Plan or Confirmation Order shall discharge, release, or otherwise preclude: (1) any liability of Holdings arising on or after the Effective Date; (2) any liability that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (3) any valid defense of setoff or recoupment with respect to a Claim; and (4) any liability of Holdings under environmental law arising after the Effective Date as the owner or operator of property that such entity owns or operates after the Effective Date. The injunction and release provisions set forth in Article X of the Plan and any similar provisions in the Plan or Confirmation Order, are not intended and shall not be construed to bar the United States from, subsequent to the Confirmation Date, pursuing any police or regulatory action.

## B.    **Exculpation**

As of and subject to the occurrence of the Effective Date and subject to Article X(D) below, for good and valuable consideration, including the consideration provided under the Plan, each of the Debtors and their Representatives, and the members of the Creditors' Committee (acting in such capacity) and the Creditors' Committee's Representatives, shall neither have nor incur any liability to any Person or Entity for any act taken or omitted to be taken, in connection with, or related to, the formulation, preparation, dissemination, implementation, administration,

Confirmation or Consummation of the Plan or any contract, instrument, waiver, release or other agreement or document created or entered into, in connection with the Plan, or any other act taken or omitted to be taken in connection with the Chapter 11 Cases up to and including the Effective Date; provided, however, that the foregoing provisions of this subsection shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.

**C.    Estate Releases of Prepetition Lenders and Debtors' Employees**

*As of and subject to the occurrence of the Effective Date and subject to Article X(D) below, for good and valuable consideration, including the consideration provided under the Plan, and as part of the Plan Settlement as described herein and in the Plan, each of the Debtors, for themselves and the Estates, the Plan Sponsors, the lenders under the Exit Facility, the Solyndra Settlement Fund Loan and the WARN Settlement Loan, the Creditors' Committee and its respective members (acting in such capacity), and the Solyndra Settlement Trustee hereby irrevocably, unconditionally and generally releases each of the Prepetition Lenders, the Debtors' Employees, and each of the foregoing parties' Representatives (together, the "Released Parties"), from any and all actions, causes of action, Rights of Action, suits, debts, dues, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, proceedings and demands of whatsoever character, nature and kind, in law, admiralty or equity, including but not limited to claims based on statute, common law, public policy, contract (whether oral or written, express or implied) or tort law, which such Person or Entity ever had, now have or hereafter can, shall or may have against any of the Released Parties from the beginning of the world to the Effective Date that in any way relates to any of the Debtors, the Estates or the Chapter 11 Cases. Further, upon the Effective Date, the Challenge Period Termination Date under the Final DIP Order shall be deemed to have occurred and the releases in favor of the Prepetition Lenders contained in section 10.14(b) of the DIP Credit Facility, as modified by section 26 of the Final DIP Order, shall be in full force and effect*

**D.    Reservation of Rights of United States**

Other than as set forth in Articles X(A)(3) and X(D) of the Plan, nothing in the Plan or the Confirmation Order shall be construed as either (1) enjoining, restraining or staying or (2) releasing any claim of the United States, its agencies, departments or agents against any Entity that is not a Debtor in these Chapter 11 Cases.

## XII.

## PENSION PLANS, OTHER RETIREE BENEFITS AND LABOR CONTRACTS

The Debtors are not obligated pursuant to section 1129(a)(13) of the Bankruptcy Code to pay any "retiree benefits" (as that term is defined in section 1114(a) of the Bankruptcy Code).

## XIII.

## NO REGULATED RATE CHANGE WITHOUT GOVERNMENT APPROVAL

The Debtors do not charge any rates for purposes of section 1129(a)(6) of the Bankruptcy Code that are regulated by any governmental regulatory commission with jurisdiction under applicable non-bankruptcy law.

## XIV.

## EXEMPTION FROM CERTAIN TRANSFER TAXES

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers by the Debtors pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar Tax or governmental assessment.

## XV.

## REQUIREMENTS FOR CONFIRMATION

### A.    Acceptances Necessary to Confirm Plan

Voting rights are set forth as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 – Priority Non-Tax Claims | Unimpaired | Not entitled to Vote |
| Class 2 – Miscellaneous Secured Claims | Unimpaired | Not entitled to Vote |
| Class 3 – Prepetition Tranche A Claims | Impaired | Entitled to Vote |
| Class 4 – Prepetition Tranche B Claims | Impaired | Entitled to Vote |
| Class 5 – Prepetition Tranche D Claims | Impaired | Entitled to Vote |
| Class 6 – Prepetition Tranche E Claims | Impaired | Entitled to Vote |
| Class 7 – Holdings General Unsecured Claims | Impaired | Entitled to Vote |
| Class 8 – Solyndra General Unsecured Claims | Impaired | Entitled to Vote |
| Class 9 – Interests in Holdings | Unimpaired | Not entitled to Vote |
| Class 10 – Interests in Solyndra | Impaired | Not entitled to Vote |

If no Holder of a Claim or Interest eligible to vote in a particular Class timely votes to accept or reject the Plan, the Debtors will seek to have the Plan deemed **accepted** by the Holders of such Claims or Interests in such Class for purposes of section 1129(b) of the Bankruptcy Code.

### B.    Best Interest of Creditors Test

Confirmation requires, among other things, that each Holder of a Claim in an Impaired Class and each Holder of an Interest either:  (a) accepts the Plan; or (b) receives or retains under

the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. This requirement is commonly referred to as the "best interests test."

      **a.**      **Chapter 7**

To determine the value that the Holders of Impaired Claims and Interests would receive if the Debtors were liquidated, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtors' assets and properties in the context of a chapter 7 liquidation case. Section 704 of the Bankruptcy Code requires a chapter 7 trustee to collect and reduce to money the property of the estate as expeditiously as is compatible with the best interests of parties in interest.

Here, the Cash available in chapter 7 cases for satisfaction of Allowed Claims would consist of the proceeds resulting from the liquidation of the Debtors' Estates, augmented by the Cash, if any, held by the Debtors at the time of the commencement of the chapter 7 case(s). Any such Cash amount would then be reduced by the amount of any Claims secured by such assets such as the Prepetition Lender Claims or other Miscellaneous Secured Claims, the costs and expenses of the liquidation of any remaining assets, including the costs of prosecution of any pending litigation and Avoidance Claims, and such additional Administrative Claims, and other Priority Claims, that may result from the use of chapter 7 for the purposes of liquidation.

The costs of liquidation under chapter 7 would include fees payable to trustee(s) in bankruptcy, as well as those that might be payable to his or her attorneys, and to other professionals that such trustee(s) may engage, plus any unpaid expenses incurred by the Debtors during the Chapter 11 Cases that would be allowed as a priority in the chapter 7 cases, such as compensation for attorneys, accountants or other Professional Persons, and costs and expenses of the Debtors and the Committee. Such Administrative Expenses from the chapter 7 and 11 cases would have to be paid in Cash in full from the liquidation proceeds before the balance of those proceeds could be made available to pay prepetition Claims.

