# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Solyndra LLC, *et al.*,[1] | ) Case No.:  11-12799 (MFW) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Related to Docket No. 1059** |

**MEMORANDUM IN SUPPORT OF CONFIRMATION
OF DEBTORS' AMENDED JOINT CHAPTER 11 PLAN
AND OMNIBUS REPLY TO OBJECTIONS TO THE PLAN**

Dated:  October 15, 2012

PACHULSKI STANG ZIEHL & JONES LLP
Richard M . Pachulski (CA Bar No. 90073)
Debra I. Grassgreen (CA Bar No. 169978)
Bruce Grohsgal (DE Bar No. 3583)
Maxim B. Litvak (CA Bar No. 215852)
James E. O'Neill (DE Bar No. 4042)
919 Market Street, 17th Floor | P.O. Box 8705
Wilmington, Delaware  19899-8705
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

Counsel to Debtors and Debtors in Possession

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Solyndra LLC (9771) and 360 Degree Solar Holdings, Inc. (5583).  The Debtors' address is 47488 Kato Road, Fremont, CA 94538.

Solyndra LLC ("Solyndra") and 360 Degree Solar Holdings, Inc. ("Holdings"), the above-captioned debtors and debtors in possession (collectively, the "Debtors"), submit this memorandum in support of confirmation of the *Debtors' Amended Joint Chapter 11 Plan*, as such plan may be further amended or modified (the "Plan").[1]  Attached hereto as **Exhibit A** is the Debtors' proposed order confirming the Plan (the "Confirmation Order").

## I.

## INTRODUCTION

This memorandum, together with the evidence to be adduced at the Confirmation Hearing, will establish that the Plan meets the requirements for confirmation pursuant to section 1129 of the United States Bankruptcy Code (as amended, the "Bankruptcy Code").  As set forth below, the Plan has been overwhelmingly accepted by four impaired voting classes:  Class 3 – Prepetition Tranche A Claims, Class 6 – Prepetition Tranche E Claims, Class 7 – Holdings General Unsecured Claims, and Class 8 – Solyndra General Unsecured Claims.  The Plan also satisfies each of the substantive requirements of 11 U.S.C. § 1129(a), other than subsection (a)(8), which requires acceptance by each impaired class.[2]  Because the Plan was rejected by three impaired classes, Class 4 – Prepetition Tranche B Claims, Class 5 – Prepetition Tranche D Claims, Class 10 – Interests in Solyndra, the Debtors seek to confirm the Plan under 11 U.S.C. § 1129(b).

---

[1]  Unless otherwise defined herein, capitalized terms shall have the meanings set forth in the Plan.

[2]  Class 1 - Priority Non-Tax Claims, Class 2 - Miscellaneous Secured Claims and Class 9 - Interests in Holdings are unimpaired and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, are deemed to accept the Plan.

## II.

## OBJECTIONS TO CONFIRMATION

The Debtors have received the following four formal objections to confirmation

of the Plan, three of which are asserted by instrumentalities of the United States government:

(1)    the United States of America, on behalf of the Department of Energy (the

"DOE");

(2)    the United States of America, on behalf of the Internal Revenue Service;

(3)    Roberta A. DeAngelis, the United States Trustee for Region 3; and

(4)    Donald R. White, Treasurer-Tax Collector of County of Alameda, State of

California.

Each of these objections is addressed in the *Debtors' Omnibus Reply is Support of*

*Debtors' Amended Joint Chapter 11 Plan* (the "Omnibus Reply"), filed concurrently herewith.

## III.

## THE PLAN MEETS ALL APPLICABLE REQUIREMENTS
## FOR CONFIRMATION UNDER SECTION 1129(B)

The Court may confirm a chapter 11 plan if the requirements of subsections

1129(a)(1)-(a)(7) and (a)(9)-(a)(13) and section 1129(b) of the Bankruptcy Code are satisfied.

The Debtors believe the Plan complies with the requirements of the Bankruptcy Code.[3]

---

[3]    Because Classes 4 and 5 have rejected the Plan and Class 10 is deemed to reject the Plan, the Debtors have not satisfied section 1129(a)(8). Nevertheless, for the reasons set forth in Section IV below, the Plan should be confirmed because the Debtors have satisfied the requirements of section 1129(b) as to such rejecting Classes.

