## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| SOLYNDRA LLC, *et al.*,[1] | ) | Case No. 11-12799 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Ref. Docket Nos. 1436 |

### RESPONSE OF ARGONAUT VENTURES I, L.L.C. TO MOTION OF KINETIC SYSTEMS, INC. FOR A DETERMINATION THAT THE PLAN INJUNCTIONS DO NOT PROHIBIT INSTITUTION OF AN ACTION TO DETERMINE THE PRIORITY OF MECHANICS LIENS AND THE CREDITORS' RIGHTS TO THE SEGREGATED ACCOUNT PROVIDED FOR IN THE SALE ORDER (OR, IN THE ALTERNATIVE TO MODIFY SUCH INJUNCTIONS)

Argonaut Ventures I, L.L.C. ("**Argonaut**"), as Tranche A Representative under that certain Term Loan Agreement (Tranche A), dated as of February 23, 2011 (the "**Prepetition Tranche A Term Loan Agreement**"),[2] and as Tranche E Agent under that certain Tranche E Note Purchase Agreement, dated as of February 23, 2011 (the "**Prepetition Tranche E Agreement**"),[3] by and through their undersigned counsel, hereby respond (this "**Response**") to the *Motion of Kinetic Systems, Inc.* ("**Kinetics**") *for a Determination that the Plan Injunctions do not Prohibit Institution of an Action to Determine the Priority of Mechanics Liens and the Creditors' Rights to the Segregated Account Provided for in the Sale Order (or, in the*

---

[1]    The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Solyndra LLC (9771) and 360 Degree Solar Holdings, Inc. (5583).  The Debtors' address is 47488 Kato Road, Fremont, CA 94538.

[2]    The Prepetition Tranche A Term Loan Agreement was by and among Solyndra LLC, the lender parties thereto (the "**Prepetition Tranche A Lenders**"), and Argonaut, as Tranche A Representative.

[3]    The Prepetition Tranche E Agreement was by and among Solyndra LLC, as borrower, Argonaut, as agent, and each holder of a Tranche E note (together with the Tranche E Agent, the "**Prepetition Tranche E Lenders**" and, together with the Prepetition Tranche A Lenders, the "**Prepetition Secured Parties**").

*Alternative to Modify Such Injunctions)* [Docket No. 1436] (the "**Motion**"),[4] and, in support

thereof, respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.      The injunctions in the Plan and Confirmation Order bar the institution of an action

by Kinetics in California to determine a lien priority dispute that impacts creditor recoveries in

these chapter 11 cases.  Furthermore, the Court undoubtedly has jurisdiction over this dispute, as

it impacts both estate property and creditor recoveries under the Plan.  And finally, the Court

should not abstain from exercising its jurisdiction.  Kinetics has already *consented* to this Court's

adjudication of this dispute.  This agreement is reflected in the Sale Order, which was entered by

this Court well after the Confirmation Order was entered.  Given Kinetics' consent to the Court's

jurisdiction, a request for abstention now is inappropriate.

2.      Leaving aside the procedural deficiencies of the Motion,[5] at its essence, Kinetics'

arguments are premised on the incorrect notion that the lien dispute will not affect the Plan

Trusts and creditor recoveries.  The "Fab 2" facility was estate property and vested in the

Solyndra Residual Trust upon the Effective Date.  The Sale and the Sale Proceeds are fully

governed by the Plan and are subject to the Plan and Confirmation Order injunctions.  Moreover,

as discussed below, based on the structure of the Plan and the varied treatment of deficiency

claims held by the Prepetition Tranche A Lenders versus any such claims held by Kinetics, both

of the Plan Trusts are plainly parties to, and will be affected by, this dispute.

---

[4]   Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the
      Motion.  Capitalized terms used but not yet defined herein shall have the meanings ascribed to them below.

[5]   Kinetics is asking this Court for a declaratory judgment relating to the extent of the injunctions granted under
      the Plan and Confirmation Order, which means that Kinetics should have brought an adversary proceeding
      pursuant to Rule 7001(9) of the Federal Rules of Bankruptcy Procedure.

