IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Solyndra LLC, *et al.*,[1] | ) | Case No.:  11-12799 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hearing Date: June 20, 2013 at 10:30 a.m. |
| | ) | Objection Deadline:  June 12, 2012 |

**Related Docket Nos. 1436**

**OPPOSITION OF THE SOLYNDRA RESIDUAL TRUSTEE TO MOTION OF KINETIC SYSTEMS, INC. FOR A DETERMINATION THAT THE PLAN INJUNCTIONS DO NOT PROHIBIT INSTITUTION OF AN ACTION TO DETERMINE THE PRIORITY OF MECHANICS' LIENS AND THE CREDITORS' RIGHTS TO THE SEGREGATED ACCOUNT PROVIDED FOR IN THE SALE ORDER (OR, IN THE ALTERNATIVE, TO MODIFY THE SUCH INJUNCTIONS)**

R. Todd Nielson, in his capacity as trustee (the "Residual Trustee") of the

Solyndra Residual Trust, established pursuant to the *Debtors' Amended Joint Chapter 11 Plan*

(the "Plan"), hereby submits this Objection (the "Opposition") with respect to the *Motion of*

*Kinetic System for a Determination That the Plan Injunctions Do Not Prohibit Institution of an*

*Action to Determine the Priority of Mechanics' Liens and the Creditors' Rights to the*

*Segregated Account Provided for in the Sale Order (Or, in the Alternative to Modify Such*

*Injunctions)* (the "Motion") [Docket No. 1436].[2]  In support of the Opposition, the Residual

Trustee respectfully states as follows:

---

[1]  The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Solyndra LLC (9771) and 360 Degree Solar Holdings, Inc. (5583).  The Debtors' address is 2880 Zanker Road, Suite 203, San Jose, CA  95143.

[2]  Unless otherwise noted, capitalized terms used herein have the meanings ascribed in the Motion or the Sale Order, as applicable.

**Preliminary Statement**

1.      The Motion argues (1) that this Court does not have subject matter jurisdiction to determine the merits of the Lien Priority Dispute; and (2) even if this Court has the requisite subject matter jurisdiction, it should abstain from hearing the Lien Priority Dispute so that Kinetic can move to have such dispute heard by the United States District Court for the Northern District of California (the "California Court"), in which is pending the action captioned *Kinetic Systems, Inc. v. Federal Financing Bank, et al.,* Civil Action No. 12-1619-SC (the "Stop Notice Litigation").

2.      First, this Court clearly has subject matter jurisdiction to determine the merits of the Lien Priority Dispute and the distribution of the proceeds from the sale currently held in the Segregated Account.  These are core matters arising under 28 U.S.C. § 157(b)(2). As the Motion notes, the Fab 2 Facility vested as property in the Solyndra Residual Trust (the "Trust") once Solyndra's Plan became effective on November 7, 2012.  The Fab 2 Facility was sold pursuant to the *Order Under 11 U.S.C. §§ 105(a), 363 and 1142 and Fed. R. Bankr. P. 2002, 6004 and 6006: (I) Approving Agreement of Sale and Purchase and Authorizing the Sale of Real Property and Related Property to Seagate Technology LLC or a Higher and Better Bidder; (II) Authorizing the Sale of Property Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to Sections 363(a), (f) and (m) of the Bankruptcy Code, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* (the "Sale Order") and the proceeds from that sale (the "Sale Proceeds") became property of the Trust with the same validity, force and

effect which they had in the Fab 2 Facility immediately prior to the Sale. Sale Order ¶ 17. A

bankruptcy court is not divested of jurisdiction over the proceeds from the sale of an asset if the

sale of that asset was a core proceeding. The Lien Priority Dispute and the Sale Proceeds are

"core proceedings" under several sections of 28 U.S.C. § 157(b)(2), including 157(b)(2)(H)

(determination of the validity, extent, or priority of liens); 157(b)(2)(M) (orders approving the

use or lease of property); and 157(b)(2)(N) (orders approving the sale of property). All that

happened pursuant to the Sale Order is that one Plan asset (the Fab 2 Facility) was sold pursuant

to the Sale Order by proper exercise of this Court's jurisdiction over Plan assets and was

converted to another Plan asset (the Sale Proceeds), over which this Court continues to have the

exact same jurisdiction. Pursuant to the Sale Order, the parties' disputes, rights and claims were

simply transferred from the Fab 2 Facility to the Sale Proceeds after the sale of the Fab 2

Facility closed earlier this year.

