IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Solyndra LLC, *et al.*,[1] | ) | Case No. 11-12799 (MFW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Hearing Date:  June 20, 2013 at 10:30 AM |
| | ) | Ref. No. 1436 |

## REPLY IN SUPPORT OF THE MOTION OF KINETIC SYSTEMS, INC. FOR A DETERMINATION THAT THE PLAN INJUNCTIONS DO NOT PROHIBIT INSTITUTION OF AN ACTION TO DETERMINE THE PRIORITY OF MECHANICS LIENS AND THE CREDITORS' RIGHTS TO THE SEGREGATED ACCOUNT PROVIDED FOR IN THE SALE ORDER (OR, IN THE ALTERNATIVE TO MODIFY SUCH INJUNCTIONS)

This reply is submitted by Kinetic Systems, Inc. ("Kinetic") in support of the Motion of

Kinetic Systems, Inc. for a Determination that the Plan Injunctions do not Prohibit Institution of

an Action to Determine the Priority of Mechanics Liens and the Creditors' Rights to the

Segregated Account Provided for in the Sale Order (or, in the Alternative to Modify Such

Injunctions) (D.I. 1436) ("Kinetic's Motion"[2]), and in reply to Argonaut's Opposition,[3] the

Residual Trustee's Opposition[4] and the Settlement Trustee's Opposition.[5]

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows:  Solyndra LLC (9771) and 360 Degree Solar Holdings, Inc. (5583).  The Debtors' address is 47488 Kato Road, Freemont, CA 94538.

[2] For clarity, the same definitions used in the Motion of Kinetic Systems, Inc. for a Determination that the Plan Injunctions do not Prohibit Institution of an Action to Determine the Priority of Mechanics Liens and the Creditors' Rights to the Segregated Account Provided for in the Sale Order (or, in the Alternative to Modify Such Injunctions) (D.I. 1436) ("Kinetic's Motion"), are adopted and will be used herein.

[3] The Response of Argonaut Ventures I, L.L.C. to Motion of Kinetic Systems, Inc. for a Determination that the Plan Injunctions do not Prohibit Institution of an Action to Determine the Priority of Mechanics Liens and the Creditors' Rights to the Segregated Account Provided for in the Sale Order (or, in the Alternative To Modify Such Injunctions) (D.I. 1442) ("Argonaut's Opposition") filed by Argonaut Ventures I, L.L.C. ("Argonaut").

[4] Opposition of The Solyndra Residual Trustee to Motion of Kinetic Systems, Inc. for a Determination that the Plan Injunctions do not Prohibit Institution of an Action to Determine the Priority of Mechanics' Liens and the Creditors' Rights to the Segregated Account Provided for in the Sale Order (or, in the Alternative, to Modify the Such Injunctions) (D.I. 1443) ("Residual Trustee's Opposition") filed by R. Todd Nielson, in his capacity as trustee of the Solyndra Residual Trust (the "Residual Trustee").

[5] Joinder of Solyndra Settlement Trustee to Opposition of the Solyndra Residual Trustee to Motion of Kinetic Systems, Inc. for a Determination that the Plan Injunctions Does not Prohibit Institution of an Action to Determine the Priority of Mechanics' Liens and the Creditors' Rights to the

Continued…

The primary reason Kinetic's Motion should be granted is that all parties concede, as the Residual Trustee puts it:

> "The Residual Trustee acknowledges <u>that the economic constituents in the Lien Priority Dispute are the Secured Lenders and Kinetic</u> . . .

Residual Trustee's Opposition, ¶10 (l), pp. 11-12 (emphasis added).  Argonaut similarly concedes that there are "insufficient proceeds" even to pay Argonaut alone; thus, either the Secured Lenders or Kinetic gets the Segregated Account, and the other gets a deficiency claim -- but in all cases the Debtors/Trustee get nothing.  Argonaut's Opposition, ¶¶ 5-7; 13-14, 18 ("Sale Proceeds are insufficient [to satisfy the various liens]").  Thus, it is undisputed that the only parties with a right to the Segregated Account – the "economic constituents" in the Settlement Trustee's words – are the Secured Lenders and Kinetic.