      **b.**      **Liquidation Alternative**

Pursuant to Bankruptcy Code section 1129(a)(7), if an Impaired Class does not accept the Plan unanimously, the Debtors must demonstrate, and the Bankruptcy Court must determine that with respect to such Class, each Holder of a Claim will receive property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

As reflected on Exhibit 3 annexed hereto and set forth below, the Plan satisfies this standard. The Plan provides greater recovery to the Holders of Allowed Claims than such Holders would receive under a liquidation under chapter 7 primarily because the Plan incorporates various settlements with key creditor constituents, including the Creditors' Committee and certain Prepetition Lenders, that resolves significant claims amongst the Debtors' Estates. Among other things, the Plan creates a mechanism for the funding of a $3 million Solyndra Settlement Fund to be made available to the Holders of Solyndra General Unsecured Claims through the mechanism of a Solyndra Settlement Trust, plus the satisfaction of the claims

asserted by a settlement class of the Debtors' former employees under the WARN Act pursuant to a settlement of $3.5 million. The Plan also avoids a layer of administrative expense associated with the appointment of a chapter 7 trustee, while increasing the efficiency of administering the Debtors' assets for the benefit of Creditors. The Plan avoids the costs and delay that would be associated with the education of the trustee and his/her Professional Persons regarding the background of the Chapter 11 Cases and the Debtors' business.

Moreover, in a chapter 7 case, the chapter 7 trustee also would be entitled to seek a sliding scale commission based upon the funds distributed by such trustee, even though the Debtors have already accumulated much of the funds and have already incurred many of the expenses associated with generating those funds. Accordingly, the Debtors believe that there is a reasonable likelihood that Creditors would "pay again" for the funds accumulated by the Debtors, since the chapter 7 trustee would be entitled to receive a commission in some amount for all funds distributed, including possibly substantial funds handed over to the chapter 7 trustee by the Debtors. It is also anticipated that a chapter 7 liquidation would result in delay in distributions to Creditors. Among other things, a chapter 7 case would trigger a new bar date for filing Claims that would be more than 90 days following conversion of the case to chapter 7. Fed. R. Bankr. P. 3002(c). Hence, a chapter 7 liquidation would not only delay distributions, but raise the prospect of additional Claims that were not asserted in the Chapter 11 Cases. Based on the foregoing, the Plan provides an opportunity to bring the greatest return to Creditors.

For purposes of this Disclosure Statement, no value has been ascribed to potential claims against third parties. However, unless specifically released in the Plan, any and all rights of the Debtors to pursue claims against third parties are expressly preserved under the Plan, including without limitation, (1) avoidance claims against any parties disclosed in the Schedules and Statements, (2) any claims against third parties relating to the claims asserted by the WARN Plaintiffs, and (3) any antitrust and other claims against certain defendants for, inter alia, such defendants' anticompetitive or tortious conduct.

## C.     Feasibility of Plan

Section 1129(a)(11) of the Bankruptcy Code requires, as a condition to confirmation, that the Bankruptcy Court find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed under the Plan. This requirement is called "feasibility."

The Plan is feasible because the Debtors will have sufficient funds available out of the Exit Facility, together with the Solyndra Settlement Fund Loan, the Holdings Settlement Fund and the WARN Settlement Loan, and the proceeds of the disposition of estate assets, as set forth in Exhibit 3, to satisfy all of the Debtors' projected obligations under the Plan.

## D.     Classification

In accordance with section 1122 of the Bankruptcy Code, the Plan provides for the classification of Claims. Section 1122(a) permits a plan to place a claim or equity interest in a particular class only if the claim or equity interest is substantially similar to the other claims or

interests in that class.  The Debtors believe that the classification of Claims and Interests under the Plan is appropriate and consistent with applicable law.

**E.**    **Confirmation of Plan Without Necessary Acceptances; Cramdown**

A COURT MAY CONFIRM A PLAN, EVEN IF IT IS NOT ACCEPTED BY ALL IMPAIRED CLASSES, IF THE PLAN HAS BEEN ACCEPTED BY AT LEAST ONE IMPAIRED CLASS OF CLAIMS, AND THE PLAN MEETS THE "CRAMDOWN" REQUIREMENTS SET FORTH IN SECTION 1129(b) OF THE BANKRUPTCY CODE. SECTION 1129(b) OF THE BANKRUPTCY CODE REQUIRES THAT THE BANKRUPTCY COURT FIND THAT A PLAN IS "FAIR AND EQUITABLE," AND DOES NOT "DISCRIMINATE UNFAIRLY" WITH RESPECT TO EACH NON-ACCEPTING IMPAIRED CLASS OF CLAIMS OR INTERESTS.  IN THE EVENT THAT ANY IMPAIRED CLASS REJECTS THE PLAN, IN ACCORDANCE WITH SECTION 1129(a)(8) OF THE BANKRUPTCY CODE, AND AT LEAST ONE IMPAIRED CLASS HAS VOTED TO ACCEPT THE PLAN, THE DEBTORS INTEND TO REQUEST THAT THE BANKRUPTCY COURT CONFIRM THE PLAN IN ACCORDANCE WITH THE "CRAMDOWN" PROVISION OF SECTION 1129(b) OF THE BANKRUPTCY CODE, OR MODIFY THE PLAN IN ACCORDANCE WITH THE TERMS THEREOF.

The Plan provides for the possibility of invoking the "cramdown" provisions as defined in section 1129(a) of the Bankruptcy Code.  Under this provision, the Bankruptcy Court has the authority to confirm the Plan even though a Class of Claims that is Impaired does not vote to accept the Plan, if another Class of Claims, which is also Impaired, votes to accept the Plan. This provision takes into account the possibility that one large claimant or several claimants may arbitrarily vote not to accept the Plan and that those arbitrary votes could be detrimental to other Creditors.  In this instance the Bankruptcy Court, notwithstanding the negative vote of an Impaired Class, in the interest of being "fair and equitable," may confirm the Plan if another Impaired Class has accepted the Plan.  Such determination, if necessary, would be addressed at the Confirmation Hearing.

### a.    No Unfair Discrimination

The Debtors believe that under the Plan:  (i) all Impaired Classes of Claims and Interests are treated in a manner that is consistent with the treatment of other Classes of Claims and Interests with which their legal rights are intertwined, if any; and (ii) no Class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims or Allowed Interests in such Class.  The Debtors believe that the Plan does not discriminate unfairly as to any Impaired Class.

### b.    Fair and Equitable Test

With respect to a dissenting class of Claims and Interests, the "fair and equitable" standard requires that the Plan provide that either the Claims or Interests in each Class received everything to which they are legally entitled or that Classes junior in priority to the Class receive nothing.  The strict requirement of the allocation of full value to dissenting classes before any junior class can receive distribution is known as the "absolute priority rule."

The Bankruptcy Code establishes different "fair and equitable" tests for holders of secured claims, unsecured claims and interests as follows:

(i)    Secured Claims

Either:  (i) each holder of a secured claim (x) retains the lien securing its secured claim and receives on account of its allowed secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, or (y) realizes the "indubitable equivalent" of its allowed secured claim; or (ii) the property securing the claim is sold free and clear of liens, with such liens attaching to the proceeds, and the liens against such proceeds are treated in accordance with clause (i).

(ii)    Unsecured Claims

Either:  (i) each holder of an unsecured claim receives or retains under the plan property of a value equal to the amount of its allowed claim; or (ii) the holders of claims and interests that are junior to the claims or the non-accepting class do not receive any property under the plan on account of such claims and interests.

(iii)    Equity Interests

Either:  (i) such holder of an interest receives or retains property of a value equal to the greater of any fixed liquidation preference or fixed redemption price to which such holder is entitled, or the value of the interest; or (ii) the holder of any interests junior to the interests in the impaired class will not receive or retain any property under the plan.

The cramdown provisions of the Bankruptcy Code are complex and this summary is not intended to be a complete statement of the law in this area.

### XVI.

### EFFECT OF CONFIRMATION

### A.    Binding Effect of Confirmation

Confirmation will bind the Debtors, all Holders of Claims, Administrative Expenses, or Interests and other parties in interest to the provisions of the Plan whether or not the Claim, Administrative Expense, or Interest of such Holder is Impaired under the Plan and whether or not the Holder of such Claim, Administrative Expense, or Interest has accepted the Plan.