A.    **A Plan Proponent Must Show Compliance with Provisions
      of the Bankruptcy Code by the Preponderance of the Evidence**

As the Plan proponents, the Debtors bear the burden of proof on all elements
necessary for confirmation and must establish each of the elements by a preponderance of the
evidence. *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120 (D. Del. 2006); *In re
Genesis Health Ventures, Inc.*, 266 B.R. 591, 616 n. 23 (Bankr. D. Del. 2001); *In re Union
Meeting Partners*, 165 B.R. 553, 574 n. 17 (Bankr. E.D. Pa. 1994); *In re Richard Buick, Inc.*,
126 B.R. 840, 851 (Bankr. E.D. Pa. 1991). The Debtors will show by a preponderance of the
evidence that the Plan complies with the applicable provisions of the Bankruptcy Code and
should be confirmed.

B.    **The Plan Satisfies Section 1129(a)(1)**

Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the
"applicable provisions" of the Bankruptcy Code. In determining whether the Plan satisfies
section 1129(a)(1) of the Bankruptcy Code, the Court must consider section 1123(a) of the
Bankruptcy Code, which sets forth certain items that a plan must contain; section 1122 of the
Bankruptcy Code, which governs classification of claims; and section 510 of the Bankruptcy
Code, which governs subordination of claims. *See Federal Home Loan Mortgage Corp. v. Bugg
(In re Bugg)*, 172 B.R. 781, 783 (E.D. Pa. 1994).

1.    **The Plan Properly Designates Classes of
      Claims and Interests (Sections 1123(a)(1) and 1122).**

Section 1123(a)(1) of the Bankruptcy Code requires that a plan classify all claims
(with the exception of certain administrative and priority claims) and all interests, and that such
classification comply with section 1122 of the Bankruptcy Code. Here, Article IV of the Plan

3

designates ten classes of Claims and Interests. *See* Plan, Article IV. Consistent with section

1123(a)(1) of the Bankruptcy Code, the Plan also provides for unclassified Administrative

Expenses and Priority Tax Claims. *See* Plan, Article III.

Additionally, the Plan's classification scheme complies with section 1122 of the

Bankruptcy Code. The Plan properly classifies secured Claims (Classes 2 through 6) separately

from unsecured claims (Classes 1, 7, and 8). The Plan properly classifies unsecured claims by

first subdividing such Claims into priority non-tax claims (Class 1) and non-priority Claims

(Classes 7 and 8). Finally, the Plan properly classifies equity interests (Classes 9 and 10).

A plan proponent has significant flexibility in classifying claims and interests

under section 1122 of the Bankruptcy Code as long as a reasonable legal or factual basis exists

for the classification and all claims or interests within a particular class are substantially similar.

*See John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs.*, 987 F.2d 154 (3d Cir.

1993); *In re Jersey City Medical Center*, 817 F.2d 1055, 1060-61 (3d Cir. 1987) ("Congress

intended to afford bankruptcy judges broad discretion [under section 1122] to decide the

propriety of plans in light of the facts of each case"). The Plan's classification scheme is proper

and satisfies section 1122 of the Bankruptcy Code because, as described above, such scheme

recognizes the differing legal and equitable rights of the holders of Claims and Interests.

### 2. Specification of Unimpaired Classes (Section 1123(a)(2)).

Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any

class of claims or interests that is not impaired under the plan." The Plan meets this requirement

by identifying each unimpaired class:  Class 1 - Priority Non-Tax Claims, and Class 2 –

Miscellaneous Secured Claims, and Class 9 – Interest in Holdings.  *See* Plan, Article V(A).

### 3.    Treatment of Impaired Classes (Section 1123(a)(3)).

Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the

treatment of any classes of claims or interests that is impaired under the plan."  The Plan meets

this requirement by setting forth the treatment of each impaired Class.  *See* Plan, Article IV(B).