3.      Similarly, the Bankruptcy Code, related statutes, and applicable case law all support the jurisdiction of this Court over the disputed Sale Proceeds.  The Plan and Confirmation Order expressly state that the Court retains jurisdiction to adjudicate disputes over lien priority.  Further, *after* entry of the Confirmation Order – and, therefore, with full knowledge of the Plan and Confirmation Order injunctions and the Court's retention of jurisdiction over lien priority disputes – Kinetics, the Solyndra Residual Trustee, and the Prepetition Tranche A Lenders[6] expressly agreed that this Court would have jurisdiction over this matter pursuant to the Sale Order.  Accordingly, Kinetics should not be permitted to take another bite at the apple with respect to jurisdiction over this dispute.

4.      In sum, jurisdiction unequivocally exists with this Court, abstention is inappropriate in this case, and the Motion should therefore be denied.

### FACTUAL BACKGROUND

5.      In 2009, the Department of Energy ("**DOE**") provided senior secured financing to Solyndra in the aggregate amount of $535,000,000 in connection with the construction of the facility commonly referred to as "Fab 2."  Upon information and belief, on September 1, 2009, the DOE properly recorded and perfected its liens in connection therewith (the "**DOE Liens**"), providing constructive notice to the world as of that time.  *See, e.g.*, *In re Davidson Lumber Sales, Inc.*, 66 F.3d 1560 (10th Cir. 1995); *Wegner v. Grunewaldt*, 821 F.2d 1317 (8th Cir. 1987); *In re Laurel Hill Paper Co.*, 393 B.R. 372 (Bankr. M.D.N.C. 2008).

---

[6] As a technical matter, the issue of lien priority affects each of the Secured Lenders.  However, due to the fact that the Sale Proceeds are insufficient to satisfy in full the claims of the Prepetition Tranche A Lenders, which have priority over the claims of the other Secured Lenders, as a practical matter the Prepetition Tranche A Lenders are the only Secured Lenders that would receive a distribution from the reserve.  Accordingly, this Response focuses on the Prepetition Tranche A Lenders and their rights with respect to the reserved Sale Proceeds.

6.      In February 2011, the Prepetition Tranche A Lenders provided a first lien secured credit facility comprised of up to $75,000,000 in aggregate principal amount of term loan commitments pursuant to the Prepetition Tranche A Term Loan Agreement.  Through an intercreditor agreement between the DOE and the Prepetition Secured Parties, executed in connection with a restructuring of the Debtors' debt and infusion of capital in February 2011, the Prepetition Tranche A Lenders have the benefit of the priority of the DOE Liens.

7.      As of September 6, 2011 (the "**Petition Date**"), the Debtors were indebted and liable to Argonaut and the Prepetition Tranche A Lenders in the principal amount of not less than $69,302,901, plus interest accrued and accruing, costs and any fees and expenses due and owing thereunder.

8.      On August 22, 2012, the Debtors filed a bidding procedures motion [Docket No. 1008] (the "**Bidding Procedures Motion**") and sale motion [Docket No. 1009] (the "**Sale Motion**"), pursuant to which the Debtors requested authorization to sell Fab 2 in accordance with certain proposed procedures (the "**Sale**").

9.      On September 10, 2012, Kinetics filed a limited objection (the "**Limited Objection**") to the Bidding Procedures Motion and the Sale Motion, asserting, among other things, that its alleged mechanics' liens had priority over the liens of the Debtors' prepetition secured lenders.  Notably, Kinetics did not oppose the Sale but rather requested that funds be segregated from the proceeds of the sale (the "**Sale Proceeds**") "*until the Court resolves the lien priority disputes*."  Limited Objection, ¶ 13 (emphasis added).  Joinders with respect to the Limited Objection were filed by (A) Bayside Interiors, Inc. ("**Bayside**" and such joinder the "**Bayside Joinder**") [Docket No. 1081] and (B) RK Electric, Inc. ("**RKE**" and, together with

Bayside and Kinetics, the "**Mechanics**", and such joinder the "**RKE Joinder**" [Docket No. 1082] and, together with the Bayside Joinder, the "**Joinders**").