        3.      Second, this Court should continue to exercise subject matter jurisdiction

over the Sale Order[3] and resolve the Lien Priority Dispute consistent with the parties'

expectations with the mutually agreed language in the Sale Order resolving Kinetic's objection

to the motion approved by the Sale Order (the "Sale Motion"). The Residual Trustee, the

Secured Lenders and Kinetic each agreed to language in the Sale Order providing for this Court

to resolve the Lien Priority Dispute in the event that Kinetic and certain other mechanics were

not able to resolve the dispute with the Secured Lenders. Sale Order ¶ 6. The Sale Order also

provides for this Court to retain jurisdiction under 28 U.S.C. § 157(b)(2) to, among other

---

[3] A copy of the Sale Order (without exhibits) is annexed hereto as **Exhibit A.**

things, adjudicate any and all disputes regarding the Sale, "including without limitation, the

Mechanics' Objections and segregation of Sale Proceeds described in paragraph 6 of this

Order…" Sale Order ¶ 16(c).

4.      Finally, Kinetic is not correct that the Debtors do not have an interest in

the outcome of the Lien Priority Dispute.  If this Court determines that the Secured Lenders'

liens in the Sale Proceeds are senior to Kinetic, then Kinetic would have an unsecured claim

that would be treated pursuant to the Plan and that would necessarily impact distributions to

holders of allowed general unsecured claims.  Similarly, if Kinetic's mechanics' liens are

determined to be senior to the claims of the Secured Lenders, the Secured Lenders' deficiency

claim would increase.  Regardless of the outcome, creditors in these chapter 11 cases have a

vested interest in the quick resolution of the Lien Priority Dispute in order to calculate

distributions to unsecured creditors depending on the amount of resulting unsecured claims.

The Debtors and creditors have a vested interest in administering the Plan and winding up these

chapter 11 cases, and resolving disputed claims as expeditiously as possible.  From the Residual

Trustee's perspective, the most positive outcome would be a consensual distribution of the Sale

Proceeds between Kinetic and the Secured Lenders so that this dispute would be finally

resolved.  However, in the event that the matter cannot be settled, the Residual Trustee favors

the most efficient, quickest and most cost-effective resolution of the Lien Priority Dispute,

which would be for this Court to resolve that dispute rather than grafting the Secured Lenders to

the pending Stop Notice Litigation, which litigation does not affect the Residual Trustee, the

Debtors' creditors, or otherwise impact the distribution calculations under the Plan.  The

Residual Trustee believes that a determination of the nature, extent and rights of Kinetic and the

Secured Parties in the Plan Proceeds could be quickly determined by the initiation of an

adversary proceeding under Bankruptcy Rule 7001(2), more efficiently and expeditiously than

in another forum. These chapter 11 cases have been before this Court for almost two years.

This Court is familiar with the Debtors and the Plan and is capable of determining Kinetic's and

the Secured Lenders' respective rights to the Sale Proceeds, as contemplated by the Sale Order

in the event that the parties are unable to resolve their disputes consensually.