As will be explained below, that fact leads inexorably to the conclusions that (1) the injunctions do not and should not reach the Lien Priority Litigation, (2) at this stage, bankruptcy jurisdiction over the Lien Priority Dispute does not exist and (3) in any event abstention is appropriate.  Moreover, Kinetic has proposed that once the dispute is resolved, this Court simply provide that the Trustee will disburse the Segregated Account in accordance with the resulting judgment.  (Kinetic's Motion, ¶ 63(8) – Severance).  This fully addresses the Residual Trustee's concerns about not being a party to that litigation, <u>see</u> Residual Trustee's Opposition, ¶ 11, and will ensure that any action by the Trustee in accordance with the judgment of another court is taken with this Court's approval.

---

….Continued

Segregated Account Provided for in the Sale Order (or, in the Alternative, to Modify Such Injunctions) (D.I. 1444) filed by Bonnie Glantz Fatell, in her capacity as trustee of the Solyndra Settlement Trust (the "Settlement Trustee's Opposition").

## REPLY TO ARGUMENT

A.      **Scope of Plan Injunctions**

1.      Argonaut in particular seeks to stretch the scope of the injunctions to cover this purely inter-creditor dispute over the Segregated Account.  However, now that it is acknowledged by all that only the Secured Lenders and Kinetic have a claim to that account (i.e., the relevant property), there is no property of the estate or any trust at issue, nor is there any claim against either trust or the debtors for this account.  Kinetic's proposed complaint does not name either trust, because as all parties admit, neither has any interest in the Segregated Account.

2.      In this context, to allow (or interpret) the injunction to go further and bar suits to resolve the inter-creditor dispute far exceeds the purpose and intent of the injunctions.  It would also impermissibly seek to extend the scope of such injunctions.

B.      **Subject Matter Jurisdiction**

3.      It must be remembered that in this case there has long been a confirmed Plan, and while the Court of Appeals has said that its precedents do not "entirely bar post-confirmation bankruptcy jurisdiction" nevertheless, "a bankruptcy court's jurisdiction wanes after the confirmation . . .," Nuveen, 692 F.3d at 294-95; accord, Resorts, 372 F.3d at 169, and that there must be a close nexus between the dispute and the Plan.  Id.  The argument for post-confirmation jurisdiction here must be evaluated with these additional limiting principles in mind.

4.      Argonaut and the Residual Trustee make two primary arguments as to the Court's post-confirmation jurisdiction:  (a) that the Sale Order provides that the Segregated Account would be held pending a determination by the Court of the various rights, and (b) even though only the Secured Lenders and Kinetic have an interest in the property at issue, resolution of the

Lien Priority Dispute could indirectly affect claims against the estate through deficiency claims.[6]

Argonaut Opposition, ¶¶ 20-35; Trustee's Opposition, ¶¶ 5-9.  Each of these arguments should

be rejected as explained below.

5.      As to the language in the Sale Order, that language simply specified that the funds

will be held pending further order of the Court.  It did not purport to confer jurisdiction and it did

not purport to be a forum selection clause.  The purpose of that paragraph of the order was to

secure the funds in the Segregated Account and ensure they could not be removed without Court

permission.  Moreover, it goes without saying that neither the parties agreement nor the Sale

Order nor the Plan could confer subject matter jurisdiction on this Court – or any other court.  In

re Resorts Intern., Inc., 372 F. 3d 154, 161 (3d Cir. 2004) ("neither the bankruptcy court nor the

parties can write their own jurisdictional ticket. Subject matter jurisdiction 'cannot be conferred

by consent'")

6.      As to the effect on the estate argument,[7] the claims made in support of that

argument are unavailing, as follows:

a.      The claim that because the Court had jurisdiction to order the sale free and

clear, even though the Debtor had no equity, the Court must also have jurisdiction over the Lien

---

[6] Argonaut and the Trustee also point out that the Plan and various orders purported to "reserve jurisdiction" over all kinds of disputes, including this one.  Indeed the Plan claims to reserve jurisdiction "to the fullest extent permitted by the Bankruptcy Code."  Plan, Art. XIV.A.

However, it is not disputed that the Plan purported to reserve jurisdiction – the point is that the Plan could not permissibly do so and create jurisdiction here, where none exists.

[7] The claim that this could be a "core proceeding" because it involves lien priorities was flatly rejected by the McKinney Court:

"Section 157(b)(2)(K)  . . . includes within the category of "core proceedings", and therefore makes responsive to treatment by bankruptcy courts, "determinations of the validity, extent, or priority of liens."  While that language would apparently be broad enough to encompass the present proceeding, we have   interpreted that statute "as empowering us only to make 'determinations of the validity, extent, or priority of liens' upon property of the estate."[4] That implicit limitation pervades the entire Bankruptcy Code, of course …

45 B.R. at 791-2 (footnote omitted).  Accord, Denalco, 57 B.R. 395 (same holding on the "core issue").  As in McKinney and Denalco so too here, the determination of the liens' effect on the property of the estate has been made and is undisputed: the liens wipe out the estate's interest. It is gone.