### B.    Good Faith

Confirmation of the Plan shall constitute a finding that:  (i) the Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code; and (ii) all Persons' solicitations of acceptances or rejections of the Plan and the offer, issuance, sale, or purchase of a security offered or sold under the Plan have been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

C.      **No Limitations on Effect of Confirmation**

Nothing contained in the Plan will limit the effect of Confirmation as described in section 1141 of the Bankruptcy Code.

## XVII.

## RISK FACTORS

There is a risk under the Plan that Allowed Administrative Expenses and Tax Claims will materially exceed the Debtors' present estimates.  The process of reconciling all such Claims has not been completed and outstanding disputes remain that will need to be litigated or otherwise resolved.  Although the Debtors believe that the funding available under the Exit Facility in the principal amount of up to $15 million will be sufficient to satisfy Allowed Administrative Expenses, Tax Claims and Priority Non-Tax Claims, there is no assurance that will be the case.

There is a risk that the Debtors will not be able to realize the recoveries projected herein from the various assets presently available to the Estates, which may have an adverse impact on distributions to Creditors under the Plan.

There are also risks that the recoveries by Holders of Solyndra General Unsecured Claims projected hereby will not be realized, primarily as a result of the pool of Allowed Solyndra General Unsecured Claims exceeding current estimates.  Such a result could materially and adversely impact distributions on account of Solyndra General Unsecured Claims under the Plan.

Finally, there is a risk that the Plan may not be confirmed by the Bankruptcy Court, either because the requisite votes in favor of the Plan are not received or the Bankruptcy Court decides not to confirm the Plan on some other basis.  Specifically, in the event that the requisite acceptance of the Plan by Holders of Holdings General Unsecured Claims in Class 7 is not obtained, there is a risk that the Plan will not be confirmed as it relates to Holdings if Holdings is unable to satisfy the absolute priority rule in connection with the Holders of Interests in Holdings in Class 9 retaining such Interests under the Plan.

## XVIII.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion is a summary of certain U.S. federal income tax consequences of the Plan to the Debtors and to Holders of Claims and Interests.  This discussion is based on the Internal Revenue Code (the "Tax Code"), Treasury Regulations promulgated and proposed thereunder, judicial decisions and published administrative rules and pronouncements of the Internal Revenue Service ("IRS"), all as in effect on the date hereof.  Due to the complexity of certain aspects of the Plan, the lack of applicable legal precedent, the possibility of changes in the law, the differences in the nature of the Claims (including Claims within the same Class) and Interests, the Holder's status and method of accounting (including Holders within the same Class) and the potential for disputes as to legal and factual matters with the IRS, the tax consequences described herein are subject to significant uncertainties.  No legal opinions have

been requested from counsel with respect to any of the tax aspects of the Plan and no rulings have been or will be requested from the IRS with respect to the any of the issues discussed below. Further, legislative, judicial or administrative changes may occur, perhaps with retroactive effect, which could affect the accuracy of the statements and conclusions set forth below as well as the tax consequences to the Debtors and the Holders of Claims and Interests.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtors or the Holders of Claims or Interests in light of their personal circumstances, nor does the discussion deal with tax issues with respect to taxpayers subject to special treatment under the U.S. federal income tax laws (including, for example, banks, governmental authorities or agencies, pass-through entities, brokers and dealers in securities, traders that mark-to-market their securities, mutual funds, insurance companies, other financial institutions, real estate investment trusts, tax-exempt organizations, small business investment companies, regulated investment companies, foreign taxpayers, persons whose functional currency is not the U.S. dollar, persons subject to the alternative minimum tax, and persons holding Claims or Interests as part of a "straddle," "hedge," "constructive sale" or "conversion transaction" with other investments). This discussion does not address the tax consequences to Holders of Claims who did not acquire such Claims at the issue price on original issue. No aspect of foreign, state, local or estate and gift taxation is addressed.

The U.S. federal income tax consequences of the distributions contemplated by the Plan to the Holders of Claims and Interests that are U.S. Persons will depend upon a number of factors. For purposes of the following discussion, a "U.S. Person" is any person or entity (1) who is a citizen or resident of the United States, (2) that is a corporation or partnership created or organized in or under the laws of the United States or any state thereof, (3) that is an estate, the income of which is subject to U.S. federal income taxation regardless of its source or (4) that is a trust (a) the administration over which a United States person can exercise primary supervision and all of the substantial decisions of which one or more U.S. persons have the authority to control; or (b) that has in effect a valid election to continue to be treated as a U.S. Person for U.S. federal income tax purposes. In the case of a partnership, the tax treatment of its partners will depend on the status of the partner and the activities of the partnership. U.S. Persons who are partners in a partnership should consult their tax advisors. A "Non-U.S. Person" is any person or entity that is not a U.S. Person. For purposes of the following discussion and unless otherwise noted below, the term "Holder" shall mean a Holder of a Claim or Interest that is a U.S. Person.

Except where otherwise indicated, this discussion assumes that the Claims and Interests are held as capital assets within the meaning of section 1221 of the Tax Code.

THE FOLLOWING SUMMARY IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE PERSONAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

*IRS Circular 230 Notice. To ensure compliance with IRS Circular 230, Holders of Claims and Interests are hereby notified that: (a) any discussion of federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by Holders of Claims and Interests for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (b) such discussion is written in connection with the promotion or marketing by the Debtors of the transactions or matters addressed herein; and (c) Holders of Claims and Interests should seek advice based on their particular circumstances from an independent tax advisor.*

## A.    Consequences to the Debtors

Pursuant to the Tax Code and subject to certain exceptions, a taxpayer generally must recognize income from the cancellation of indebtedness ("COD Income") to the extent that such taxpayer's indebtedness is discharged for an amount less than the indebtedness' adjusted issue price determined in the manner described below.  Generally, the amount of COD Income, subject to certain statutory and judicial exceptions, is the excess of (i) the adjusted issue price of the discharged indebtedness less (ii) the sum of the fair market value (determined at the date of the exchange) of the consideration, if any, given in exchange for such discharged indebtedness including cash, property and the issue price of any new indebtedness.

Section 108(a)(l)(A) of the Tax Code provides an exception to the recognition of COD Income where a taxpayer discharging indebtedness is under the jurisdiction of a court in a case under title 11 of the Bankruptcy Code and where the discharge is granted, or is effected pursuant to a plan approved, by a U.S. Bankruptcy Court (the "Bankruptcy Exception").  Under the Bankruptcy Exception, instead of recognizing COD Income, the taxpayer is required, pursuant to Section 108(b) of the Tax Code, to reduce certain of that taxpayer's tax attributes to the extent thereof by the amount of COD Income.  The attributes of the taxpayer are generally reduced in the following order: net operating losses, general business and minimum tax credit carryforwards, capital loss carryforwards, the basis of the taxpayer's assets, and finally, foreign tax credit carryforwards (collectively, "Tax Attributes").  To the extent the amount of COD Income exceeds the amount of Tax Attributes available to be reduced, such excess is still excluded from income.  Pursuant to Section 108(b)(4)(A) of the Tax Code, the reduction of Tax Attributes does not occur until the end of the taxable year after such Tax Attributes have been applied to determine the tax in the year of discharge or, in the case of asset basis reduction, the first day of the taxable year following the taxable year in which the COD Income is realized.  Section 108(e)(2) of the Tax Code provides a further exception to the recognition of COD Income upon the discharge of debt, providing that a taxpayer will not recognize COD Income to the extent that the taxpayer's satisfaction of the debt would have given rise to a deduction for United States federal income tax purposes.  Unlike Section 108(b) of the Tax Code, Section 108(e)(2) does not require a reduction in the taxpayer's Tax Attributes as a result of the non-recognition of COD Income.  Thus, the effect of Section 108(e)(2) of the Tax Code, where applicable, is to allow a taxpayer to discharge indebtedness without recognizing income and without reducing its Tax Attributes.