### 4.    Equal Treatment Within Classes (Section 1123(a)(4)).

Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the

same treatment for each claim or interest of a particular class unless the holder of a particular

claim or interest agrees to a less favorable treatment of such particular claim or interest."  The

Plan provides that Holders of Allowed Claims will receive the same percentage recoveries from

the Debtors as other Allowed Claims within their respective classes.  *See* Plan, Article IV.

Therefore, the Plan meets this requirement.

### 5.    Means for Implementation (Section 1123 (a)(5)).

Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide

"adequate means" for its implementation.  The Plan satisfies this requirement by setting forth in

Article VI the primary provisions necessary to implement the Plan, including provisions

specifying the powers, rights, and duties of Reorganized Holdings, the Solyndra Settlement

Trustee and the Solyndra Residual Trust.  *See* Plan, Article VI (A) through (O).  The Plan also

contains: (i) provisions governing distributions, *see* Plan, Article VIII; (ii) procedures for

resolving disputed claims and interests, *see* Plan, Article VIII(D) and Article IX(A) and (B); and

(iii) provisions specifying the treatment of executory contracts, *see* Plan, Article VII. Together, these provisions provide "adequate means" for implementation of the Plan.

> **6.      Charter Provisions (Section 1123(a)(6)).**

Section 1123(a)(6) of the Bankruptcy Code requires the inclusion of provisions in charters of the entities described therein that: (a) prohibits the issuance of nonvoting equity securities and (b) provide for an "appropriate distribution" of voting power among those securities possessing voting power. This provision is contained in Article VI(R) of the Plan.

> **7.      Officers and Directors (Section 1123(a)(7) and 1129(a)(5)).**

Section 1123(a)(7) of the Bankruptcy Code requires that the Plan's provisions with respect to the manner of selection of any director, officer, or trustee, or any successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy . . . ." In addition, section 1129(a)(5) of the Bankruptcy Code requires that the Debtors disclose the identity of certain individuals who will hold positions with the debtors or a successor thereto after confirmation of the Plan.[4] Under section 1129(a)(5)(A)(i) of the Bankruptcy Code, the proponent of a plan must disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer or voting trustee of the debtor, . . . or a successor to the debtor under the plan." Section 1129(a)(5)(A)(ii) of the Bankruptcy Code further requires that the service of such individuals be "consistent with the interests of creditors and equity security holders with public policy." Section 1129(a)(5)(B) of the Bankruptcy Code

---

[4]   Because related requirements are set forth in sections 1129(a)(5) and 1123(a)(7) of the Bankruptcy Code, the Debtors address both of those sections in this section of this Memorandum.

requires that the plan proponent disclose the "identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider."

The Debtors have complied with sections 1129(a)(5) and 1123(a)(7) of the Bankruptcy Code as follows: From and after the Effective Date, the officers and directors of Reorganized Holdings will be representatives appointed by the Plan Sponsors. Such designees are not expected to receive any compensation from Reorganized Holdings aside from reimbursement of expenses.

From and after the Effective Date, the initial Solyndra Settlement Trustee will be Bonnie Glantz Fatell. Ms. Fatell is a partner at Blank Rome LLP, which currently serves as counsel to the Creditors' Committee in these cases. Aside from her role as counsel to the Creditors' Committee, Ms. Fatell has no relationship to the Debtors. Ms. Fatell will receive a monthly fee of $2,000 for her services at Solyndra Settlement Trustee, subject to receiving additional compensation as the Solyndra Settlement Trust Committee may approve. The members of the Solyndra Settlement Trust Committee will initially consist of West Valley Staffing Group, Certified Thermoplastics Co., and perhaps other current members of the Creditors' Committee. Aside from their positions as creditors of these estates, the members of the Solyndra Settlement Trust Committee have no relationship to the Debtors. The members of the Solyndra Settlement Trust Committee will receive no compensation from Reorganized Holdings aside from reimbursement of expenses.