10.    On October 22, 2012, the Court entered its *Order Confirming Debtors' Amended Joint Chapter 11 Plan* [Docket No. 1173] (the "**Confirmation Order**"), thereby confirming the Debtor's Amended Joint Chapter 11 Plan [Docket No. 1059] (the "**Plan**").  The effective date of the Plan was November 7, 2012 (the "**Effective Date**"), at which time a trust was created (the "**Solyndra Residual Trust**") to administer the assets and liabilities of Solyndra LLC ("**Solyndra**") to the extent set forth in the Plan and that certain Solyndra Residual Trust Agreement, dated November 7, 2012, and all of Solyndra LLC's claims and causes of action (other than Trust Avoidance Claims, as defined in the Plan) were transferred to the Solyndra Residual Trust.  In addition, Fab 2 was transferred to the Solyndra Residual Trust, and Todd Neilson, in his capacity as the Solyndra Residual Trustee (the "**Solyndra Residual Trustee**"), was authorized to convey Fab 2 to the purchaser upon the closing of the Sale.  The Plan also established a liquidating trust solely for the benefit of holders of general unsecured claims against Solyndra (the "**Solyndra Settlement Trust**" and, together with the Solyndra Residual Trust, the "**Plan Trusts**").  The Prepetition Tranche A Lenders have agreed to waive any deficiency claims against the Solyndra Settlement Trust.  Plan, Art. IV.B.3(b).

11.    Pursuant to the Confirmation Order, the Court retained jurisdiction over various matters identified in Article XIV of the Plan, including, among other things, to "*establish the priority* or secured or unsecured status of, allow, disallow, determine, liquidate, classify, or estimate any Claim, Administrative Expense or Interest . . . *resolve any objections to the allowance or priority* of Claims, Administrative Expenses or Interests . . . ."  Plan, Art. XIV.A.(i) (emphasis added); Confirmation Order, ¶ 15.

12.     To resolve the Limited Objection and the Joinders to enable the Sale to proceed, and to allow for initial distributions of the Sale Proceeds, pursuant to the order approving the Sale [Docket No. 1243] (the "**Sale Order**"), the Solyndra Residual Trustee, the Mechanics, and the Secured Lenders[7] agreed to segregate $1,561,453.00 of the Sale Proceeds into a segregated account in the name of the Solyndra Residual Trust "pending either (i) a determination *by the Court* of the rights, liens and claims, if any, of each of the Mechanics with respect to the Sale Proceeds or (ii) entry into any agreement or stipulation between the parties pursuant to the terms of the Plan that may be implemented without further order of the Court."  Sale Order, ¶ 6 (emphasis added).[8]

13.     The net distributable Sale Proceeds, after repayment of the Tranche I Exit Facility, the Solyndra Settlement Loan Fund (and related interest for each) (each as defined in the Plan) and professional fees pursuant to the Plan, is approximately $67.7 million. Accordingly, there are insufficient proceeds to satisfy the claims held by the Prepetition Tranche A Lenders in full.  Therefore, regardless of the outcome of the dispute with Kinetics, the Prepetition Tranche A Lenders will have a deficiency claim against the Solyndra Residual Trust. However, resolution of this dispute will determine the size of this deficiency claim.  If Kinetics prevails, the Prepetition Tranche A Lenders will have a larger deficiency claim.

---

[7]  The term "Secured Lenders" is defined in the Bid Procedures annexed as Exhibit A to the Sale Motion (and incorporated into the Sale Order) and includes "Argonaut Ventures I, L.L.C., as the Prepetition Tranche A Representative and the Prepetition Tranche E Agent, and the U.S. Department of Energy, acting by and through the Secretary of Energy, as the Prepetition Tranche B/D Agent."  Sale Motion, Ex.A.

[8]  The amount of the reserve was based on the aggregate amount of the claims asserted by the Mechanics at the time the Sale Order was entered.  RKE and Bayside have since resolved their disputes with the Solyndra Residual Trustee and the Prepetition Secured Parties, and the reserve has been reduced to the extent of the amount paid to RKE and Bayside in connection therewith.  In addition, upon further reconciliation of invoices, Kinetics has reduced the amount of its asserted claim from approximately $1,375,000 to $1,187,950.  *See* Motion, ¶ 4.