**This Court Has Subject Matter Jurisdiction
to Determine the Parties' Respective Rights to the
<u>Segregated Account and Other Plan Property</u>**

5.    The Motion asserts that the Bankruptcy Court does not have subject

matter jurisdiction over the Lien Priority Dispute because "[t]he lien rights and the instant Lien

Priority Dispute are created by California mechanics lien and real property law, and thus exist

independent of any bankruptcy proceeding." Motion, ¶ 51. Kinetic's argument that this Court

does not have subject matter jurisdiction to adjudicate the parties' respective rights in the Sale

Proceeds is predicated on the fact that the Debtors do not have a residual interest in the Sale

Proceeds and, thus, it "is a private dispute between two sets of creditors." Motion, ¶ 49.

6.    This argument is incorrect. 28 U.S.C. § 157(b)(2) provides a non-

exhaustive list of matters that constitute core proceedings. 28 U.S.C. § 157(b)(2)(K) provides

that the "determination of the validity, extent or priority of liens" is a core proceeding. 28

U.S.C. § 157(b)(2)(M) provides that "orders approving the use or lease of property, including

the use of cash collateral" are core matters. 28 U.S.C. § 157(b)(2)(N) provides that "orders

approving the sale of property other than property resulting from claims brought by the estate

against persons who have not filed claims against the estate" are core matters. Finally, 28

U.S.C. § 157(b)(2)(O) provides that "other proceedings affecting the liquidation of assets of the

estate or the adjustment of the debtor-creditor or the equity security holder relationship, except

personal injury tort or wrongful death claims" are core proceedings.

       7.    Nobody disputes that the sale of the Fab 2 Facility under section 363 of

the Bankruptcy Code pursuant to the Sale Motion was a core proceeding as an order approving

the sale of property. 28 U.S.C. § 157(b)(2)(N). This is true even though, at that point in time,

the Debtors had no more of a residual economic interest in the Fab 2 Facility itself than they do

now in the Sale Proceeds. The same insufficient value in the Fab 2 Facility to pay all of the

claims against the Debtors at the time of the sale still exists today with respect to the Sale

Proceeds. Similarly, just as the sale of the Fab 2 Facility pursuant to the Sale Motion was a core

proceeding, the determination of the distribution of the Sale Proceeds is a core proceeding as an

order approving the use or lease of property and a proceeding affecting the liquidation of the

Debtors' assets. 28 U.S.C. § 157(b)(2)(M) and (O). The only thing that has changed is that the

contested asset between Kinetic and the Secured Lenders are the proceeds derived from the sale

of the Fab 2 Facility. In other words, this Court did not "lose" jurisdiction over the Sale

Proceeds just because the underlying real property asset was sold.

       8.    This Court also has core jurisdiction to determine the Secured Lenders'

and Kinetic's respective lien rights to the Sale Proceeds. First, the Bankruptcy Code

specifically provides that the determination of the validity, extent, or priority of liens is a core

matter. 28 U.S.C. § 157(b)(2)(K). *See also* F. Rule Bank P. 7001(2) (proceedings to determine

the validity, priority or extent of liens are governed by adversary proceeding). Second,

paragraph 16 the Sale Order provided that this Court would retain its subject matter jurisdiction

to, among other things, "adjudicate, if necessary, any and all disputes concerning or relating in

any way to the Sale, including without limitation, the Mechanics' Objections and segregations

of Sale Proceeds as described in paragraph 6 of this Order." Sale Order ¶ 16. Third, the

Debtors, Kinetic and the Secured Parties each agreed that this Court would determine the rights,

liens and claims, of Kinetic (and the other mechanic lien claimants). Sale Order ¶ 6.