Priority Dispute (Argonaut, ¶¶ 21-22, Trustee ¶¶ 6-8) misses a key point:  the Debtor had **RECORDED TITLE** to the real estate and indeed needed to be able to sell it free and clear. Here, the only ones with claims to the Segregated Account -- the "economic constituents" -- are the Secured Lenders and Kinetic.  As <u>Xonics</u>, <u>McKinney</u> and the other cases cited in Kinetic's Motion teach, once the property titled in the Debtor is liquidated and the debtor has no right to the proceeds, bankruptcy jurisdiction to resolve further inter-creditor priority disputes ends. [8]

        b.        The claim that resolution of the Lien Priority Dispute might affect how the Residual Trust handles deficiency claims (Argonaut's Opposition, ¶¶ 18-19, 28-30; Residual Trustee's Opposition, ¶ 9) is equally meritless:

        (i)        First, no matter who prevails in the Lien Priority Dispute, the resulting deficiency claim will be the same.  However, Argonaut and the Trustee claim that the Trust documents would treat a deficiency claim held by Argonaut differently than an identical claim held by Kinetics.  This is a distinction without a difference – the claims are legally, economically and in amount identical.  No creditor/debtor can purport to create bankruptcy jurisdiction over an inter-creditor dispute by treating identical claims slightly differently

---

[8] These cases are factually on all fours with the case at bar.  Argonaut's efforts to distinguish them (Argonaut Opposition, ¶¶29-33) misses the key point – the debtors' lack of a right to or interest in the proceeds – and instead focuses on the fact or manner in which it was determined that the debtor no longer had an interest in the proceeds. For example as to <u>Xonics</u> Argonaut claims that the Trustee's formal abandonment was critical (Objection, ¶29) and as to the others it simply notes that the debtors had no interest (<u>id.</u>, ¶33).  However, the point is how the lack of interest was confirmed, whether by formal abandonment or otherwise.  The critical holding of all of these cases is that once it is determined – by whatever method, and they were a little different in each case -- that the debtor/estate has no interest, there is no further bankruptcy jurisdiction.

In this case, as previously noted, it is undisputed and indeed beyond dispute that the only parties with a claim to the Segregated Account are the Secured Lenders and Kinetic. Residual Trustee's Opposition, ¶10 (l) and 11, pp. 11-12 (economic constituents are Secured Lenders and Kinetic). Argonaut's Opposition, ¶¶ 5-7; 13-14, 18 (sale proceeds insufficient).  Thus, as was the case in <u>Xonics</u>, <u>McKinney</u> and <u>Denalco</u>, here the estate has no further interest in the lien proceeds and there is no further bankruptcy jurisdiction.

Significantly, while Argonaut seeks to distinguish these factually identical cases, it does not cite any case in which bankruptcy jurisdiction was held to extend to resolution of an inter-creditor priority dispute to lien proceeds once it was established that the debtors had no further interest.

.

depending on who owns the claim, and then saying the Bankruptcy Court must adjudicate the inter-creditor ownership dispute.

(ii)    Indeed, the situation as described by Argonaut -- involving claims which may arise against the estate -- is covered by the Court of Appeals decision in Grace.  In that decision, the Court affirmed the rule that bankruptcy jurisdiction is absent where the only way the third party action (here the Lien Priority Dispute) could impact the estate is through another suit.  Grace, 591 F.3d at 171.  Here, as with the indemnity claim in Grace, resolution of the Lien Priority Dispute itself does not affect the estate.  However, a follow-up claim or litigation against the estate by others (in Grace, the State of Montana; here Argonaut or Kinetic) might result from resolution of that dispute.  As in Grace, so too here, such a follow-up claim does not create jurisdiction over the primary inter-creditor dispute.

C.    **Abstention**

7.    Kinetic's Motion demonstrated that, putting aside the jurisdictional issue, abstention would be appropriate here in light of the Stop Notice Litigation, the fact that the issues are fundamental mechanics lien priority issues under the California statutes, the location of the witnesses and evidence, and expectations of the parties pre-bankruptcy.[9]  Simply put, Kinetic seeks to litigate its claims to be paid for the construction at Fab 2 only once, not once in the Stop Notice Litigation and a second time here.   Most of Argonaut's and the Trustee's responses to the abstention argument are merely conclusionary recitals that resolution in bankruptcy is time critical or more efficient.  However, as can quickly be seen, these conclusions do not withstand scrutiny in light of the facts:

---

[9] As to expectations, Kinetic pointed out that various contractual documents of the Debtors provided for litigation in Fremont, California.  Argonaut counters that this provision is not binding at this stage, which is correct but misses the point -- these choices reflect the parties' expectations, and give lie to any forum shopping claim, which are relevant factors in the abstention analysis.