Pursuant to Section 301.7701-2(a) of the Treasury Regulations, an entity that is treated as a disregarded entity for U.S. federal income tax purposes is treated in the same manner as a sole

66

proprietorship, branch or division of such entity's owner. Thus, assets and liabilities owned, or owed, by a disregarded entity should generally be treated as owned by, or liabilities of, the disregarded entity's owner. Pursuant to Section 301.7701-1 of the Treasury Regulations, a classification as a disregarded entity applies for all U.S. federal tax purposes. A discharge of a disregarded entity's indebtedness should, therefore, be treated as the discharge of debt owed by such disregarded entity's owner.

Accordingly, it is expected that COD Income that is recognized by Solyndra will be attributed for federal income tax purposes to Holdings. As a result of the Bankruptcy Exception, it is expected that any COD Income attributed to Holdings will be excluded from income.

Under Section 108(e)(2) of the Tax Code, no COD Income should result from the discharge of any accrued but unpaid interest of Holdings or Solyndra pursuant to the Plan to the extent payment of such interest would have given rise to a deduction.

Under the terms of the Plan, Holdings and Solyndra will transfer certain assets to the Solyndra Residual Trust, the Solyndra Settlement Trust, or to applicable lienholders in a potentially taxable disposition. It is anticipated that existing tax attributes, including tax basis and net operating losses, will be sufficient to avoid Holdings incurring any material federal or State income taxes upon disposition.

## B.    **Consequences to Creditors**

As of the Effective Date, the Solyndra Residual Trust shall be established for the benefit of the Solyndra Settlement Trust and the Holders of Prepetition Lender Deficiency Claims, and the Solyndra Settlement Trust shall be established for the benefit of all holders of Allowed Solyndra General Unsecured Claims. For purposes of this section, the Solyndra Residual Trust and the Solyndra Settlement Trust are referred to as the "Plan Trusts" and the respective trustee thereof are referenced as the "Plan Trustees." The Plan Trustees will make a good faith valuation of the Plan Trusts' respective assets. All parties (including, without limitation, the Plan Trustees and the holders of Claims) must consistently use such valuation for all federal income tax purposes. The tax consequences of the Plan are subject to uncertainties due to the complexity of the Plan and the lack of interpretative authority regarding certain changes in the tax law.

Allocations of taxable income of the Plan Trusts (other than taxable income allocable to the Plan Trusts' respective claims reserves) among holders of Claims shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Plan Trusts had distributed all of their respective assets (valued at their tax book value, and other than assets allocable to the Plan Trusts' respective claims reserves) to the holders of the beneficial interests in the Plan Trusts, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Plan Trusts. Similarly, taxable loss of the Plan Trusts shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Plan Trust assets.

The tax book value of the Plan Trust assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements. Uncertainties with regard to federal income tax consequences of the Plan may arise due to the inherent nature of estimates of value that will impact tax liability determinations.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Plan Trustees of an IRS private letter ruling if the Plan Trustees so request one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Plan Trustees), the Plan Trustees will (a) elect to treat any Plan Trust assets allocable to, or retained on account of, Disputed Claims (the "Plan Trust Claims Reserve") as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. Accordingly, the Plan Trust Claims Reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the Plan Trust assets in such reserves, and all distributions from such reserves will be treated as received by holders in respect of their Claims as if distributed by the Debtors. All parties (including, without limitation, the Plan Trustees and the holders of beneficial interests in the Plan Trusts) will be required to report for tax purposes consistently with the foregoing.

The Plan Trusts are intended to qualify as liquidating trusts for federal income tax purposes. In general, a liquidating trust is not a separate taxable entity but rather is treated for federal income tax purposes as a "grantor" trust (i.e., a pass-through entity). The IRS, in Revenue Procedure 94-45, 1994.28 I.R.B. 124, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Plan Trusts have been structured with the intention of complying with such general criteria. Pursuant to the Plan, and in conformity with Revenue Procedure 94-45, supra, all parties (including the Plan Trustees and the holders of beneficial interests in the Plan Trusts) are required to treat for federal income tax purposes, the Plan Trusts as grantor trusts of which the holders of Allowed Claims are the owners and grantors. While the following discussion assumes that the Plan Trusts would be so treated for federal income tax purposes, no ruling has been requested from the IRS concerning the tax status of the Plan Trusts as grantor trusts. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Plan Trusts as grantor trusts. If the IRS were to challenge successfully such classification, the federal income tax consequences to the Plan Trusts and the holders of Claims could vary from those discussed herein.

In general, each Holder of an Allowed Claim will recognize gain or loss in an amount equal to the difference between (i) the "amount realized" by such Holder in satisfaction of its Claim, and (ii) such Holder's adjusted tax basis in such Claim. The "amount realized" by a Holder will equal the sum of cash and the aggregate fair market value of the property received by such Holder pursuant to the Plan (such as a Holder's undivided beneficial interest in the assets transferred to the Plan Trusts). Where gain or loss is recognized by a Holder in respect of its Allowed Claim, the character of such gain or loss (i.e., long-term or short-term capital, or ordinary income) will be determined by a number of factors including the tax status of the Holder, whether the Claim constituted a capital asset in the hands of the Holder and how long

it had been held, whether the Claim was originally issued at a discount or acquired at a market discount and whether and to what extent the Holder had previously claimed a bad debt deduction in respect of the Claim.

After the Effective Date, any amount a Holder receives as a distribution from the Plan Trusts in respect of its beneficial interest in the Plan Trusts should not be included, for federal income tax purposes, in the Holder's amount realized in respect of its Allowed Claim but should be separately treated as a distribution received in respect of such Holder's beneficial interest in the Plan Trusts.

In general, a Holder's aggregate tax basis in its undivided beneficial interest in the assets transferred to the Plan Trusts will equal the fair market value of such undivided beneficial interest as of the Effective Date and the holder's holding period in such assets will begin the day following the Effective Date. Distributions to any Holder of an Allowed Claim will be allocated first to the original principal portion of such Claim as determined for federal tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim. However, there is no assurance that the IRS will respect such allocation for federal income tax purposes.

For all federal income tax purposes, all parties (including the Plan Trustees and the Holders of beneficial interests in the Plan Trusts) shall treat the transfer of assets to the Plan Trusts, in accordance with the terms of the Plan, as a transfer of those assets directly to the Holders of Allowed Claims followed by the transfer of such assets by such holders to the Plan Trusts. Consistent therewith, all parties shall treat the Plan Trusts as grantor trusts of which such holders are to be owners and grantors. Thus, such Holders (and any subsequent Holders of interests in the Plan Trusts) shall be treated as the direct owners of an undivided beneficial interest in the assets of the Plan Trusts for all federal income tax purposes. Accordingly, each Holder of a beneficial interest in the Plan Trusts will be required to report on its federal income tax return(s) the Holder's allocable share of all income, gain, loss, deduction or credit recognized or incurred by the Plan Trusts.

The Plan Trusts' taxable income will be allocated to the Holders of beneficial interests in the Plan Trusts in accordance with each such Holder's Pro Rata share. The character of items of income, deduction and credit to any Holder and the ability of such Holder to benefit from any deductions or losses may depend on the particular situation of such Holder.