From and after the Effective Date, the initial Solyndra Residual Trustee will be R. Todd Neilson. Mr. Neilson currently serves as chief restructuring officer of the Debtors and his

firm, Berkeley Research Group, LLC ("BRG"), has performed services for the Debtors in these cases.  Aside from his role as CRO and relationship with BRG, Mr. Neilson has no affiliation with the Debtors.  Mr. Neilson will be compensated at his regular hourly rate for his services as Solyndra Residual Trustee, which is currently $785 per hour.  The members of the Solyndra Residual Trust Committee will initially consist of two representatives appointed by the Plan Sponsors and one representative appointed by the U.S. Department of Energy.  Aside from their positions as representatives designated by creditors of these estates, the members of the Solyndra Residual Trust Committee are expected to have no relationship to the Debtors.  The members of the Solyndra Residual Trust Committee will receive no compensation from the Solyndra Residual Trust aside from reimbursement of expenses.

The foregoing appointments are consistent with the interests of creditors and with public policy and satisfy sections 1123(a)(7) and 1129(a)(5) of the Bankruptcy Code.

**C.      The Proponents of the Plan have Satisfied Section 1129(a)(2)**

Section 1129(a)(2) of the Bankruptcy Code requires that a plan proponent comply with the applicable provisions of the Bankruptcy Code.  The principal purpose of section 1129(a)(2) is to ensure that a plan proponent has complied with section 1125 of the Bankruptcy Code in soliciting acceptance of the Plan.  *See In re Resorts Int'l, Inc.*, 145 B.R. 412, 468-69 (Bankr. D.N.J. 1990); *see also* H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6368.

On September 12, 2012, the Debtors distributed Solicitation Packages to all holders of Class 3 – Prepetition Tranche A Claims, Class 4 – Prepetition Tranche B Claims,

Class 5 – Prepetition Tranche D Claims, Class 6 – Prepetition Tranche E Claims, Class 7 –

Holdings General Unsecured Claims, and Class 8 – Solyndra General Unsecured Claims.  The

Disclosure Statement provides extensive information regarding, among other things:  (i) the

Plan; (ii) events preceding the commencement of these chapter 11 cases; (iii) claims asserted

against the Debtors' estates; (iv) risk factors affecting the Plan; (v) a liquidation analysis setting

forth the estimated return that creditors would receive in Chapter 7; (vi) financial information

and valuations that would be relevant to creditors' determinations of whether to accept or reject

the Plan; and (vii) federal tax law consequences of the Plan.

**D.**     **The Plan was Proposed in Good Faith (Section 1129(a)(3))**

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in

good faith and not by any means forbidden by law."  Although not defined in the Bankruptcy

Code, "good faith" has been described by the courts to include:  (i) the debtor's "'legitimate hope

of success,'" *In re Century Glove, Inc.*, Civ. A. 90-400-SLR, 1993 WL 239489, at *4 (D. Del.

Feb. 10, 1993) (quoting *In re Sun Country Development, Inc.*, 764 F.2d 406, 408 (5th Cir.

1985)); *see also In re Shoen*, 193 B.R. 302, 318 (Bankr. D. Ariz. 1996) (citations omitted); (ii) a

showing that the plan was proposed with "honesty and good intentions," *see Kane v. Johns-*

*Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) (citations omitted); (iii) the existence of "'a

reasonable likelihood that the plan will achieve a result consistent with the objectives and

purposes of the Bankruptcy Code,'" *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir.

1984) (citations omitted); *see Traders State Bank v. Mann Farms, Inc. (In re Mann Farms, Inc.)*,

917 F.2d 1210, 1214 (9th Cir. 1990) (citations omitted); *Ryan v. Loui (In re Corey)*, 892 F.2d

829, 835 (9th Cir. 1989); and (iv) whether the debtor's bankruptcy filing was designed to abuse

the judicial process and the purpose of the reorganization provisions of the Bankruptcy Code.

*See Natural Land Corp. v. Baker Farms, Inc.*, 825 F.2d 296, 298 (11th Cir. 1987); *In re VIP*

*Motor Lodge, Inc.*, 133 B.R. 41, 44 (Bankr. D. Del. 1991) (finding of good faith where debtor

did not seek to use the bankruptcy process for dilatory purposes).