14.     Meanwhile, Kinetics *may* have a claim against both the Solyndra Residual Trust *and* the Solyndra Settlement Trust, depending on the outcome of the dispute.  If Kinetics is unsuccessful, by the terms of the Plan, it will have an unsecured deficiency claim against both Plan Trusts, which would dilute recovery to other general unsecured creditors.  Plan, Art. IV.B.8.

## ARGUMENT

### A.     This Action is Enjoined Under the Plan and Confirmation Order and the Injunction Should Not Be Modified

15.     Kinetics argues that the dispute over the priority of the liens asserted against the remaining Sale Proceeds does not involve property of the estate and, therefore, the Court has no jurisdiction over this matter.  As such, Kinetics further argues that the injunctions in the Plan and Confirmation Order are not applicable to the lien priority dispute.  This argument is misguided, because resolution of this dispute impacts distributions to creditors under the Plan and, therefore, the injunctions contained in the Plan are applicable.

16.     Kinetics' assertion that the dispute is purely one among third parties – and not Solyndra or its successors in interest, namely the Solyndra Residual Trust and the Solyndra Settlement Trust – and therefore not enjoined by the Plan and Confirmation Order is incorrect.[9] To the contrary, property of the Plan Trusts clearly is at stake, and the outcome of the dispute affects Plan implementation, and thus the rights to, and liabilities of, the Solyndra Residual Trust and the Solyndra Settlement Trust with respect to Plan distributions.

17.     Upon the Effective Date, Fab 2 vested in the Solyndra Residual Trust.  The Plan clearly contemplated the liquidation of Fab 2 and provided for the payment of creditor claims from the Sale Proceeds.  Accordingly, not only did Fab 2 continue to be subject to the claims of

---

[9] It is worth noting here that Kinetics' assertion that the Plan Trusts are not parties in interest to this dispute is controverted by its argument that this dispute is governed by the forum-selection clause in a purchase order from Solyndra to Kinetics.  *See* Motion, ¶ 64.  If Kinetics were correct in arguing that the Plan Trusts have no interest in this dispute, this provision is not binding on any party in interest and is of no moment.

creditors in the post-confirmation period, but also the Solyndra Residual Trust's control over that asset and the Sale Proceeds was circumscribed by the terms of the confirmed Plan. The segregated Sale Proceeds are not held by the Solyndra Residual Trust as an escrow agent to the Prepetition Tranche A Lenders and/or Kinetics; rather, they are held by the Solyndra Residual Trust because it is liable to the Prepetition Tranche A Lenders and Kinetics for their claims.

18.     As discussed, the Sale Proceeds are insufficient to fully satisfy the Prepetition Tranche A Lenders' claims and potentially the mechanics' lien claims alleged by Kinetics. Consequently, the outcome of this dispute will determine the size of the unsecured deficiency claim held by the Prepetition Tranche A Lenders and could create an unsecured deficiency claim for the benefit of Kinetics. In addition to determining the size of deficiency claims, the result of the dispute could impact the Plan Trusts and distributions to creditors. If Kinetics prevails on the lien priority issue, the Prepetition Tranche A Lenders will have a larger deficiency claim against the Solyndra Residual Trust. If Kinetics is ultimately unsuccessful, it will have an unsecured deficiency claim against both the Solyndra Residual Trust *and* the Solyndra Settlement Trust, which would dilute recovery to other unsecured creditors. Plan, Art. IV.B.8.

19.     Given that this dispute will impact the assets of the Plan Trusts and Plan distributions, the injunctions are applicable to the dispute and, accordingly, appropriately bar the commencement of an action by Kinetics absent modification of such injunctions.

**B.      This Court Has Jurisdiction Over the Priority Dispute**

20.     Even if this Court were to find that the injunctions do not apply to the dispute or that they should be modified, there should be no question as to the Court's jurisdiction over the dispute. This dispute is a "core proceeding" and undeniably is "related to" the Debtors' chapter 11 cases. 28 U.S.C. § 157(b) and (c). Moreover, this Court expressly retained jurisdiction over

priority disputes pursuant to the Plan and the Confirmation Order, and Kinetics agreed that the

Court has jurisdiction over this particular dispute, which agreement is reflected in the Sale Order.