**The Bankruptcy Court Should Decide the Merits of
the Lien Priority Dispute as Contemplated by the Sale Order**

       9.      Unsecured creditors of the Debtors have a direct economic interest in the

ultimate determination of the Lien Priority Dispute because either Kinetic or the Secured

Lenders will have a resulting unsecured claim depending on the outcome of the dispute. That

outcome will impact the amount of distributions to general unsecured creditors. An unsecured

claim by Kinetic would impact distributions to creditors by the Solyndra Settlement Trust

(which is the liquidating trust established under the Plan for the benefit of general unsecured

creditors pursuant to Plan). A greater deficiency claim by the Secured Lenders would increase

the Secured Lenders' claims against the Solyndra Residual Trust (which is the liquidating trust

established under the Plan to address the Secured Lenders' deficiency claims, but may also

provide distributions to unsecured creditors pursuant to the conditions of the Plan). Thus, the

Debtors and their unsecured creditors have a vested interest in the most economic and cost

effective resolution of the Lien Priority Dispute so that distributions to creditors can be

ascertained.  The Residual Trustee believes the best way to accomplish that goal is for this

Court, which is also the forum that Kinetic previously agreed to have decide the Lien Priority

Dispute as part of the resolution of its objection to the Sale Motion, resolve the Lien Priority

Dispute.

10.    While not all of the 12 factors governing discretionary abstention

outlined by this Court in *In re LaRoche Indus. Inc.*, 312 B.R. 249 (Bankr. D. Del. 2004) are

applicable in this case, the Residual Trustee believes that the most important factors support this

Court resolving the Lien Priority Dispute in order to minimize the expenses that he will incur in

having to participate in an action in the California Court, to which neither the Residual Trustee

nor the Debtors are parties.

a.    <u>Efficient Administration</u>.  The Residual Trustee is charged with the

implementation and administration of the Plan.  The Residual Trustee believes that the most

efficient and cost effective method to resolve the Lien Priority Dispute is for this Court to resolve

it.  Bankruptcy Rule 7001(2) allows for an adversary proceeding to "determine the validity,

priority, or extent of a lien or other interest in property…." and would allow for the expedited

resolution of the Lien Priority Dispute.  This Court is extremely familiar with the Debtors, their

cases and the Plan and, in the Residual Trustee's view, could most quickly and efficiently

resolve the pending disputes between the Secured Lenders and Kinetic.  As noted above,

creditors of the Debtors' estates benefit by the quick resolution of the Lien Priority Dispute in

order to ascertain the amount of distributions to unsecured creditors depending on the outcome of

the Lien Priority Dispute.

b.    <u>Predomination of State Law Issues.</u>  The Residual Trustee

acknowledges that California law likely governs the resolution of the Lien Priority Dispute issue.

However, the Residual Trustee believes that this Court can equally apply California law to

resolve the pending disputes (just as it has since the Petition Date with respect to numerous other

matters) as can the California Court.

c.    <u>Difficulty or Unsettled Nature of Applicable State Law.</u>  The state

law issues in this dispute do not appear to be unsettled or novel.  Both this Court and the

California Court should be equally capable of resolving the issue of the priority of Kinetic's

mechanics' liens versus the liens of the Secured Lenders.

d.    <u>Presence of a Related Proceeding.</u>  While the Stop Notice

Litigation is currently pending, the Secured Lenders are not defendants in that action and would

need to be joined.  In addition, each of the parties specifically agreed to this Court's adjudication

of the Lien Priority Dispute pursuant to the Sale Order.

e.    <u>Jurisdictional Basis.</u>  The Lien Priority Dispute arose after the

Debtors moved to sell the real property at issue under section 363 of the Bankruptcy Code,

(which otherwise does not exist under state law) with the liens, claims and rights of the Secured

Lenders and Kinetic attaching to the Sale Proceeds.  The jurisdictional basis to sell property free

and clear of liens, claims and interests is a core proceeding that otherwise would not have arisen

outside of chapter 11.  In addition to the Sale Order, the Plan also provides that this Court

expressly reserved jurisdiction to, among other things, adjudicate any and all disputes regarding

the Sale, "including without limitation, the Mechanics' Objections and segregation of Sale

Proceeds described in paragraph 6 of this Order…" Sale Order ¶ 16(c). The Lien Priority

Dispute involves distribution of a Plan asset between two competing creditors and the Plan

provides that this Court shall retain jurisdiction, among other things, to establish the priority or

secured or unsecured status of any claim (Plan, § XIV.A(1)) and decide or resolve any adversary

proceedings that may be commenced after the Effective Date as provided in the Plan (Plan,

§ XIV(A)(5)).

        f.     <u>Relatedness to the Main Bankruptcy Case</u>. Resolution of the Lien

Priority Dispute is "inextricably intertwined with the administration of the estate." *Id.* at 254.