- Efficiency/Relation to Main Case (LaRoche Factors 1 and 6):  The argument that the Lien Priority Dispute is integral to the main case and thus that it is "critical" that it be resolved here and quickly so as not to delay distributions does not withstand scrutiny, since (1) it is a post-confirmation dispute over which creditors own which claim, (2) the Residual Trustee just moved to extend the time to file claims objections until September, so resolving this inter-creditors dispute elsewhere could not delay distributions anyway.

- State Law Issues (Factors 2 and 3).  This very argument, that lien priority issues are bankruptcy issues, withered under the scrutiny of the Court in In re Dr. C. Huff & Co., 44 B.R. 129, 135 (W.D. Ky. 1984) ("In the case at bar we are confronted by a lien priority dispute between two creditors . . . Their conflict involves no issues of bankruptcy law, only questions of state commercial law, which apparently have not been addressed by [the relevant state courts]").  This analysis also gives lie to any claim that this Court is more familiar with the facts since it confirmed the Plan – those issues are not involved in the Lien Priority Dispute.

- Jurisdictional Basis/Substance of the Proceeding (Factors 5 and 7).  The claim that proceedings of this type (inter-creditor priority disputes) are core did not withstand the scrutiny of Courts in Denalco, 57 B.R. at 395, ("controversy is not a core proceeding) and McKinney, 45 B.R. 791-2 (inter-creditor lien priority dispute is not core and court has no jurisdiction where debtor has no right to the proceeds).

- Forum Shopping/Convenience (Factor 10).  The Trustee's claim that the evidentiary advantages of a California forum are now moot as the Debtors have ceased operations and "no longer have any employees" actually underscores the critical evidentiary need for a California forum.  The third party witnesses are already in California and their testimony must be obtained there – and now that the Debtors have let go of their employees/witnesses, the Debtors cannot even produce these witnesses in Delaware, so they too must be subpoenaed where they live/work, which is in California.

8.     From a big picture perspective, there are overwhelming convenience, expense and judicial efficiency reasons that the Lien Priority Litigation should be venued in California.  No party disputes the relevant facts on this point:

- Argonaut, Kinetic and the other lien creditors chose to lend based on California real estate, and thus obtained their liens in California under California law.

- Argonaut and the Debtors (not to mention Kinetic) are all represented by California based law firms whose California licensed and based lawyers will

have to do most of the work -- since the evidence is in California and the specialized California Mechanics lien law governs (the specialized nature of the state statute not only impacts counsel, but also the Court).

- The construction was done by San Francisco Bay Area contractors, sub-contractors, and their employees, and other than the parties (who are already in California) these third parties have the key evidence about when construction was done and what was done both in terms of witnesses and documents.

- There are no witnesses in Delaware and thus either California counsel does the discovery in California and travels to Delaware for substantive hearings, or vice versa, but in any event significant cross country travel would be unavoidable.

- From a judicial efficiency perspective, one case on this issue is already pending in the Northern District of California and it makes sense for the cases to be discovered and heard together rather than involving two Courts and two Judges.

Obviously from Kinetic's perspective it makes sense for there to be one litigation rather than two, but this is also true from a judicial efficiency perspective, and since the third party evidence, and indeed all the evidence, is in California, the case for a California venue is very very powerful.

For all the above reasons, and for the reasons set forth in Kinetic's Motion, that motion should be granted.

<div style="margin-left: 45%;">

Respectfully submitted,

MONTGOMERY, McCRACKEN,
   WALKER & RHOADS, LLP

</div>

Dated:   June 17, 2013

Of Counsel:

Scott Hennigh
Mathew Troughton
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111-4109
Phone:  (415) 434-9100

<div style="margin-left: 45%;">

By:____/s/ R.G. Placey_____
   Richard G. Placey (I.D. No. 4206)
   Natalie D. Ramsey (I.D. No. 5378)
   1105 North Market Street, Suite 1500
   Wilmington, Delaware  19801
   Phone:  (302) 504-7880
   Fax:     (302) 504-7820

</div>