The federal income tax reporting obligation of a Holder of a beneficial interest in the Plan Trusts is not dependent upon the Plan Trusts distributing any cash or other proceeds. Therefore, a Holder of a beneficial interest in the Plan Trusts may incur a federal income tax liability regardless of the fact that the Plan Trusts have not made, or will not make, any concurrent or subsequent distributions to the Holder. If a Holder incurs a federal tax liability but does not receive distributions commensurate with the taxable income allocated to it in respect of its beneficial interests in the Plan Trusts it holds, the Holder may be allowed a subsequent or offsetting loss.

The Plan Trustees will each file with the IRS returns for the Plan Trusts as grantor trusts pursuant to Treasury Regulations section 1.671-4(a). The Plan Trustees will also send to

each Holder of a beneficial interest in the Plan Trusts a separate statement setting forth the Holder's share of items of income, gain, loss, deduction or credit and will instruct the Holder to report such items on its federal income tax return.

All payments to Creditors and Interest Holders are subject to any applicable withholding (including employment tax withholding). Under the Internal Revenue Code, interest, dividends and other reportable payments may, under certain circumstances, be subject to "backup withholding" then in effect. Backup withholding generally applies if the holder (a) fails to furnish his or her social security number or other taxpayer identification number ("TIN"), (b) furnishes an incorrect TIN, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is his correct number and that he is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax if an appropriate refund claim is filed with the IRS. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, could also change the federal income tax consequences of the Plan and the transactions contemplated there under.

1.    **Holders of Claims.**

Generally, a holder of a Claim should in most, but not all circumstances, recognize gain or loss equal to the difference between the "amount realized" by such holder in exchange for its Claim and such holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of reorganization in respect of a holder's Claim. The tax basis of a holder in a Claim will generally be equal to the holder's cost therefore. To the extent applicable, the character of any recognized gain or loss (e.g., ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the Claim in the holder's hands, the purpose and circumstances of its acquisition, the holder's holding period of the Claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. Generally, if the Claim is a capital asset in the holder's hands, any gain or loss realized will generally be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the holder has held such Claim for more than one year.

A Holder who received Cash (or potentially other consideration) in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A Holder who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for United States federal income tax purposes as interest, regardless of whether such Holder realizes an overall gain or loss as a result of surrendering its Claim. A Holder who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued

but unpaid interest is not satisfied, regardless of whether such Holder realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

2.    **Non-United States Persons.**

A Holder of a Claim that is a Non-U.S. Person generally will not be subject to United States federal income tax with respect to property (including money) received in exchange for such Claim pursuant to the Plan, unless (i) such Holder is engaged in a trade or business in the United States to which income, gain or loss from the exchange is "effectively connected" for United States federal income tax purposes, or (ii) if such Holder is an individual, such Holder is present in the United States for 183 days or more during the taxable year of the exchange and certain other requirements are met.

C.    **Consequences to the Holders of Interests in Holdings**

The Plan has no impact on the U.S. federal income tax liability of the Holders of Interests in Holdings.

D.    **Importance of Obtaining Professional Tax Assistance**

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL.  THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIM HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, CLAIM HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## XIX.

## ALTERNATIVES TO PLAN

The Debtors believe that if the Plan is not confirmed, or is not confirmable, the alternatives to the Plan include: (a) conversion of the Chapter 11 Cases to chapter 7; (b) dismissal of the Debtors' cases; or (c) an alternative plan of reorganization.

A.    **Liquidation Under Chapter 7**

If no plan can be confirmed, the Debtors' Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed to liquidate the Debtors' assets for distribution to Creditors in accordance with the priorities established by the Bankruptcy Code.  For the reasons previously discussed above, the Debtors believe that Confirmation of the Plan will provide Creditors with a recovery that is expected to be substantially more than could be achieved in a liquidation under chapter 7 of the Bankruptcy Code.

71

**B.**    **Dismissal**

Dismissal of the Chapter 11 Cases would result in each individual creditor having to protect its own rights through legal action and would likely result in foreclosure actions by the Prepetition Lenders, leaving little or no assets for anyone else.  The Debtors possibly would be left with certain unencumbered assets but would have no direction as to how to use those assets.  The Debtors believe that dismissal of the Chapter 11 Cases would result in a disparate recovery by creditors that would not be beneficial to the whole.

**C.**    **Alternative Plan**

The Debtors believe that any alternative plan would not result in as favorable of treatment of Claims and Interests as proposed under the Debtors' Plan.

**D.**    **No *Res Judicata* Effect**

Notwithstanding anything to the contrary in the Plan, or in this Disclosure Statement, the provisions of this Disclosure Statement and the Plan which permit the Debtors, Reorganized Holdings, the Solyndra Settlement Trust or the Solyndra Residual Trust to enter into settlements and compromises of any potential litigation, shall not have and are not intended to have any *res judicata* effect with respect to any prepetition Claims and causes of action that are not otherwise treated under the Plan, and shall not be deemed a bar to asserting such Claims and causes of action.

## XX.

## CONCLUSION

The Debtors believe that the Plan is in the best interest of Creditors and urge Creditors to vote to accept the Plan.

September 7, 2012

R. Todd Neilson
Chief Restructuring Officer of Solyndra LLC and
360 Degree Solar Holdings, Inc.

PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski (CA Bar No. 90073)
Debra I. Grassgreen (CA Bar No. 169978)
Bruce Grohsgal (DE Bar No. 3583)
Maxim B. Litvak (CA Bar No. 215852)
919 North Market Street, Seventeenth Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:      rpachulski@pszjlaw.com
             dgrassgreen@pszjlaw.com
             bgrohsgal@pszjlaw.com
             mlitvak@pszjlaw.com

Counsel to Debtors and Debtors in Possession

**<u>Exhibit 1</u>**

**Plan**

# Filed Separately

**Exhibit 2**

**Disclosure Statement Order**

# Filed Separately

**Exhibit 3**

**Chapter 11 Plan Projections & Liquidation Analysis**

Imperial Capital, LLC

## Chapter 11 Recovery Analysis for Solyndra LLC

*($ in thousands)*

**Assumptions:**
*Plan effective as of October 19, 2012.*
*All assets other than those listed below are monetized prior to the Effective Date.*
*Remaining assets are assumed to be monetized within six months after Effective Date in Low Scenario and three months after Effective Date in High Scenario excluding claims against third parties which may be pursued thereafter.*
*Payroll and occupancy costs to continue at reduced levels for an additional six months after Effective Date in Low Scenario and an additional three months after Effective Date in High Scenario.*

| Assets | Book Value [1] | Estimated Recovery Low | Estimated Recovery High | Estimated Recovery Value Low | Estimated Recovery Value High |
|---|---|---|---|---|---|
| Cash [2] | $156.4 | 100.0% | 100.0% | $156.4 | $156.4 |
| Solyndra AR - Foreign [3] | 11,019.9 | 0.0% | 0.0% | - | - |
| Buildings & Land [4] | 298,756.0 | 19.5% | 38.5% | 58,145.0 | 114,995.0 |
| Intellectual Property [4] | - | N/A | N/A | - | 1,640.0 |
| Claims Against Third Parties [5] | - | N/A | N/A | - | - |
| Other / Miscellaneous [6] | N/A | N/A | N/A | - | - |
| Total | $309,932.3 | | | $58,301.4 | $116,791.4 |
| **Gross Estimated Proceeds From Asset Disposition** | | | | **$58,301.4** | **$116,791.4** |