The Plan effectuates a reorganization of Holdings and a liquidation of Solyndra

that maximizes recovery to Creditors and provides an efficient mechanism for monetizing assets

of the Debtors' Estates. Among other things, the Plan incorporates multiple settlements among

the Debtors, certain Prepetition Lenders, the WARN Plaintiffs, certain Creditors, certain Holders

of Interests, and the Creditors' Committee. As a result of these settlements, there will be

distributions to the Holders of General Unsecured Claims and Priority Claims.

Under the Plan, Holdings will be reorganized and the Plan Sponsors will provide

the Holdings Settlement Fund that will maximize value for the benefit of Holders of Holdings

General Unsecured Claims, result in the reduction of Claims against Solyndra, and preserve

certain tax attributes of the Holdings Estate. Holders of Interests in Holdings will retain their

Interests, which will be unimpaired by the Plan.

Under the Plan, assets of Solyndra (except Trust Avoidance Claims which will

vest in the Solyndra Settlement Trust) will be vested in the Solyndra Residual Trust, subject to

existing Liens, and liquidated for the benefit of Creditors under the supervision of the Solyndra

Residual Trustee. The Plan Sponsors will provide the Exit Facility. The Plan Sponsors will also

provide the Solyndra Settlement Fund Loan, the proceeds of which shall be contributed to the

Solyndra Settlement Trust for the benefit of Holders of Solyndra General Unsecured Claims who agree to forego any claims against Holdings.[5]  In exchange for funding the Solyndra Settlement Trust, the Creditors' Committee shall release any and all Claims and Rights of Action against the Prepetition Lenders, including, but not limited to, those Claims and Rights of Action preserved under the Final DIP Order.

The Plan provides that all Holders of Allowed Administrative Expenses and Allowed Priority Claims against the Debtors will be paid in full.  Holders of Secured Claims against the Debtors generally will retain their Liens or receive the benefit of their collateral under the Plan.[6]  Taken together, the Plan proposes to fairly and efficiently restructure the Debtors' liabilities and distribute the Debtors' assets in a manner that will allow these Chapter 11 Cases to be promptly concluded.

Accordingly, the Plan satisfies section 1129(a)(3) of the Bankruptcy Code because it was proposed in good faith and not by any means forbidden by law.  Specifically, as addressed in the Omnibus Reply, the Plan complies with section 1129(d) of the Bankruptcy Code because it was not filed with the principal purpose of avoiding taxes.

**E.     Payments for Services and Expenses (Section 1129(a)(4))**

The Debtors will not make any payments "for services or for costs and expenses in or in connection with the case . . . , or in connection with the plan and incident to the case," unless such payments either have been approved by the Court as reasonable or are subject to approval of the Court as reasonable, thus satisfying section 1129(a)(4) of the Bankruptcy Code.

---

[5]   The Prepetition Tranche A Lenders will reduce their Prepetition Tranche A Claims by a corresponding amount.

[6]   All Interests in Solyndra will be cancelled.

11

The Plan's procedures set forth in Articles III and XIV(B)(2 and 3) of the Plan providing for judicial review and approval of fees, costs and expenses to be paid by the Debtors satisfy the requirements of section 1129(a)(4) of the Bankruptcy Code. *See In re Resorts Int'l, Inc.*, 145 B.R. at 475 (section 1129(a)(4) of the Bankruptcy Code is satisfied if fees, costs and expenses are subject to final court approval).

**F.      Debtors and Trust Representatives (Section 1129(a)(5))**

The Debtors have addressed the manner in which they have complied with section 1129(a)(5) of the Bankruptcy Code above.

**G.      Rate Changes (Section 1129(a)(6))**

Section 1129(a)(6) of the Bankruptcy Code relating to regulated rate changes is inapplicable to the Debtors.

**H.      The Plan Satisfies the "Best Interests" Test (Section 1129(a)(7))**

The "best interests" test of section 1129(a)(7) of the Bankruptcy Code requires that holders of impaired claims or interests who do not vote to accept the Plan "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of [title 11] on such date." 11 U.S.C. § 1129(a)(7)(A)(ii). If the Court finds that each non-consenting member of an impaired claim would receive at least as much under the Plan as it would receive in a Chapter 7 liquidation, the Plan satisfies the best interests test. *See In re Century Glove, Inc., supra* at *7.