### i.    The Court Has Jurisdiction Because This Dispute is a Core Proceeding

21.    Bankruptcy courts have jurisdiction to hear and determine all core proceedings

pursuant to 28 U.S.C. § 157.  "Core proceedings" include, but are not limited to, "matters

concerning the administration of the estate," "determinations of the validity, extent, or priority of

liens," "orders approving the sale of property" and "other proceedings affecting the liquidation of

the assets of the estate."  28 U.S.C. § 157(b)(2)(A), (K), (N) and (O).

22.    At issue here is a lien dispute involving estate property, the outcome of which

affects the Solyndra Residual Trustee's administration of the Debtors' estates and Plan

distributions.  Additionally, adjudication of the lien dispute involves enforcing the Sale Order

and the distribution of assets of the Solyndra Residual Trust resulting from a sale contemplated

under the Plan.  Accordingly, this is a core proceeding and within the Court's jurisdiction.

### ii.   This Court has Post-Confirmation "Related to" Jurisdiction Over the Dispute

23.    Even if this Court were to find that this is not a "core proceeding," the Court

nevertheless has jurisdiction as this dispute is undoubtedly "related to" these chapter 11 cases.

"A dispute is related to the bankruptcy case if it impacts the estate 'by increasing or reducing

estate property, by increasing or reducing claims, or by affecting the priority of claims.'"  *Iannini

v. Winnecour*, 487 B.R. 434, 438 (W.D. Pa. 2012) (quoting *In re Ragland*, Nos. 05-18142, 05-

31361, 2006 WL 1997416 (Bankr. E.D. Pa. May 25, 2006)).  Given the interconnectedness with,

and effect upon, Plan implementation and distributions thereunder, as discussed above, and

because the reserve is governed by the Sale Order, this Court must resolve the priority dispute.

24.     As this Court has recognized, in the Third Circuit, post-confirmation jurisdiction

of a bankruptcy court exists:

> [W]here there is a close nexus to the bankruptcy plan or
> proceeding, as when a matter affects the interpretation,
> implementation, consummation, execution, or
> administration of a confirmed plan or incorporated
> litigation trust agreement, retention of post-confirmation
> bankruptcy court jurisdiction is normally appropriate.

*In re LaRoche Indus., Inc.*, 312 B.R. 249, 257 (Bankr. D. Del. 2004), quoting *In re Resorts Int'l,*

*Inc.*, 372 F.3d 154, 168 (3d Cir. 2004).  Indeed, the Third Circuit recently held that the

appropriate standard for determining whether a bankruptcy court retains jurisdiction over a

dispute post-confirmation is "whether the action could *conceivably* affect the implementation of

the confirmed plan." *Nuveen Mun. Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283, 298 (3d

Cir. 2012) (emphasis added); *see also Halper v. Halper*, 164 F.3d 830, 837 (3d Cir. 1999)

(quoting *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), overruled on other grounds by

*Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995)) (same); *U.S. Tr. v. Gryphon at the*

*Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999) (post-confirmation action for fees was

related to the bankruptcy proceeding "because it directly relates to the debtor's liabilities . . . and

could impact the handling and administration of the estate.").

25.     Moreover, in order for "related to" jurisdiction to exist, "the proceeding need not

necessarily be against the debtor or against the debtor's property.  An action is related to

bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action

. . . and which in any way impacts upon the handling and administration of the bankrupt estate."

*In re Resorts Int'l, Inc.*, 372 F.3d 154, 164 (3d Cir. 2004) (quoting *Pacor*, 743 F.3d at 994); *see*

*also In re MPC Computers*, LLC, 465 B.R. 384, 392 (Bankr. D. Del. 2012).

26.     Here, the outcome of the priority dispute is certain to have a direct and significant impact upon the Plan's implementation and administration because it affects the claims against the Plan Trusts' pools of assets and creditor distributions.  *See Nuveen*, 692 F.3d at 298 (bankruptcy court had jurisdiction where dispute would have "a direct, indeed substantial, effect on the pool of assets available for distribution to [the debtor's] creditors").  As discussed, the Sale Proceeds are insufficient to satisfy in full the claims of the Prepetition Tranche A Lenders irrespective of the priorities among the Prepetition Tranche A Lenders' claims and Kinetics' alleged mechanics' lien claims; as a result, the Prepetition Tranche A Lenders, and potentially Kinetics, will have deficiency claims against the Solyndra Residual Trust (and possibly the Solyndra Settlement Trust).  Although the amount of money in the reserve is fixed, the net effect on the Plan Trusts and other creditors will vary significantly based on the dispute's outcome.