The potential amount of Kinetic's unsecured claim and the Secured Lenders' deficiency claim

will impact the percentage of distributions to creditors. The trustees for each of the creditor

trusts cannot fully administer the Plan and close these chapter 11 cases until the Lien Priority

Dispute is resolved and the amounts of the parties' secured and unsecured claims are ascertained.

The expedited resolution of the Lien Priority Dispute by this Court would allow for the more

efficient administration of the Plan compared to the Stop Notice Litigation, which could take

substantially longer to resolve.

        g.     <u>Substance/Form of Dispute</u>. The resolution of the Lien Priority

Dispute is a core proceeding under both 28 U.S.C. § 157(b)(2), including 157(b)(2)(K)

(determination of the validity, extent, or priority of liens) and 157(b)(2)(M) (orders approving

the use or lease of property); and (157(b)(2)(N) (orders approving the sale of property). One

Plan asset (the Fab 2 Facility) was sold pursuant to the Sale Order and was converted to another

Plan asset (the Sale Proceeds), over which this Court has "arising under" jurisdiction as it did immediately prior to the sale.

  h. <u>Feasibility of Severance From State Court Matters</u>.  As noted above, the Secured Lenders are not parties to the Stop Notice Litigation and the only discrete issue from the Debtors' perspective in this matter is the Secured Lenders' and Kinetic's respective rights to the Sale Proceeds.  The Stop Notice Litigation defendant did not object to the Sale Motion and is not a party to the existing Lien Priority Dispute that arose pursuant to Kinetic's objection to the Sale Motion.  Any distinct or alternative claims and causes of action against the current Stop Notice Litigation defendant would need to be severed from Kinetic's claims to the Sale Proceeds.

  i. <u>Burden on Docket</u>.  It appears that both the dockets of this Court and the California Court are overburdened

  j. <u>Forum Shopping</u>.  The Residual Trustee does not believe that the presence of the Fab 2 property and/or witnesses in California supports abstention.  The Debtors ceased operations a long time ago and no longer have any employees.  Any documents could be easily transmitted in electronic form regardless of their physical location.

  k. <u>Jury Trial</u>.  This factor is not relevant.

  l. <u>Presence of Non Debtor Parties</u>.  The Residual Trustee acknowledges that the economic constituents in the Lien Priority Dispute are the Secured Lenders and Kinetic, but believe that the Bankruptcy Court is the most efficient and logical forum to resolve the pending dispute as expeditiously as possible.  This is particularly true

because of the impact on unsecured creditors depending on the ultimate disposition of the Sale

Proceeds and the length of time it will take to conclude that dispute.

      11.    Finally, while the Residual Trustee believes that this Court could most

efficiently resolve the Lien Priority Dispute, to the extent that that another forum adjudicates the

disputes between Kinetic and the Secured Lenders, any order with respect to the Motion should

expressly provide that neither the Debtors nor the Residual Trustee shall be parties to any

litigation outside of this Court and that the Plan injunction continues to apply to the Debtors and

Residual Trustee to the full extent provided in the Plan and the Confirmation Order.

Dated: June 12, 2013               PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*

Richard M. Pachulski (CA Bar No. 90073)
Debra I. Grassgreen (CA Bar No. 169978)
Joshua M. Fried (CA Bar No. 181541)
James E. O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:      rpachulski@pszjlaw.com
             dgrassgreen@pszjlaw.com
             jfried@pszjlaw.com
             joneill@pszjlaw.com

Counsel for R. Todd Neilson, Trustee of the
Solyndra Residual Trust