**Post-Effective Date Expenses:**

| | | | | Low | High |
|---|---|---|---|---|---|
| Payroll & Benefits [7] | | | | (734.2) | (489.5) |
| Manufacturing, Occupancy, Overhead & Logistics [7] | | | | (1,149.1) | (849.4) |
| Attorneys, Accountants and Advisors [8] | | | | (500.0) | (300.0) |
| Other Estate Wind-Down Costs | | | | (1,000.0) | (500.0) |
| Total Post-Effective Date Expenses | | | | ($3,383.3) | ($2,138.8) |
| **Net Estimated Proceeds From Asset Disposition** | | | | **$54,918.2** | **$114,652.6** |

**Additional Proceeds Provided by Plan Sponsors:**

| | | | | Low | High |
|---|---|---|---|---|---|
| Proceeds for the Benefit of Employee WARN Claimants [9] | | | | $3,500.0 | $3,500.0 |
| Proceeds for the Benefit of Other Administrative and Priority Claimants [10] | | | | $3,497.4 | $3,497.4 |
| Proceeds for the Benefit of General Unsecured Creditors [11] | | | | $3,175.0 | $3,175.0 |
| **Net Estimated Proceeds Available for Distribution** | | | | **$65,090.6** | **$124,825.0** |

**Notes:**

*(1) Per Solyndra LLC May 2012 Monthly Operating Report filed on 6/19/2012 [Docket No. 871] except where otherwise noted.*

*(2) Cash balance as of 10/20/2012 per Debtors' supplemental balance published on August 29, 2012*

*(3) The Company, prior to filing for bankruptcy, and the estate post petition incurred considerable expense pursuing all avenues for collection of its Accounts Receivable, both domestic and foreign. Despite these efforts certain receivables remain uncollectible. The estate has explored sale of these receivables to third parties whose business is collection of similar receivables. No parties have come forth with any meaningful offers.*

*(4) Recovery range reflects guidance provided by agents retained to sell real estate and intellectual property; net of estimated transaction fees and expenses.*

*(5) For purposes of the Disclosure Statement, no value has been ascribed to potential claims against third parties. However, unless specifically released in the Plan, any and all rights of the Debtors to pursue claims against third parties are expressly preserved under the Plan, including without limitation, (1) avoidance claims against any parties disclosed in the Schedules and Statements, (2) any claims against third parties relating to the claims asserted by the WARN Plaintiffs, and (3) any antitrust and other claims against certain defendants for, inter alia, such defendants' anticompetitive or tortious conduct.*

*(6) Solyndra Residual Trust may have various other miscellaneous assets, including net operating loss carry-forwards and / or rights to tax refunds. No value has been ascribed to such other miscellaneous assets for purposes hereof.*

*(7) Per DIP budget attached to Order Further Extending Commitment Termination Date and Increasing DIP Commitment filed on 6/18/2012 [Docket No. 869].*

*(8) Estimated professional fees shown net of $175,000 to be funded by Plan Sponsors for Solyndra Settlement Trust. Estate professional activity assumed to continue for an additional three months after Effective Date in High Scenario and additional six months after Effective Date in Low Scenario excluding claims against third parties that may be pursued thereafter.*

*(9) Per Plan, Plan Sponsors have agreed to fund the Solyndra Residual Trust with $3.5 million for the benefit of WARN employee claimants pursuant to the WARN Settlement Loan which shall be non-recourse as to the Solyndra Residual Trust and payable solely out of the proceeds, if any, of causes of action against third parties relating to the claims asserted by WARN Claimants. Represents gross proceeds. WARN claimants' attorneys fees, employer payroll taxes and noticing costs to be paid from gross proceeds.*

*(10) Proceeds shall be provided by Tranche II of the Exit Facility, which shall be secured by the Solyndra Residual Trust's unencumbered assets other than those assets that are subject to the liens provided by the WARN Settlement Loan. Plan Expenses will be funded by the Tranche I Exit Facility.*

*(11) Per Plan, Plan Sponsors have agreed to fund the Solyndra Residual Trust with $3.0 million for the benefit of general unsecured creditors plus additional $175,000 for administration of the Solyndra Settlement Trust per the Solyndra Settlement Fund Loan which will be secured by the same assets and shall have the same priority as the existing DIP credit facility. Tranche A debt, as reflected on page 2, is reduced by $3.175 million on account of the Solyndra Settlement Fund Loan.*

Imperial Capital, LLC

## Chapter 11 Recovery Analysis for Solyndra LLC

($ in thousands)

| | | Estimated Recovery Value | | | |
|---|---|---|---|---|---|
| | | Low | | High | |
| **Net Estimated Proceeds Available for Distribution** | | **$65,090.6** | | **$124,825.0** | |
| | Claim | Recovery to Creditors | | | |
| | | Low | | High | |
| | Amount [1] | $ | % | $ | % |
| **Secured, Administrative and Priority Expenses** | | | | | |
| Debtor-in-Possession Facility [2] | $7,000.0 | $7,000.0 | 100.0% | $7,000.0 | 100.0% |
| Unpaid Estate Professional Fees [3] | 3,000.0 | 3,000.0 | 100.0% | 3,000.0 | 100.0% |
| 503(b)(9) Claims [4][5] | 1,633.0 | 1,633.0 | 100.0% | 1,633.0 | 100.0% |
| Employee WARN Claims [6] | 3,500.0 | 3,500.0 | 100.0% | 3,500.0 | 100.0% |
| Employee Priority Claims [5] | 864.4 | 864.4 | 100.0% | 864.4 | 100.0% |
| Secured Tax Claim [7][8] | 1,569.9 | 1,569.9 | 100.0% | 1,569.9 | 100.0% |
| Priority Tax Claim [5][7] | 1,000.0 | 1,000.0 | 100.0% | 1,000.0 | 100.0% |
| Solyndra Settlement Fund and Creditor Trust Contribution [9] | 3,175.0 | 3,175.0 | 100.0% | 3,175.0 | 100.0% |
| General Unsecured Creditors Professional Fees [10] | 175.0 | 175.0 | 100.0% | 175.0 | 100.0% |
| **Total Secured, Administrative and Priority Expenses** | 21,917.3 | 21,917.3 | 100.0% | 21,917.3 | 100.0% |
| **First Lien Debt** | | | | | |
| Tranche A [11] | 73,467.4 | 40,173.3 | 54.7% | 73,467.4 | 100.0% |
| **Second Lien Debt** | | | | | |
| Tranche B | 142,808.5 | - | 0.0% | 26,440.3 | 18.5% |
| **Third Lien Debt** | | | | | |
| Tranche D | 385,000.0 | - | 0.0% | - | 0.0% |
| Tranche E | 186,644.3 | - | 0.0% | - | 0.0% |
| **Total Third Lien Debt** | 571,644.3 | - | 0.0% | - | 0.0% |
| Unsecured Claims [12] | 90,000.0 - 135,000.0 | 3,000.0 | 2.2% | 3,000.0 | 3.3% |
| **Total Unsecured Claims** | 90,000.0 - 135,000.0 | 3,000.0 | 2.2% | 3,000.0 | 3.3% |
| Equity | N/A | - | 0.0% | - | 0.0% |

**Notes:**

(1) All claims subject to further reconciliation.

(2) Reflects estimated DIP Facility at Effective Date.  The DIP Facility will be replaced by the Exit Facility which will be used to fund remaining estate wind-down costs. These proceeds will be paid out of the Tranche I Exit Facility.

(3) Inclusive of $2.0 million excess carve-out per Order Further Extending Commitment Termination Date and Increasing DIP Commitment filed on 6/18/2012 [Docket No. 869] and additional $1.0 million of accrued, unpaid budgeted professional fees. These proceeds will be paid out of the Tranche I Exit Facility.