12

As set forth in Article XVIII(B) of the Disclosure Statement, members of all impaired classes will receive at least as much under the Plan as they would in a chapter 7 liquidation. Accordingly, the Plan satisfies the "best interests" test because no impaired, non-consenting class members will receive less under the Plan than they would in a Chapter 7 liquidation.

## I.    Acceptance by All Impaired Classes (Section 1129(a)(8))

Four impaired classes entitled to vote on the Plan -- Class 3 – Prepetition Tranche A Claims, Class 6 – Prepetition Tranche E Claims, Class 7 – Holdings General Unsecured Claims, and Class 8 – Solyndra General Unsecured Claims -- have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. Class 4 – Prepetition Tranche B Claims and Class 5 – Prepetition Tranche D Claims have voted to reject the Plan. Class 10 - Interests in the Solyndra, which is impaired, also is deemed to reject the Plan. *See* 11 U.S.C. § 1126(g). Accordingly, section 1129(a)(8) of the Bankruptcy Code has not been satisfied, and the Debtors, therefore, request confirmation of the Plan under section 1129(b) of the Bankruptcy Code. *See* Part IV below.

## J.    Treatment of Priority Claims (Section 1129(a)(9))

Section 1129(a)(9) of the Bankruptcy Code contains a number of requirements concerning the payment of priority claims. The Plan's payment provisions meet these requirements. *See* Plan, Article III(C) and (D) and IV(B)(1).

13

**K.**    **Acceptance of at Least One Impaired Class (Section 1129(a)(10))**

If a plan has one or more impaired classes of claims, section 1129(a)(10) of the

Bankruptcy Code requires that at least one such class vote to accept the plan, determined without

including any acceptance of the plan by any insider.  Class 3 – Prepetition Tranche A Claims,

Class 6 – Prepetition Tranche E Claims, Class 7 – Holdings General Unsecured Claims, and

Class 8 – Solyndra General Unsecured Claims are four impaired classes that have voted to accept

the Plan, excluding votes cast by any insiders, thus satisfying section 1129(a)(10) of the

Bankruptcy Code.

**L.**    **Feasibility (Section 1129(a)(11))**

Section 1129(a)(11) of the Bankruptcy Code provides that a plan may be

confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or

the need for further financial reorganization, of the debtor or any successor to the debtor under

the plan, unless such liquidation or reorganization is proposed in the plan."  The Plan

contemplates the availability of an Exit Facility that will provide sufficient financing to satisfy

all obligations under the Plan.  Accordingly, subject to the foregoing proviso, the Plan is feasible

and satisfies section 1129(a)(11) of the Bankruptcy Code.

**M.**    **Payment of Certain Fees (Section 1129(a)(12))**

All fees payable under 28 U.S.C. §1930 have been paid or will be paid on or

before the Effective Date pursuant to Article XIV(B)(9) of the Plan.  The Debtors thus comply

with section 1129(a)(12).

**N.**     **Continuation of Retiree Benefits (Section 1129(a)(13))**

Section 1129(a)(13) of the Bankruptcy Code requires the continuation of retiree

benefits for the duration of the period that the debtor has obligated itself to provide such benefits.

Section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Debtors.

**O.**     **Provisions Relating to Individual Debtors (Sections 1129(a)(14)-(16))**

The Debtors are not required by a judicial or administrative order, or by statute, to

pay domestic support obligations within the meaning of section 1129(d)(14) of the Bankruptcy

Code.  The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy

Code is inapplicable to these cases.  Finally, the Debtors are moneyed, businesses or commercial

corporations, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in

these cases.