27.     If the Court determines that the Prepetition Tranche A Lenders claims have priority over Kinetics' alleged claims, Kinetics will have an unsecured claim that will share on a pro rata basis and thus be dilutive of the recoveries of other general unsecured creditors which have claims against both of the Plan Trusts to the extent of $1,187,950.  However, if the Court resolves the priority dispute in favor of Kinetics, the amount of the Prepetition Tranche A Lenders' deficiency claim will increase, but there will be no corresponding effect on general unsecured creditors because the Prepetition Tranche A Lenders have agreed to waive their deficiency claim against the Solyndra Settlement Trust.  *See* Plan, Art. IV.B.3(b) and VI.A(11).  Accordingly, the pool of assets available to general unsecured creditors under the Plan will be affected by the outcome of the priority dispute.  Adjudication of such dispute before this Court is therefore necessary and appropriate to the proper administration and implementation of the Plan.

28.     Kinetics' assertion that this Court does not have jurisdiction over this dispute ignores the facts and distorts the law.  Indeed, the majority of the cases it cites have no bearing here and, to the extent they may be relevant, actually support jurisdiction before this Court.

29.     For example, *Xonics* makes it clear that that the instant priority dispute is within this Court's jurisdiction.  In that case, under the debtor's plan of reorganization, the debtor *abandoned* the disputed property, and the funds were therefore transferred to a third party pending resolution of the dispute.  *See In re Xonics, Inc.*, 813 F.2d 127, 129 (7th Cir. 1987).  Based on the fact that the debtor had been removed from the equation in its entirety due to its abandonment of the property, the Seventh Circuit held that jurisdiction with the bankruptcy court was no longer appropriate on a "related to" basis.  *Id*. at 131.  However, the Seventh Circuit expressly recognized that "resolving competing claims to property that belonged to the debtor when it filed a petition in bankruptcy is one of the central functions of bankruptcy law.  The *only reason* why this particular dispute might be treated otherwise is the debtor's 'abandonment' of its claim to these receivables."  *Id*. at 131-132 (emphasis added) (internal citation omitted).

30.     Here, unlike *Xonics*, the Debtors' estates did not abandon these assets to a third party or otherwise.  Rather, the remaining Sale Proceeds were transferred to the Solyndra Residual Trust under the Plan as successor in interest to Solyndra and, consistent with the Sale Order, will be distributed by the Solyndra Residual Trustee upon "a determination *by the Court* of the rights, liens and claims, if any, of each of the Mechanics with respect to the Sale Proceeds."  Sale Order, ¶ 6 (emphasis added).  Therefore, *Xonics* is obviously inapposite.

31.     Similarly, Kinetics' reliance on *Stern* is of no avail.  In *Stern*, the bankruptcy court was asked to enter a final judgment over a debtor's common law counterclaim to a proof of claim filed against the estate.   The Supreme Court held that a bankruptcy court may not

constitutionally enter a final judgment on a claim arising under state common law, subject to a

"public rights" exception.  *Stern v. Marshall*, 131 S. Ct. 2594, 2609-2616 (2011).  While the

"public rights" exception is not clearly defined, the Supreme Court stated that these "limited

circumstances" exist where "the action at issue stems from the bankruptcy itself or would

necessarily be resolved in the claims allowance process."  *Id*. at 2618.

32.     The determination of lien priority on proceeds of estate assets is undeniably part

of the "public rights" exception, as it involves the exercise of the Bankruptcy Court's *in rem*

jurisdiction over the estate.  Here, not only does this dispute involve a right integral to the

bankruptcy scheme – i.e. the determination of lien priority – but it also involves a right created

by the Bankruptcy Code and which stems from the bankruptcy itself:  distribution of property of

the estate to creditors.  By contrast, *Stern* involved the assertion of a litigation counterclaim that

was wholly unrelated to the bankruptcy case.  *Id*. at 2620.