(4) Certain 503(b)(9) claims are subject to dispute and objection.

(5) 503(b)(9) claims, employee priority claims and priority tax claims will be paid out of the Tranche II Exit Facility.

(6) Reflects gross settlement amount of employee WARN claims. See footnote 9 on page 1 for further detail.

(7) Estimated and subject to dispute.

(8) Secured tax claim recoveries will be paid out of proceeds received from the sale of Buildings & Land.

(9) Per Plan, the Solyndra Settlement Fund Loan and Solyndra Settlement Trust will be repaid prior to any distribution to the Tranche A loan.

(10) Per Plan, Plan Sponsors have agreed to fund $175,000 of General Unsecured Creditors' professional fees.  These fees will be paid prior to any distribution to the Tranche A loan.

(11) Tranche A claim reflects principal balance, accrued pre-petition interest of $2.0 million and post-petition interest of $5.3 million through the Effective Date.  Per Plan, Tranche A claim is reduced by $3.175 million on account of the Solyndra Settlement Fund Loan and Solyndra Settlement Trust Contribution for the benefit of General Unsecured Creditors.  Recovery on Tranche A claim reflected herein is net of the Solyndra Settlement Fund and Solyndra Settlement Trust Contribution.

(12) Per Plan, general unsecured creditors will obtain a $3.0 million cash recovery plus an additional $175,000 for funding of professional fees.  Recovery reflected above excludes professional fee funding.  Range of unsecured claims provided by Creditors' Committee.

Imperial Capital, LLC

## Chapter 7 Liquidation Analysis for Solyndra LLC

*($ in thousands)*

**Assumptions:**
*Case conversion to Chapter 7 proceeding occurs at October 19, 2012.*
*All assets other than those listed below are monetized prior to the Conversion Date.*
*Remaining assets are assumed to be monetized within six months after Conversion Date in Low Scenario and three months after Conversion Date in High Scenario excluding avoidance claims that may be pursued thereafter.*
*Payroll costs to continue at reduced levels for an additional three months after Conversion Date in both Low and High Scenario.*

| Assets | Book Value [1] | Estimated Recovery Low | Estimated Recovery High | Estimated Recovery Value Low | Estimated Recovery Value High |
|---|---|---|---|---|---|
| Cash [2] | $156.4 | 100.0% | 100.0% | $156.4 | $156.4 |
| Solyndra AR - Foreign [3] | 11,019.9 | 0.0% | 0.0% | - | - |
| Buildings & Land [4] | 298,756.0 | 14.6% | 28.9% | 43,608.8 | 86,246.3 |
| Intellectual Property | - | N/A | N/A | - | - |
| Claims Against Third Parties [5] | - | N/A | N/A | - | - |
| Other / Miscellaneous [6] | N/A | N/A | N/A | - | - |
| Total | $309,932.3 | | | $43,765.2 | $86,402.7 |
| **Net Estimated Proceeds Available for Distribution Before Administrative Expenses** | | | | **$43,765.2** | **$86,402.7** |
| | | | | | |
| **Post-Conversion Date Expenses:** | | | | | |
| Payroll & Benefits [7] | | | | (734.2) | (489.5) |
| Manufacturing, Occupancy, Overhead & Logistics [7] | | | | (1,149.1) | (849.4) |
| Trustee Commission on Sale of Assets [8] | | | | (1,313.0) | (2,592.1) |
| Attorneys, Accountants and Advisors [9] | | | | (750.0) | (430.0) |
| Other Estate Wind-Down Costs | | | | (1,000.0) | (500.0) |
| Total Post-Conversion Date Expenses | | | | ($4,946.2) | ($4,860.9) |
| **Net Estimated Proceeds Available for Distribution** | | | | **$38,819.0** | **$81,541.8** |

**Notes:**
*(1) Per Solyndra LLC May 2012 Monthly Operating Report filed on 6/19/2012 [Docket No. 871] except where otherwise noted.*
*(2) Cash balance as of 10/20/2012 per Debtors' supplemental forecast published on August 29, 2012*
*(3) The Company, prior to filing for bankruptcy, and the estate post petition incurred considerable expense pursuing all avenues for collection of its Accounts Receivable, both domestic and foreign. Despite those efforts certain receivables remain uncollectible. The estate has explored sale of these receivables to third parties whose business is collection of similar receivables. No parties have come forth with any meaningful offers.*
*(4) Recovery range reflects guidance provided by real estate broker under Chapter 11 scenario discounted by 25%; net of estimated transaction fees and expenses.*
*(5) No value has been ascribed to potential claims against third parties.*
*(6) Debtor may have various other miscellaneous assets, including net operating loss carry-forwards and / or rights to tax refunds. No value has been ascribed to such other miscellaneous assets for purposes hereof.*
*(7) Per DIP budget attached to Order Further Extending Commitment Termination Date and Increasing DIP Commitment filed on 6/18/2012 [Docket No. 869].*
*(8) Trustee commission is assumed to be 3.0% of net estimated proceeds available for distribution before administrative expenses.*
*(9) Estate professional activity assumed to continue for an additional three months after Conversion Date in High Scenario and additional six months after Conversion Date in Low Scenario excluding claims against third parties that may be pursued thereafter.*

Imperial Capital, LLC

## Chapter 7 Liquidation Analysis for Solyndra LLC

*($ in thousands)*

| | | Estimated Recovery Value | | | |
|---|---|---|---|---|---|
| | | Low | | High | |
| Net Estimated Proceeds Available for Distribution | | $38,819.0 | | $81,541.8 | |
| | | Recovery to Creditors | | | |
| | Claim | Low | | High | |
| | Amount [1] | $ | % | $ | % |
| **Secured, Administrative and Priority Expenses** | | | | | |
| Debtor-in-Possession Facility [2] | $7,000.0 | $7,000.0 | 100.0% | $7,000.0 | 100.0% |
| Unpaid Estate Professional Fees [3] | 3,000.0 | 3,000.0 | 100.0% | 3,000.0 | 100.0% |
| 503(b)(9) Claims [4] | 1,633.0 | - | 0.0% | - | 0.0% |
| Employee WARN Claims [5] | 10,000.0 | - | 0.0% | - | 0.0% |
| Employee Administrative Claims | 864.4 | - | 0.0% | - | 0.0% |
| Secured Tax Claim [5] [6] | 1,569.9 | 1,569.9 | 100.0% | 1,569.9 | 100.0% |
| Priority Tax Claim [5] | 1,000.0 | - | 0.0% | - | 0.0% |
| **Total Secured, Administrative and Priority Expenses** | 25,067.3 | 11,569.9 | 46.2% | 11,569.9 | 46.2% |
| **First Lien Debt** | | | | | |
| Tranche A [7] | 76,642.4 | 27,249.1 | 35.6% | 69,971.9 | 91.3% |
| **Second Lien Debt** | | | | | |
| Tranche B | 142,808.5 | - | 0.0% | - | 0.0% |
| **Third Lien Debt** | | | | | |
| Tranche D | 385,000.0 | - | 0.0% | - | 0.0% |
| Tranche E | 186,644.3 | - | 0.0% | - | 0.0% |
| **Total Third Lien Debt** | 571,644.3 | - | 0.0% | - | 0.0% |
| Unsecured Claims [8] | 90,000.0 - 135,000.0 | - | 0.0% | - | 0.0% |
| **Total Unsecured Claims** | 90,000.0 - 135,000.0 | - | 0.0% | - | 0.0% |
| Equity | N/A | - | 0.0% | - | 0.0% |

Notes:
(1) All claims subject to further reconciliation.
(2) Reflects estimated DIP Facility at Conversion Date.
(3) Inclusive of $2.0 million excess carve-out per Order Further Extending Commitment Termination Date and Increasing DIP Commitment filed on 6/18/2012 [Docket No. 869] and additional $1.0 million of accrued, unpaid budgeted professional fees.
(4) Certain 503(b)(9) claims are subject to dispute and objection.
(5) Estimated and subject to dispute.
(6) Secured tax claim recoveries will be paid out of proceeds received from the sale of Buildings & Land.
(7) Reflects Tranche A principal balance and accrued pre-petition interest of $2.0 million and post-petition interest of $5.3 million through the Conversion Date.
(8) Range of unsecured claims provided by Creditors' Committee.