## IV.

### THE PLAN SHOULD BE CONFIRMED PURSUANT
### TO SECTION 1129(B) OF THE BANKRUPTCY CODE

Because Class 4 – Prepetition Tranche B Claims, Class 5 – Prepetition Tranche D

Claims, and Class 10 – Interests in Solyndra have rejected the Plan, the requirements of

subsection 1129(a)(8) of the Bankruptcy Code are not satisfied, and the Debtors thus request

confirmation of the Plan under section 1129(b) of the Bankruptcy Code.  Section 1129(b) of the

Bankruptcy Code, the so-called "cramdown" provision, provides that if all of the applicable

confirmation requirements of section 1129(a) of the Bankruptcy Code other than subsection (8)

(requiring all impaired classes to accept the plan) are met, the court, on request of the plan

proponent, shall confirm the Plan if it does not "discriminate unfairly" and is "fair and equitable"

with respect to each class of claims or interests that is impaired under, and that has not accepted, the Plan.  11 U.S.C. § 1129(b)(1).

**A.     The Plan Does Not Discriminate Unfairly**
**with Respect to the Rejecting Classes**

The "unfair discrimination" standard of section 1129(b) of the Bankruptcy Code does not prohibit all types of discrimination among holders of Claims and Interests; it merely prohibits unfair discrimination.  *In re The Leslie Fay Cos., Inc.*, 207 B.R. 764, 791 n. 37 (Bankr. S.D.N.Y. 1997).  It requires that a dissenting class receive "treatment which allocates value to the [dissenting] class in a manner consistent with the treatment afforded to other classes with similar legal claims against the debtor," *In re Mcorp Fin., Inc.*, 137 B.R. 219, 234 (Bankr. S.D. Tex. 1192), *dismissed on other grounds*, 139 B.R. 820 (S.D. Tex. 1992), so that "a dissenting class will receive relative value equal to the value given to all other similarly situated classes." *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1987), *aff'd sub nom., Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988); *see also CoreStates Bank, N.A. v. United Chemical Techs.*, 202 B.R. 33, 47 (E.D. Pa. 1996).

The Bankruptcy Code does not define "unfair discrimination," leaving it to the courts to develop their own definitions and criteria.  *In re Environdyne Indus.*, No. 93 B 310, 1993 WL 566565, at *36 (Bankr. N.D. Ill. 1993).  According to the *Leslie Fay* court, "[t]he section 1129(b)(1) test boils down to whether the proposed discrimination between classes has a reasonable basis and is necessary for the reorganization." *In re The Leslie Fay Cos., Inc.,* 207 B.R. at 791 n. 37.

Classes 4 and 5 under the Plan asserted by the DOE retain their existing liens and receive the full benefit of their collateral under the Plan. As to any deficiency claims, the Plan provides that the DOE will be entitled to a pro rata share of the Solyndra Residual Trust Interests and any Trust Avoidance Claims. The DOE will not share in the Solyndra Settlement Fund, which consists of proceeds from the settlement of claims and challenge rights against the Prepetition Lenders, including the DOE. Class 10 under the Plan consists of Interests in Solyndra that are out of the money given that the Debtors are clearly insolvent.

**B.    The Plan is "Fair and Equitable" with Respect to the Rejecting Classes**

The Plan is "fair and equitable" as to Classes 4, 5, and 10 pursuant to section 1129(b) of the Bankruptcy Code. The requirements of the "fair and equitable" test with respect to a class of secured claims or unsecured claims and a class of equity interests are set forth in sections 1129(b)(2)(A) through (C) of the Bankruptcy Code. Each section specifies alternative requirements, only one of which must be satisfied in order for a plan to be fair and equitable with respect to a dissenting class of unsecured creditors or equity interests. *See* 11 U.S.C. § 1129(b)(2); *see also In re P.J. Keating Co.*, 168 B.R. 464, 468 (Bankr. D. Mass. 1994) ("test under section 1129(b)(2)(C) is an alternative one").

The Plan is fair and equitable as to secured claims in Classes 4 and 5 because the DOE is retaining liens on its existing collateral, subject in all respects to the priorities set forth in the prepetition agreements of the Prepetition Lenders.

Section 1129(b)(2)(A) of the Bankruptcy Code provides as follows:

17

With respect to a class of secured claims, the plan provides—

(i) (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363 (k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2).