33.     Kinetics' recitation of the holdings in *McKinney* and *Denalco* is equally

misleading by failing to acknowledge relevant facts that clearly distinguish those cases from the

instant dispute.  *See* Motion, ¶ 56-58; *see also In re McKinney*, 45 B.R. 790, 791 (Bankr. W.D.

Ky. 1985) (declining jurisdiction because "[n]either the debtor nor the trustee in bankruptcy have

any concern whatsoever in the outcome"); *In re Denalco Corp.*, 57 B.R. 392, 395 (Bankr. N.D.

Ill. 1986) (finding jurisdiction did not exist because the parties' dispute "would have no impact

on the administration of [the debtor's] estate.").

34.     Finally, *W.R. Grace* is inapposite.  In that case, the debtor sought to enjoin an

action involving two non-debtor parties, the outcome of which had the potential to give rise to an

indemnification claim against the debtor.  *In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009).

The bankruptcy court held that it did not have jurisdiction to enjoin the third party dispute

because it was not "related to" the bankruptcy case based on the fact that the outcome of the underlying dispute would not have an impact upon the debtor's estate absent the "intervention of yet another lawsuit." *Id*. at 173. In other words, because the debtor's liability was one lawsuit removed from the underlying dispute, the bankruptcy court did not have "related to" jurisdiction. *Id*. Unlike *W.R. Grace*, the liability of the Plan Trusts will be determined upon resolution of this dispute and will not require the intervention of another lawsuit.

**C.      This Court Should Not Abstain from Exercising Jurisdiction Over the Priority Dispute**

35.     As demonstrated above, it is incontestable that the Court has jurisdiction over this dispute. Contrary to Kinetics' contentions, however, the Court should not abstain from exercising its jurisdiction.

36.     The Solyndra Residual Trustee, Kinetics and the Prepetition Tranche A Lenders expressly agreed that this Court would retain jurisdiction over the priority dispute. As mentioned, the Sale Order, which was entered after confirmation of the Plan, clearly and deliberately states that the agreed amount of the Sale Proceeds would be reserved "pending either (i) a determination *by the Court* of the rights, liens and claims, if any, of each of the Mechanics with respect to the Sale Proceeds or (ii) entry into any agreement or stipulation between the parties pursuant to the terms of the Plan that may be implemented without further order of the Court." Sale Order, ¶ 6 (emphasis added). The parties are sophisticated, with sophisticated counsel, and this language was heavily negotiated and bargained for among them. Given Kinetics' prior consent, it is inappropriate for them to urge the Court to abstain now.

37.     This Court's jurisdiction is equally evidenced by the Plan and Confirmation Order – which was entered prior to the Sale Order – pursuant to which the Court expressly retained jurisdiction to "*establish the priority* or secured or unsecured status of, allow, disallow,

14

determine, liquidate, classify, or estimate any Claim, Administrative Expense or Interest . . . *resolve any objections to the allowance or priority* of Claims, Administrative Expenses or Interests . . . ."  Plan, Art. XIV.A.(i) (emphasis added); *see also* Confirmation Order, ¶ 15 ("*Notwithstanding entry of the Confirmation Order* or the Effective Date having occurred, *the Bankruptcy Court shall have jurisdiction* over maters arising out of, and related to the Chapter 11 Cases and the Plan *as set forth in Article XIV of the Plan*.") (emphasis added).  Accordingly, the Court's retention of jurisdiction over this dispute is expressly contemplated by the Plan, the very purpose of which is to distribute assets such as the Sale Proceeds.

38.    Furthermore, the forum-selection provision in the purchase order to Kinetics is unenforceable in this case.  *See* Motion, ¶ 64.  Courts have consistently recognized that a principal purpose of the Bankruptcy Code is to allow the bankruptcy court to centralize all disputes concerning property of a debtor's estate so that the reorganization can proceed efficiently, protect creditors and reorganizing debtors from piecemeal litigation, and support the power of the bankruptcy court to enforce its own orders.  *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 640 (D. Del. 2011).  Moreover, courts in this jurisdiction have consistently held that "forum selection clauses are unenforceable when the state action falls within a bankruptcy court's core jurisdiction."  *Id*. at 641; *see also In re Exide Technologies*, 544 F.3d 196, 206 (3d Cir. 2008) ("Whether claims are considered core or non-core dictates ... the enforcement of a forum selection clause.... The dispositive issue, therefore, is whether the claims asserted ... are 'core' bankruptcy claims."); *Giuliano v. Genesis Fin. Solutions, Inc. (In re Axiant, LLC)*, Adv. No. 12-50526 (MFW) (Bankr. D. Del. Nov. 15, 2012).  Insofar as this is a core proceeding, the forum-selection clause is patently unenforceable.