Imperial Capital, LLC

## Chapter 11 Recovery Analysis for 360 Degree Solar Holdings, Inc. [1]

*($ in thousands)*

| Assets | Book Value [2] | Estimated Recovery Low | Estimated Recovery High | Estimated Recovery Value Low | Estimated Recovery Value High |
|---|---|---|---|---|---|
| Cash | $99.1 | 100.0% | 100.0% | $99.1 | $99.1 |
| Claims Against Third Parties [3] | 0.0 | 100.0% | 100.0% | 0.0 | 0.0 |
| Residual Value from Solyndra Residual Trust | 0.0 | 0.0% | 0.0% | 0.0 | 0.0 |
| Other / Miscellaneous [4] | N/A | N/A | N/A | - | - |
| Total | $99.1 | | | $99.1 | $99.1 |
| **Net Estimated Proceeds Available for Distribution Before Administrative Expenses** | | | | **$99.1** | **$99.1** |
| **Proceeds Provided by Plan Sponsors** [5] | | | | **$810.0** | **$810.0** |
| Post-Effective Date Expenses [6] | | | | 0.0 | 0.0 |
| **Net Estimated Proceeds Available for Distribution** | | | | **$909.1** | **$909.1** |

## Chapter 11 Recovery Analysis for 360 Degree Solar Holdings, Inc. [1]

*($ in thousands)*

| | | Estimated Recovery Value Low | | Estimated Recovery Value High | |
|---|---|---|---|---|---|
| Net Estimated Proceeds Available for Distribution | | $909.1 | | $909.1 | |
| | Claim Amount | Recovery to Creditors Low $ | Low % | High $ | High % |
| **Administrative and Priority Expenses** | | | | | |
| Priority Tax Claim | 0.1 | 0.1 | 100.0% | 0.1 | 100.0% |
| **Unsecured Claims** | | | | | |
| Unsecured Claims [5] [7] | 7,000.0 | 235.6 | 3.4% | 235.6 | 3.4% |
| Lease Rejection Claims [5] [8] | 20,000.0 | 673.3 | 3.4% | 673.3 | 3.4% |
| **Total Unsecured Claims** | **27,000.0** | **908.9** | **3.4%** | **908.9** | **3.4%** |

**Notes:**

(1) Per 360 Holdings, Inc. Statement of Financial Affairs filed on 10/31/2011 except where otherwise noted.

(2) Financial information presented per Statement of Financial Affairs filed on 9/6/2011.

(3) For purposes of the Disclosure Statement, no value has been ascribed to potential claims against third parties. However, unless specifically released in the Plan, any and all rights of the Debtors to pursue claims against third parties are expressly preserved under the Plan, including without limitation, (1) avoidance claims against any parties disclosed in the Schedules and Statements, (2) any claims against third parties relating to the claims asserted by the WARN Plaintiffs, and (3) any antitrust and other claims against certain defendants for, inter alia, such defendants' anticompetitive or tortious conduct.

(4) Debtor may have various other miscellaneous assets, including net operating loss carry-forwards and / or rights to tax refunds. No value has been ascribed to such other miscellaneous assets for purposes hereof.

(5) Per Plan, Plan Sponsors have agreed to fund 360 Degree Solar Holdings, Inc. with a $810,000 capital contribution for the benefit of general unsecured creditors and lease rejection claimants.

(6) All post-effective date expenses are assumed to be incurred at Solyndra Residual Trust.

(7) Includes stipulated claim for Von Ardenne Anlagentechnik GmbH.

(8) Lease rejection claimants have agreed to a stipulated recovery amount equal to a minimum 3% of total general unsecured creditors' recoveries.

Imperial Capital, LLC

## Chapter 7 Liquidation Analysis for 360 Degree Solar Holdings, Inc. [1]

*($ in thousands)*

| Assets | Book Value [2] | Estimated Recovery Low | Estimated Recovery High | Estimated Recovery Value Low | Estimated Recovery Value High |
|---|---|---|---|---|---|
| Cash | $99.1 | 100.0% | 100.0% | $99.1 | $99.1 |
| Claims Against Third Parties [3] | 0.0 | 100.0% | 100.0% | 0.0 | 0.0 |
| Residual Value from Solyndra LLC | 0.0 | 0.0% | 0.0% | 0.0 | 0.0 |
| Other / Miscellaneous [4] | N/A | N/A | N/A | - | - |
| Total | $99.1 | | | $99.1 | $99.1 |
| **Net Estimated Proceeds Available for Distribution Before Administrative Expenses** | | | | **$99.1** | **$99.1** |
| Post-Conversion Date Expenses: [5] | | | | 0.0 | 0.0 |
| **Net Estimated Proceeds Available for Distribution Before Liquidation Costs** | | | | **$99.1** | **$99.1** |
| Trustee Fees and Expenses: | | | | (99.1) | (99.1) |
| **Net Estimated Proceeds Available for Distribution** | | | | **$0.0** | **$0.0** |

## Chapter 7 Liquidation Analysis for 360 Degree Solar Holdings, Inc. [1]

*($ in thousands)*

| | | Estimated Recovery Value Low | | Estimated Recovery Value High | |
|---|---|---|---|---|---|
| **Net Estimated Proceeds Available for Distribution** | | **$0.0** | | **$0.0** | |
| | | Recovery to Creditors Low | | Recovery to Creditors High | |
| | Claim Amount | $ | % | $ | % |
| **Administrative Expenses** | | | | | |
| Employee WARN Claims [6] | 10,000.0 | - | 0.0% | - | 0.0% |
| Priority Tax Claim | 0.1 | - | 0.0% | - | 0.0% |
| Total Administrative Expenses | 10,000.1 | - | 0.0% | - | 0.0% |
| **Unsecured Claims** | | | | | |
| Unsecured Claims [7] | 10,000.0 | - | 0.0% | - | 0.0% |
| Lease Rejection Claims [8] | 20,000.0 | - | 0.0% | - | 0.0% |
| Total Unsecured Claims | 30,000.0 | - | 0.0% | - | 0.0% |

**Notes:**

(1) Per 360 Holdings, Inc. Statement of Financial Affairs filed on 10/31/2011 except where otherwise noted.

(2) Financial information presented per Statement of Financial Affairs filed on 9/6/2011.

(3) No value has been ascribed to Potential Claims Against Third Parties due to highly speculative nature. No value has been ascribed to any tax attributes.

(4) Debtor may have various other miscellaneous assets, including net operating loss carry-forwards and / or rights to tax refunds. No value has been ascribed to such other miscellaneous assets for purposes hereof.

(5) All post-conversion date expenses are assumed to be incurred at Solyndra, LLC.

(6) Estimated and subject to dispute.

(7) Includes stipulated claim for Von Ardenne Anlagentechnik GmbH.

(8) Represents stipulated claim amount.