Here, the Plan satisfies each of these requirements in that (a) the DOE retains its liens on existing collateral, (b) such collateral will be liquidated and any proceeds thereof shall be distributed to the DOE to the extent of the value thereof after satisfying the senior Tranche A Claims, and (c) the DOE receives the indubitable equitable of its secured claims by virtue of its continuing liens on Solyndra's assets and the proceeds thereof.

The Plan is also fair and equitable as to the deficiency claims of Classes 4 and 5 because, as required by section 1129(b) with respect to a class of unsecured claims, the Plan provides that the holder of any claim or interest that is junior to the claims of such class will not receive or retain any property under the Plan on account of any such junior claim.

Section 1129(b)(2)(B) of the Bankruptcy Code provides as follows:

18

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

Pursuant to the Plan, the only class junior to general unsecured creditors of Solyndra, Class 10 - Interests in Solyndra, receives nothing under the Plan. Hence, the Plan satisfies section 1129(b)(2)(B)(ii) of the Bankruptcy Code.

Similarly, with respect to Class 10, the Plan satisfies the second paragraph of section 1129(b)(2)(C) of the Bankruptcy Code. That section permits the "cramdown" of non-assenting classes of equity interests as long as:

the holders of any interests that is junior to the interests of such [dissenting] class [does] not receive or retain under the plan on account of such junior interest any property.

11 U.S.C. §1129(b)(2)(C) (ii). The Plan satisfies this requirement because no Class junior to Class 10 will receive or retain any property under the Plan.

Thus, the Debtors satisfy the "cramdown" requirements of section 1129(b) of the Bankruptcy Code, and the Plan may be confirmed notwithstanding the Debtors' inability to comply with section 1129(a)(8) of the Bankruptcy Code.

## V.

## THE EXCULPATION AND RELEASE PROVISIONS IN THE PLAN ARE CONSISTENT WITH APPLICABLE PRECEDENT AND SHOULD BE APPROVED

The Plan contains certain provisions exculpating estate representatives instrumental to the Plan. These provisions are consistent with this Court's decision in *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011) and should be approved.

In *PWS Holding Corp.*, 228 F.3d 224, 235 (3d Cir. 2000), the Third Circuit approved a plan provision that released claims "brought in connection with work on the bankruptcy reorganization plan . . . ." The plan provision at issue in *PWS* did not "eliminate liability but rather limit[ed] it to willful misconduct or gross negligence." *Id.* The Third Circuit characterized such provision as a "commonplace provision in Chapter 11 plans." *Id.*

Here, the Plan contain similar provisions that are limited to estate fiduciaries and establish a willful misconduct/gross negligence liability standard. *See* Plan, Article X(B). These provisions are consistent with the holdings in *PWS* and *Washington Mutual* and are customarily approved in this jurisdiction.

The Plan also contains estate releases of parties affiliated with the Prepetition Lenders and the Debtors. *See* Plan, Article X(C). The releases are proposed based on the Debtors' sound business judgment. The released parties were involved in the administration of these cases or the development of the Plan, or were an integral part of the WARN Settlement. Accordingly, the estate releases under the Plan present a valid exercise of the Debtors' business judgment and should be approved.

# VI.

## <u>CONCLUSION</u>

For the foregoing reasons and those to be presented at the Confirmation Hearing,

the Court should:  (a) overrule any objections to confirmation not previously withdrawn or

settled; (b) confirm the Plan; and (c) grant the Debtors such other and further relief as is just and

proper.

Dated:  October 15, 2012             PACHULSKI STANG ZIEHL & JONES LLP

                                     _James Ed huie_____
                                     Richard M . Pachulski (CA Bar No. 90073)
                                     Debra I. Grassgreen (CA Bar No. 169978)
                                     Bruce Grohsgal (DE Bar No. 3583)
                                     Maxim B. Litvak (CA Bar No. 215852)
                                     James E. O'Neill (DE Bar No. 4042)
                                     919 Market Street, 17th Floor | P.O. Box 8705
                                     Wilmington, Delaware  19899-8705
                                     Telephone:  (302) 652-4100
                                     Facsimile:  (302) 652-4400

                                     Counsel to Debtors and Debtors in Possession