39.     In sum, and applying the *LaRoche*[10] abstention "factors" to the facts as set forth

herein, it is obvious that the Court should not abstain from this priority dispute:

- Efficient Administration and Relatedness to Main Case – Jurisdiction before the Court is critical for the efficient administration of these estates and implementation of the Plan. The Court is intimately familiar with these estates and the Plan, and it is pursuant to orders entered by this Court that the reserve was established (and was done so with the intent that this Court would adjudicate any related lien dispute).

- Predominance of State Law Issues and Nature of Applicable State Law – The bankruptcy issues here relating to lien priority and Plan implementation predominate state law issues and, to the extent California mechanics' lien laws must be applied, this Court is more than competent to do so.

- Presence of Related Proceeding – The Stop Notice Litigation – which has been pending for over one year – does not name, let alone reference, the Prepetition Tranche A Lenders or their claims.  Kinetics should not be permitted to make an end-run around the Plan injunction, the automatic stay, and this Court's jurisdiction by bootstrapping this dispute to the Stop Notice Litigation.

- Jurisdictional Basis; Substance/Form of Core Proceeding – Bankruptcy court jurisdiction over this dispute is appropriate as it involves estate property.  Moreover, at a minimum, this is a proceeding "related to" the chapter 11 cases, if not a "core proceeding.".

- Feasibility of Severance – Severance of this matter from these cases is not feasible, is unreasonable, and flies in the face of the efficient administration of these cases.

- Burden on the Docket – While any litigation will impose some degree of burden on a court's docket, it is respectfully submitted that the burden is lessened here due to this Court's familiarity and experience with the history of these cases and the complexities of the Plan and the Sale and the related orders.  The Court has an in-depth understanding of the Prepetition Tranche A Lenders' claims and has significant background regarding Kinetics' claims based on the various filings made by Kinetics throughout these cases.[11]  Trying this matter before a California court would require a significant expenditure of time and money to acquaint such court with the history and institutional knowledge of these cases that is already possessed by this Court.

- Forum Shopping – This is not an attempt by the Prepetition Tranche A Lenders to forum shop; the dispute correctly belongs before this Court under relevant statutes and case law, and pursuant to the Plan, the Confirmation Order, and the parties'

---

[10]   *In re LaRoche Indus., Inc.*, 312 B.R. at 253-4, 255 ("Evaluating these twelve factors is not a mathematical formula.") (citation omitted).

[11]   *See, e.g.*, Docket Nos. 196-200, 359, 511, 589, 646, 665 and 1069.

agreement under the Sale Order.  The same cannot be said with respect to Kinetics as there is no other logical explanation for its attempt to dislodge this action from the Court's jurisdiction.

- <u>Presence of non-Debtor Third Parties</u> – This is not merely a dispute between third parties.  The Solyndra Residual Trust is clearly a party to this dispute, as its assets, along with Plan distributions, will be affected by the outcome of this dispute.

40.     In view of the foregoing, for the reasons set forth herein, the Plan injunctions apply, and this Court has, and should retain, jurisdiction over this lien dispute.  Accordingly, the Motion should be denied.

Dated: Wilmington, Delaware
       June 12, 2013

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert F. Poppiti, Jr.*
Sean M. Beach (No. 4070)
Robert F. Poppiti, Jr. (No. 5052)
Rodney Square, 1000 North King Street
Wilmington, DE 19801
Telephone:    302.571.6600
Facsimile:     302.571.1253

---- and ----

GIBSON, DUNN & CRUTCHER LLP
J. Eric Wise (admitted *pro hac vice*)
Matthew K. Kelsey (admitted *pro hac vice*)
200 Park Ave, 37th Floor
New York, NY 10166-0193
Telephone:    212.351.4000
Facsimile:     212.351.4035

ATTORNEYS FOR ARGONAUT VENTURES I, L.L.C.